# U.S. District Court
# DISTRICT OF KANSAS (Kansas City)
# CIVIL DOCKET FOR CASE #: 2:25−cv−02171−JWB−TJJ
## *Internal Use Only*

| | |
|---|---|
| Lawson v. Kansas Department of Children and Families et al | Date Filed: 04/02/2025 |
| Assigned to: Chief District Judge John W. Broomes | Date Terminated: 12/11/2025 |
| Referred to: Magistrate Judge Teresa J. James | Jury Demand: Plaintiff |
| Case in other court:  10CCA, 25−03182 | Nature of Suit: 440 Civil Rights: Other |
|            10CCA, 25−03223 | Jurisdiction: Federal Question |
| Cause: 28:1983 Civil Rights | |

**Plaintiff**

| | | |
|---|---|---|
| **Angeliina Lynn Lawson**<br>*E−Filing & ECF Notifications; as*<br>*natural parent and next friend of*<br>*minor*<br>D. L. | represented by | **Angeliina Lynn Lawson**<br>1914 5th Avenue<br>Leavenworth, KS 66048<br>913−972−1661<br>Email: angeliinacourtrecords@gmail.com<br>PRO SE<br>*Bar Number:*<br>*Bar Status:* |

V.

**Defendant**

| | | |
|---|---|---|
| **Kansas Department of Children and Families**<br>*TERMINATED: 11/17/2025* | represented by | **Marc Altenbernt**<br>Kansas Department for Children and<br>Families − Kansas Avenue<br>555 S. Kansas Avenue<br>Topeka, KS 66603<br>316−337−6752<br>Fax: 785−296−4960<br>Alternative Phone: 785−250−0380<br>Cell Phone:<br>Email: marc.altenbernt@ks.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Number: 28745*<br>*Bar Status: Active* |

**Defendant**

| | | |
|---|---|---|
| **Kansas Attorney General, Office of**<br>*TERMINATED: 11/17/2025* | represented by | **James Eric Todd**<br>Office of Kansas Attorney General<br>120 SW 10th Avenue<br>2nd Floor<br>Topeka, KS 66612<br>785−296−6244 |

Alternative Phone: 913–568–8738
Cell Phone: 913–568–8738
Email: james.todd@ag.ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 24297*
*Bar Status: Active*

**Scott Nading**
Kansas Attorney General
120 SW 10th Avenue
2nd Floor
Topeka, KS 66612
785–296–6945
Alternative Phone:
Cell Phone:
Email: scott.nading@ag.ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 29665*
*Bar Status: Active*

**Brad E. Avery , I**
Attorney General
120 SW 10th Ave.
Topeka, KS 66612
785–220–9634
Alternative Phone:
Cell Phone:
Email: brad.avery@ag.ks.gov
*TERMINATED: 11/03/2025*
*Bar Number: 13071*
*Bar Status: Active*

**<u>Defendant</u>**

| | | |
|---|---|---|
| **Amanda Miranda**<br>*in their individual and official capacities*<br>*TERMINATED: 12/11/2025* | represented by | **Marc Altenbernt**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Number: 28745*<br>*Bar Status: Active* |

**<u>Defendant</u>**

| | | |
|---|---|---|
| **Heather Dunz**<br>*in their individual and official capacities*<br>*TERMINATED: 12/11/2025* | represented by | **Marc Altenbernt**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Number: 28745*<br>*Bar Status: Active* |

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 04/02/2025 | 1 | COMPLAINT (No Summons Issued) with trial location of Kansas City, filed by Angeliina Lynn Lawson. (Attachments: # 1 Exhibit List)(nac) (Entered: 04/02/2025) |
| 04/02/2025 | 2 | CIVIL COVER SHEET re 1 Complaint by Plaintiff Angeliina Lynn Lawson. (nac) (Entered: 04/02/2025) |
| 04/02/2025 | 3 | MOTION for Leave to Proceed in forma pauperis by Plaintiff Angeliina Lynn Lawson. NOTE – Access to document is restricted pursuant to the courts privacy policy. (Motion referred to Magistrate Judge Teresa J. James,) (nac) (Entered: 04/02/2025) |
| 04/02/2025 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge John W. Broomes and Magistrate Judge Teresa J. James for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)<br><br>**NOTICE OF MAGISTRATE JUDGE AVAILABILITY: A United States magistrate judge is available to conduct all proceedings in this civil action if all parties voluntarily consent. Information & consent forms are available at https://www.uscourts.gov/file/459/download (nac) (Entered: 04/02/2025)** |
| 04/02/2025 | | NOTICE OF DEFICIENCY – Designation of place of trial is missing. The filing party/attorney is directed to correct the deficiency immediately. Mailed to Angeliina Lynn Lawson at 1914 5th Ave. Leavenworth, KS 66048 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (nac) (Entered: 04/02/2025) |
| 04/02/2025 | | (Court only) ***Staff notes: Pro se notice of case opening, Notice of deficiency, and docket sheet mailed to Angeliina Lynn Lawson at 1914 5th Ave. Leavenworth, KS 66048 by regular mail. (nac) (Entered: 04/02/2025) |
| 04/02/2025 | 4 | DESIGNATION OF PLACE OF TRIAL filed by Plaintiff Angeliina Lynn Lawson – trial to be held in Kansas City. (nac) (Entered: 04/02/2025) |
| 04/09/2025 | 5 | DOCKET ANNOTATION: Plaintiff Angeliina Lynn Lawson is a registered pro se participant with ECF notifications only. (gw) (Entered: 04/09/2025) |
| 04/15/2025 | | DOCKET ANNOTATION: Plaintiff Angeliina Lynn Lawson has requested and received e–filing rights. Ms. Lawson is a registered pro se participant with e–filing & ECF notifications. (gw) (Entered: 04/15/2025) |
| 04/15/2025 | 6 | ORDER granting 3 Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (in forma pauperis). Plaintiff shall provide the Clerk's Office complete address information for each Defendant named in the Complaint no later than May 2, 2025. Signed by Magistrate Judge Teresa J. James on 4/15/2025.(byk) (Entered: 04/15/2025) |
| 04/15/2025 | 7 | NOTICE OF ADDRESSES FOR SERVICE PURPOSES by Angeliina Lynn Lawson. (jsh) (Entered: 04/15/2025) |
| 04/16/2025 | | SUMMONS ISSUED as to Heather Dunz (issued to two different addresses for individual and official capacities), Kansas Attorney General, Office of, Kansas, State of, Department for Children and Families, and Amanda Miranda (issued to two different addresses for individual and official capacities). (Summonses issued to US |

| | | |
|---|---|---|
| | | Marshal for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to US Marshal for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (nac) (Entered: 04/16/2025) |
| 05/19/2025 | 8 | CLERKS ORDER EXTENDING TIME until 6/2/2025 for Defendants Heather Dunz, Kansas Department of Children and Families, and Amanda Miranda to answer or otherwise plead. Signed by deputy clerk on 5/19/2025. (jsh) (Entered: 05/19/2025) |
| 05/28/2025 | 9 | SUMMONS RETURNED EXECUTED –– Certified Mail USM 285 by Angeliina Lynn Lawson upon Heather Dunz in their individual and official capacities. (Attachments: # 1 Dunz Individual Capacity)(ca) (Entered: 05/28/2025) |
| 05/28/2025 | 10 | SUMMONS RETURNED EXECUTED –– Certified Mail USM 285 by Angeliina Lynn Lawson upon Amanda Miranda in their individual and official capacities. (Attachments: # 1 Miranda Individual Capacity)(ca) (Entered: 05/28/2025) |
| 06/02/2025 | 11 | MOTION to Dismiss and Memorandum in Support by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda. (Altenbernt, Marc) (Entered: 06/02/2025) |
| 06/03/2025 | 12 | APPLICATION FOR CLERKS ENTRY OF DEFAULT by Angeliina Lynn Lawson. (mls) (Entered: 06/04/2025) |
| 06/03/2025 | 13 | MOTION for Default Judgment by Plaintiff Angeliina Lynn Lawson. (mls) (Entered: 06/04/2025) |
| 06/06/2025 | 14 | ENTRY OF APPEARANCE by Brad E. Avery, I on behalf of Kansas Attorney General, Office of. (Avery, Brad) (Entered: 06/06/2025) |
| 06/06/2025 | 15 | NOTICE REGARDING LATE APPEARANCE by Angeliina Lynn Lawson. (sz) (Entered: 06/06/2025) |
| 06/06/2025 | 16 | MEMORANDUM IN OPPOSITION by Plaintiff Angeliina Lynn Lawson re 11 Motion to Dismiss. (Attachments: # 1 Exhibit List) (mls) (Entered: 06/09/2025) |
| 06/09/2025 | 17 | MOTION to Dismiss by Defendant Kansas Attorney General, Office of. (Avery, Brad) (Entered: 06/09/2025) |
| 06/10/2025 | 18 | ORDER denying application for clerk's entry of default (Doc. 12 ) and motion for default judgment (Doc. 13 ). The record does not reflect that the summons for the Kansas Attorney General's Office was returned executed. Therefore, default is not appropriate. Entered by District Judge John W. Broomes on 06/10/2025. Mailed to pro se party Angeliina Lynn Lawson by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 06/10/2025) |
| 06/10/2025 | 19 | OPPOSITION by Plaintiff Angeliina Lynn Lawson re 17 Motion to Dismiss. (mls) (Entered: 06/11/2025) |
| 06/25/2025 | 20 | INITIAL ORDER SETTING SCHEDULING/STATUS CONFERENCE: Scheduling/Status Conference set for 7/24/2025 at 11:00 AM (central time) by telephone before Magistrate Judge Teresa J. James. Participants must dial CONFERENCE LINE 1–855–244–8681 and enter ACCESS CODE 2311 284 1047 to join the conference. The Court will not require the parties to hold a planning conference, submit a proposed Scheduling Order, or exchange initial disclosures at this time. Instead, the parties should review the form scheduling order and be prepared to |

| | | |
|---|---|---|
| | | suggest and discuss proposed case deadlines and settings. Signed by Magistrate Judge Teresa J. James on 6/25/2025. Sent to pro se plaintiff Lawson by email and regular mail. (byk) (Entered: 06/25/2025) |
| 06/25/2025 | 21 | (DISREGARD THIS ENTRY – incorrect ECF event selected; see 25 for correct filing.) –– RESPONSE to 16 Memorandum in Opposition to Motion to Dismiss by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda. (Altenbernt, Marc) Modified on 7/3/2025. (kmc) (Entered: 06/25/2025) |
| 06/25/2025 | 25 | REPLY TO RESPONSE TO MOTION by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda re 11 Motion to Dismiss. (Document originally filed as DE 21 using the incorrect ECF event; this refiling of the entry was made for administrative purposes.)(kmc) (Entered: 07/03/2025) |
| 06/30/2025 | 22 | MOTION to Dismiss for Lack of Service by Defendant Kansas Attorney General, Office of. (Avery, Brad) (Entered: 06/30/2025) |
| 06/30/2025 | 24 | SUPPLEMENTAL OPPOSITION by Plaintiff Angeliina Lynn Lawson re 22 Motion to Dismiss. (sz) (Entered: 07/01/2025) |
| 07/01/2025 | 23 | SUMMONS RETURNED EXECUTED –– USM285 Certified Mail by Angeliina Lynn Lawson upon Kansas Department of Children and Families. (ca) (Additional attachment(s) added on 8/1/2025: # 1 Full document) (kao). Modified on 8/1/2025 – the original pdf attachment was missing pages; the complete document has been added to the entry. (kao) (Entered: 07/01/2025) |
| 07/03/2025 | 26 | NOTICE Regarding Scheduling Conference and Proceedings by Angeliina Lynn Lawson. (sz) (Entered: 07/03/2025) |
| 07/03/2025 | 27 | NOTICE Regarding Defendants' Noncompliance with Lawful Subpoenas by Angeliina Lynn Lawson. (sz) (Entered: 07/07/2025) |
| 07/14/2025 | 28 | NOTICE of Fraud Upon the Court and Preservation of Rule 60(b)(3) Relief by Angeliina Lynn Lawson. (ca) (Entered: 07/15/2025) |
| 07/15/2025 | | (Court only) ***Staff notes: Confirmed with the pro se plaintiff that despite de 28 bearing a different case number, it is intended to be filed in this case as well. (ca) (Entered: 07/15/2025) |
| 07/16/2025 | 29 | THIRD MOTION to Dismiss for Lack of Standing by Defendant Kansas Attorney General, Office of. (Avery, Brad) (Entered: 07/16/2025) |
| 07/16/2025 | 30 | SUPPLEMENTAL DECLARATION by Angeliina Lynn Lawson. (sz) (Entered: 07/16/2025) |
| 07/17/2025 | 31 | SECOND NOTICE Regarding Defendants' Noncompliance with Lawful Subpoenas and Pattern of Discovery Obstruction by Angeliina Lynn Lawson. (Attachment: # 1 Exhibit A) (msb) (Entered: 07/17/2025) |
| 07/18/2025 | 32 | RESPONSE to 31 Second Notice Regarding Defendants' Noncompliance with Lawful Subpoenas and Pattern of Discovery Obstruction by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda. (Altenbernt, Marc) (Entered: 07/18/2025) |
| 07/18/2025 | 33 | DECLARATION IN OPPOSITION to 32 Response/Request to Strike 31 Second Notice of Noncompliance of Subpoena by Angeliina Lynn Lawson. (sz) Modified on 7/21/2025 to link to DE 32 . (jal) Modified on 10/10/2025 to re–title. (mam) (Entered: |

| | | 07/18/2025) |
|---|---|---|
| 07/23/2025 | 34 | RENEWED MOTION for Default Judgment by Plaintiff Angeliina Lynn Lawson. (sz) (Entered: 07/23/2025) |
| 07/23/2025 | 35 | ORDER CONTINUING SCHEDULING/STATUS CONFERENCE. The 7/24/2025 Scheduling/Status Conference is hereby continued one week to 7/31/2025 at 10:00 AM (central) by telephone before Magistrate Judge Teresa J. James. Participants must dial CONFERENCE LINE: 1–855–244–8681 and enter ACCESS CODE: 2311 284 1047 to join the conference. Signed by Magistrate Judge Teresa J. James on 7/23/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(byk) (Entered: 07/23/2025) |
| 07/24/2025 | 36 | ORDER REGARDING SCHEDULING/STATUS CONFERENCE. The Scheduling/Status Conference set for 7/31/2025 will now be held at 03:30 PM (central) and by Zoom Videoconference before Magistrate Judge Teresa J. James. Chambers will email all participants the Zoom link and instructions a couple business days prior to the conference. The parties should review the form scheduling order on the Court's website and be prepared to suggest and discuss proposed case deadlines and settings and the other topics listed in the 20 Initial Order Setting Scheduling/Status Conference. The parties may, but are not required to, email chambers a proposed scheduling order. If any party wishes to submit a proposed scheduling order, it must be emailed to chambers and all other parties no later than 24 hours prior to the conference. Signed by Magistrate Judge Teresa J. James on 7/24/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(byk) (Entered: 07/24/2025) |
| 07/31/2025 | 37 | MINUTE ENTRY for proceedings held before Magistrate Judge Teresa J. James: SCHEDULING CONFERENCE held on 7/31/2025. Order to follow. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 07/31/2025) |
| 08/01/2025 | 38 | SUMMONS RETURNED EXECUTED –– Certified Mail (USM–285) by Angeliina Lynn Lawson upon Kansas Attorney General, Office of served on 4/29/2025. (kao) (Entered: 08/01/2025) |
| 08/01/2025 | 39 | NOTICE OF DOCKET TEXT MODIFICATION by Deputy Clerk: The original document attached to docket entry 23 was missing pages. The complete document has been added to that entry and is attached to this entry for noticing purposes only. (kao) (Entered: 08/01/2025) |
| 08/06/2025 | 40 | ORDER STAYING DISCOVERY AND PRETRIAL PROCEEDINGS. All discovery and other further pretrial proceedings in this case––including all deadlines and requirements under Fed. R. Civ. P. 26––are temporarily stayed with respect to all parties until the District Judge rules on the pending Motions to Dismiss (ECF Nos. 11, 17, 22, and 29). If any of Plaintiff's claims remain after the ruling(s) on the pending motions to dismiss, defense counsel shall email the chambers of the undersigned Magistrate Judge, within seven (7) days of the ruling, with suggested dates for setting a telephone scheduling conference. Signed by Magistrate Judge Teresa J. James on 8/6/2025. (byk) (Entered: 08/06/2025) |
| 08/06/2025 | 41 | RESPONSE (titled OBJECTION) by Plaintiff Angeliina Lynn Lawson Re 40 Order Staying Case. (msb) (Entered: 08/07/2025) |
| 08/06/2025 | 42 | |

| | | |
|---|---|---|
| | | APPLICATION FOR CLERKS ENTRY OF DEFAULT against Kansas Attorney General's Office by Angeliina Lynn Lawson. (msb) (Entered: 08/07/2025) |
| 08/06/2025 | 43 | NOTICE to Court of Jury Trial Protection and Demand for Scheduling by Angeliina Lynn Lawson. (msb) (Entered: 08/07/2025) |
| 09/04/2025 | 44 | NOTICE (titled: Notice of Judicial Inaction and Procedural Delay in Violation of Rule 1, Due Process, and Plaintiff's ADA Access Rights) by Angeliina Lynn Lawson. (jal) (Entered: 09/05/2025) |
| 09/26/2025 | 45 | MOTION for Certificate of Appealability, MOTION to Expedite (titled: Motion to Certify Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Motion to Expedite Ruling Due to Prejudice from Stay and Judical Inaction) by Plaintiff Angeliina Lynn Lawson. (jal) (Entered: 09/26/2025) |
| 10/02/2025 | 46 | SUPPLEMENTAL BRIEF IN SUPPORT of 34 Motion for Default Judgment by Plaintiff Angeliina Lynn Lawson. (mam) (Entered: 10/02/2025) |
| 10/06/2025 | 47 | MOTION to Show Cause Why the Court Has Not Ruled on Plaintiff's Motions for Default Judgment, Relief Under Rule 55(b)(2) and Emergency Judicial Oversight by Plaintiff Angeliina Lynn Lawson. (Motion referred to Magistrate Judge Teresa J. James.) (mam) (Entered: 10/06/2025) |
| 10/09/2025 | 48 | MEMORANDUM AND ORDER. Defendant AG's Office's motion to dismiss on the basis of sovereign immunity (Doc. 17 ) is granted. The remaining motions to dismiss filed by Defendant AG's Office are moot (Docs. 22 , 29 ). Plaintiff's motion for default judgment (Doc. 34 ), application for clerk's entry of default (Doc. 42 ), and Plaintiff's objection (Doc. 41 ) to Magistrate Judge James's order staying discovery pending a ruling on the motions to dismiss are denied as moot.The DCF Defendants' motion (Doc. 11 ) is granted in part and taken under advisement in part. Defendant DCF's motion to dismiss is granted. The individual Defendants' motion is taken under advisement. Plaintiff is to file an amended complaint on or before 10/30/2025. The amended complaint must comply with this order and Federal Rule of Civil Procedure 8(a). Should Plaintiff fail to file an amended complaint, this matter will be dismissed without further notice. Signed by Chief District Judge John W. Broomes on 10/9/2025. (mam) (Entered: 10/09/2025) |
| 10/09/2025 | | (Court only) **Defendants Kansas Attorney General, Office of and Kansas Department of Children and Families terminated per 48 . (mam)** (Entered: 10/09/2025) |
| 10/09/2025 | 49 | NOTICE OF INTERLOCUTORY APPEAL as to 48 Memorandum and Order by Plaintiff Angeliina Lynn Lawson. (mam) (Entered: 10/10/2025) |
| 10/10/2025 | | APPEAL FEE STATUS: Filing fee not paid re 49 Notice of Interlocutory Appeal on behalf of Plaintiff Angeliina Lynn Lawson; filer granted IFP status on 4/15/2025. (This is a text entry only. There is no.pdf document associated with this entry.) (mam) (Entered: 10/10/2025) |
| 10/10/2025 | 50 | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 49 Notice of Interlocutory Appeal. (Attachments: # 1 Preliminary Record)(mam) (Entered: 10/10/2025) |
| 10/10/2025 | 51 | APPEAL DOCKETED in 10CCA on 10/10/2025 and assigned Appeal No. 25−3182 re 49 Notice of Interlocutory Appeal filed by Angeliina Lynn Lawson. (mam) (Entered: 10/10/2025) |

| 10/14/2025 | 52 | OBJECTIONS to 48 Memorandum and Order by Angeliina Lynn Lawson. (ca) (Entered: 10/14/2025) |
|---|---|---|
| 10/15/2025 | | (Court only) **Remark re 52 : NEF regenerated to ca10_team2@ca10.uscourts.gov. (mam)** (Entered: 10/15/2025) |
| 10/22/2025 | 53 | MOTION to Disqualify Judge John W. Broomes and Magistrate Judge Teresa J. James Under 28 U.S.C. § 455 by Plaintiff Angeliina Lynn Lawson. (mam) (Entered: 10/23/2025) |
| 10/24/2025 | 54 | NOTICE (titled: Judicial Notice of Attorney General's Coordinated Interference and Evidentiary Suppression) by Angeliina Lynn Lawson. (jal) (Entered: 10/27/2025) |
| 10/29/2025 | 55 | (STRICKEN per 67) –– FIRST AMENDED COMPLAINT against Kansas Department of Children and Families, Kansas Attorney General, Office of, Amanda Miranda and Heather Dunz, filed by Angeliina Lynn Lawson. (mam) Modified on 12/2/2025, see 67. (mam) (Entered: 10/29/2025) |
| 10/29/2025 | | (Court only) **Remark re 55 : Terminated date removed for Defendants Kansas Attorney General, Office of and Kansas Department of Children and Families. (mam)** (Entered: 10/29/2025) |
| 10/30/2025 | 56 | NOTICE of Judicial Financial Entanglement AND RENEWED MOTION to Disqualify Under 28 U.S.C. § 455(a) and (b)(4) by Plaintiff Angeliina Lynn Lawson. (mam) (Entered: 10/30/2025) |
| 10/30/2025 | | MOTION REFERRAL to Magistrate Judge REMOVED as to: 53 and 56 MOTIONS to Disqualify Judge Under 28 U.S.C. § 455. The motions will be resolved by the District Judge.(byk) (Entered: 10/30/2025) |
| 10/31/2025 | 57 | ORDER denying 47 Motion for Order to Show Cause. Signed by Magistrate Judge Teresa J. James on 10/31/2025. (kf) (Entered: 10/31/2025) |
| 10/31/2025 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 45 MOTION for Certificate of Appealability MOTION to Expedite. The motion will be resolved by the District Judge. (kf)** (Entered: 10/31/2025) |
| 11/03/2025 | 58 | TRANSCRIPT ORDER FORM by Angeliina Lynn Lawson: Scheduling Conference held 7/31/2025 re 49 Notice of Interlocutory Appeal. (mam) (Entered: 11/03/2025) |
| 11/03/2025 | 59 | WITHDRAWAL OF COUNSEL by Bradley E. Avery and ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL by James Eric Todd on behalf of Kansas Attorney General, Office of (Todd, James) (Entered: 11/03/2025) |
| 11/03/2025 | 60 | ENTRY OF APPEARANCE by Scott Nading on behalf of Kansas Attorney General, Office of. (Nading, Scott) (Entered: 11/03/2025) |
| 11/04/2025 | 61 | ORDER of 10CCA Dismissing the Appeal as to 49 Notice of Interlocutory Appeal. This court is without jurisdiction to consider this appeal. (Appeal No. 25–3182) (mam) (Entered: 11/04/2025) |
| 11/12/2025 | 62 | MOTION to Dismiss *Amended Complaint* by Defendant Kansas Attorney General, Office of (Todd, James) (Entered: 11/12/2025) |
| 11/12/2025 | 63 | MEMORANDUM IN SUPPORT of 62 MOTION to Dismiss *Amended Complaint* by Defendant Kansas Attorney General, Office of(Todd, James) (Entered: 11/12/2025) |

| Date | Doc # | Description |
|---|---|---|
| 11/13/2025 | 64 | MOTION to Dismiss *Amended Complaint* by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda (Altenbernt, Marc) (Entered: 11/13/2025) |
| 11/14/2025 | 65 | NOTICE and Certification for Fraud−Based Federal Claims by Angeliina Lynn Lawson. (mam) (Entered: 11/14/2025) |
| 11/17/2025 | 66 | MOTION to Strike Successive Motions to Dismiss Rule 12(g)(2) (Docs. 11 , 17 , 22 , 29 , 62 and 64 ) by Plaintiff Angeliina Lynn Lawson. (mam) (Entered: 11/17/2025) |
| 11/17/2025 | 67 | ORDER striking Plaintiff's amended complaint (Doc. 55.) On October 9, 2025, the court entered an order granting Defendants' motion to dismiss in part and dismissing Defendants KDCF and the AG's Office. (Doc. 48.) The court took the motion to dismiss under advisement with respect to the claims against Defendants Miranda and Dunz. Plaintiff was instructed that she could amend her complaint against these two defendants only to attempt to state a claim. Plaintiff was cautioned not to include the dismissed Defendants and to omit any claims on behalf of her child as Plaintiff is proceeding pro se. Plaintiff failed to comply with this court's order in filing her amended complaint. (Doc. 55.) Therefore, the court strikes it from the docket. Plaintiff will be allowed one final opportunity to comply with this court's order. Plaintiff may file an amended complaint on or before December 1, 2025. Should she fail to file an amended complaint or if the amended complaint does not comply with the directives in the court's prior order (Doc. 48), this matter will be dismissed without further notice. Defendants' motions to dismiss (Docs. 62, 64) are moot as a result of this order. Entered by Chief District Judge John W. Broomes on 11/17/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 11/17/2025) |
| 11/17/2025 | | (Court only) **Defendants Kansas Attorney General, Office of and Kansas Department of Children and Families terminated per 67 (striking Doc. 55 ). (mam)** (Entered: 12/02/2025) |
| 11/18/2025 | | MOTION REFERRAL to Magistrate Judge REMOVED as to: 66 Motion to Strike Successive Motions to Dismiss Rule 12(g)(2). The motion will be resolved by the District Judge.(byk) (Entered: 11/18/2025) |
| 11/20/2025 | 68 | MOTION to Adjudicate Fraud Upon the Court (Dkt. 28 ) and Suspend All Dispositive Motion Practice Pending Certification by Plaintiff Angeliina Lynn Lawson. (Motion referred to Magistrate Judge Teresa J. James.) (mam) (Entered: 11/20/2025) |
| 11/20/2025 | 69 | EMERGENCY MOTION to Vacate Retaliatory Order Striking Plaintiff's Complaint (DE 67) by Plaintiff Angeliina Lynn Lawson. (Attachments: # 1 Exhibit A) (mam) (Entered: 11/20/2025) |
| 11/20/2025 | 70 | NOTICE of Claim for Damages Under Tucker Act – Federal Judicial Obstruction by Judge John W. Broomes by Angeliina Lynn Lawson. (mam) (Entered: 11/20/2025) |
| 11/20/2025 | 71 | MOTION to Stay / Supplemental Rule 60(d)(3) Notice Judicial Bias, Default Manipulation and Censorship of Jury Trial by Plaintiff Angeliina Lynn Lawson. (Motion referred to Magistrate Judge Teresa J. James.) (Attachments: # 1 Exhibit A) (mam) (Entered: 11/20/2025) |
| 11/20/2025 | 72 | JUDICIAL NOTICE of Retaliation Against ADA Advocate Rights for Federal Claims by Angeliina Lynn Lawson. (Attachments: # 1 Exhibit A) (mam) (Entered: 11/20/2025) |

| 11/24/2025 | 73 | MEMORANDUM AND ORDER denying Plaintiff's Motions filed at Docs. 45 , 53 , 56 , 66 , 68 , 69 and 71 . Plaintiff is put on notice that if she files another motion deemed to be frivolous and without merit, the court will summarily deny the motion by minute order. The court will also consider imposing filing restrictions and sanctions. Signed by Chief District Judge John W. Broomes on 11/24/2025. (mam) (Entered: 11/24/2025) |
|---|---|---|
| 11/28/2025 | 75 | EMERGENCY NOTICE to Preserve Constitutional Claims and Objection to Judicial Retaliation, Arbitral Conditions, and Due Process Deprivation by Angeliina Lynn Lawson. (kmc) (Entered: 12/01/2025) |
| 12/01/2025 | 74 | FIRST AMENDED COMPLAINT against All Defendants, filed by Angeliina Lynn Lawson. (Attachments: # 1 Exhibit – Redacted POA)(Lawson, Angeliina) (Entered: 12/01/2025) |
| 12/11/2025 | 76 | MEMORANDUM AND ORDER. The court DISMISSES WITHOUT PREJUDICE the instant action for the reasons stated in the court's prior 48 order and for Plaintiff's continued failure to comply with court orders. Further, Defendant's 11 motion to dismiss is GRANTED. Signed by Chief District Judge John W. Broomes on 12/11/2025. (kmc) (Entered: 12/11/2025) |
| 12/11/2025 | 77 | JUDGMENT. This action came before the Court. The issues have been considered and a decision has been rendered. Signed by deputy clerk on 12/11/2025. (kmc) (Entered: 12/11/2025) |
| 12/11/2025 | 78 | NOTICE OF APPEAL by Plaintiff Angeliina Lynn Lawson. (Lawson, Angeliina) (Entered: 12/11/2025) |
| 12/12/2025 | | APPEAL FEE STATUS: filing fee not paid re: 78 Notice of Appeal on behalf of Plaintiff Angeliina Lynn Lawson. Filer granted IFP status on 4/15/2025. (THIS IS A TEXT ONLY ENTRY–NO DOCUMENT IS ASSOCIATED WITH THIS TRANSACTION) (kmc) (Entered: 12/12/2025) |
| 12/12/2025 | 79 | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re 78 Notice of Appeal. (Attachments: # 1 Preliminary Packet)(kmc) (Entered: 12/12/2025) |
| 12/12/2025 | 80 | APPEAL DOCKETED in 10CCA on 12/12/2025 and assigned Appeal No. 25–3223 re 78 Notice of Appeal – Final Judgment filed by Angeliina Lynn Lawson. (ca) (Entered: 12/12/2025) |
| 12/29/2025 | 81 | TRANSCRIPT ORDER FORM: No Transcript Required filed by Angeliina Lynn Lawson re 78 Notice of Appeal – Final Judgment. (Filed in the 10th Circuit on 12/29/2025). (jal) (Entered: 12/29/2025) |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,
Plaintiff,
v.
KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES,
KANSAS ATTORNEY GENERAL'S OFFICE,
AMANDA MIRANDA AND HEATHER DUNZ, in their individual and official capacities,
Defendants.

Civil Action No.   2:25-cv-02171

**JURY TRIAL DEMANDED**

# COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF

## PRELIMINARY STATEMENT

1. This is a civil rights action brought under **42 U.S.C. § 1983** to redress systemic violations of the **Fourteenth and First Amendments** to the United States Constitution committed by the Kansas Department for Children and Families (DCF) and the Kansas Attorney General's Office.
2. Plaintiff **Angeliina Lynn Lawson**, a non-offending natural parent, was denied access to material records, abuse disclosures made by her child, and procedural fairness by state actors who had a duty to protect the rights of both parent and child.
3. Defendants engaged in **evidence concealment, coercive isolation of a child witness, retaliation, and systemic exclusion** of Plaintiff in matters involving the safety and welfare of her son.
4. Plaintiff further alleges that **her custodial rights were actively sabotaged** by the child's father in coordination with court actors while Plaintiff was deprived of any meaningful opportunity to respond.
5. Plaintiff seeks **monetary damages, declaratory judgment, injunctive relief**, and other remedies to prevent future constitutional violations against similarly situated parents and children.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under **28 U.S.C. § 1331** and **1343(a)(3)** as this action arises under the Constitution and laws of the United States.

7. Venue is proper in the District of Kansas under **28 U.S.C. § 1391(b)**, as the events occurred within this judicial district and involve Kansas state agencies headquartered therein.

## PARTIES

8. Plaintiff **Angeliina Lynn Lawson** is a resident of Leavenworth County, Kansas, and the legal custodial mother of a minor child.
9. Plaintiff brings this action on behalf of herself and as **next friend of her minor child**, D.L., who suffered psychological trauma as a direct result of Defendants' conduct.
10. Defendant **Kansas Department for Children and Families (DCF)** is a state agency responsible for child protection investigations.
11. Defendant **Kansas Attorney General's Office** oversees compliance with Kansas laws, including KORA.
12. **Amanda Miranda and Heather Dunz** are state officials responsible for executing, concealing, or failing to remedy the conduct described herein.

## FACTUAL BACKGROUND AND CONSITUTIONAL INJURY

13. Plaintiff's son made serious disclosures to DCF, including:
    • His father **lied to police** during an abuse investigation.
    • His father **threatened suicide** if the child continued taking his prescribed medication.
    • The **GAL threatened the child**, stating that if he testified truthfully, it would "get worse" for his mother in court.
14. These disclosures were documented in DCF internal records but were **concealed from Plaintiff**, despite her legal status as non-offending parent and ADA advocate.
15. Plaintiff filed a formal **Kansas Open Records Act (KORA)** request to obtain complete abuse records.
16. In response, DCF produced **incomplete, redacted, and misleading records**, failing to disclose critical abuse reports.
17. DCF falsely identified **three closed investigations**, while KORA records listed only **one closed and one pending**, with no explanation for the omitted case.Plaintiff filed a **formal Kansas Open Records Act (KORA) request** for full records and abuse documentation.
18. DCF produced redacted and incomplete records, omitting disclosures critical to the child's safety and Plaintiff's right to legal action.
19. DCF shared confidential records with **non-appointed third parties** but refused to release them to Plaintiff.
20. Plaintiff filed a **KORA complaint with the Kansas Attorney General's Office**, which summarily **denied any wrongdoing by DCF**, despite documented omissions and concealment.
21. Plaintiff was also subjected to **retaliation and obstruction** by DCF staff in response to her protected activity.
22. At no point did the state engage in a meaningful, fair, or transparent process to allow Plaintiff to protect her child or respond to the concealed allegations and omissions.
23. Plaintiff's exclusion from proceedings involving the care, safety, and custody of her child, and the state's refusal to disclose known abuse disclosures, deprived her of the

protected liberty interest identified in *Santosky* and *Troxel*, and violated the minimal procedural guarantees affirmed in *Goss*.

24. During this period, the child's father and legal representatives **manipulated court access** and initiated a campaign to de facto **terminate Plaintiff's parental rights**, while state officials denied Plaintiff access to critical disclosures.

25. Plaintiff's child became **medically diagnosed with trauma** caused by prolonged psychological coercion, isolation, and institutional neglect.

26. These events inflicted **irreparable harm**, including emotional collapse, somatic symptoms (nosebleeds, insomnia, stomach pain, headaches, significant weight loss), and hopelessness.

## CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF FOURTEENTH AMENDMENT (DUE PROCESS)

### (Against All Defendants, Under 42 U.S.C. § 1983)

27. Plaintiff incorporates all prior paragraphs.

28. Plaintiff holds a **fundamental liberty interest in the care, custody, and management of her child** under *Santosky v. Kramer*, 455 U.S. 745 (1982).
    a. Defendants deprived Plaintiff of due process by:
       • Failing to notify her of abuse disclosures;
       • Concealing or falsifying investigation records;
       • Enabling judicial actions to proceed without her involvement;
       • Refusing to disclose abuse records while communicating with unauthorized parties.
    b. These acts resulted in constitutional injury to both Plaintiff and her son.

29. Defendants' concealment of abuse disclosures, isolation of a child witness, and denial of participation to the protective parent, **amount to a deprivation of liberty interests protected by the Fourteenth Amendment**, including:

    • The child's right to bodily integrity,
    • The parent's right to protect their child,
    • And both parties' right to be free from state-enabled coercion and psychological injury.

30. These violations were not merely negligent but **deliberate, sustained, and causally connected** to the constitutional harms suffered.

31. Plaintiff further alleges that the father of the minor child, in coordination with court actors, exploited Plaintiff's exclusion from proceedings to initiate legal efforts to terminate her parental rights — while DCF and the GAL continued to conceal abuse-related disclosures. The totality of these actions deprived Plaintiff of her constitutional right to maintain a relationship with her child and contributed to what amounts to the coercive alienation of custody.

- *Santosky v. Kramer*, 455 U.S. 745 (1982): Parents have a fundamental liberty interest in the care and custody of their children.
- *Troxel v. Granville*, 530 U.S. 57 (2000): Parental rights are among the oldest fundamental liberty interests recognized by the Court.
- *Goss v. Lopez*, 419 U.S. 565 (1975): Even temporary deprivation of protected interests requires notice and a fair hearing.

## COUNT II – VIOLATION OF FIRST AMENDMENT (RETALIATION)

**(Against DCF and Individual Officials, Under 42 U.S.C. § 1983)**

32. Plaintiff engaged in protected activity by filing KORA requests, seeking transparency, and objecting to exclusion from her son's case.
    a. DCF officials responded with:
       • Harassment, redactions, and denials;
       • Exclusion from court-related access;
       • Obstructive and retaliatory communications.
33. These acts **chilled Plaintiff's right to petition the government** and advocate for her child.
34. Plaintiff's conduct—filing grievances, public record requests, and legal objections—is protected under *Hartman* and *Worrell*. The state's redactions, refusals, and retaliatory omissions were adverse actions designed to chill her advocacy.
    - *Hartman v. Moore*, 547 U.S. 250 (2006): Retaliation for petitioning government is actionable even when initiated by state officials.
    - *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000): Plaintiff must show protected activity, adverse action, and causal connection.

## COUNT III – MONELL CLAIM FOR CUSTOM, POLICY, OR PRACTICE

**(Against DCF and AG's Office, Under 42 U.S.C. § 1983)**

35. The violations were not isolated but the result of **a widespread pattern and official practice** of:

    - Concealing child abuse reports.
    - Retaliating against parents who assert their rights;
    - Failing to enforce internal grievance protections.
36. These systemic failures constitute a **custom or policy of violating federal constitutional rights**, actionable under *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978).

37. The consistent refusal by DCF and the AG to investigate or disclose abuse, even after Plaintiff filed formal KORA complaints, evidences deliberate indifference under *Bryan County*, and constitutes a systemic failure of oversight actionable under *Monell* and *Pembaur*.
    - *Pembaur v. City of Cincinnati*, <u>475 U.S. 469</u> (1986): A single decision by a final policymaker may trigger Monell liability.
    - *Bryan County v. Brown*, <u>520 U.S. 397</u> (1997): Failure to train or supervise can establish Monell liability when it amounts to deliberate indifference.

## COUNT IV – DEPRIVATION OF BODILY INTEGRITY AND STATE-CREATED DANGER

*(Against All Defendants, <u>42 U.S.C. § 1983</u>)*

38. Under **DeShaney v. Winnebago**, <u>489 U.S. 189</u> (1989), and **Currier v. Doran**, 242 F.3d 905 (10th Cir. 2001), state actors may be held liable for affirmatively creating danger.
39. Defendants concealed abuse disclosures, failed to act on credible risk, and enabled court actors to manipulate and isolate the child.
40. The child was subjected to **coercion, psychological injury, and irreparable harm**, including threats by state-appointed guardians.
41. Moreover, Plaintiff's child was subject to coercive pressure by court-appointed actors, including the Guardian Ad Litem (GAL), who threatened that testifying truthfully about abuse would result in harm to his mother. This intimidation constitutes a violation of the child's and the parent's Fourteenth Amendment rights to be free from state-facilitated retaliation and fear.
42. These harms were **foreseeable** and directly caused by Defendants' deliberate indifference.
43. As in *Armijo*, Defendants knowingly placed the child in a position of danger and then failed to act, despite having direct knowledge of abuse-related disclosures. Their conduct created and exacerbated risk to bodily and psychological integrity.

    - *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253 (10th Cir. 1998): State actors liable when they place a vulnerable individual in known danger with foreseeable harm.
    - *Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012): State officials may not induce reliance on misleading information while concealing risk.

## PRAYER FOR RELIEF

A. Declare that Defendants violated Plaintiff's and her child's constitutional rights under the First and Fourteenth Amendments;

B. Award **compensatory damages** for emotional distress, loss of parental rights, and harm to the child;

C. Award **special damages** for the child's psychological and physical injuries, supported by medical diagnosis;

D. Award **punitive damages** against individual officials for willful misconduct;

E. Grant **injunctive relief** requiring:

1. Full release of all DCF records;
2. Prohibition on withholding abuse disclosures from non-offending parents;
3. Implementation of grievance protocols to safeguard due process in child protection cases;

F. Appoint a **federal monitor or special master** to oversee compliance;

G. Award costs and attorneys' fees under **42 U.S.C. § 1988**;

H. Grant any further relief the Court deems just and necessary.


## JURY DEMAND

Plaintiff demands a jury trial on all claims so triable.



Date: April 1, 2025

**Respectfully submitted,**

Angeliina Lynn Lawson
1914 5th Ave
Leavenworth, KS 66048
AngeliinaLawson@gmail.com
(913) 972-1661
**Sui Juris Pro Se Plaintiff**

# EXHIBIT SHEET

Case No:                                    Plaintiff/Defendant Exhibits

| No. | Description | I.D. | Off. | Adm. | Deposition or Witness |
|-----|-------------|------|------|------|------------------------|
| 1 | Plaintiff's KORA request to DCF | | | | Plaintiff |
| 2 | Redacted incomplete KORA response | | | | Plaintiff |
| 3 | DCF internal note: Child reported father threatened to commit suicide if he took his medication | | | | Plaintiff |
| 4 | Records showing DCF shared confidential information with non-appointed third parties | | | | Plaintiff |
| 5 | Grievance to oversight bodies | | | | Plaintiff |
| 6 | Plaintiff's grievance to DCF | | | | Plaintiff |
| 7 | Harassing phone calls from DCF staff | | | | Plaintiff |
| 8 | Ignored emails responding to DCF supervisors | | | | Plaintiff |
| 9 | Plaintiff complaint to AG office | | | | Plaintiff |
| 10 | AG's dismissal letter declining to act | | | | Plaintiff |
| 11 | List of 3 abuse reports closed by DCF called in by mandated reporters | | | | Plaintiff |
| 12 | Timeline Chart: abuse disclosures -> concealment -> AG inaction -> current claim | | | | Plaintiff |
| 13 | Redacted vs unredacted KORA (if obtained) | | | | Plaintiff |
| 14 | Excerpts from relevant federal court precedent | | | | Plaintiff |
| 15 | Letter to Court by ADA Advocate Jay Shore showing harm done to child | | | | Plaintiff |
| 16 | Emails from Minor Child Reporting Abuse and Emotional Distress | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Angeliina Lynn Lawson

**(b)** County of Residence of First Listed Plaintiff   **Leavenworth**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Sui Juris Pro Se, 1914 5th Ave, Leavenworth, KS 66048
(913) 972-1661 AngeliinaCourtRecords@gmail.com

## DEFENDANTS

KS DCF,KS AG'S OFFICE, AMANDA MIRANDA AND HEATHER DUNZ, individual and official capacities,  [+]

County of Residence of First Listed Defendant   **Shawnee**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983, 14th Amendment U.S. Constitution

Brief description of cause:
Due Process

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
April 1, 2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
### for the District of Kansas

Angeliina Lynn Lawson,

                        Plaintiff,

v.                                 Case No.:  2:25-CV-02171-JMB-TJJ

Kansas Department for
Children and Families, et al.,

                        Defendants.

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT
### and
### MEMORANDUM IN SUPPORT OF SAME

COME NOW the Defendants, the Kansas Department for Children and Families (referred to as "KDCF"), and Amanda Miranda and Heather Dunz, in their official and individual capacities as employees of KDCF (collectively referred to as the "KDCF Defendants"), by and through their attorney Marc Altenbernt, and hereby move this Court to dismiss the Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and (1), and Local Rule 7.1, and in support thereof, hereby state as follows:

### STATEMENT OF THE RELIEF SOUGHT

The KDCF Defendants move this Court to dismiss the Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim and 12(b)(1) for lack of subject matter jurisdiction due to Eleventh Amendment Immunity.

### NATURE OF MATTER BEFORE THE COURT

The Plaintiff filed her Complaint against the KDCF Defendants and the Kansas Attorney General sounding in the following claims: (1) Violation of the Fourteenth Amendment (Due

Process); (2) Violation of the First Amendment – Retaliation; (3) Monell Claim for Custom, Policy, or Practice; and (4) Deprivation of Bodily Integrity and State Created Danger. All four causes of action relate to a custody dispute involving her former spouse and their minor child.

## STATEMENT OF FACTS

The Plaintiff's Complaint alleges that her minor son made disclosures to the KDCF Defendants that his father had lied to the police and threatened suicide, and that the guardian ad litem threatened the child [Document 1, Paragraph 13]. The Plaintiff then alleges that when she requested copies of KDCF documents created in response to receiving the disclosures from the child, she received copies that contained redactions or were otherwise incomplete [Id. at Para. 16-19]. The Plaintiff further alleges she was subjected to "retaliation and obstruction" by the KDCF Defendants after making her open records requests, although she does not identify what conduct constituted retaliation and obstruction [Id. at Para. 21]. The remaining allegations concern the Plaintiff being excluded from proceedings involving the care and custody of her child, although she does not identify the subject proceedings or how she was excluded [Id. at Para. 23-24]. The Plaintiff requests monetary damages, special damages, punitive damages, and injunctive relief [Id., "Prayer for Relief"].

## ARGUMENT AND AUTHORITIES

**I.**      **Plaintiff's Complaint Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim.**

In order to satisfy the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2), a plaintiff must allege "a short and plain statement of the claim showing that the pleader is entitled to relief" (emphasis added). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court offered the following regarding federal pleading standards,

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' **requires more than labels and conclusions**, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation). **Factual allegations must be enough to raise a right to relief above the speculative level**, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) (hereinafter Wright & Miller) ('[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action')....

*Twombly*, 550 U.S. at 555-556 (emphasis added).  While the Plaintiff identifies four specific causes of action, she fails to provide a sufficient factual basis for any of them.

### A.    Count I – Violation of Fourteenth Amendment (Due Process)

The Tenth Circuit uses a two-step process to determine whether a plaintiff's procedural due process rights were violated:[1] "(i) [d]id the individual possess a protected property [or liberty] interest to which due process protection was applicable?; and (ii) [w]as the individual afforded an appropriate level of process?" Camuglia v. City of Albuquerque, 448 F.3d 1214, 1219 (10th Cir. 2006).  "[O]nce it is determined that the Due Process Clause applies, the question remains what process is due." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 541, 105 S.Ct. 1487 (citing Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

The Plaintiff alleges that she has a "fundamental liberty interest in the care, custody, and management of her child...." [Doc. 1, Para. 28].  While this technically an accurate contention, the Plaintiff fails to identify how exactly the stated liberty interest was violated by the KDCF Defendants.

Specifically, the Plaintiff alleges that "all Defendants" "deprived [her] of due process by:

---

[1] The KDCF Defendants presume the Plaintiff is alleging procedural due process violations, as opposed to substantive due process violations, since the conduct she complains of seems procedural in nature.  The Plaintiff fails to distinguish between the two, however.

- Failing to notify her of abuse disclosures;

- Concealing or falsifying investigation records;

- Enabling judicial actions to proceed without her involvement;

- Refusing to disclose abuse records while communicating with unauthorized parties." [Id.].

First, none of the foregoing bullet points constitute a liberty interest. Second, in the event the Plaintiff is attempting to allege that the foregoing bullet points constitute a failure of due process relating to her child, the Plaintiff fails to identify how. This lack of information makes it impossible for the KDCF Defendants to respond to these allegations.

Moreover, the KDCF Defendants are aware that the Plaintiff was recently involved in a custody case involving the child at issue in this Complaint in Leavenworth County, Kansas, case no. LV-2025-CV-000070, of which this Court may take judicial notice. The Plaintiff filed a petition against her former spouse for full custody of their child. The case was dismissed on May 12, 2025. The Plaintiff's failure to disclose this matter is relevant to this motion because the KDCF Defendants are unsure as to what "judicial actions" were allowed to proceed without her involvement. The KDCF Defendants obviously have no control over what a trial court in Leavenworth County does in its own case.

In addition, the Plaintiff alleges that the KDCF Defendants concealed or falsified records and failed to disclose abuse records. The Plaintiff fails to allege what records she is referring to and how the alleged conduct violates her due process rights. Based on her previous allegations, it seems like that the records the Plaintiff is referencing are the KDCF Defendants' responses to her open records requests [Doc. 1, Paras. 13-19]. If these are the documents being referenced, then

they fail to qualify as either a liberty interest or a failure of due process that violates the Fourteenth Amendment. As such, Count I should be dismissed for failure to state a claim.

### B.    Count II – Violation of First Amendment

The Plaintiff claims she was retaliated against by the KDCF Defendants when she submitted open records requests [Doc. 1, Para. 32]. The alleged retaliation took the form of:

- Harassment, redactions, and denials;

- Exclusion from court-related access;

- Obstructive and retaliatory communications.

[Id.]. None of the aforementioned allegations amounts to retaliation in violation of the First Amendment. First, the Plaintiff fails to identify what actions by the KDCF Defendants would constitute "harassment." Second, based upon prior allegations at paragraphs 13-19, it appears the "redactions," "denials," "obstruction," and "retaliatory communications" relate to KDCF's responses to her open records requests. While the Plaintiff may believe KDCF Defendants' responses were in violation of the Kansas Open Records Request, they do not constitute a violation of the First Amendment since she has failed to allege any right to the information she requested, aside from offering conclusory allegations. Simply put, federal court is not an appropriate forum for the Plaintiff to address the Kansas Open Records Act.

The additional allegations of retaliation have nothing to do with the KDCF Defendants. The Plaintiff references being excluded from "court-related access," but again fails to provide any details. Regardless, the KDCF Defendants have no control over court-related access. It is likely the Plaintiff again refers to the custody case that was dismissed in Leavenworth County which seems to have been the impetus for this case. Either way, the KDCF Defendants have nothing to

do with the Plaintiff's rights in court.  As such, this Court should dismiss Count II of the Plaintiff's Complaint.

### C.    Claim III - Monell Claim for Custom, Policy, or Practice

The Plaintiff claims the following allegations constitute an unlawful custom, policy, or practice:

- Concealing child abuse reports.

- Retaliating against parents who assert their rights;

- Failing to enforce internal grievance protections.

The first two allegations refer back to allegations made in the earlier causes of action [Id. at Para. 35].  The "concealing child abuse reports" and "retaliating against parents who assert their rights" allegations refer to what the Plaintiff believes are in violation of the Kansas Open Records Act. As stated previously, the Plaintiff has failed to offer sufficient facts to substantiate any claim she may have concerning either the KDCF Defendants' responses to her open records requests or this Court's authority to address same.  The third allegation, i.e., "failing to enforce internal grievance protections" is equally insufficient.  What internal grievance protections?  How were they not enforced?  This Court should dismiss Count III to the Plaintiff's Complaint.

### D.    Count IV – Deprivation of Bodily Integrity and State Created Danger

The Plaintiff next asserts that the KDCF Defendants should be found liable for "affirmatively creating danger" to her child [Doc. 1, Para. 38].  She further alleges that such danger was created by the KDCF Defendants "conceal[ing] abuse disclosures, fail[ing] to act on credible risk, and enable[ing] court actors to manipulate and isolate the child" [Id.].  None of the alleged conduct amounts to "affirmatively" placing a child in danger.  There are no allegations that the KDCF Defendants had custody of the minor child or placed the minor child.  In fact, the

aforementioned custody case reveals that the child's father has custody and the KDCF Defendants have no involvement with the child (or case) in any way.

The allegation of the KDCF Defendants concealing abuse disclosures is contradicted by the Plaintiff's other allegations. To the extent the Plaintiff is referring to the KDCF Defendants' refusal to provide unredacted records to her concerning allegations of abuse pertaining to the minor child, this does not amount to concealing abuse disclosures. The Plaintiff has failed to identity any legal grounds that give her the absolute right to receive unredacted documentation concerning the investigation of abuse or neglect. This is particularly true if the subject of the investigation may be the Plaintiff herself. Nonetheless, none of the allegations made reflect the KDCF Defendants placing a child in danger. Again, the placement decision for the child was made entirely by the custody court in Leavenworth County, with no involvement from KDCF or its employees. The remaining allegations in Count IV are directed at parties the KDCF Defendants have no control over, e.g., the guardian ad litem or trial court. As such, this Court should dismiss Count IV.

E.    **Failure to Identify Conduct of Individual Defendants Miranda and Dunz.**

The Plaintiff sues KDCF employees Miranda and Dunz in both their official and individual capacities [Doc. 1, Para. 12]. However, the Plaintiff fails to identify any illegal acts performed by them specifically. The only allegation that identifies them at all simply reads, "Amanda Miranda and Heather Dunz are state officials responsible for executing, concealing, or failing to remedy the conduct described herein" [Id.]. What conduct? Improperly responding to open records requests? Failing to protect the minor child? Inhibiting her involvement in court proceedings? The failure to allege specific conduct not only violates basic federal pleading standards, it also makes it

impossible for the KDCF Defendants to determine whether Miranda and Munz are protected by qualified immunity, which is relevant given their having been named in their individual capacities.[2] As such, Counts I – IV should be dismissed as Miranda and Munz, specifically.

## II.    The Plaintiff's Complaint as to KDCF and Miranda and Munz in Their Official Capacities Should be Dismissed Pursuant to Rule 12(b)(1) Due to Eleventh Amendment Immunity.

The Plaintiff brings all four of her counts pursuant to 42 U.S.C. section 1983 [Doc. 1, Counts I-IV].  "It is well-settled that the Eleventh Amendment, in the absence of consent, bars suit against the state or one of its agencies or departments in federal court." Barger v. State of Kan., 620 F. Supp. 1432, 1434 (D. Kan. 1985) (citations omitted). This bar applies regardless of the nature of the relief sought.  Id.  Moreover, the United States Supreme Court has expressly ruled that there was no intent by Congress to override the granting of Eleventh Amendment immunity by enacting the Civil Rights Act.  Id. (citing Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). See also Will v. Michigan Dept. of State Police, 91 U.S. 58, 69 (1989) (finding, "In our view…§ 1983 itself and its legislative history, fails to evidence a clear congressional intent that States be held liable).   "[O]nce effectively asserted[,] [Eleventh Amendment] immunity **constitutes a bar to the exercise of federal subject matter jurisdiction**."  Fent v. Okla. Water Res. Bd., 235 F.3d 553, 558-59 (10th Cir. 2000) (emphasis added).

In other words, KDCF, as an agency of the State of Kansas, is immune from suit under 42 U.S.C. § 1983. As such, this Court should strike Counts I-IV of the Plaintiff's Complaint as to

---

[2] This Court should note that the Plaintiff has failed to allege sufficient facts to defeat the defense of qualified immunity. "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099 (1985).

KDCF for want of subject matter jurisdiction under Rule 12(b)(1).  In addition, this immunity "extends to…state officials who are sued for damages in their official capacity."  <u>Williams v. Utah Department of Corrections</u>, <u>928 F.3d 1209, 1212</u> (10th Cir. 2019).  As such, Defendants Miranda and Munz, sued in their official capacity, should be dismissed pursuant to Rule 12(b)(6), with respect to the Plaintiff's claims seeking monetary damages.

WHEREFORE, the Defendants the Kansas Department for Children and Families and Amanda Miranda and Heather Dunz, in their official and individual capacities as employees of KDCF, respectfully request that this Court dismiss the Plaintiff's Complaint consistent with the foregoing and for any other relief it deems just.

Respectfully Submitted,

*/s/ Marc Altenbernt*_____
Marc Altenbernt, SC#28745 General Counsel
Kansas Department for Children and Families
555 S. Kansas Ave., 6th Floor
Topeka, KS 66603
Tel:    (785) 250-0380
Fax:    (785) 296-4960
Marc.Altenbernt@ks.gov
*Attorney for Defendants, DCF*

## CERTIFICATE OF SERVICE

I hereby certify that I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court on the 2nd day of June 2025, and to Plaintiff, via email:

AngliinaCourtRecords@gmail.com

*/s/ Marc Altenbernt*_____
Marc Altenbernt, #28745

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| ANGELIINA LYNN LAWSON, | ) | |
| Plaintiff, and as next friend of D.L., a minor | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-02171 |
| | ) | |
| KANSAS DEPARTMENT FOR CHILDREN | ) | |
| AND FAMILIES, et al., | ) | |
| Defendants. | ) | |

**Jury Trial Demand**

## MOTION FOR DEFAULT JUDGMENT AGAINST
## THE KANSAS ATTORNEY GENERAL'S OFFICE

**THE KANSAS ATTORNEY GENERAL'S OFFICE**

Plaintiff Angeliina Lynn Lawson, pro se and as next friend of her minor child, D.L., respectfully moves this Court for an entry of default judgment against Defendant Kansas Attorney General's Office pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. In support of this motion, Plaintiff states:

1. The Kansas Attorney General's Office was served with the summons and complaint by the U.S. Marshal on April 29, 2025.

2. The Clerk entered default against the Kansas Attorney General's Office pursuant to Rule 55(a), based on the failure of that Defendant to plead or otherwise defend this action.

3. Plaintiff's complaint alleges that the Kansas Attorney General's Office failed in its statutory oversight obligations, including the summary dismissal of Plaintiff's formal KORA (Kansas Open Records Act) without investigation or response. This inaction enabled the concealment of child abuse records, disabled-parent exclusion, and retaliation by DCF officials, resulting in constitutional injury to Plaintiff and her son under the First and Fourteenth Amendments.

4. As documented in Exhibit A (Plaintiff's official KORA complaint filed February 23, 2025), Plaintiff requested public access to three abuse investigations involving her son. The complaint detailed specific failures by DCF to release case files, noting only one closed and one pending file were disclosed, despite confirmed existence of additional closed records.

5. As shown in Exhibit B (AG Office's March 12, 2025 dismissal letter), the Kansas Attorney General's Office acknowledged receipt of the complaint, found it was properly filed under KORA, but refused to take enforcement action. Despite Plaintiff's documented evidence, the AG closed the case without investigation or requiring DCF compliance.

6. Plaintiff seeks a declaratory judgment that the Kansas Attorney General's Office violated her rights under 42 U.S.C. § 1983 and the ADA by failing to investigate credible civil rights violations and complaints of systemic misconduct.

7. Plaintiff further requests compensatory damages for emotional distress, loss of procedural fairness, and injury to familial integrity caused by the Attorney General's refusal to take action on documented KORA violations.

8. Plaintiff also seeks injunctive relief requiring the Kansas Attorney General's Office to adopt proper oversight mechanisms to ensure compliance with the Kansas Open Records Act in child welfare and civil rights contexts.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and:

A. Declare that the Kansas Attorney General's Office violated Plaintiff's and her son's rights under the First and Fourteenth Amendments, 42 U.S.C. § 1983, and the Americans with Disabilities Act;

B. Award Plaintiff compensatory damages in the amount of $150,000 for emotional distress, reputational harm, and violation of her federal rights;

C. Order injunctive relief requiring the Kansas Attorney General's Office to implement adequate KORA enforcement procedures for parents and children in the child welfare system;

D. Grant any other relief the Court deems just and proper.

Dated: June 03, 2025

Respectfully submitted,

Angeliina Lynn Lawson, Pro Se

Plaintiff and Next Friend of D.L., a Minor

1914 5th Ave, Leavenworth, KS 66048

angeliinacourtrecords@gmail.com

(913) 972-1661

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June, 2025, I served a true and correct copy of the following documents:

· MOTION FOR DEFAULT JUDGMENT AGAINST THE KANSAS ATTORNEY GENERAL'S OFFICE

by electronic filing with the Clerk of the Court using the CM/ECF system, which will send notice to the registered attorney of record listed below:

Marc Altenbernt

General Counsel  Kansas Department for Children and Families

555 S. Kansas Avenue, 6th Floor, Topeka, KS 66603

Email: marc.altenbernt@ks.gov

No attorney of record has appeared for the Kansas Attorney General's Office as of the date of this filing. Therefore, notice will also be provided by mailing a copy of the foregoing documents via U.S. Mail to the addresses listed in the court's docket used for service of summons.

Respectfully submitted,

Angelina Lynn Lawson, Pro Se

Plaintiff and Next Friend of D.L., a Minor

1914 5th Ave., Leavenworth, KS 66048

angeliinacourtrecords@gmail.com, (913) 972-1661

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

Angeliina Lawson, on behalf of herself and as next friend of her minor
son, *Plaintiff*,
v.
Kansas Department for Children and Families (DCF), et al.,
*Defendants*.

### Case No. 2:25-cv-02171-JWB-TJJ

### Jury Trial Demand

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

## EXECUTIVE SUMMARY

This case arises from systemic misconduct by the Kansas Department
for Children and Families (DCF) and its officials, who deliberately
withheld abuse investigation records from Plaintiff, a non-offending
mother and ADA-qualified individual, while facilitating the continued
placement of her son in an abusive and coercive environment. The
Plaintiff, Angeliina Lynn Lawson, asserts claims under 42 U.S.C. §
1983 for violations of the First and Fourteenth Amendments and under
Title II of the Americans with Disabilities Act (ADA) for denial of access
and retaliation.

The Defendants have moved to dismiss, citing Eleventh Amendment
and qualified immunity, and alleging that Plaintiff has failed to state a
claim. However, Plaintiff's Complaint and the accompanying
evidentiary record detail a coherent and shocking sequence of events in
which DCF personnel concealed verified abuse, denied Plaintiff access

to public records and due process, and retaliated against her for asserting her rights under KORA and the ADA.

The claims fall within established exceptions to sovereign immunity under Ex parte Young and Tennessee v. Lane, and the factual allegations are sufficient to overcome qualified immunity at this stage. Plaintiff's due process claims meet the "state-created danger" standard under Currier v. Doran, and her ADA retaliation and First Amendment claims are backed by specific evidence of harassment and exclusion.

Plaintiff also asserts a viable Monell-type claim, alleging that DCF and the Kansas Attorney General's Office have adopted a pattern or practice of obstructing access to public records and retaliating against parents who advocate for transparency or accommodations.

This brief urges the Court to deny the Defendants' Motion to Dismiss and allow discovery to proceed, so that the full scope of institutional misconduct and its impact on Plaintiff and her child can be presented at trial.

Defendants' suppression of critical abuse disclosures is not a theoretical claim—it is evidenced in Plaintiff's attached exhibits. For example, Exhibit C shows a direct email from Plaintiff's son to DCF caseworker Heather Dunz describing fear and coercion. Exhibit H contains DCF's redacted records, which entirely omit one of the abuse investigations Plaintiff requested. These materials confirm Plaintiff's allegation that DCF concealed material facts, thereby depriving her of the ability to protect her son—a textbook due process violation.

Plaintiff has also demanded a jury trial under Rule 38 and the Seventh Amendment to the U.S. Constitution. The claims in this case raise

significant factual questions regarding intent, retaliation, institutional misconduct, and trauma to both parent and child. Dismissing the case prior to discovery would deprive Plaintiff of her constitutional right to have these issues determined by a jury. For this reason as well, the motion to dismiss must be denied.

## Introduction

Plaintiff Angeliina Lawson, appearing pro se and as next friend of her minor son, respectfully submits this memorandum opposing the Kansas Department for Children and Families' ("DCF") Motion to Dismiss. Defendants seek to dismiss this civil rights action by invoking Eleventh Amendment sovereign immunity, qualified immunity, and Rule 12(b)(6) for failure to state a claim. They also contend that Plaintiff has not adequately alleged any constitutional or Americans with Disabilities Act ("ADA") violations. For the reasons below, Defendants' motion should be denied in its entirety.

Plaintiff's Complaint alleges a disturbing pattern of misconduct by DCF and its officials that, if proven, violates fundamental rights. Accepting the allegations as true – as the Court must at this stage – Plaintiff and her child were harmed by DCF's deliberate concealment of child abuse evidence, obstruction of Plaintiff's parental rights and advocacy, and failure to accommodate Plaintiff's disabilities. Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment (due process/familial integrity) and First Amendment (retaliation), as well as claims under Title II of the ADA (disability discrimination and retaliation). She further alleges these violations were not isolated incidents but stem from an official policy or custom (a *Monell* pattern/practice claim). Plaintiff seeks both damages and injunctive relief to remedy the ongoing harms.

Defendants' arguments for dismissal lack merit. **First**, the Eleventh Amendment does not categorically bar this suit: Congress has abrogated state immunity for ADA claims in this context, and Plaintiff also sues officials in their individual capacities under §1983 and seeks

prospective relief, fitting well within established immunity exceptions. **Second**, Defendants are not entitled to qualified immunity at the pleading stage because the Complaint alleges facts showing violations of clearly established rights – including the right to familial integrity, the right to be free from state-created danger, and the right to be free from retaliation for protected conduct. **Third**, Plaintiff's allegations, which must be liberally construed as a pro se pleading, are more than sufficient to state plausible claims under §1983 and the ADA. The Complaint details specific actions by DCF personnel that, if proven, amount to actionable constitutional violations (such as knowingly suppressing evidence of abuse and retaliating against Plaintiff's advocacy) and ADA violations (such as denying Plaintiff equal access to DCF services, records and engaging in retaliatory harassment when she asserted her ADA rights). Finally, Plaintiff's pleadings and exhibits illustrate a broader pattern of misconduct condoned by DCF and the Kansas Attorney General's Office – supporting an inference of an official policy of violating federal rights, which is actionable under *Monell.*

In short, this case presents serious claims that should not be dismissed before any discovery. Plaintiff and her child have suffered real harm due to Defendants' actions. Plaintiff is entitled to proceed to discovery to prove her claims. Dismissal at this pre-discovery stage would be improper given the detailed factual allegations and supporting evidence. The Court should deny Defendants' Motion to Dismiss. If the Court identifies any pleading deficiencies, Plaintiff respectfully requests leave to amend the Complaint rather than dismissal of her case, so that justice may be done on the merits.

### Preservation of Plaintiff's Seventh Amendment Jury Trial Right

Plaintiff has timely demanded a jury trial on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the U.S. Constitution. Dismissal at this pre-discovery stage would improperly deny Plaintiff her constitutional right to have a jury of her peers determine contested factual issues, including but not limited to the extent of DCF's misconduct, the credibility of Plaintiff's evidence, and the emotional and familial harms alleged. Courts must be especially cautious in civil rights actions not to short-circuit a plaintiff's

access to justice before the facts can be properly developed. This case raises profound issues of child safety, disability discrimination, and governmental abuse of power — issues that belong before a jury. Accordingly, the motion to dismiss must be denied to preserve Plaintiff's Seventh Amendment right to a trial on the merits.


## Factual Background

Plaintiff is the mother of a minor child who was the subject of multiple abuse investigations handled by DCF. Plaintiff was a non-offending, protective parent who tried to ensure her child's safety. The Complaint alleges that in 2024–2025, Plaintiff's son made **serious abuse disclosures** to DCF officials, implicating his father and a court-appointed guardian ad litem ("GAL"). Specifically, the child reported that his father had lied to police during a prior abuse investigation, that his father threatened to commit suicide if the child continued taking a prescribed medication, and that the GAL told the child that if he testified truthfully about abuse "it would get worse" for his mother in court, medical records showing significant weight loss, diagnosis of Psychological Trauma, plummeting grades in school, police reports, father's complete isolation and removal of all communication devices as a coercive control technique to prevent child from getting help, emails where the child was reporting daily nosebleeds, videos that the child recorded showing panic attacks and the father mocking him and terror of the father entering his bedroom. These statements and recordings–indicating the child was under severe duress and at risk – were **documented in DCF's internal records**, yet **DCF concealed them from Plaintiff**. At the time, Plaintiff was the child's *non-offending* parent with full legal rights, but DCF kept her in the dark about evidence that her son was being harmed. This concealment occurred even though Plaintiff was known to DCF as both the child's mother and as an ADA advocate for her son and with disabilities of her own.

Frustrated by the lack of information, Plaintiff **filed a formal Kansas Open Records Act (KORA) request** in an effort to obtain the complete DCF records about her son's abuse investigations. In response, DCF **produced only incomplete and heavily redacted records**, omitting the

most critical abuse disclosures and reports and misstating the number of cases DCF has had, which completely kept Amanda Miranda's work sealed. For example, DCF's response identified only one closed case and one pending case, even though Plaintiff knew of a third investigation existed – which was simply not disclosed at all. The records DCF did release were misleading and sanitized, failing to reveal the child's statements about his father's threats and the GAL's coercion. At the same time, DCF **shared these confidential abuse findings with third parties** not entitled to them (such as the GAL or possibly the father's counsel) prior to the GAL ever having court authority. DCF blindly trusted a stranger and provided them their opinions of the Plaintiff but refused to ever issue a report to the court so that the GAL could cut and paste cherry picking what he wanted to use against the mother since there was financial gain for the GAL and personal ties to the father that DCF never investigated. Yet they continued to withhold the information from Plaintiff and aid in fraud on the court. In essence, DCF gave others access to the very information that Plaintiff – the child's mother who was trying to protect him – was denied.

When Plaintiff persisted in seeking transparency and accountability, she faced **retaliation and stonewalling by DCF officials**. Plaintiff's grievance went nowhere and never was addressed. After Plaintiff's records requests, grievances and complaints, DCF supervisors over Amanda Miranda kept trying to contact her by phone and **pressured her to know all the details to why she was so unhappy. Plaintiff reminded that she requested written communication because of her disability but kept being interrogated about her grievance filing. She was decided and kept accusing me of "how do you know what emotional abuse looks like?" Plaintiff responded that DCF would need to contact the therapist Alison Dean because she was the mandated reporter who issued that child abuse report and not the Plaintiff.** On multiple occasions in 2024, Plaintiff received harassing calls from DCF personnel (documented in call logs and voicemails) effectively intimidating her (Exhibit A, phone records and voicemail transcripts). Rather than address Plaintiff's valid concerns in the grievance, DCF chose to intimidate her. Defendant **Amanda Miranda**, a DCF social worker on the case, exhibited hostility toward Plaintiff and even **shared confidential abuse-related information with the GAL** in a

manner that undermined Plaintiff's position in ongoing custody proceedings (Exhibit B, internal email showing Miranda's disclosure to GAL). Defendant **Heather Dunz**, a DCF supervisor, was directly informed (via urgent emails from the child) about the father's threats and the child's fear for his safety, yet **Dunz took no action** (Exhibit C, child's email to Dunz). Ignoring these cries for help but instead said to the Plaintiff over the phone "I went to the father's home and it doesn't look like a home where physical abuse would be." DCF allowed the child to remain in the abusive situation without intervention and without a forensic analyses of the home.

Meanwhile, **court proceedings** concerning the child's custody and welfare were proceeding *ex parte*, without Plaintiff's knowledge or involvement. Because DCF had kept Plaintiff unaware of the new abuse allegations and related case files, Plaintiff was **excluded from critical family court hearings and decisions**. Unbeknownst to her at the time, the child's father (the alleged abuser) and certain court actors capitalized on Plaintiff's exclusion by seeking to terminate her parental rights. Plaintiff later learned that during this period, the father and GAL were effectively **manipulating the court process** for the arrears of child support expenses and alimony to be rerouted to the GAL, while DCF continued to withhold the evidence that would have supported Plaintiff's defense of her parental rights. By the time Plaintiff discovered what had happened, significant damage to her relationship with her child had occurred. The child had become traumatized – he developed medical symptoms of **prolonged psychological coercion and stress**, including insomnia, weight loss, nosebleeds, and emotional distress and significant loss of grandmother connection for help. The Complaint alleges that this trauma was a direct result of **state-enabled coercion and isolation**: the child felt helpless and unsupported because the very agency meant to protect him (DCF) had aligned with the abuser.

Plaintiff took her grievances to every oversight body she could. She **filed a KORA complaint with the Kansas Attorney General's Office**, detailing how DCF had withheld entire case files and redacted crucial information in violation of Kansas law. The **Kansas AG's Office, however, summarily rejected the complaint**, finding no wrongdoing by

DCF despite clear discrepancies in the records provided (Exhibit D, AG letter dismissing KORA complaint). Next, Plaintiff raised **ADA-based grievances**, notifying both DCF and state authorities that, as an individual with disabilities, she required reasonable accommodations and equitable access to information. She asserted that DCF's conduct – refusing to provide full records and harassing her when she advocated for herself – violated Title II of the ADA and the ADA's anti-retaliation provisions. These ADA complaints were likewise **brushed aside** by the agency and the Kansas AG. (Exhibit E, Plaintiff's ADA grievance letter and response). In addition, Plaintiff filed **judicial misconduct complaints** against the GAL and any judges who allowed the one-sided proceedings, reporting the GAL's unethical threat to the child and the apparent denial of Plaintiff's due process in court. These complaints too met with **inaction** or perfunctory denials by the state's oversight entities (Exhibit F, judicial conduct commission response). The Dept of Children Advocacy sent her back to DCF as they did not have any mechanisms for children still in homes and only worked with DCF agencies for children in government care.

All of the above factual allegations are supported by documentation that Plaintiff can present as evidence. Taken together, the facts show a **pattern of suppression, retaliation, and procedural irregularities** by DCF and those acting in concert with it. DCF **suppressed evidence of child abuse**, **denied Plaintiff access to records and proceedings**, and **retaliated against Plaintiff's advocacy that was used in court,** which in turn interfered with Plaintiff's custody and her child's safety. Despite Plaintiff's efforts to obtain help through official channels (KORA requests, ADA grievances, and reports to the Attorney General and judicial authorities), the system closed ranks and failed to correct DCF's misconduct. This systemic failure underlies Plaintiff's *Monell* claim: that DCF (and by extension the state's responsible agencies) have an unlawful custom or practice of violating due process and ADA rights, or at least of **deliberate indifference** to such violations.

For purposes of this motion, the Court must accept these well-pleaded facts as true. They amply demonstrate the *plausibility* of Plaintiff's claims. Far from a "bare bones" pleading, the Complaint provides specific dates, communications, and incidents illustrating how

Defendants' actions harmed Plaintiff and her son. The following sections will show that, legally, these facts constitute valid claims under §1983 and the ADA, and that Defendants' various immunity defenses do not shield such egregious conduct.

## Legal Standard

**Rule 12(b)(6) Standard:** A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. The Court must **accept all well-pleaded factual allegations as true** and draw all reasonable inferences in favor of the plaintiff. To survive a motion to dismiss, a complaint need only state a claim for relief that is **plausible on its face**. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability; it simply means the facts alleged, if true, "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must provide more than conclusory statements or a mere recitation of the elements of a cause of action, but it **need not contain detailed evidence** or proof – it simply must allege enough factual matter to raise a reasonable expectation that discovery will reveal evidence supporting the claim. *Id.* at 678–79.

Importantly, because Plaintiff is proceeding **pro se**, her pleadings are held to **"less stringent standards than formal pleadings drafted by lawyers."** *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). The Court must **liberally construe** the complaint in Plaintiff's favor and not dismiss the case unless it is clear that no set of facts in support of her claim would entitle her to relief. This generous standard reflects the policy that claims should be decided on their merits after an opportunity for evidence, rather than terminated on technical pleading deficiencies – particularly where constitutional rights are at stake. Under these standards, Plaintiff's Complaint – when read liberally and in the context of the exhibits – more than adequately notifies Defendants of the claims and the grounds upon which they rest. It would be premature to dismiss the case at this pre-discovery phase.

## Argument

*(The following sections address Defendants' arguments in turn. Plaintiff will show (A) that Eleventh Amendment sovereign immunity does not bar her key claims; (B) that qualified immunity is inapplicable or at least cannot be decided on the pleadings; (C), (D), and (E) that each of her substantive claims under the Fourteenth Amendment, First Amendment, and ADA are well-pleaded; (F) that she adequately alleges a policy or custom under Monell; and (G) that no other purported grounds for dismissal have merit.)*

## A. Eleventh Amendment Sovereign Immunity Does Not Bar Plaintiff's Claims

Defendants argue that the Eleventh Amendment immunizes DCF (a state agency) and the Kansas Attorney General's Office from this suit. It is true that, as a general matter, states and state agencies are shielded from private lawsuits in federal court by the Eleventh Amendment. See *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989) (a State or its agencies are not "persons" subject to damages liability under §1983). However, Defendants greatly overstate the reach of sovereign immunity in this case. Several **critical exceptions and qualifications** apply, allowing Plaintiff's claims to proceed:

**1. Prospective Injunctive Relief (Ex parte Young):** Plaintiff seeks not only damages but also declaratory and injunctive relief to remedy the ongoing violations of law by DCF. Under the longstanding *Ex parte Young* doctrine, a plaintiff may sue state officials in their official capacity for prospective relief to end a continuing violation of federal law, notwithstanding the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123 (1908). Here, Plaintiff's Complaint effectively names DCF and its officials in their official capacities and requests injunctive orders (for example, requiring DCF to release the full abuse records, to cease retaliatory conduct, and to accommodate disabilities going forward). Such prospective relief claims are **not barred by sovereign immunity**. The Court has jurisdiction to order state officials to conform their future conduct to federal law. *Id.*; see also *Coalition of Clergy v. Bush*, 310 F.3d 1153, 1156 (10th Cir. 2002) (Young allows suits against state officers for prospective relief). To the extent the Court finds that the proper technical course is to substitute the DCF Secretary or other appropriate official as the defendant for injunctive relief, Plaintiff can amend to do

so. But the bottom line is that **immunity does not prevent this Court from granting injunctive relief** requiring DCF to comply with federal law (e.g. to provide records or desist from interfering with Plaintiff's rights), because such relief falls squarely within the *Ex parte Young* exception.

**2. ADA Claims – Congressional Abrogation:** Plaintiff's Count under Title II of the ADA (and the related anti-retaliation provision in Title V, 42 U.S.C. § 12203) is *not* barred by the Eleventh Amendment because Congress validly abrogated state immunity for such claims, at least under the circumstances present here. In enacting the ADA, Congress unequivocally expressed its intent to abrogate state immunity for violations of Title II. 42 U.S.C. § 12202 ("A State shall not be immune under the Eleventh Amendment from an action in [federal] court for a violation of this chapter."). The Supreme Court has held that this abrogation is constitutional as applied to conduct that also violates the Fourteenth Amendment, or in certain contexts implicating fundamental rights. *United States v. Georgia*, 546 U.S. 151, 159 (2006); *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004). In this case, Plaintiff's ADA claim revolves around her being denied equal access to DCF services and court proceedings **because of her disabilities**, and being retaliated against for her ADA-related advocacy. These allegations dovetail with core constitutional concerns – notably Plaintiff's fundamental right of familial association (a liberty interest) and her First Amendment right to petition the government. *Lane* teaches that when Title II is invoked in the context of fundamental rights (such as access to the courts, which was at issue in *Lane*), states have no immunity because Congress acted within its authority to enforce the Fourteenth Amendment. 541 U.S. at 529–34. Here, DCF's actions effectively denied Plaintiff, a disabled mother, meaningful participation in child welfare proceedings and access to abuse investigation information, thereby impeding her ability to protect her child through the courts. Familial integrity and access to a fair legal process are fundamental liberty interests, so the ADA's abrogation of immunity should be fully effective in this context. Moreover, under *United States v. Georgia*, the Court can independently ask whether the alleged ADA violation is also a constitutional violation; if so, immunity is unquestionably abrogated. 546 U.S. at 159. As discussed further below, denying a parent due process by refusing to

fully include her in the investigation process can be seen for retaliation for asserting disability rights, could itself be viewed as a Fourteenth Amendment violation – thus, Congress's abrogation applies *a fortiori*. In sum, DCF **cannot claim Eleventh Amendment immunity against the ADA Title II and retaliation claims**, and Defendants' motion to dismiss those claims on immunity grounds must fail.

**3. Individual Capacity §1983 Claims:** Plaintiff has sued individual DCF employees (such as Ms. Miranda and Ms. Dunz) in their personal capacities under §1983. Eleventh Amendment immunity **does not extend to suits against state officials in their individual capacity for money damages.** *Hafer v. Melo*, <u>502 U.S. 21, 31</u> (1991) ("state officers sued in their individual capacities are 'persons' for purposes of §1983 and do not enjoy Eleventh Amendment immunity"). Thus, to the extent Plaintiff's claims for damages target the individual Defendants for their personal wrongdoing, there is no sovereign immunity bar. Those claims proceed like any other §1983 action against an official for actions taken under color of state law. Defendants' motion conflates the state agencies with the individual defendants, but the Court must distinguish them for immunity analysis. **DCF and the AG's Office (as entities) cannot be sued for damages under §1983**, but the *individuals* can – subject to the qualified immunity analysis addressed below. Plaintiff's Complaint, liberally construed, does allege individual wrongdoing by named officials (e.g., Miranda's and Dunz's acts and omissions), so those claims survive regardless of Eleventh Amendment.

**4. Waiver or Ultra Vires Conduct:** Although not explicitly argued yet, it bears noting that state immunity does not protect officials who act **outside the scope of their lawful authority or in an unconstitutional manner.** An official who engages in ultra vires acts – for example, *willfully violating federal law or orchestrating a fraud* – is not doing the state's business and thus cannot shelter behind the state's immunity. See *Pennhurst State Sch. & Hosp. v. Halderman*, <u>465 U.S. 89, 102</u> (1984) (Young doctrine applies to official acting contrary to federal law). Here, Plaintiff alleges that DCF officials *knowingly violated federal law* (violating due process rights, ADA rights, etc.). This is the kind of conduct that *Ex parte Young* and related principles are designed to reach – the state cannot authorize its agents to commit constitutional

torts, and when they do so, they act beyond their legitimate authority. Additionally, Kansas has in certain contexts waived immunity or consented to suit for ADA claims by accepting federal funds (for example, DCF receives federal funding for child welfare programs contingent on compliance with civil rights laws, including the ADA – arguably a constructive waiver). In any event, the Court need not find a general waiver here because the above doctrines suffice to keep the case alive.

In conclusion, **Eleventh Amendment immunity does not mandate dismissal of this action**. Plaintiff's §1983 damages claims against DCF and the AG's Office as entities may be subject to dismissal or conversion to official-capacity claims for injunctive relief, since state agencies are not §1983 "persons" for damages. Plaintiff acknowledges that and would consent to the substitution of appropriate officials or other adjustments rather than a dismissal. But critically, *all* of Plaintiff's core claims can proceed either against the individual defendants (for damages) or against the relevant officials in official capacity (for injunctive relief or under the ADA's abrogation). The motion to dismiss on sovereign immunity grounds should therefore be **denied**, except for any technical tailoring of the defendants that the Court may direct. Dismissing the case outright would be legal error given the established exceptions to immunity in play.

## B. Defendants Are Not Entitled to Qualified Immunity at This Stage

Defendants next invoke **qualified immunity**, claiming that even if constitutional violations occurred, the individual officials cannot be held liable because the rights in question were not "clearly established" or because their conduct was objectively reasonable. At the Rule 12(b)(6) stage, however, a qualified immunity defense faces a high hurdle: dismissal is only appropriate if **the plaintiff's own allegations** clearly fail to show a violation of a constitutional right *or* clearly show that the right was not clearly established at the time. *Peterson v. Jensen*, <u>371 F.3d 1199, 1201</u> (10th Cir. 2004). Here, Plaintiff's Complaint pleads detailed facts that, if true, demonstrate egregious misconduct by Defendants – misconduct that violated clearly established law. Therefore, qualified immunity is not a basis for dismissal.

To overcome qualified immunity, Plaintiff must allege (1) **that** Defendants violated her or her son's constitutional rights, and (2) **that** those rights were clearly established at the time such that **a reasonable** official would have known their conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Both prongs are satisfied on the face of the Complaint:

**Violation of Constitutional Rights:** As discussed in detail in Sections C and D below, Plaintiff alleges violations of the Fourteenth Amendment (denial of due process/familial integrity) and First Amendment (retaliation against protected advocacy). Taking the facts as true, Defendants **affirmatively acted to conceal child abuse evidence and to mislead the court**, which resulted in Plaintiff being deprived of her parental rights and her child being left in danger. Such conduct – actively **distorting the truth-finding process** and undermining a parent's ability to protect her child – amounts to a deprivation of liberty without due process. Similarly, the Complaint shows that Defendants **harassed and punished Plaintiff for engaging in protected activities** like requesting records and filing complaints, which is a direct violation of her First Amendment right to petition and free speech. Thus, the Complaint adequately alleges constitutional violations by the individual Defendants. Indeed, for purposes of the motion to dismiss, Defendants do not appear to contest that *if* Plaintiff's story is true, it describes troubling behavior. Their argument is primarily that even so, the law was not clearly established. That argument fails under prong two.

**Clearly Established Law:** The rights at issue were unquestionably well established in law by the time of Defendants' actions (2022–2023). No reasonable DCF employee could believe it was lawful to do what is alleged here. For example:

- **Parental Due Process Rights:** It has long been clearly established that parents have a fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). By extension, **\*\*state officials violate due process when they \*\*prevent a parent from participating in proceedings affecting that interest or when they fabricate or withhold material evidence** in a child welfare investigation. The Tenth Circuit has recognized that social workers can be liable for

due process violations where their actions "shock the conscience" by egregiously undermining a parent's custody rights or a child's safety. In *Currier v. Doran*, <u>242 F.3d 905</u> (10th Cir. 2001), for instance, officials placed children with an abusive father and misrepresented the danger to the court; the Tenth Circuit not only found a plausible due process violation, but **denied qualified immunity**, noting that such misconduct would have been understood as unconstitutional in 1999. The parallels to this case are striking: DCF personnel here allegedly **kept a child with an abusive parent by hiding critical abuse reports**, similar to the Currier defendants who misled the court to keep children with an abuser. Likewise, in *Armijo v. Wagon Mound Public Schools*, <u>159 F.3d 1253</u> (10th Cir. 1998), officials were denied immunity for actions that increased a student's risk of <u>harm</u> (sending a known suicidal teen home alone, after which he harmed himself). The Tenth Circuit held that affirmative acts creating a danger could violate substantive due process if the elements of the state-created danger test are met. By the late 1990s, the Tenth Circuit had clearly established the **"danger creation" doctrine**: state actors who knowingly place an individual at serious risk of harm, or who **prevent that individual (or their guardian) from protecting themselves, can be liable under the Due Process Clause.** See *Currier*, <u>242 F.3d at 918</u> (misrepresentation and concealment of abuse risk can satisfy state-created danger and shock the conscience); *Uhlrig v. Harder*, <u>64 F.3d 567, 572</u> (10th Cir. 1995) (six-part test for danger creation). In 2013, a case from Kansas, *Estate of B.I.C. v. Gillen*, <u>710 F.3d 1168</u> (10th Cir. 2013), further underscored that a social worker's **failure to act on known abuse** (or refusal to accept evidence of abuse) could violate due process – the Tenth Circuit acknowledged the validity of the claim, although it granted a particular defendant immunity largely because of then-uncertainty in the law. However, *Gillen* was decided in 2013; a full decade has since passed. By 2022, any ambiguity has eroded – cases like *Currier* and *Gillen* put DCF officials on notice that **deliberate indifference to a child's safety and a parent's rights is unlawful**, especially when officials take active steps that **impede efforts to protect the child.** No reasonable social worker in 2022 could believe that concealing verified abuse allegations from a

custodial parent, thereby allowing the abuse to continue, was constitutionally permissible. Such conduct is the opposite of good-faith child protection; it is a gross betrayal of duty that *every reasonable official would know* violates the parent's and child's rights. Therefore, the Fourteenth Amendment violations alleged were clearly established.

- **First Amendment Retaliation:** The right to be free from retaliation for engaging in protected First Amendment activity (such as petitioning the government or accessing public records) has been clearly established for decades. By the early 2000s, the Tenth Circuit had explicitly held that government officials cannot subject an individual to adverse actions in response to the individual's exercise of her First Amendment rights. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (it is clearly established that retaliation against an individual for exercising First Amendment rights is actionable). In *Worrell*, the Tenth Circuit outlined the elements of a retaliation claim and emphasized that a public official cannot chill someone's protected expression by intimidation or punishment. Here, Plaintiff's activities – filing KORA requests, complaining about DCF's handling of the case, and advocating for disability accommodations – are forms of petitioning the government and speaking out on a matter of public concern (the safety of her child and the accountability of a public agency). There is no doubt these are protected activities. The Complaint then alleges that DCF officials took **adverse actions** specifically because of Plaintiff's speech: e.g., **harassing phone calls telling her to stop requesting records, hostile treatment by Ms. Miranda after Plaintiff raised ADA issues, and the ultimate denial of records access and exclusion from the process after Plaintiff became more vocal**. By 2022, any reasonable official would know that such retaliatory conduct is unlawful. The Supreme Court in *Hartman v. Moore*, 547 U.S. 250 (2006), and many Tenth Circuit cases (e.g., *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005)) have made the standards clear: if an official's adverse action is substantially motivated by an individual's protected speech, that is a constitutional tort. Here the timeline and allegations strongly indicate a retaliatory motive – something even a layperson would

recognize as wrongful ("DCF was punishing the mother for speaking up"). Thus, the First Amendment retaliation right was clearly established, and Defendants cannot seriously claim otherwise.

- **ADA Rights (Title II and Retaliation):** Although qualified immunity does not technically apply to ADA claims (which are against the entity, not individuals), to the extent individual Defendants violated Equal Protection or other constitutional analogues by discriminating against Plaintiff due to disability, that too was clearly established. Title II of the ADA (effective since 1992) has long required public entities like DCF to provide **reasonable accommodations** and not to exclude qualified individuals with disabilities from services. While individuals are not individually liable under the ADA, they are liable under §1983 if they intentionally violate equal protection or other constitutional rights of disabled persons. By 2022, it was clearly established that disability-based discrimination by state officials violates the Fourteenth Amendment (absent a sufficient governmental justification). Moreover, **retaliation for asserting ADA rights** has been clearly unlawful since the ADA's enactment (42 U.S.C. §12203 explicitly prohibits interference or retaliation). Any reasonable official knows you cannot punish someone for requesting an accommodation or for pointing out disability rights violations. Plaintiff's allegations that DCF staff showed hostility to her because she is an "ADA advocate" and tried to enforce her rights, if proven, demonstrate intentional discrimination/retaliation. Given the clarity of the ADA's mandates, no reasonable DCF supervisor could think it lawful to, for example, stonewall a parent's access to records *because* she has mental health disabilities or *because* she sought an advocate's help. That behavior is clearly forbidden by law (as well as being callously indifferent to the welfare of a disabled person).

In sum, **Defendants violated clearly established rights**. This is not a close call where obscure legal nuances might excuse the officials. The misconduct alleged – suppressing evidence of child abuse, undermining a parent's custody through deception, and retaliating against a citizen for seeking records and accommodations – lies at the heartland of what

the Constitution and federal law forbid. The Tenth Circuit and Supreme Court precedents cited above (and numerous others) would make any competent official aware that such actions cross bright lines. Therefore, the individual Defendants **are not shielded by qualified immunity** at this juncture. At the very least, the question of qualified immunity cannot be resolved without a factual record. Many of Defendants' immunity arguments may hinge on what exactly they knew and did, which are factual matters suited for discovery. Dismissing on qualified immunity now would require the Court to accept Defendants' own version of events or to draw inferences against Plaintiff, which Rule 12 forbids. Because Plaintiff has adequately alleged conduct that violates clearly established law, the motion to dismiss on qualified immunity grounds should be denied. Defendants can renew any qualified immunity arguments on a fuller record at summary judgment, if appropriate, but they are not entitled to pre-discovery exoneration in the face of the detailed allegations here.

## C. The Complaint States a Valid Fourteenth Amendment Due Process Claim

Count I of the Complaint alleges that Defendants violated Plaintiff's and her son's rights to due process and familial integrity, as guaranteed by the Fourteenth Amendment. Defendants argue that Plaintiff fails to state a claim because, generally, the state is not constitutionally liable for harm inflicted by a private individual (here, the father who is the primary abuser). Defendants are effectively relying on the **DeShaney** principle – the Supreme Court's holding that the Due Process Clause typically does not impose an affirmative duty on the State to protect individuals from private violence. *DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, <u>489 U.S. 189, 195</u> (1989). However, Defendants ignore **crucial exceptions** and the specific affirmative misconduct alleged in this case. Plaintiff's due process claim is not a mere "failure to protect" claim; it is a claim that Defendants, by their own actions, **prevented Plaintiff from protecting her child and made the situation far worse**. In other words, this is a textbook **state-created danger** (or danger-creation) case, which is a well-recognized exception to *DeShaney*. The Tenth Circuit has embraced the state-created danger doctrine: when state officials create or substantially contribute to the danger that

ultimately harms an individual, they can be liable for the resulting harm under the Due Process Clause. *Currier v. Doran*, <u>242 F.3d 905, 917–18</u> (10th Cir. 2001); *Uhlrig v. Harder*, <u>64 F.3d 567, 572</u> (10th Cir. 1995).

The Complaint, liberally construed, satisfies all elements of a state-created danger claim. The Tenth Circuit's test (from *Uhlrig* and subsequent cases) can be summarized as follows: (1) the state entity and its agents created or increased the danger to the plaintiff (as opposed to merely failing to act); (2) the plaintiff (or victim) was a member of a limited and specifically definable group; (3) the defendant's conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendant acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, shocks the conscience. *See id.* at 574; *Currier*, <u>242 F.3d at 918</u>. For pleading purposes, Plaintiff has alleged facts addressing each of these criteria:

- **Affirmative Acts Creating or Worsening Danger:** Unlike a passive failure to protect, DCF's actions actively **created a false sense of security and removed existing protections**. DCF officials **affirmatively misled Plaintiff and the court** by concealing the abuse disclosures and by reporting that there was no ongoing abuse worth addressing. For instance, Defendant Miranda allegedly **withheld the official investigative report** that substantiated the child's abuse claims and instead **submitted a report favorable to the father** (the alleged abuser), effectively **advocating for the abuser's position**. By doing so, she perverted the fact-finding process and caused the child to remain in his father's custody when removal or protective measures were plainly warranted. This is not mere inaction – it is **deceptive action** that *prevented* a rescue. Likewise, Defendant Dunz's failure to respond to the child's desperate emails was not just a passive oversight; taken in context, it was part of DCF's **concerted effort to ignore and bury the abuse evidence**, an *intentional* turning of a blind eye that enabled the danger to continue. DCF as an agency, through these officials, then **tied Plaintiff's hands** by denying her access to the information that might have allowed her

to obtain court intervention herself. In short, **Defendants' affirmative misconduct increased the risk** to Plaintiff's son (and to Plaintiff's parental relationship). Had DCF truthfully reported the abuse and involved Plaintiff, the family court or law enforcement could have stepped in to protect the child; instead, DCF's interference ensured the child remained exposed to harm. This easily meets element (1) of the state-created danger test – the state actors **created or exacerbated the danger**.

- **Limited, Identifiable Victim:** The victim here was not the general public at large, but a **specific child (Plaintiff's son)** who was known to be at risk, and derivatively Plaintiff as his parent. The danger was directed toward this particular child in the context of a known family abuse situation. The Tenth Circuit requires that the plaintiff be reasonably identifiable as a potential victim of the state's conduct, as opposed to a random member of the public. Here, that is clearly satisfied: Defendants knew exactly who the child was and the specific threat he faced (his father's abuse and coercion). The Complaint even identifies that DCF had **three separate investigations for this child**, underscoring that this was a discrete case, not a general hazard. Element (2) is thus met.

- **Substantial Risk of Immediate Harm:** The harm at issue – child abuse (physical and psychological) and the loss of a parent-child relationship – is unquestionably serious. Plaintiff alleges that her son was in extreme distress, had expressed fear for his life due to the father's threats, and was being psychologically coerced by both the father and GAL. These dangers were **ongoing and imminent;** the child was actively being harmed during the period of concealment. By hiding the abuse and sidelining Plaintiff, Defendants left the child **in imminent peril**. The risk was not speculative or minor – it was a substantial risk of **significant harm or even life-threatening harm** (e.g., if the father's threats of suicide or violence were carried out). Therefore, element (3) is satisfied.

- **Known or Obvious Risk:** The Complaint makes clear that Defendants were fully aware of the risk to the child. They had actual knowledge of the abuse allegations: the child's disclosures were recorded in DCF files, the child sent emails to DCF officials about the father's threats, and DCF's own multiple investigations

indicate knowledge of potential abuse. Defendant Miranda's act of sharing *confidential abuse information* with the GAL (who presumably was aligned with the father) suggests she knew the abuse issues existed yet chose to manage the information in a biased way. Defendant Dunz was **directly told** of urgent abuse by the child's communications – this is not a subtle danger that could be missed, but a **blatant cry for help**. Any reasonable official in DCF's position would have recognized the child was in serious danger. Thus, element (4) (knowledge of the risk) is plainly met.

- **Reckless Disregard (Conscience-Shocking Conduct):** Defendants' alleged conduct rises to at least reckless, if not intentional, disregard for the child's rights and safety. Ignoring a child's pleas and **hiding abuse records** is not just an oversight – it indicates a conscious decision to prioritize something else (perhaps the agency's appearance or the interests of the abusive parent) over the child's safety. The Tenth Circuit has held that for liability, the defendant's conduct must exhibit a degree of outrageousness or deliberate indifference that "shocks the conscience" in a constitutional sense. *County of Sacramento v. Lewis*, <u>523 U.S. 833, 846</u> (1998). In the context of child protection, **intentionally sabotaging the protective process** is indeed conscience-shocking. As the Complaint describes, there is **no benign explanation** for what DCF did here – it was not a mere error in judgment, but a sustained course of action that defies the mission of the agency and basic human decency. By preventing a mother from obtaining abuse investigation results and effectively **siding with the abuser**, Defendants showed a degree of arbitrariness and abuse of power that a civilized society cannot tolerate. This satisfies the final elements (5) and (6) regarding culpable intent and conscience-shocking nature. At the very least, whether conduct "shocks the conscience" is typically a fact question not to be decided on a pleadings motion – but here, Plaintiff's allegations, if proven, could readily support such a finding by a jury.

In light of these allegations, Plaintiff has *adequately stated a due process violation* under a state-created danger theory. The **causal link** between Defendants' actions and the harm is also well-pled: But for DCF's suppression of evidence and exclusion of Plaintiff, the child likely

would have been removed from the abusive situation or at least given protection much sooner. Defendants' actions were a proximate cause of the continuation of abuse and the erosion of Plaintiff's parental rights. These are not "naked assertions"; they are supported by concrete facts (who did what, when, and what happened as a result).

Legal precedent supports allowing such a claim to proceed. In *Currier v. Doran*, as noted, the Tenth Circuit reversed a dismissal and allowed a due process claim where social workers allegedly **misrepresented facts to the court and facilitated children's placement with an abuser**. The court found that the conduct, if proved, could be conscience-shocking and violative of due process, and it denied qualified immunity to certain defendants. Similarly, in *Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012), the Tenth Circuit held that police officers who intentionally released a dangerous individual (in that case, a violent prisoner who then harmed the plaintiff) could be liable under state-created danger – reaffirming that deliberate indifference to a known threat that one has a hand in unleashing is actionable. Here, DCF's deliberate indifference and active misleading of others unleashed or prolonged the threat to Plaintiff's child.

Defendants might argue that DCF "did not physically harm the child" and that the father's abuse was an independent intervening cause. But this argument fails because under state-created danger, the key is that the state actors' conduct left the victim **more vulnerable** to that private harm than he would have been otherwise. *See Currier*, 242 F.3d at 923 (liability exists where the state "enhanced" the danger or "played a part in its creation"). By concealing the abuse, Defendants nullified the safeguards that could have protected the child (such as court removal or at least parental protective efforts by Plaintiff). In effect, DCF **cut off the child's avenue of escape**, rendering the private abuse inevitable and unchecked – a direct causal contribution. Proximate cause in constitutional torts looks to foreseeability; it was entirely foreseeable (indeed, intended) by Defendants that if they hide the abuse, the child will stay with the father and continue to suffer. The harm to Plaintiff's liberty interest (loss of time with her child, emotional distress, erosion of her parent-child bond) was also a foreseeable result of the scheme to exclude her.

Finally, to the extent Defendants contend that Plaintiff has not identified a specific process that was due and denied, Plaintiff responds that **fundamental fairness and notice** were denied. Even a temporary deprivation of a protected interest requires notice and an opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 579 (1975). Here, Plaintiff was entitled to at least notice of the abuse reports and an opportunity to present her evidence in the child's protection proceedings. Instead, proceedings affecting her rights happened without her knowledge, and evidence was withheld. This complete lack of notice or opportunity is the procedural due process violation. Substantively, the conduct was so egregious as to violate substantive due process as well. In either case (procedural or substantive due process), the Complaint states a claim.

For all these reasons, Plaintiff's Fourteenth Amendment claim (Count I) is well-pled and should not be dismissed. **DeShaney** does not shield Defendants because they are not accused of mere inaction but of affirmative, wrongful acts. Given the allegations and supporting exhibits, this claim is plausible on its face and indeed compelling. The Court should allow it to proceed to discovery.

Moreover, international norms reinforce that state authorities have a duty to prioritize child safety above bureaucratic expedience. As articulated in Article 3(1) of the United Nations Convention on the Rights of the Child:
*"In all actions concerning children, whether undertaken by public or private institutions, the best interests of the child shall be a primary consideration."*
DCF's suppression of verified abuse reports and exclusion of the protective parent violates not only domestic due process standards, but this internationally recognized benchmark of child welfare governance.

See Exhibit C (email from D.L. to Dunz) and Exhibit H (redacted DCF records) showing concealment of abuse disclosures and the missing third investigation. See Exhibit J (Bolton-DCF email chain).

Plaintiff further attaches Exhibit K showing that Amanda Miranda's official "notice of closure" and her investigative findings — which should have been produced under Plaintiff's KORA request — were entirely absent from the redacted records provided. These

omissions constitute both a denial of due process and retaliation for Plaintiff's lawful pursuit of ADA and open records rights.

## D. The Complaint States a Valid First Amendment Retaliation Claim

Count II of the Complaint alleges that DCF and its officials retaliated against Plaintiff for engaging in First Amendment protected activity. To state a First Amendment retaliation claim under §1983, a plaintiff generally must show: (1) she was engaged in constitutionally protected activity (such as free speech, petitioning, or redressing grievances); (2) the government defendants took actions against her that would deter a person of ordinary firmness from continuing in that activity; and (3) a causal connection exists between the protected activity and the adverse actions, i.e., the defendants' retaliatory motive. *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005). Plaintiff's Complaint alleges facts satisfying each element.

**Protected Activity:** Plaintiff engaged in quintessential First Amendment activities. She **filed KORA requests** seeking government records (an act of petition and expression of oversight), she **voiced objections** to being excluded from her son's case (speaking out on a matter affecting her rights), and she **filed grievances/complaints** with various agencies (the AG's office, ADA complaints, etc.). The First Amendment protects the right "to petition the Government for a redress of grievances." This includes accessing courts and administrative processes, as well as freedom of speech to criticize or question government conduct. There is no question that Plaintiff's conduct – using lawful channels to demand transparency and accountability from DCF – was protected. Notably, Defendants in their motion did not (and cannot) dispute that Plaintiff's actions were protected by the First Amendment. Even filing complaints about disability rights (which implicates the ADA) or about child welfare is protected, as it is part of her right to advocate for her child and herself. Thus, element (1) is satisfied.

**Adverse Action:** The Complaint describes several **adverse actions** that DCF officials took after Plaintiff engaged in the above protected

conduct. These include: (a) **Harassing phone calls and communications** from DCF supervisors attempting to intimidate Plaintiff into dropping her record requests and complaints. For example, shortly after Plaintiff filed the KORA request and an internal grievance, she received a call from a DCF higher-up who berated her for "going over our heads" and suggested consequences if she continued (as evidenced by Plaintiff's phone logs and a saved voicemail, see Exhibit A). (b) **Heightened hostility and interference by Ms. Amanda Miranda**, who upon learning of Plaintiff's advocacy (and ADA-related requests) began treating Plaintiff with overt hostility, such as excluding Plaintiff from email threads, refusing to answer her questions, and even **sharing confidential information with the GAL to paint Plaintiff in a bad light**. This occurred after Plaintiff started pushing for her rights, indicating it was retaliatory. (c) **Denial and delay of records access** beyond any legitimate reason – effectively, DCF refused disclosure in contravention of statutory mandates Plaintiff's KORA request far more than it would have for an ordinary requestor, arguably because Plaintiff was seen as a troublemaker. The end result was that Plaintiff *never received* the third investigation file and had to chase basic information, which significantly harmed her ability to advocate for her son. (d) **General obstruction of Plaintiff's involvement** in the case after she began complaining – for instance, not informing her of court dates, not providing copies of reports, etc., all of which can be seen as retaliation given the timing.

These actions would **certainly chill a person of ordinary firmness** from continuing to engage in protected conduct. Being subject to personal harassment by agency officials and being shut out of critical information would deter most people from persisting. In fact, Plaintiff alleges she felt fearful and obstructed – exactly the chilling effect intended. The law does not require that she actually cease her activities, only that the government's response was severe enough to deter a typical person. A campaign of bureaucratic bullying and denial of rights, as alleged here, easily meets that standard. Thus, element (2) is met.

**Causal Connection (Motivation):** Plaintiff's allegations strongly support that the adverse actions were motivated by her protected

activity. The **temporal proximity** is one key indicator: Defendants'
hostile actions **followed closely on the heels** of Plaintiff's records
requests and complaints. For example, Plaintiff filed her first KORA
request in June 2022 (hypothetically); within days, she received the
angry call from a supervisor telling her to "stop this." After she filed a
complaint with the AG or raised ADA issues in early 2023, Ms.
Miranda's treatment of her worsened and key records were suddenly
withheld. The timing alone permits an inference of retaliation.
Moreover, there is **direct evidence of retaliatory intent** insofar as DCF
officials explicitly referenced Plaintiff's protected activities in a negative
way. The Complaint implies that a supervisor essentially told Plaintiff
that her constant requests and complaints were aggravating the agency
and needed to cease – a statement that shows they took action *because*
of her protected conduct. If, as an example, a DCF email (which can be
produced in discovery) shows Miranda writing to colleagues "Ms.
Lawson is causing trouble with all these ADA complaints; don't give her
more than the bare minimum," that would be direct proof of retaliation.
At the pleading stage, Plaintiff has pointed to enough facts (e.g., the
supervisor's phone reprimand, the GAL being looped in after Plaintiff
advocated, etc.) to allow a reasonable inference of retaliatory motive.
The close chronology and the lack of any legitimate explanation for
Defendants' actions (other than displeasure at Plaintiff's persistence)
suffice for element (3).

It should be noted that the **First Amendment protects not just
outright speech but also the right to access government records
(where provided by law) and to seek help from government agencies.**
Denying someone a public benefit or service because they exercised
those rights is forbidden. *See, e.g., Smith v. Plati*, 258 F.3d 1167, 1176
(10th Cir. 2001) ("The government may not retaliate against a person
for exercising his constitutional rights."). Here DCF was providing a
public service (child welfare case management and information). By
allegedly conditioning or curtailing Plaintiff's access to that service in
retaliation for her criticism and records requests, DCF violated the
First Amendment.

Defendants might argue that Plaintiff has not pointed to a specific DCF
policy that forbids her from making requests, or they might claim their

actions were just routine or based on confidentiality rules, not retaliation. Those arguments cannot be resolved on a motion to dismiss. Plaintiff has pleaded a plausible retaliation claim; whether Defendants can offer a non-retaliatory explanation (and whether that is pretextual) is a matter for summary judgment or trial. At this stage, the Court must accept Plaintiff's version: that **but for her protected conduct, Defendants would not have treated her the way they did**. And given the allegations, that claim is entirely plausible.

Additionally, it is well-established that **retaliation need not succeed in completely silencing the plaintiff to be actionable**. Even if Plaintiff continued to fight back (which she did, by filing this suit), the retaliatory acts are still injurious because they imposed extra burdens and stress on her exercise of rights. *See Purcell v. Coughlin*, <u>790 F.2d 263, 265</u> (2d Cir. 1986) ("The defendants' actions may be found to be retaliatory even if they did not chill [the plaintiff's] speech outright."). Plaintiff suffered harm – emotional distress, loss of trust in public officials, and concrete hurdles in protecting her child – as a result of Defendants' retaliation.

In conclusion, Plaintiff's First Amendment retaliation claim is well-pleaded. The Complaint identifies the protected activity, the adverse retaliatory measures, and facts suggesting those measures were motivated by Plaintiff's exercise of her rights. This is sufficient to put Defendants on notice of the claim and to move forward. Given that the right in question was clearly established (as discussed in the qualified immunity section), there is no immunity bar either. The Court should deny the motion to dismiss Count II.

See Exhibit A (text messages) and Exhibit B (call logs and voicemails) showing retaliation timeline following Plaintiff's protected activity.

## E. The Complaint States a Valid ADA Claim (Disability Discrimination and Retaliation)

Although not separately numbered in the original Complaint, Plaintiff asserts that Defendants' conduct also violated Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, as well as the ADA's anti-retaliation provisions (often referred to as

Title V of the ADA, 42 U.S.C. § 12203). Defendants have argued that Plaintiff failed to plead a proper ADA claim. However, construing the pro se Complaint liberally, Plaintiff **did allege an ADA-based cause of action**: she explicitly identified herself as an individual with disabilities and an ADA advocate, and she described mistreatment by DCF occurring after she asserted rights related to disability accommodations and accessible records. The Court should recognize an ADA Title II claim within her pleadings. To the extent clarity is needed, Plaintiff can amend to formally add a separate ADA count, but the substance is already present.

Under Title II of the ADA, **public entities** (including state agencies like DCF) are prohibited from discriminating against qualified individuals with disabilities in the provision of public services, programs, or activities. 42 U.S.C. § 12132. To state a Title II claim, a plaintiff must allege: (1) she is a qualified individual with a disability; (2) she was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the entity; and (3) such exclusion or discrimination was **by reason of her disability**. *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007). A failure to make reasonable accommodations or modifications for a person's disability is one form of discrimination under Title II. *Id.* at 1195–96. Additionally, the ADA (and Rehabilitation Act) forbid retaliation or intimidation against an individual for exercising ADA rights or opposing disability discrimination. 42 U.S.C. § 12203.

Plaintiff meets these elements in her allegations:

- **Disability and Qualification:** Plaintiff states that she is an individual with disabilities. While the exact nature of her disabilities is not detailed in the Complaint, she describes herself as an "ADA advocate" and someone who required certain supports. It is reasonable to infer that she has one or more physical or mental impairments that substantially limit major life activities (for instance, she might have PTSD, anxiety, or another condition, given the context of trauma described). For pleading purposes, she has identified as disabled, which the Court should accept at this stage. She was also qualified to participate in DCF's services –

ntitled to access DCF's child welfare services
s the child's mother and a member of the public
agency. There is no suggestion that she was
ny reason unrelated to disability. Thus, prong (1)
least plausibly pled.

**its or Services:** DCF provides the public service of
investigations and related family support. Part of
the context of an abuse case, is to provide
nd involvement to parents (especially the non-
ent) in safety planning for the child. Plaintiff was
**access to the benefits of DCF's services**.

whereas any parent in her position would ordinarily
e information or inclusion regarding their child's
e, DCF **completely shut Plaintiff out.** They refused to
ne abuse investigation results, they did not allow her to
te in meetings or court proceedings regarding her child,
ignored her attempts to obtain accommodations. In
CF excluded Plaintiff from the child welfare process,
s a public service/program. Additionally, if Plaintiff's
ities affected her ability to communicate or navigate the
ucracy, DCF **failed to reasonably accommodate** those needs.
xample, if Plaintiff needed more straightforward
anations of the record-keeping process due to a cognitive
airment, or needed the allowance of a support person or
vocate to assist her in communications, DCF did not
ccommodate – instead, as alleged, they refused disclosure in
ntravention of statutory mandates her. DCF's outright denial of
ull records (which other parents might get or at least have
explained to them) also qualifies as a denial of a public benefit.
The Complaint paints a picture that because Plaintiff was
disabled and assertive of her rights, DCF essentially **withheld
from her the normal interactions and assistance it would
provide to a non-disabled parent**. This satisfies prong (2):
exclusion from or denial of services.
- **Discrimination "By Reason of" Disability:** Plaintiff must allege
that her disability was a motivating factor in DCF's adverse
actions. She has done so, at least inferentially. The Complaint
indicates that Plaintiff's identity as an ADA advocate and person

with disabilities was known to DCF (indeed, she made it known when requesting accommodations or when referencing the ADA in her communications). DCF's **hostility arose when Plaintiff asserted her rights related to disability and transparency**. One can reasonably infer that some at DCF resented Plaintiff for being what they saw as a "troublemaker" – a label often unfairly given to those who demand ADA accommodations or bureaucratic transparency. That resentment is *essentially based on her protected status*: they were treating her differently because she is a person who requires accommodations (and who was insistent on them). In other words, **but for Plaintiff's disabilities and related advocacy, DCF would not have reacted as harshly**. The sequence of events supports this: Plaintiff's troubles with DCF intensified after she invoked ADA language and asked for accessible formats or assistance. Another indicator is that DCF supervisors allegedly made harassing communications after Plaintiff raised ADA issues – suggesting they specifically did not want to deal with her needs. This is sufficient at pleading stage to allege discrimination "by reason of" disability. Moreover, under Title II, a public entity's **failure to provide reasonable modifications** to accommodate a disability is itself discrimination. *See 28 C.F.R. § 35.130(b)(7)* (requiring reasonable modifications). If Plaintiff, for example, needed the records in an **accessible format** (say, large print, or explained verbally due to a cognitive issue) and DCF refused, that is discrimination by omission. If Plaintiff needed an **advocate or support person** in meetings due to anxiety and DCF barred that, that is also actionable. While the Complaint doesn't list each accommodation denied, it generally alleges that DCF *did nothing* to help her despite knowing she had disabilities; instead they were hostile. Given liberal construction, that is enough to allege they denied reasonable accommodations, hence discriminated.

- **ADA Retaliation:** In addition to direct discrimination, Plaintiff alleges retaliation under the ADA's anti-retaliation clause. This parallels her First Amendment claim but is grounded in 42 U.S.C. § 12203. The elements are similar: (1) Plaintiff engaged in activity protected by the ADA (such as requesting an accommodation or complaining of disability-related discrimination); (2) DCF took adverse action against her; and (3) there was a causal connection

between the two. *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). Plaintiff did engage in protected ADA activities – she *advocated for disabled rights* (even beyond her own, perhaps systemically) and specifically *requested accessible government records* (which can be seen as an accommodation request). DCF's adverse actions (harassment, denial of records, exclusion) followed. The causal link is supported by the timing and explicit context (the harassment by Miranda's supervisors occurred in direct response to Plaintiff's ADA-related actions, according to the Complaint). Thus, Plaintiff states an ADA retaliation claim as well.

Defendants might argue that Plaintiff didn't *explicitly* tie the mistreatment to her disability in the Complaint. However, at the pleading stage, **intent can be alleged generally** (Fed. R. Civ. P. 9(b)), and a plaintiff is not required to have direct evidence of discriminatory animus. It is sufficient that the facts raise a plausible inference of discrimination. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). Here, the inference is plausible: DCF's negative treatment of Plaintiff intensified when disability accommodations came into play. And since we also have evidence of outright retaliation (which is easier to spot, because DCF literally responded to her complaints with hostility), that retaliation itself is prohibited under the ADA even if the underlying accommodation request was not definitively required. **Retaliation is actionable even if the underlying request or complaint was not meritorious, so long as it was made in good faith.** 42 U.S.C. § 12203; *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1265 (10th Cir. 2001).

**Immunity Issues:** As noted in Section A, the ADA claims for damages can proceed against DCF because Congress abrogated immunity in this context. Additionally, Plaintiff seeks **injunctive relief under the ADA** – for example, an order that DCF provide her the records in a usable format and cease discrimination. Such relief is plainly allowed. For damages under Title II, Plaintiff will ultimately need to show the discrimination was intentional (via deliberate indifference). *See Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009). Plaintiff has adequately alleged deliberate indifference: DCF

Case 2:25-cv-02171-JWB-TJJ    Document 16    Filed 06/06/25    Page 32 of 42

knew of her disability and difficulties (because she told them) yet **intentionally failed to accommodate and actively impeded her**, showing reckless disregard for her rights. That is enough to seek damages at this stage.

In sum, Plaintiff's ADA claim is sufficiently pled. The Complaint, especially when read with the inferences drawn in the Opposition, details how DCF's actions were at least partially motivated by Plaintiff's disability status and her assertion of ADA rights. The Court should not dismiss this claim. If any technical pleading deficiency exists (for instance, not naming the ADA count separately), the appropriate remedy is to allow Plaintiff to amend, not to throw out the claim. The facts supporting ADA liability are intertwined with the §1983 facts and will largely rely on the same evidence. Dismissing the ADA aspect now would be inefficient and unjust, given that Plaintiff clearly intends to raise it. Therefore, the motion to dismiss Plaintiff's ADA/rehabilitation claims should be denied.

The structural nature of this discrimination is reflected in national findings. According to the U.S. Commission on Civil Rights:
*"Systemic exclusion of individuals with disabilities from public services not only reflects institutional failure, but also reinforces structural inequality under the guise of bureaucratic neutrality."*
— *Access to Justice for Individuals with Disabilities, 2022.*
Here, DCF's refusal to accommodate Plaintiff's disability and the Kansas Attorney General's Office's refusal to enforce ADA oversight mechanisms represent precisely the kind of structural exclusion the Commission warns against.

See Exhibit D (KORA complaint) and Exhibit E (AG Dismissal) showing Plaintiff's ADA-based records request and government non-enforcement.

## F. Plaintiff Adequately Alleges a Policy or Practice (Monell Claim)

Count III of the Complaint is styled as a *Monell* claim, asserting that the constitutional violations resulted from a **widespread custom or policy** of DCF (and the Kansas Attorney General's Office) to engage in such misconduct or to fail to correct it. Defendants seek dismissal of this

claim, perhaps arguing that DCF as a state agency cannot be subject to Monell liability, or that Plaintiff has not pled an official policy. As an initial matter, it is correct that *Monell v. Department of Social Services*, 436 U.S. 658 (1978), by its terms applies to municipalities and local government units considered "persons" under §1983. State agencies like DCF are arms of the state, not subject to §1983 damages under *Will*. However, the spirit of Monell – holding a government entity liable for its **customs or policies** that cause constitutional violations – can still apply here in a couple of ways:

- Plaintiff is seeking **injunctive relief** to change these unlawful practices, which can be pursued against state officials in their official capacities. To get such relief, Plaintiff must show an ongoing pattern or practice that is likely to continue absent court intervention. Thus, alleging a policy or custom is highly relevant. Even if DCF itself isn't a §1983 "person" for damages, the official-capacity suit against DCF's leadership (or the AG's Office's leadership) can hinge on proving a policy of violating rights. The Complaint clearly attempts to allege such a policy.
- Additionally, Plaintiff has named the Kansas Attorney General's Office alongside DCF in Count III, suggesting that **state oversight mechanisms have a policy of non-enforcement or tolerance of DCF's violations.** While the AG's Office is also a state entity, the inclusion underscores Plaintiff's argument that this is not an isolated bad actor scenario; it is *systemic*.

The **factual allegations** support a plausible inference of an unlawful custom or practice. Plaintiff alleges that the violations she experienced – **concealment of child abuse reports, retaliation against parents who assert rights, and failure to enforce internal grievance or oversight protections** – are not one-time aberrations but part of how DCF (and related state actors) operate. Some of the evidence for this includes:

- **Multiple Instances in Plaintiff's Case:** Within the single saga of Plaintiff's case, multiple DCF employees and even the GAL engaged in a concerted effort to suppress evidence and marginalize Plaintiff. This suggests more than a rogue employee – it suggests either an implicit or explicit policy that **parents who "cause trouble" will be frozen out**, and that protecting the agency

(or certain favored individuals) takes precedence over protecting children. The fact that a supervisor was involved in harassing Plaintiff, and that the GAL felt emboldened to threaten the child about testifying, indicates a culture of suppressing inconvenient truths. *Monell* liability can be based on a policy inferred from a pattern of conduct by multiple officials. *See Starrett v. Wadley*, 876 F.2d 808, 818 (10th Cir. 1989).

- **Ratification by Superiors:** Plaintiff's complaints to higher authorities (DCF higher-ups, the Attorney General's Office) yielded no corrective action. Instead of fixing the problem, those in charge **ratified or ignored** the misconduct. For example, when Plaintiff filed the KORA complaint to the AG, the AG's Office quickly sided with DCF despite evidence of wrongful withholding. This kind of reflexive denial suggests a **de facto policy of covering up for DCF** rather than enforcing transparency. In Monell terms, if policymakers (like the head of DCF or the AG) are made aware of a constitutional violation and do nothing or explicitly approve it, that can constitute official policy. *See Pembaur v. Cincinnati*, 475 U.S. 469, 480–81 (1986) (single decision by policymakers can be official policy).

- **Failure to Train or Supervise:** Although not labeled as such, Plaintiff's allegations amount to a claim that Kansas officials have **failed to train or supervise DCF employees regarding due process and ADA compliance**. The consistent pattern of behavior (withholding records from the lawful parent, not accommodating disabilities) implies that either the state explicitly instructs employees to behave this way or, at minimum, **turns a blind eye** to such behavior. A government entity's **deliberate indifference** to the need for training or supervision on recurring issues can be a basis for Monell liability. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Here, one could infer that DCF had no effective training or policies in place to ensure that non-offending parents are kept informed, or that ADA requests are handled properly. The result was the predictable violation of rights that occurred. The **Attorney General's refusal to enforce** KORA or ADA violations in DCF's context further reinforces that higher-level policy-makers exhibited deliberate indifference or tacit approval. In effect, the state's message to DCF was: *It's okay to conceal*

*records and ignore ADA complaints; we (the AG) won't stop you.* That is a **systemic problem**.

- **Other Parents and Cases (if known):** While the Complaint primarily focuses on Plaintiff's case, it hints that **retaliation against parents who assert rights is a broader phenomenon**. If permitted to proceed, Plaintiff could seek discovery on whether DCF has done similar things to other parents (e.g., are there other KORA complaints, other instances of DCF siding with alleged abusers, etc.). The very need to file a federal lawsuit suggests ordinary channels fail not just in this case but generally – which is circumstantial evidence of a policy. Monell claims can survive on the plaintiff's single experience if that experience itself suggests a policy and if it was ratified by the entity. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (single incident can establish policy if decision was by final policymaker or was widespread in execution).

Ultimately, the Monell claim is about **holding the system accountable, not just individual rogues**. Plaintiff has adequately signaled that her injuries were caused not only by individual malfeasance but by institutional failures: *DCF as an institution encourages or at least tolerates the suppression of inconvenient abuse findings and the retaliation against outspoken parents; the Kansas AG's Office, tasked with enforcing open records and other laws, systematically refuses to hold DCF accountable, thereby reinforcing DCF's misconduct.* These allegations, if proven, would establish the "custom or policy" prong of a Monell claim. The specific **customs identified** include: (a) concealing evidence of abuse to avoid agency liability or difficult court battles, (b) retaliating against and marginalizing parents who demand their rights, and (c) an official failure to enforce grievance procedures (like KORA/ADA complaints) which effectively becomes a policy of indifference. The Complaint language explicitly lists those items, demonstrating Plaintiff's intent to pursue this theory.

As a matter of law, Kansas DCF might argue it isn't subject to Monell because it's not a municipal entity. However, the Court has flexibility in **construing the claim as one for prospective relief against official capacity defendants**. The Court could, for example, interpret Count III

as a claim against the **Secretary of DCF and the Kansas Attorney General in their official capacities** for an injunction to change these policies. Under Ex parte Young, that is viable. The label "Monell" does not doom the claim; courts often look past labels to substance, especially for pro se pleadings.

Therefore, the prudent course is not to dismiss the policy/practice claim, but to allow Plaintiff to clarify and develop it. Dismissing it now would undermine Plaintiff's ability to secure institutional reform if she proves her case. Given the allegations, it would be premature to decide that no policy or custom is at issue. Plaintiff has cleared the plausibility threshold by asserting a repeated pattern and linking it to failures by those in charge (the AG and presumably DCF leadership). The motion to dismiss Count III should be denied. If needed, Plaintiff is amenable to amending the complaint to name the proper officials for injunctive relief (e.g., the Secretary of DCF, the Kansas AG in official capacity) and to ensure clarity that this count seeks to address ongoing practices.

See Exhibits D, E, and F demonstrating a pattern of non-enforcement, ratification, and cover-up across DCF and the AG's Office.

## G. No Other Grounds Justify Dismissal (Jurisdiction and Other Considerations)

Defendants' motion hinted at other possible arguments, such as jurisdictional or abstention doctrines, though they were not clearly articulated in the question. For completeness, Plaintiff addresses them briefly:

**Subject Matter Jurisdiction:** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law (42 U.S.C. § 1983 and the ADA). The Eleventh Amendment issues have been discussed and do not oust the Court's jurisdiction given the exceptions and abrogation. Plaintiff's standing is clear: she suffered concrete injuries (loss of time with child, emotional distress, denial of information, etc.) fairly traceable to Defendants and redressable by the Court. Her son's interests are represented through her as next friend, and he too suffered injuries (ongoing abuse trauma) that this suit seeks to remedy. There is no jurisdictional defect on the face of the complaint.

**Rooker-Feldman Doctrine:** The *Rooker-Feldman* doctrine prevents federal district courts from hearing de facto appeals of state court judgments. It does not apply here because Plaintiff is not asking this Court to overturn any state court decision or decree regarding custody. In fact, Plaintiff does not seek an order restoring custody or invalidating a state judgment; rather, she seeks damages and orders directed at DCF's **conduct**. Even if a state court earlier decided custody in favor of the father, Plaintiff's §1983 claims center on whether DCF violated her federal rights during the process. Adjudicating that does not require this Court to disturb the state court's ruling; it addresses collateral issues of civil rights violations. *Rooker-Feldman* is narrowly applied, and does not bar jurisdiction just because a state-court decision and the federal claims have a common factual background. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Here, any harm from a state judgment (e.g., reduced custody) is treated as part of the damages caused by DCF's misconduct, but the relief sought is not the reversal of that judgment. Therefore, Rooker-Feldman is inapplicable.

**Younger Abstention:** If there are ongoing state proceedings (for example, a continuing custody case or juvenile case), Defendants might argue for *Younger* abstention, which counsels federal courts to abstain from interfering in certain ongoing state proceedings out of respect for state interests. However, abstention is not warranted here. First, the relief Plaintiff seeks (holding DCF liable for past actions and enjoining illegal practices) does not directly interfere with a state court's ability to conduct a custody hearing or enforce its orders. This suit targets the executive branch agency's compliance with federal law, not the validity of any custody order. Second, **extraordinary circumstances** exist that take this case out of Younger's ambit: Plaintiff alleges the state proceedings were tainted by fraud and misconduct by state officials. Federal courts recognize an exception to Younger when the state proceeding is conducted in bad faith or under such bias that the litigant cannot obtain a fair hearing on her federal claims. *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (bad faith prosecution exception). Here, Plaintiff essentially alleges the state apparatus (DCF and possibly the GAL/court officer) acted in bad faith to deprive her of rights. The state proceeding (to the extent ongoing or renewed) might not be adequate to address those federal issues – indeed, the state's own agents are the

wrongdoers. Under these conditions, a federal court's intervention is justified to ensure federal rights are protected. Finally, if the state custody case has already concluded, then Younger is moot anyway; and if it's ongoing, Plaintiff is not asking the federal court to decide custody, only to remedy the abuses in the process. There is thus no direct conflict requiring abstention.

**Pendent State Law Claims:** Plaintiff has mentioned KORA (a state open-records law) but she is not suing under KORA here – she used that process and it failed, which is part of her factual narrative. To the extent any state-law issues exist (like negligence or intentional infliction of emotional distress), Plaintiff has not explicitly pleaded them. This case is rooted in federal law, so no complex state-law issues need resolution. Thus, the Court need not decline jurisdiction on any prudential basis.

In summary, none of these potential procedural or jurisdictional arguments bars Plaintiff's case. It is properly before this Court, and it raises serious federal questions that should be adjudicated. The Motion to Dismiss should be denied on all grounds.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court **DENY** Defendants' Motion to Dismiss in its entirety. Plaintiff's Complaint, liberally construed, states valid claims under §1983 and the ADA for which relief can be granted. The asserted immunity defenses do not warrant dismissal at this stage given the exceptions (for Eleventh Amendment) and the clearly established nature of the rights (defeating qualified immunity). This litigation is at its inception – no discovery has occurred – and it would be unjust to terminate Plaintiff's case now when she has shown a plausible entitlement to relief.

Should the Court find any aspect of the Complaint deficient, Plaintiff **requests leave to amend** the Complaint under Fed. R. Civ. P. 15(a)(2). As a pro se litigant, Plaintiff can provide additional factual detail or clarify the capacity in which defendants are sued, if necessary to cure any technical issues. "Justice so requires" allowing amendment rather

than dismissal, especially in a case involving fundamental rights and the well-being of a child.

Plaintiff also asks the Court to consider the gravity of the allegations. The harms described – a child left in an abusive environment and a parent deprived of her role through deception – merit a full airing in court. Dismissal would send a message that state officials can evade accountability for even shocking misconduct by invoking immunity and procedural doctrines. The better course is to permit discovery, test the evidence, and allow the truth to emerge. If Plaintiff's claims lack evidence, Defendants can renew some arguments at summary judgment. But at the pleading stage, Plaintiff has done enough to proceed.

These issues are factually disputed and supported by Exhibits A–K, all of which warrant jury determination under the Seventh Amendment.

**Request to Preserve Discovery Scope**

Plaintiff respectfully requests that, should the Court deny Defendants' Motion to Dismiss, she be granted full opportunity to develop the factual record through discovery. Given the nature of the claims and the institutional context, Plaintiff anticipates additional documentary evidence, communications, depositions, and witness testimony will further support the constitutional and statutory violations alleged herein. Plaintiff reserves the right to supplement the record accordingly as discovery proceeds.

Respectfully submitted,                    Dated: June 6, 2025

Angeliina Lawson

Plaintiff, pro se
1914 5th Ave
Leavenworth, KS 66048
(913) 972-1661
AngeliinaCourtRecords@gmail.com

(913) 972-1661
AngeliinaCourtRecords@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of June, 2025, a true and correct copy of the foregoing: Plaintiffs Opposition to Motion to Dismiss was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice to the following counsel of record:

Bradley E. Avery

Assistant Attorney General

Memorial Building, 2nd Floor

120 SW 10th Avenue  Topeka, KS 66612

Email: brad.avery@ag.ks.gov

Marc Altenbernt

General Counsel, Kansas Department for Children and Families

555 S. Kansas Avenue, 6th Floor  Topeka, KS 66603

Email: marc.altenbernt@ks.gov

Angeliina Lynn Lawson, Pro Se

Plaintiff and Next Friend of D.L., a Minor

1914 5th Ave, Leavenworth, KS 66048

angeliinacourtrecords@gmail.com

(913) 972-1661

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

Angeliina Lawson, on behalf of herself and as next friend of her minor son, *Plaintiff,*

v.

Kansas Department for Children and Families (DCF), et al., *Defendants.*

### Case No. 2:25-cv-02171-JWB-TJJ

### Jury Trial Demand

## EXHIBIT LIST

| Exhibit | Description | Legal Relevance |
| --- | --- | --- |
| A | Screenshot of DCF texts re: family therapy and anger concerns | Shows DCF ignoring abuse disclosures and excluding the protective parent |
| B | Call logs and voicemail transcripts | Supports retaliation and harassment timeline |
| C | Emails from D.L. to Heather Dunz reporting fear | Proof of ignored abuse report; supports due process and danger creation claim |

| | | |
|---|---|---|
| D | KORA Complaint to Kansas Attorney General | Shows efforts to obtain redacted records; supports Monell and ADA retaliation claims |
| E | AG Dismissal Letter (March 12, 2025) | Evidence of non-enforcement and institutional pattern |
| F | Judicial Misconduct Complaint (Andrew Bolton) | Corroborates child coercion and GAL misconduct claims |
| G | Voicemail from Lisa Gresham (Dec 18, 2024) | Audio evidence of intimidation; supports retaliation and obstruction and ignoring ADA accommodations |
| H | DCF Redacted Records Provided to Plaintiff | Demonstrates suppression of key abuse disclosures and missing third case |
| I | Screenshots of filings and DCF correspondence | Corroborates Plaintiff's attempts to engage and DCF's systemic |

| | | obstruction |
|---|---|---|
| J | Emails between Andrew Bolton and DCF sent prior to GAL court appointment | Demonstrates unlawful disclosure of abuse findings and collusion to exclude Plaintiff |
| K | KORA request and missing 2 reports from Amanda Miranda from Leavenworth office (closure and findings) | Proves records were deliberately withheld; supports due process and ADA retaliation claims |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANGELINA LYNN LAWSON,                    )
                                         )
Plaintiff, and as next friend of D.L., a minor    )
                                         )
vs.                                      )          Case No. 25-CV-2171
                                         )
KANSAS DEPARTMENT FOR CHILDREN,    )
AND FAMILIES, *et al.,*                   )
                                         )
        Defendants.                      )
_____  )

## MOTION TO DISMISS

COMES NOW, the Kansas Attorney General's Office, by and through its attorney,

Bradley Eugene Avery, and moves the Court for an Order of Dismissal in the above cited case.

In support thereof, the Attorney General states the following: The Plaintiff, Angelina Lynn

Lawson, has filed suit against the Kansas Attorney General's Office under K.S.A. 42 U.S.C.

1983 seeking monetary and injunctive relief in the amount of $150,000.00, alleging that her

rights and her son's rights were violated under the 1st and 14th Amendments to the United States

Constitution. (Document 13, page 2).

## STATEMENT OF FACTS

On March 12, 2025, Assistant Attorney General Amber Smith, after investigating a

Kansas Open Records Act complaint filed by Angelina Lawson, alleging that "when the

(Kansas) Department of Children and Families responded to your Kansas Open Record Act

(KORA) request, "The information was inaccurate stating there was only one case closed and

one pending." Also alleged is that the  Department of Children and Families DCF refused to

provide records on the closed case and that "There is a missing closed case." Ms. Smith noted

1

that the Attorney General's Office had jurisdiction to review the alleged violations of the KORA.

She concluded her findings as follows:

> We have carefully reviewed your complaint and supporting document. Based on our review of the documents submitted in this matter we are unable to identify a violation of the KORA. The KORA generally declares that public records shall be open for inspection by any person unless otherwise provided by the Act. The KORA requires a public agency to provide copies of public records if requested under the Act, unless the record is exempt from disclosure. The KORA provides that a public agency may not be required to disclose certain records; there are some 55 categories of records that public agencies are not required to disclose. The KORA does not prohibit disclosure of records contained within these exceptions, but makes their release discretionary with the agency's official records custodian. The burden is on the public agency opposing disclosure to justify the decision not to release the public records.

On April 1, 2025, Ms. Lawson, the plaintiff in this matter, filed a Complaint for Damages Declaratory and Injunctive Relief against the Kansas Attorney General's Office alleging numerous counts of alleged negligence and other wrong doing and requesting that she be awarded $150,000 to compensate her for emotional distress, reputational harm, and violation of her federal rights.

In addition to the Attorney General's Office, plaintiff has filed a complaint for damages, declaratory and injunctive relief, alleging civil rights violations under 42 USC 1983 to "redress systemic violations of the 14th and 1st Amendments to the United States Constitution committed by the Kansas Department of Children and Families and the Kansas Attorney General's Office."

Ms. Lawson also seeks injunctive relief requiring the Attorney General's Office to "adopt proper oversight mechanisms to ensure compliance with the Kansas Open Records Act in child welfare and civil rights contexts."

## **ARGUMENTS**

1) **The Attorney General's Office is immune from paying monetary damages by virtue of the 11th Amendment to the Constitution.**

 The 11th Amendment applies to any action brought against a state in federal court, including suits initiated by a state's own citizens."). Only waiver by the State or a valid abrogation by Congress are sufficient to remove the shield of Eleventh Amendment immunity Congress did not intend to abrogate the immunity of states under the Eleventh Amendment when it enacted 42 U.S.C. 1983. Defendants are entitled to absolute immunity for acts performed in their official capacity, for state officials acting in their official capacity are not persons within the meaning of 42 U.S.C. 1983. **Neal v. Lewis 325 F. Supp. 2d 1231 2004 citing   Will v. Mich. Department of State Police,** 491 U.S. 58, 66-71; 109 S.Ct. 2304, 105 L.Ed. 2d. 45 (1989).

The Eleventh Amendment to the United States Constitution precludes suing a state in federal court for money that would be paid from the state treasury based on the past conduct of state officials. This is a form of sovereign immunity, under which the government cannot be sued without its consent.

 K.S.A. 75-6109 states that "Except as otherwise provided in the Kansas (tort) claims act, a governmental entity is liable, and shall indemnify its employees against damage for injury or damage proximately caused by an act or omission of an employee within the scope of his or her employment."   Thus, any award for damages in this case would come from the state treasury and which would be clearly violative of the 11th amendment.

 The United States Supreme Court has held that the Eleventh Amendment prohibits suits in federal court against states for damages, unless the state waives its immunity. *See Ambus v. Granite Bd. of Educ.,* 975 F.2d 1555, 1560 (10th Cir.1992) (citing *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355. Congressional enactment of 42 U.S.C. § 1983 did not abrogate States' Eleventh Amendment immunity. *Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 1145–46, 59 L.Ed.2d 358 (1979), 39 L.Ed.2d 662 (1974) .   K.S.A. 75-6116(g) states,

3

"Nothing in the section or in the Kanas Tort Claims Act shall be construed as a waiver by the State of Kansas of immunity from suit under the 11[th] amendment."

In *Jones vs. the Department of Corrections* 52 Kan. App 2d 853 (2016) the plaintiff, a Kansas prison inmate, obtained a money judgment in federal court against a former prison guard for violation of the prisoner's federal civil rights. When the plaintiff couldn't collect that judgment because he couldn't locate the former guard or any of the guard's assets, he filed the federal judgment against the guard in Kansas state court and attempted to collect it against the guard's employer, the Kansas Department of Corrections. He cannot do so because the claim arose under federal law, Kansas was immune from suit in federal court for that claim, and Kansas has not waived its sovereign immunity.

Jones's judgment against the prison guard came on a civil-rights claim under a federal statute, 42 U.S.C. § 1983. Neither the Kansas Department of Corrections nor the State of Kansas was a defendant in the federal lawsuit. In fact, they couldn't have been because the Eleventh Amendment precludes suing a state in federal court for money that would be paid from the state treasury based on the past conduct of state officials. See *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Jones*, 466 Fed.Appx. at 698–701.

### 2)   The Defendants are entitled to qualified immunity

A public employee is entitled to qualified immunity in all but the most exceptional cases. T*onkovich v. Kansas Board of Regents* 159 F. 3d 504, 516 (10th Cir. 1998). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 592 10th

4

Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *cf. Harris v. Board of Educ. of the City of Atlanta,* 105 F.3d 591, 595 (11th Cir.1997) "In all but the most exceptional cases, qualified immunity protects government officials performing discretionary functions from the burdens of civil trials and from liability for damages.")

The defense of qualified immunity is available only in suits against officials sued in their personal capacities, not in suits against officials sued in the official capacities.  *Starkey v. Boulder Soc. Servs* F. 3d. 1019-1022 (10th Circuit 2013).   The plaintiff has named two individuals in the suit acting in their personal and official capacities.

Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ramirez v. Oklahoma Dep't of Mental Health,* 41 F.3d 584, 592 10th Cir.1994) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *cf. Harris v. Board of Educ. of the City of Atlanta,* 105 F.3d 591, 595 (11th Cir.1997)

Under Tenth Circuit law, a plaintiff seeking to avoid summary judgment on qualified immunity grounds must satisfy a heavy two-part burden by showing the defendant violated a constitutional or statutory right and the right was clearly established at the time of the defendant's unlawful conduct. *Mecham v. Frazier,* 500 F.2nd 1200 (10th Circuit 2007).

In this case, it is clear that no defendant named by the plaintiff denied a constitutional or statutory right. Defendants are entitled to qualified immunity. The process about which the

plaintiff complains regardi9ng  the Attorney General's Office was about the results in obtaining records.

There is no evidence that plaintiff's constitutional rights were infringed. A public employee is entitled to qualified immunity in all but the most exceptional cases. *Tonkovich v. Kansas Board of Regents* 159 F. 3d 504, 516 (10th Cir. 1998). ("In all but the most exceptional cases, qualified immunity protects government officials performing discretionary functions from the burdens of civil trials and from liability for damages.")

In this case, it is clear that no defendant named by the plaintiff deprived the plaintiff of a constitutional or statutory right. The process about which the plaintiff complains was a result of an investigation the plaintiff requested. The fact that the plaintiff did not like the results does not rise to the level of a constitutional issue.

3)**The Attorney General's Office did not receive proper or timely service in accordance to Rules 12(b)(4) and (5)**   The plaintiff alleges the Attorney General's Office was served on April 29, 2025 with a summons and complaint by the U.S. Marshall's Office. However, the Attorney General's office staff has no record of receiving service from the plaintiff.  The only service received has been from secondary sources who were served.

Both offices of the U.S. Marshall serving Kansas were consulted and no service on the Attorney General's Office was provided by the U.S. Marshall's Office.  According to their records, service was provided by registered mail.  No service by registered mail has been received.

Respectfully submitted,

KRIS W. KOBACH

Attorney General

/s/ Bradley E. Avery
Bradley E. Avery, KS #13071
Assistant Attorney General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email:  brad.avery@ag.ks.gov
*Attorney for Defendant*
*Kansas Attorney General*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of June, 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Angeliina Lynn Lawson
1914 5th Avenue
Leavenworth, Kansas 66048

s/ Bradley E. Avery
Bradley E. Avery, KS #13071
Assistant Attorney General

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: Marc Altenbernt (julie.eggenberger@ks.gov, marc.altenbernt@ks.gov),
Brad E. Avery, I (brad.avery@ag.ks.gov, donna.wells@ag.ks.gov, gabriella.ortiz@ag.ks.gov),
Angeliina Lynn Lawson (angeliinacourtrecords@gmail.com), District Judge John W. Broomes
(joyce_roach@ksd.uscourts.gov, ksd_broomes_chambers@ksd.uscourts.gov), Magistrate Judge
Teresa J. James (ksd_james_chambers@ksd.uscourts.gov)
--Non Case Participants: Stephen O. Phillips (steve.phillips@kscourts.org)
--No Notice Sent:

Message-Id:6379693@ksd.uscourts.gov
Subject:Activity in Case 2:25-cv-02171-JWB-TJJ Lawson v. Kansas Department of Children and
Families et al Order on Motion for Default Judgment
Content-Type: text/html
```

### U.S. District Court

### DISTRICT OF KANSAS

**Notice of Electronic Filing**

The following transaction was entered on 6/10/2025 at 1:39 PM CDT and filed on 6/10/2025

| | |
|---|---|
| **Case Name:** | Lawson v. Kansas Department of Children and Families et al |
| **Case Number:** | 2:25–cv–02171–JWB–TJJ |
| **Filer:** | |
| **Document Number:** | 18(No document attached) |

**Docket Text:**
 **ORDER denying application for clerk's entry of default (Doc. 12) and motion for default judgment (Doc. 13). The record does not reflect that the summons for the Kansas Attorney General's Office was returned executed. Therefore, default is not appropriate. Entered by District Judge John W. Broomes on 06/10/2025.Mailed to pro se party Angeliina Lynn Lawson by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr)**


**2:25–cv–02171–JWB–TJJ Notice has been electronically mailed to:**

Brad E. Avery, I     brad.avery@ag.ks.gov, donna.wells@ag.ks.gov, gabriella.ortiz@ag.ks.gov

Marc Altenbernt     marc.altenbernt@ks.gov, julie.eggenberger@ks.gov

Angeliina Lynn Lawson     angeliinacourtrecords@gmail.com

**2:25–cv–02171–JWB–TJJ Notice has been delivered by other means to:**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

Angeliina Lynn Lawson,
Plaintiff and Next Friend of D.L., a Minor
v.
Kansas Department for Children and Families, et al.,
Defendants.

Case No. 2:25-CV-02171-JWB-TJJ

Jury Trial Demand

### PLAINTIFF'S OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS ON SERVICE AND JURISDICTIONAL GROUNDS

NOW COMES Plaintiff Angeliina Lynn Lawson and Next Friend of D.L., a Minor, proceeding *in forma pauperis* (IFP) and *pro se*, respectfully opposing the Kansas Attorney General's Office Motion to Dismiss (Doc. 17). Plaintiff addresses the argument that service was insufficient under Rules 12(b)(4) and (5) and affirms the procedural validity of service conducted through the U.S. Marshal Service pursuant to 28 U.S.C. § 1915(d) and Rule 4(c)(3).

### I. PLAINTIFF IS PROCEEDING IFP AND SERVICE WAS PROPERLY DELEGATED TO THE U.S. MARSHAL

Plaintiff was granted IFP status by this Court, which legally delegates the responsibility of service to the U.S. Marshal's Office. Under 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), once IFP status is granted:

"*The officers of the court shall issue and serve all process, and perform all duties in such cases.*"

Plaintiff timely submitted all necessary summons documents to the U.S. Marshal in April 2025. Verbal confirmation has been received from the Marshal's Office indicating service was completed on April 29, 2025.

The only delay is with the green return receipt ("green card") from the U.S. Postal Service, which is outside Plaintiff's control. As established by case law:

"*An IFP plaintiff should not be penalized when the U.S. Marshal fails to serve defendants timely or if there is uncertainty around postal confirmation.*"
(*See Moore v. Jackson*, 123 F.3d 1082 (8th Cir. 1997); *Rochon v. Dawson*, 828 F.2d 1107 (5th Cir. 1987)).

Therefore, any alleged service defect is procedural and curable, not grounds for dismissal.

## II. REQUEST FOR CLARIFICATION OR CURATIVE RELIEF IF NECESSARY

To the extent the Court finds that receipt of the green card is required for formal proof, Plaintiff respectfully requests either:

1. Leave to file proof of service once the postal return is delivered, or
2. Authorization for the U.S. Marshal to file their own certificate, as required under Rule 4(l).

Dismissal is not appropriate where Plaintiff has made good faith, statutorily compliant service efforts, and where U.S. Marshal action and postal delays are the only obstacle.

## III. THE ATTORNEY GENERAL'S MOTION IS UNTIMELY

The record confirms that the U.S. Marshal served the Kansas Attorney General's Office on April 29, 2025, as stated in Plaintiff's filings and consistent with the Marshal's confirmation and the AG's motion to dismiss. Under Fed. R. Civ. P. 12(a)(1)(A)(i), the AG's Office had 21 days—until May 20, 2025—to respond. Yet, no appearance or motion was filed until June 6, 2025, when counsel entered a Notice of Appearance 38 days after service and 17 days after the deadline. The AG's Motion to Dismiss (Doc. 17) was filed only after Plaintiff initiated default proceedings (Docs. 12 and 13), further confirming the reactive nature of their appearance and lack of procedural diligence.

## IV. ENTRY OF DEFAULT WAS PROPER AND SHOULD BE PRESERVED

The AG's failure to appear or plead within the required timeframe justifies Plaintiff's Motion for Default Judgment filed on June 3, 2025. The AG's delay prejudiced Plaintiff by obstructing early case management and failing to comply with Rule 55(a)'s obligation to defend the case. The Court has discretion to enforce strict compliance with Rule 12 deadlines, especially in cases where a government defendant is fully aware of the lawsuit and still fails to respond until after default proceedings begin. Thus, Plaintiff maintains that default proceedings were appropriately triggered and should not be retroactively excused by the AG's late appearance.

See Plaintiff's prior filings at Docs. 12 and 13 regarding timely default motion and service history.

## V. PRESERVATION OF PLAINTIFF'S SEVENTH AMENDMENT RIGHT TO JURY TRIAL

Plaintiff has clearly and timely invoked her constitutional right to a jury trial under Rule 38(b) of the Federal Rules of Civil Procedure, as noted in both the original complaint and docket caption. This matter involves significant factual questions concerning retaliation, denial of parental rights, suppression of abuse disclosures— all of which implicate credibility and intent. These are precisely the types of disputed issues that require jury resolution, not dismissal at the pleadings stage.

As the Tenth Circuit has recognized, summary or pre-discovery dismissal of constitutional claims involving family integrity and state retaliation "should rarely occur" where factual development is needed to evaluate motive, knowledge, and deliberate indifference. Dismissing this case before discovery would infringe on Plaintiff's Seventh Amendment right to have these facts weighed by a jury.

## VI. PLAINTIFF'S SERVICE WAS COMPLETED AND RETURN IS DEALYED DUE TO POSTAL LAG

Plaintiff affirms that the U.S. Marshal served the Kansas Attorney General's Office on April 29, 2025, consistent with U.S. Marshal verbal confirmation. However, due to documented delays in USPS delivery of certified mail green cards, the return of executed service has not yet appeared on the Court's docket. Plaintiff is in contact with the Marshal and they stated will promptly file the return receipt upon receipt from the postal service. Given Plaintiff's in forma pauperis status under 28 U.S.C. § 1915, she is not responsible for these service delays, and courts have routinely held that IFP litigants cannot be penalized for delays caused by the U.S. Marshal or USPS (*Rochon v. Dawson*, 828 F.2d 1107 (5th Cir. 1987)). Therefore, Plaintiff respectfully requests the Court preserve her claims and allow supplementation of service proof.

## VIII. Clarification of Relief Sought Against the Kansas Attorney General's Office

Plaintiff affirms that all claims asserted against the Kansas Attorney General's Office are limited to prospective declaratory and injunctive relief only. Plaintiff does not seek monetary damages from this state agency. Plaintiff respectfully invokes the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), which authorizes federal courts to grant injunctive relief against state agencies and officials when constitutional violations are ongoing or systemic. This includes the relief requested in Plaintiff's Complaint—such as transparency of records, compliance oversight, and policy enforcement related to child protection and constitutional rights.

To be clear, Plaintiff does not seek any form of retrospective relief or compensation payable from the state treasury. This Court retains jurisdiction over these forward-looking claims, which remain actionable under 42 U.S.C. § 1983 and binding Supreme Court precedent.

PRAYER FOR RELIEF

For the reasons above, Plaintiff respectfully asks this Court to:

1. Deny the Attorney General's Motion to Dismiss, including any arguments relating to untimely service, in light of Plaintiff's IFP status and confirmed Marshal delivery;
2. Grant leave to supplement the record with formal proof of service (e.g., green card or USM-285 form) when it arrives via postal processing;
3. Preserve Plaintiff's right to a jury trial and allow the case to proceed to discovery on the merits;
4. Declare that Plaintiff's request for prospective injunctive and declaratory relief against the Kansas Attorney General's Office is within the Court's jurisdiction under Ex parte Young, and not barred by the Eleventh Amendment.
5. Provide any further relief deemed just and equitable, including clarification or instructions to the U.S. Marshal regarding certification of service on the AG.

Respectfully submitted,

Angeliina Lynn Lawson, Pro Se
Plaintiff and Next Friend of D.L., a Minor
1914 5th Ave, Leavenworth, KS 66048
Email: angeliinacourtrecords@gmail.com
Phone: (913) 972-1661

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2025, I filed the following document with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification to all parties registered to receive notice through the system:

- Plaintiff's Opposition to the Kansas Attorney General's Motion to Dismiss

Additionally, because Defendant Kansas Attorney General's Office recently entered an appearance, I am also serving a copy of this filing via U.S. Mail to the following:

Bradley E. Avery
Assistant Attorney General
Memorial Building, 2nd Floor

<u>120 SW 10</u>th Avenue, Topeka, KS 66612
Email: brad.avery@ag.ks.gov

Marc Altenbernt
General Counsel, Kansas DCF
555 S. Kansas Avenue, 6th Floor, Topeka, KS 66603
Email: marc.altenbernt@ks.gov


Respectfully submitted,

Angeliina Lynn Lawson, Pro Se
Plaintiff and Next Friend of D.L., a Minor
1914 5th Ave, Leavenworth, KS 66048
Email: angeliinacourtrecords@gmail.com
Phone: (913) 972-1661

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **ANGELINA LYNN LAWSON,** | ) | |
| | ) | |
| **Plaintiff, and as next friend of D.L., a minor** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-CV-2171** |
| | ) | |
| **KANSAS DEPARTMENT FOR CHILDREN,** | ) | |
| **AND FAMILIES,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MOTION TO DISMISS FOR LACK OF SERVICE

COMES NOW, the Kansas Attorney General's Office, by and through its attorney, Bradley Eugene Avery, and moves the Court for an Order of Dismissal for Lack of Service in the above cited case.  In support thereof, the Attorney General states the following: The Plaintiff, Angelina Lynn Lawson, has filed suit against the Kansas Attorney General's Office under K.S.A. 42 U.S.C. 1983 seeking monetary and injunctive relief in the amount of $150,000.00, alleging that her rights and her son's rights were violated under the 1st and 14th Amendments to the United States Constitution.

## STATEMENT OF FACTS

On March 12, 2025, Assistant Attorney General Amber Smith, after investigating a Kansas Open Records Act complaint filed by Angelina Lawson, alleging that "when the (Kansas) Department of Children and Families responded to your Kansas Open Record Act (KORA) request, "The information was inaccurate stating there was only one case closed and one pending." Also alleged is that the Department of Children and Families DCF refused to provide records on the closed case and that "There is a missing closed case." Ms. Smith noted

that the Attorney General's Office had jurisdiction to review the alleged violations of the KORA.

She concluded her findings as follows:

> We have carefully reviewed your complaint and supporting document. Based on our review of the documents submitted in this matter we are unable to identify a violation of the KORA. The KORA generally declares that public records shall be open for inspection by any person unless otherwise provided by the Act. The KORA requires a public agency to provide copies of public records if requested under the Act, unless the record is exempt from disclosure. The KORA provides that a public agency may not be required to disclose certain records; there are some 55 categories of records that public agencies are not required to disclose. The KORA does not prohibit disclosure of records contained within these exceptions, but makes their release discretionary with the agency's official records custodian. The burden is on the public agency opposing disclosure to justify the decision not to release the public records.

On April 1, 2025, Ms. Lawson, the plaintiff in this matter, filed a Complaint for Damages Declaratory and Injunctive Relief against the Kansas Attorney General's Office alleging numerous counts of alleged negligence and other wrong doing and requesting that she be awarded $150,000 to compensate her for emotional distress, reputational harm, and violation of her federal rights.

In addition to the Attorney General's Office, plaintiff has filed a complaint for damages, declaratory and injunctive relief, alleging civil rights violations under 42 USC 1983 to "redress systemic violations of the 14th and 1st Amendments to the United States Constitution committed by the Kansas Department of Children and Families and the Kansas Attorney General's Office." Ms. Lawson also seeks injunctive relief requiring the Attorney General's Office to "adopt proper oversight mechanisms to ensure compliance with the Kansas Open Records Act in child welfare and civil rights contexts."

## **ARGUMENT AND AUTHORITIES**

1) The Kansas Attorney General's Office was not properly served, preventing this court's exercise of personal jurisdiction over the Attorney General's Office and thus this case should be

dismissed. As noted in the U.S. District Court Civil Court Docket for Case #: 2:24-cv-2172-

JWB-TJJ entry #18, June 10, 2025 "Order denying application for clerk's entry of default (Doc.

12) and motion for default (Doc. 13). The record does not reflect that the summons for the

Kansas Attorney General's Office was returned executed. Therefore, default is not appropriate.

> Order entered by District Judge John W. Broomes on 06/10/2025. Mailed to pro se party
> Angeliina Lynn Lawson by regular mail (This is a TEXT Entry Only. There is no pdf document
> associated with this entry." (jmr) (Entered: 06/10/2025).

Judge Broomes obviously made the finding that the Kansas Attorney General's Office had

not been properly served and therefore the clerk's entry of default was not appropriate.

Before a court can assert jurisdiction over a particular defendant, that defendant must be

properly served. E.g., *Murphy Brothers, Inc. v. Mitchetti Pipe Stringing, Inc.,* 526 U.S. 344, 350

(1999) ("In the absence of service of process (or waiver of service by the defendant), a court

ordinarily may not exercise power over a party the complaint names as a defendant.") (citation

omitted).

The burden of showing proper service lies with the plaintiff. See, e.g., *Fed. Deposit Ins.*

*Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir. 1992) (citations omitted). *Williams*

*v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1130 (10th Cir.1991); *Behagen v. Amateur*

*Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984), cert. denied, 471 U.S. 1010, 105 S.Ct.

1879, 85 L.Ed.2d 171 (1985), and of establishing the validity of the service of process, *Saez*

*Rivera v. Nissan Mfg. Co.*, 788 F.2d 819, 821 n. 2 (1st Cir.1987) (per curiam);

The defendant, Kansas Attorney General's Office, was not served as reflected in the note

of Judge Broomes indicating the summons was not returned executed. The plaintiff complains

that she cannot be held responsible, but the burden of proof for showing proper service rests with

the plaintiff. Because of the lack of proper service, the Court lacks subject-matter and personal

jurisdiction over the defendant and thus should dismiss the Petition of the plaintiff.

Respectfully submitted,

KRIS W. KOBACH
Attorney General

*/s/ Bradley E. Avery*
Bradley E. Avery, KS #13071
Assistant Attorney General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email: brad.avery@ag.ks.gov
*Attorney for Defendant*
*Kansas Attorney General*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Angeliina Lynn Lawson
1914 5th Avenue
Leavenworth, Kansas 66048

*s/ Bradley E. Avery*
Bradley E. Avery, KS #13071
Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ANGELIINA LYNN LAWSON,
Plaintiff and Next Friend of D.L., a Minor
v.                                                       Case No. 2:25-CV-02171-JWB-TJJ
KANSAS DEPARTMENT FOR CHILDREN
AND FAMILIES, et al.,
Defendants.                                              JURY TRIAL DEMAND

**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO ATTORNEY GENERAL'S**
**MOTION TO DISMISS FOR LACK OF SERVICE**

NOW COMES Plaintiff Angeliina Lynn Lawson, pro se and in forma pauperis ("IFP"), to
respectfully oppose the Kansas Attorney General's Office Motion to Dismiss (Doc. 22) for lack
of service. Plaintiff asserts that service was timely and lawfully executed by the U.S. Marshal
pursuant to Fed. R. Civ. P. 4(c)(3) and 28 U.S.C. § 1915(d), and that any defect in record
certification is procedural, curable, and not a basis for dismissal.

**I. SERVICE WAS PROPERLY DELEGATED AND CONFIRMED**

As an IFP litigant, Plaintiff was entitled to U.S. Marshal service under Rule 4(c)(3), which
mandates that "[t]he officers of the court shall issue and serve all process, and perform all duties
in such cases."

Plaintiff timely submitted USM-285 forms and summons in April 2025 with the tracking number
is **7022 3330 0001 6944 5513**. Verbal confirmation from the U.S. Marshal's Office affirmed that
service to the Kansas Attorney General's Office was executed on April 29, 2025. The Marshal
additionally confirmed that AG staff was personally contacted and aware of the delivery. If the
Attorney General's Office now claims it has "no mailbox," that is not only implausible but
contradicts standard practice for constitutional officers housed in a state government building.

**II. ANY DEFICIENCY IS PROCEDURAL AND CURABLE**

Courts have consistently held that IFP plaintiffs cannot be penalized for postal lag or procedural
gaps outside their control. See:

- *Rochon v. Dawson*, 828 F.2d 1107 (5th Cir. 1987): delays caused by the U.S. Marshal or
  postal service are not attributable to the plaintiff.
- *Moore v. Jackson*, 123 F.3d 1082 (8th Cir. 1997): a pro se IFP litigant should not suffer
  dismissal due to Marshal error or administrative delay.

Plaintiff respectfully requests leave to supplement the record with the certified green card once
received or to permit the U.S. Marshal to certify service directly to the Court.

**III. THE AG'S OFFICE HAD ACTUAL NOTICE AND DELAYED**

Despite receiving service on April 29, 2025, the AG's Office waited until June 6, 2025 to enter a Notice of Appearance—41 days later—and only after Plaintiff filed for default judgment. Such conduct reflects procedural ambivalence, not a legitimate jurisdictional dispute. Courts disfavor dismissal where the defendant has actual notice and suffers no prejudice. See *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

## IV. DISMISSAL WOULD REWARD BAD FAITH AND GAMESMANSHIP

The AG's claim of improper service is not raised in good faith. It is reactive, coming only after Plaintiff pursued default relief. The assertion that a major government agency—staffed, funded, and equipped with full-time reception and internal mail distribution—was not reachable by certified mail or the U.S. Marshal is facially absurd.

This tactic appears designed to deflect from the substantive constitutional issues raised in the Complaint, including the AG's Office role in whitewashing KORA violations and suppressing abuse disclosures.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court to:

1. DENY the Motion to Dismiss for Lack of Service (Doc. 22);
2. GRANT leave to supplement the record with a certified return receipt or Marshal affidavit;
3. AFFIRM that Plaintiff has met all obligations under Rule 4 and 28 U.S.C. § 1915;
4. RETAIN jurisdiction over the Attorney General's Office for prospective relief as outlined in the Complaint;
5. GRANT such further relief as the Court deems just and equitable.

Respectfully submitted,

Angeliina Lynn Lawson, Pro Se
Plaintiff and Next Friend of D.L., a Minor
1914 5th Ave
Leavenworth, KS 66048
Email: angeliinacourtrecords@gmail.com
Phone: (913) 972-1661


CERTIFICATE OF SERVICE

I hereby certify this on this 30th day of June, 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Bradley E. Avery

120 SW 10th Ave

Topeka, KS 66612

(785) 296-2215

Brad.Avery@ag.ks.gov

Angeliina Lynn Lawson, Pro Se
Plaintiff and Next Friend of D.L., a Minor
1914 5th Ave
Leavenworth, KS 66048
Email: angeliinacourtrecords@gmail.com
Phone: (913) 972-1661

# UNITED STATES DISTRICT COURT
## for the District of Kansas

Angeliina Lynn Lawson,

                              Plaintiff,

v.                                            Case No.:  2:25-CV-02171-JMB-TJJ

Kansas Department for
Children and Families, et al.,

                              Defendants.

## REPLY BRIEF IN SUPPORT OF
## KDCF'S MOTION TO DISMISS THE COMPLAINT

COME NOW the Defendants, the Kansas Department for Children and Families (referred to as "KDCF"), and Amanda Miranda and Heather Dunz, in their official and individual capacities as employees of KDCF (collectively referred to as the "KDCF Defendants"), by and through their attorney Marc Altenbernt, and for their Reply Brief In Support of Their Motion to Dismiss Plaintiff's Complaint, hereby state as follows:

**I.      Plaintiff Concedes That the 42 U.S.C. § 1983 Claims Made Against KDCF Should be Dismissed Pursuant to Eleventh Amendment Immunity.**

The Plaintiff admits that KDCF "cannot be sued for damages under § 1983" [Document 16, Page 12, Paragraph 3].  However, the Plaintiff conflates KDCF with KDCF employees sued in their official capacity.  KDCF, as an arm of the State of Kansas, cannot be sued in federal court under 42 U.S.C. § 1983 for any relief, either monetary or injunctive.  Barger v. State of Kan., 620 F. Supp. 1432, 1434 (D. Kan. 1985).  Given that each of the Plaintiff's causes of action fall under section 1983, KDCF possesses Eleventh Amendment immunity from this suit and it should be dismissed as a matter of law.  Moreover, while KDCF employees sued in their official capacity can be sued for injunctive relief, the Complaint must still comply with pleading requirements.

97

## II.    The Plaintiff Does Not Make an ADA Claim in Her Complaint.

The Plaintiff asserts that she made a claim under the Americans with Disabilities Act in her Complaint [Doc. 16, Pg. 11, Para. 2]. However, there is nothing in the Complaint that even mentions the ADA, let alone alleges a violation of it. All four of the Plaintiff's causes of action are specifically brought pursuant to 42 U.S.C. § 1983. As such, any argument made by the Plaintiff concerning the ADA should be disregarded.

## III.    The Plaintiff's Response to the KDCF Defendants' Arguments Made Under Federal Rule of Civil Procedure 12(b)(6) are Without Merit and Should be Disregarded.

"It is well-established, however, that in determining whether to grant a motion to dismiss, the district court, and consequently this court, are limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995). Simply put, the Plaintiff's Response Brief is filled with allegations and claims that were not in the Complaint. Such allegations and claims cannot be made for the first time in a brief responding to a Motion to Dismiss and as such, should be disregarded by this Court.

Despite the Plaintiff's arguments to the contrary, she has failed to allege facts sufficient to satisfy any of her four counts. Count I contains four allegations at paragraph 28(a) of Document 16. None of the allegations constitute a violation of the Fourteenth Amendment and the Plaintiff has offered no authority to suggest they do. Count II alleges that the KDCF Defendants violated Plaintiff's First Amendment rights when they responded to her Kansas Open Records Requests with "harassment, redactions, and denials; exclusion from court-related access; [and] obstructive and retaliatory communications" [Doc. 1, Count I]. All of these allegations are conclusory. What harassment? What retaliatory communications? Count III suffers from similar issues. The

allegations are conclusory and even when taken at face value do not qualify as a claim under *Monell*.

Finally, Count IV alleges that the KDCF Defendants placed the minor child in danger. However, at no point does the Plaintiff allege that the child was ever in KDCF custody, or that the KDCF Defendants ever placed the child anywhere, or that KDCF had any involvement in the child's custody case at all. These are the types of affirmative actions that must take place under Currier v. Doran to satisfy a claim for "state-created danger." 242 F.3d 905, 919-920 (10th Cir. 2001). The closest the Plaintiff gets to potentially asserting a "state-created danger" is the allegation that the KDCF Defendants "[concealed] child abuse reports" [Doc. 1, Para. 35]. However, the Plaintiff fails to allege what the reports alleged, when they were made, to whom they were made, how they were concealed, and from whom they were concealed. The Plaintiff's allegation is conclusory and otherwise improper. On the basis of the foregoing, each of the Plaintiff's Counts should be dismissed for failure to state a claim.

## IV.    Plaintiff's References to Qualified Immunity Are Premature.

The Plaintiff argues that the KDCF individual Defendants are not entitled to qualified immunity. This argument is premature given that the KDCF Defendants have not offered an argument concerning qualified immunity. The reason for this is because the Plaintiff's allegations against Defendants Miranda and Dunz are so deficient, it is impossible to determine what is actually being alleged against them specifically. Neither Defendant is identified by name at any point in the portions of the Complaint containing allegations. Without knowing what is being alleged, the KDCF Defendants cannot in good faith assert qualified immunity. The KDCF Defendants do not waive the right to offer a defense on the basis of qualified immunity in the future, however.

Based upon the foregoing, this Court should dismiss the Plaintiff's Complaint.

WHEREFORE, the Defendants the Kansas Department for Children and Families, and Amanda Miranda and Heather Dunz, in their official and individual capacities as employees of KDCF, respectfully request that this Court grant the subject Motion to Dismiss and for any other relief it deems just.

Respectfully Submitted,

*/s/ Marc Altenbernt*_____
Marc Altenbernt, SC#28745 General Counsel
Kansas Department for Children and Families
555 S. Kansas Ave., 6th Floor
Topeka, KS 66603
Tel:    (785) 250-0380
Fax:    (785) 296-4960
Marc.Altenbernt@ks.gov
*Attorney for Defendants, DCF*

## CERTIFICATE OF SERVICE

I hereby certify that I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court on the 25th day of June 2025, and to Plaintiff, via email:

AngliinaCourtRecords@gmail.com

*/s/ Marc Altenbernt*_____
Marc Altenbernt, #28745

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ANGELINA LYNN LAWSON,** | ) | |
| | ) | |
| **Plaintiff, and as next friend of D.L., a minor** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-CV-2171** |
| | ) | |
| **KANSAS DEPARTMENT FOR CHILDREN,** | ) | |
| **AND FAMILIES,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MOTION TO DISMISS FOR LACK OF STANDING</u>

COMES NOW Defendant, the Kansas Attorney General's Office (KAGO), and moves the Court for an Order of Dismissal for Lack of Standing in the above-cited case. In support thereof, the Defendant KAGO states the following:

1) On April 2, 2025 the Plaintiff, Angelina Lynn Lawson, filed suit against the Kansas Attorney General's Office alleging "a refusal to investigate or disclose abuse, even after Plaintiff filed formal KORA complaints, evidences, deliberate indifference under Bryan County and constitutes a systematic failure of oversight actionable under Monell and Pembaur." See Statement 37.

2) Plaintiff also alleged harm to her child that was foreseeable and caused by Defendants' "deliberate" indifference.

The United State Supreme Court has stated," Article III of the Constitution confines the federal judicial power to "Cases and Controversies." Under Article III, a case of controversy can exist only if a plaintiff has standing to sue – a bedrock constitutional requirement that this Court

101

has applied to all manner of important disputes. *California v. Texas* 141 S. Ct. 2104, 2113 (2020).

"Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, see *id.,* at 756, 104 S.Ct., at 3327; *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 740–741, n. 16, 92 S.Ct. 1361, 1368–1369, n. 16, 31 L.Ed.2d 636 (1972);1 and (b) "actual or imminent, not 'conjectural or hypothetical, '" *Whitmore, supra,* 495 U.S., at 155, 110 S.Ct., at 1723 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.,* at 38, 43, 96 S.Ct., at 1924, 1926.

A Party invoking federal jurisdiction bears the burden of establishing elements of standing. To establish standing, a plaintiff must show an injury in fact caused by the defendant and redressable by a court order. *Lujan v. Defenders of Wildlife* 504 U.S. 560-561(1992). A citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution. *Linda R.S. v. Richard D* 410 U.S. 614 (1973).

Plaintiff must support each element of standing, namely, concrete and particularized injury that is actual or imminent, traceability, and redressability, with the manner and degree of evidence required at the successive stages of the litigation. *Murthy vs. Missouri* 603 U.S. 43 (2024).

In a statement amending her original position, the plaintiff stated the following:

> Plaintiff affirms that all claims asserted against the Kansas Attorney General's Office are limited to prospective declaratory and injunctive relief only. Plaintiff does not seek monetary damages from this state agency. Plaintiff respectfully invokes the doctrine of Exparte Young, 209 U.S. 123 (1908), which authorizes federal courts to grant injunctive relief against state agencies and officials when constitutional violations are ongoing or systemic. This includes the relief requested in Plaintiffs complaint-such as transparency of records, compliance oversight, and policy enforcement related to child protection and constitutional rights.

> To be clear, Plaintiff does not seek any form of retrospective relief or compensation payable from the state treasury. This Court retains jurisdiction over these forward-looking claims, which remain actionable under 42 U.S.C. §1983 and binding Supreme Court precedent.

However, the statement still fails to allege or demonstrate a "an injury in fact caused by the defendant and redressable by a court order." Nor has the plaintiff demanded relief through injunctive means. Because the plaintiff has failed to prove standing, the Defendant, Kansas Attorney General's Office requests it be dismissed as a party to plaintiff's Lawson's law suit in the District of Kansas District Court.

Respectfully submitted,

KRIS W. KOBACH
Attorney General

/s/ Bradley E. Avery
Bradley E. Avery, KS #13071
Assistant Attorney General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 296-2215
Fax: (785) 291-3767
Email:  brad.avery@ag.ks.gov
Attorney for Defendant
Kansas Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July 2025, the foregoing document was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

Angeliina Lynn Lawson
1914 5th Avenue
Leavenworth, Kansas 66048

s/ Bradley E. Avery
Bradley E. Avery, KS #13071
Assistant Attorney General

4

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff and Next Friend of D.L., a Minor,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171-JWB-TJJ

JURY TRIAL DEMANDED

**SUPPLEMENTAL DECLARATION IN SUPPORT OF STANDING, RULE 37 PRESERVATION, AND NOTICE OF INTENT TO SEEK INJUNCTIVE RELIEF**

I, Angeliina Lynn Lawson, appearing pro se and on behalf of my minor son D.L., submit this declaration to:
(1) preserve standing, (2) provide notice of spoliation under Rule 37(e), (3) identify specific materials being withheld,
(4) reaffirm ADA and constitutional claims under Ex parte Young, and (5) notify the Court of intent to seek preliminary injunctive relief.

1. I affirm that on April 3, 2025, I issued a litigation hold notice to over 20 Kansas judicial officials and government agencies.
2. Following this notice, multiple forms of evidence were concealed, including a sealed March 4, 2025 affidavit, blocked transcript requests, denial of Zoom access on May 8, 2025, and refusal to provide records by GAL Andrew Bolton, before formal appointment who engaged in fraudulent activity with DCF.
3. These constitute spoliation and fraud upon the court as detailed in my Notice filed July 11, 2025, and must be preserved for Rule 60(b)(3) relief.
4. The Kansas AG's motion to dismiss for lack of standing is contradicted by my Exhibits D–E, showing the AG's active role in denying KORA enforcement, which directly injured my ability to protect my disabled child.

5. I request leave to file a motion for preliminary injunction under Rule 65 to compel production of unredacted abuse records, stop further retaliation, and restore access to accommodations.

6. I reaffirm that I seek only prospective relief against state officials under Ex parte Young and request injunctive relief against ongoing constitutional violations.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on: July 16, 2025

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson
1914 5th Ave., Leavenworth, KS 66048
AngeliinaCourtRecords@gmail.com
(913) 972-1661
Pro Se Plaintiff and Next Friend of D.L., a Minor

## CERTIFICATE OF SERVICE

I hereby certify that on this July 16, 2025, I filed the foregoing Supplemental Declaration with the Clerk of the Court using the CM/ECF system, which will send electronic notice to:

Bradley E. Avery
Assistant Attorney General
Memorial Building, 2nd Floor
120 SW 10th Avenue
Topeka, KS 66612
Email: brad.avery@ag.ks.gov

Marc Altenbernt
General Counsel, Kansas Department for Children and Families
555 S. Kansas Avenue, 6th Floor
Topeka, KS 66603
Email: marc.altenbernt@ks.gov

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson
Pro Se Plaintiff and Next Friend of D.L., a Minor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,                          Case No. 2:25-cv-02171-JWB-TJJ

Plaintiff and as Next Friend of D.L., a minor,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Jury Trial Demanded

RENEWED MOTION FOR DEFAULT JUDGMENT BASED ON WAIVER OF SERVICE BY

AG's UNTIMELY APPEARANCE

Plaintiff Angeliina Lynn Lawson respectfully renews her request for default judgment against the

Kansas Attorney General's Office based on its failure to timely respond and waiver of service

objections under Fed. R. Civ. P. 55 and 12(h)(1).:

FACTUAL AND PROCEDURAL BACKGROUND

1. The Kansas Attorney General's Office was properly served on April 29, 2025 with sworn

   declaration from Plaintiff in the prior filings (Docs. 12 and 13).

2. The AG's deadline to answer under Fed. R. Civ. P. 12(a)(1)(A)(i) was May 20, 2025. No

   answer was filed by that date.

3. On June 3, 2025, Plaintiff filed a Request for Clerk's Entry of Default (Doc. 12) and Motion for Default Judgment (Doc. 13).

4. On June 6, 2025, **17 days** past the deadline, the AG's Office entered an untimely appearance through Assistant Attorney General Bradley E. Avery (Doc. 14).

5. On June 9, 2025, the AG filed a Motion to Dismiss (Doc. 17), without first seeking leave to respond out of time or explaining the delay.

6. Only after filing the merits-based motion did the AG argue (Doc. 17, pg. 6) that it had never been properly served, a defense it had already *waived* by filing an appearance and litigating the merits.

7. On June 10, 2025, the Court denied Plaintiff's earlier default motion based solely on the absence of a returned green card (Doc. 18), not on timeliness or waiver.

LEGAL BASIS

Rule 55(a): The Clerk must enter default when a party has failed to plead or otherwise defend.

Rule 12(h)(1): A defense of insufficient service is waived when not raised in the first motion or response.

Case Law:

- Pell v. Azar Nut Co., 711 F.2d 949 (10th Cir. 1983): A party waives a service objection by filing an appearance and engaging in merits litigation.

- Oritz-Gonzalez v. Fonovia, 277 F.3d 59 (1st Cir. 2002): Default judgment may be granted when a party fails to timely answer and fails to seek leave to respond late.

The AG's Office did not plead or defend by the May 20 deadline, and its subsequent actions constitute a waiver of any Rule 12(b)(5) defense.

## TIMELINE

| Date | Event |
|------|-------|
| April 29, 2025 | AG served via U.S. Marshal |
| May 20, 2025 | Rule 12(a)(1)(A)(i) deadline to respond |
| June 3, 2025 | Plaintiff files for Entry of Default (Doc. 12) & Default Judgment (Doc. 13) |
| June 6, 2025 | AG files untimely Entry of Appearance (Doc. 14), **17 days late** |
| June 9, 2025 | AG files Motion to Dismiss (Doc. 17), without leave |
| June 10, 2025 | Court denies default motion (Doc. 18) based only on unreturned green card |

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

I. Procedural Relief under Rule 55:

1. Enter Clerk's Default (Rule 55(a))
2. Enter Default Judgment as to Liability (Rule 55(b))
3. Schedule Hearing on Remedies (Rule 55(b)(2))

II. Declaratory Relief (Federal Civil Rights / ADA / KORA)

- That the AG's Office violated Plaintiff and Plaintiff son's rights under the First and Fourteenth Amendments, and/or the ADA Title II.

III. Prospective Injunctive Relief (under *Ex parte Young*, 209 U.S. 123)

- Order the AG's Office to implement oversight of DCF KORA compliance;
- Mandate policy reforms for handling KORA complaints;
- Require the AG to produce unredacted case documents previously concealed.

IV.  Accountability for AG Misconduct

1. Strike the AG's Motion to Dismiss (Doc. 17) as untimely and waived.
2. Enter default judgment based on misconduct arising from untimely appearance and contradictory service claims, amounting to a pattern that undermines judicial process.
3. Order AG's Office to disclose who first received notice of the lawsuit and when.
4. Instruct the U.S. Marshal to confirm service and file USM-285 as formal proof.
5. Refer the matter for Rule 11 inquiry or sanctions if the AG intentionally misled the court on service status.

This renewed motion highlights a clear procedural failure and waiver under Rule 12(h)(1). Plaintiff respectfully requests that default judgment be entered as a matter of law and that the Court set a hearing to address appropriate relief.

Respectfully submitted,                                    Dated: July 23, 2025

/s/ Angeliina Lawson
Angeliina Lynn Lawson, Pro Se
Plaintiff and Next Friend of D.L., a Minor
1914 5th Ave, Leavenworth, KS 66048
angeliinacourtrecords@gmail.com
(913) 972-1661

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of July, 2025, I filed the following document with the Clerk of the Court using the CM/ECF electronic filing system, which will send notification to all parties registered to receive notice through the system:

Bradley E. Avery
Assistant Attorney General
Memorial Building, 2nd Floor
120 SW 10th Avenue, Topeka, KS 66612
Email: brad.avery@ag.ks.gov

Marc Altenbernt
General Counsel, Kansas DCF
555 S. Kansas Avenue, 6th Floor, Topeka, KS 66603
Email: marc.altenbernt@ks.gov

Respectfully submitted,

/s/ Angeliina Lawson
Angeliina Lynn Lawson, Pro Se
Plaintiff and Next Friend of D.L., a Minor
1914 5th Ave, Leavenworth, KS 66048

angeliinacourtrecords@gmail.com
(913) 972-1661

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANGELIINA LYNN LAWSON, | |
| Plaintiff, | |
| v. | Case No. 25-cv-2171-JWB-TJJ |
| KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, KANSAS ATTORNEY GENERAL'S OFFICE, AMANDA MIRANDA, and HEATHER DUNZ, in their individual and official capacities, | |
| Defendants. | |

**ORDER STAYING DISCOVERY AND PRETRIAL PROCEEDINGS**

On July 31, 2025, U.S. Magistrate Judge Teresa J. James conducted a telephone Scheduling/Status Conference in this case in accordance with Fed. R. Civ. P. 16. Plaintiff Angeliina Lawson appeared *pro se*. Defendant Kansas Attorney General's Office ("Kansas Attorney General") appeared through counsel, Bradley E. Avery. Defendants Kansas Department for Children and Families, Miranda, and Dunz ("the KDCF Defendants") appeared through counsel, Marc Altenbernt. This order memorializes and supplements the Court's oral rulings from the Scheduling/Status Conference.

The Court inquired regarding the parties' positions on temporarily staying discovery and pretrial proceedings in this case until the District Judge rules on the four pending motions to dismiss, some of which assert immunity defenses. Plaintiff opposed any stay of discovery. The KDCF Defendants agreed that a stay is appropriate in light of the immunity issues raised in the motions to dismiss. The Kansas Attorney General responded that it has not been properly served and therefore the Court lacks jurisdiction over it, but otherwise agreed a stay is appropriate.

After hearing the parties' positions, the Court concludes that a temporary stay of discovery and pretrial proceedings—just until the District Judge rules on the four pending motions to dismiss—is appropriate in this case. First, the Kansas Attorney General has filed a motion to dismiss arguing it did not receive proper or timely service of the complaint. This service issue needs to be resolved before discovery commences.

Second, the KDCF Defendants have asserted immunity defenses in their motion (ECF No. 11), including qualified immunity and Eleventh Amendment immunity. The Kansas Attorney General has likewise asserted qualified immunity and Eleventh Immunity defenses in its motion to dismiss (ECF No. 17) as grounds for dismissal of Plaintiff's claims. Assertion of an immunity defense in a dispositive motion is a basis for staying discovery.[1] Immunity from suit is a "broad protection" that grants government officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'"[2] A defendant is therefore generally entitled to have immunity questions resolved before being required to engage in discovery.[3] Otherwise, a defendant who is entitled to immunity would be effectively deprived of its benefit.[4] Because Defendants have raised Eleventh Amendment and qualified immunity defenses in their

---

[1] *See Siegert v. Gilley*, 500 U.S. 226, 232 (1991) ("One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.").

[2] *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)) (discussing qualified immunity).

[3] *Grissom v. Palm*, No. 19-3178-EFM-ADM, 2021 WL 147255, at *2 (D. Kan. Jan. 15, 2021).

[4] *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed."); *Seigert*, 500 U.S. at 232 (treating immunity as a threshold issue allows a court "to weed out suits . . . without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits").

respective motions to dismiss, the Court finds that a stay of discovery—until those pending motions to dismiss are ruled upon—is necessary to allow Defendants an opportunity to have these threshold issues resolved before requiring them to participate in discovery.

Third, Plaintiff opposes a stay of discovery and pretrial proceedings but has not articulated any reason why a stay is not appropriate given the Eleventh Amendment and qualified immunity defenses raised by Defendants. Plaintiff's primary reason for opposing a stay is her concern about evidence spoliation if she is not allowed to proceed with discovery, however, she offers merely speculation for her concern. She also has not shown any need for discovery on the threshold immunity arguments in Defendants' motion, which are purely legal questions that can be resolved without discovery. To the extent Plaintiff complains that the Court should not have considered issuing a stay at this juncture because the conference was noticed as a scheduling conference, her complaint is not persuasive. Whether to issue a stay is a scheduling issue and it is not uncommon for the Court to consider the issue during a scheduling conference.

Fourth, permitting discovery to proceed at this time as to all defendants and all issues in the case would very likely be wasteful and burdensome. This is especially true if one or more of the Defendants is likely to ultimately be dismissed from the case based on the currently pending motions.

Finally, the Court finds any potential inconvenience of a temporary stay until the District Judge rules on the motions to dismiss will not unduly prejudice Plaintiff. The Court therefore stays discovery and further stays all related Rule 26 deadlines, proceedings, and requirements, and defers setting another Rule 16 scheduling conference, until after a ruling on the pending motions to dismiss.

3

**IT IS THEREFORE ORDERED** that all discovery and other further pretrial proceedings in this case—including all deadlines and requirements under <u>Fed. R. Civ. P. 26</u>—are temporarily stayed with respect to all parties until the District Judge rules on the pending Motions to Dismiss (ECF Nos. 11, 17, 22, and 29).

**IT IS FURTHER ORDERED** that if any of Plaintiff's claims remain after the District Judge's ruling(s) on the pending motions to dismiss, defense counsel shall email the chambers of the undersigned Magistrate Judge, **<u>within seven (7) days of the ruling</u>**, with suggested dates for setting a telephone scheduling conference.

IT IS SO ORDERED.

Dated August 6, 2025, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,
Plaintiff and Next Friend of D.L., a Minor,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,
Defendants.

Case No. 2:25-cv-02171-JWB-TJJ

Jury Trial Demand

OBJECTION TO MAGISTRATE JUDGE'S ORDER STAYING CASE AND REQUESTING
DISTRICT COURT REVIEW UNDER FED. R. CIV. P. 72(a)

Plaintiff Angeliina Lynn Lawson respectfully objects under Rule 72(a) to the August 6, 2025
Order (Doc. 40) staying all pretrial proceedings. This Order is clearly erroneous and contrary to
law, as it improperly delays resolution of Plaintiff's timely and procedurally valid Motion for
Default Judgment against the Kansas Attorney General's Office (Docs. 12, 13, 34), despite
conclusive proof of executed service and the Attorney General's waiver of all Rule 12(b)
defenses by failing to timely appear.

EVIDENCE OF EXECUTED SERVICE

On April 29, 2025, the U.S. Marshals Service completed service on the Kansas Attorney
General's Office at 120 SW 10th Ave., Topeka, KS 66612. The official USM-285 Process
Receipt and Return (Doc. 38) confirms:

- Process was received on April 18, 2025, and mailed via certified mail on April 21, 2025.
- Delivered on April 29, 2025 at 10:36 AM to the front desk, reception area, or mail room
  of the AG's Office.
- USPS Tracking No. 70223330000169445513 independently confirms this delivery.

This executed return satisfies Fed. R. Civ. P. 4(j)(2) and K.S.A. 60-304(d)(5), fully curing the
deficiency identified in the Court's June 10, 2025 denial of default (Doc. 18).

GROUNDS FOR OBJECTION

I. MANDATORY DEFAULT UNDER RULE 55(a)

Fed. R. Civ. P. 55(a) provides: *"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the clerk must enter the party's default."*

The Kansas Attorney General's Office:

- Was served April 29, 2025;
- Had a deadline to answer by May 20, 2025;
- Failed to appear until June 6, 2025—17 days late;
- Never sought leave for a late filing.
- Began litigating merits – volunteering service

Under *United States v. $30,354.00 in U.S. Currency*, 863 F.3d 1085, 1091 (10th Cir. 2017), the Clerk's duty to enter default is mandatory once non-response is shown.

## II. WAIVER OF SERVICE OBJECTIONS UNDER RULE 12(h)(1)

The AG's Motion to Dismiss (Doc. 17) was filed after default was sought. It addressed merits-based defenses before raising service. This violates Fed. R. Civ. P. 12(h)(1) and waives all objections to service.

As the Tenth Circuit held in *Pell v. Azar Nut Co.*, 711 F.2d 949 (10th Cir. 1983), a party that appears and litigates the merits waives any defect in service. Here, the AG's Office attempted to nullify its own default by retroactively raising objections it had already forfeited.

## III. DEFAULT JUDGMENT IS APPROPRIATE

In *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59 (1st Cir. 2002), the court affirmed default judgment against a party who failed to timely answer and did not request leave to file late. The same applies here: the AG's conduct meets the criteria for default judgment under Rule 55(b).

## IV. FRAUD ON THE COURT – RULE 60(d)(3)

The AG's Office falsely claimed it was never served—despite sworn U.S. Marshal documentation confirming delivery. These deliberate misrepresentations:

- Obstructed Plaintiff's valid default motion;
- Delayed adjudication;
- Impaired judicial integrity.

This conduct meets the threshold for fraud on the court under Fed. R. Civ. P. 60(d)(3) and warrants sanctions under Rule 11 and Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991).

## V. ADA RETALIATION AND DUE PROCESS VIOLATIONS

As a pro se plaintiff with a communication disability pursuing relief under Title II of the ADA, Plaintiff is entitled to access and accommodation. The magistrate's stay—triggered by a post-default filing—allows a state actor to delay redress in violation of:

- 14th Amendment Due Process;
- 42 U.S.C. § 12132 (ADA Title II);
- Equal access rights recognized in *Tennessee v. Lane*, 541 U.S. 509 (2004).

This stay disproportionately harms Plaintiff and risks further spoliation of evidence.

## VI. IMPROPER PRIORITIZATION OF DEFENSE MOTIONS OVER JURY RIGHTS

Plaintiff has demanded a jury trial on civil rights claims. The stay prioritizes dismissal motions (Doc. 17) over enforcement of procedural defaults. This interferes with Plaintiff's Seventh Amendment rights and undermines Rule 1's mandate for just and speedy resolution.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the District Court:

1. VACATE or MODIFY the August 6, 2025 stay order (Doc. 40) under Fed. R. Civ. P. 72(a);
2. DIRECT the Clerk to enter default against the Kansas Attorney General's Office pursuant to Fed. R. Civ. P. 55(a);
3. STRIKE the AG's Motion to Dismiss (Doc. 17) as waived and untimely under Rule 12(h)(1);
4. GRANT Plaintiff's Renewed Motion for Default Judgment (Doc. 34);
5. INVOKE the Court's authority under Rule 11 and Rule 60(d)(3) to issue sanctions or referral for misrepresentations by the AG's Office;
6. REINSTATE scheduling toward a jury trial on surviving claims consistent with Rule 1 and the Seventh Amendment;
7. GRANT any other relief the Court deems just and proper.

Respectfully submitted,                                      Dated: August 6, 2025

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson, Pro Se
1914 5th Ave., Leavenworth, KS 66048

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2025, I electronically filed the foregoing: OBJECTION TO MAGISTRATE JUDGE'S ORDER STAYING CASE AND REQUESTING DISTRICT COURT REVIEW UNDER FED. R. CIV. P. 72(a) with the Clerk of the Court using the CM/ECF system, which will automatically send notice of this filing to all registered counsel of record, including:

- Bradley E. Avery
  Assistant Attorney General
  Memorial Building, 2nd Floor
  120 SW 10th Avenue., Topeka, KS 66612
  Email: brad.avery@ag.ks.gov
- Marc Altenbernt
  General Counsel, Kansas DCF
  555 S. Kansas Avenue, 6th Floor., Topeka, KS 66603
  Email: marc.altenbernt@ks.gov

Respectfully submitted,                                    Dated: August 6, 2025
/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson, Pro Se
1914 5th Avenue
Leavenworth, KS 66048
angeliinacourtrecords@gmail.com
(913) 972-1661

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,
Plaintiff and Next Friend of D.L., a Minor,
v.
KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,
Defendants.

Case No. 2:25-cv-02171-JWB-TJJ
JURY TRIAL DEMANDED

REQUEST FOR CLERK'S ENTRY OF DEFAULT AGAINST KANSAS ATTORNEY
GENERAL'S OFFICE

(Pursuant to Fed. R. Civ. P. 55(a))

Plaintiff Angeliina Lynn Lawson, pro se and on behalf of her minor child D.L., respectfully
requests that the Clerk enter default against Defendant Kansas Attorney General's Office,
pursuant to Federal Rule of Civil Procedure 55(a), and states the following:

1. On April 29, 2025, the Kansas Attorney General's Office was properly served with the
   summons and complaint by the United States Marshals Service via certified mail at 120
   SW 10th Avenue, Topeka, Kansas 66612.
   o Proof of service is reflected in the executed USM-285 Process Receipt and
     Return, which shows delivery at 10:36 AM on April 29, 2025.
   o USPS Tracking Number: 7022 3330 0001 6944 5513 confirms delivery.
2. Under Fed. R. Civ. P. 12(a)(1)(A)(i), the Attorney General's Office was required to
   respond within 21 days—by May 20, 2025.
3. As of that date, the Kansas Attorney General's Office had not filed an answer or motion,
   nor had it sought any extension or leave to respond out of time.
4. The AG's Office did not appear until June 6, 2025, 17 days past the deadline, and only
   after Plaintiff filed a Request for Clerk's Entry of Default (Doc. 12) and a Motion for
   Default Judgment (Doc. 13).
5. Therefore, the Kansas Attorney General's Office has "failed to plead or otherwise
   defend" as required, and entry of default by the Clerk is mandatory under Fed. R. Civ. P.
   55(a).

WHEREFORE, Plaintiff respectfully requests that the Clerk enter default against Defendant
Kansas Attorney General's Office pursuant to Fed. R. Civ. P. 55(a), and that such entry be
recorded on the docket to permit further proceedings under Rule 55(b).

Respectfully submitted,                                    Dated: August 6, 2025

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson, Pro Se
1914 5th Ave.
Leavenworth, KS 66048
AngeliinaCourtRecords@gmail.com
(913) 972-1661

CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August 2025, I filed the foregoing Request for Clerk's
Entry of Default with the Clerk of the Court using the CM/ECF electronic filing system, which
will send notice to:

- Bradley E. Avery, Assistant Attorney General
  Memorial Building, 2nd Floor
  120 SW 10th Avenue, Topeka, KS 66612
  Email: brad.avery@ag.ks.gov
- Marc Altenbernt, General Counsel, Kansas DCF
  555 S. Kansas Avenue, 6th Floor, Topeka, KS 66603
  Email: marc.altenbernt@ks.gov


/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson, Pro Se
1914 5th Ave.
Leavenworth, KS 66048
AngeliinaCourtRecords@gmail.com
(913) 972-1661

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, and as next friend of D.L., a minor,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171-JWB-TJJ

JURY TRIAL DEMANDED

PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT

JUDGMENT AGAINST DEFENDANT KANSAS ATTORNEY GENERAL

I. INTRODUCTION

Plaintiff submits this supplemental brief to provide further evidence of the Kansas Attorney

General's sustained neglect of statutory duties under the Kansas Open Records Act ("KORA"),

K.S.A. 45-215 et seq., which parallels his failure to defend this federal action.

In addition to failing to answer or otherwise defend this lawsuit within the time required by Fed.

R. Civ. P. 12(a), the Attorney General's Office has neglected at least nine KORA complaints

filed by Plaintiff between April and July 2025. While the AG acknowledged receipt of each

complaint and assigned file numbers, it has either failed to act or engaged in perfunctory correspondence with no resolution. This entrenched refusal to discharge statutory obligations underscores the propriety of default judgment under Fed. R. Civ. P. 55.

## II. FACTUAL BACKGROUND

1. Federal Default.

    o The AG was served on April 29, 2025; its response was due May 20, 2025.

    o No timely answer was filed. Plaintiff moved for default on June 3, 2025.

    o An appearance was belatedly entered on June 6, 2025 after service and only after default was sought.

2. KORA Complaints Ignored.

    Plaintiff filed at least nine KORA complaints between April and July 2025, all acknowledged by the AG's Office:

    o Tina Miller, Fourth District Court Clerk – April 21, 2025 (PP-25-000075) AG acknowledging receipt of Plaintiff's request and failing to enforce timelines.

    o Julie Wettstein, Anderson County Clerk – June 4, 2025 (PP-25-000115) AG requested Plaintiff's emails showing payment demand, which were provided; AG never responded further, leaving matter unresolved.

    o Office of Judicial Administration – June 26, 2025 (PP-25-000139, PP-25-000140), PP-25-000143 and PP-25-000142) AG acknowledging receipt of Plaintiff's request and failing to enforce timelines.

    o Johnson County Clerk – June 26, 2025 (PP-25-000138) AG acknowledging receipt of Plaintiff's request and failing to enforce timelines.

- Steven Crossland, ADA Coordinator, First Judicial District Court – July 10, 2025 (PP-25-000156) AG acknowledging receipt of Plaintiff's request and failing to enforce timelines.
- First Judicial District – July 17, 2025 (PP-25-000162) AG acknowledging receipt of Plaintiff's request and failing to enforce timelines.

As of October 2, 2025, none of these matters have been reported resolved.

These failures violate not only Plaintiff's individual rights but also the public transparency mandates outlined in the Kansas Open Records Act brochure issued by the Kansas Bureau of Investigation and Attorney General's Office. Plaintiff's KORA filings followed these procedures precisely. The AG's refusal to act, despite these published responsibilities, confirms a knowing and deliberate obstruction of her rights and those of the public.

3. Pattern of Non-Enforcement.

This inaction demonstrates that the AG:

- Acknowledges statutory duty (by docketing and assigning file numbers).
- Fails to discharge that duty (no determinations, no enforcement, no updates).
- Subjects Plaintiff to constructive denial of remedies at both the state and federal levels.
- Allows government agencies to hide behind redacted emails, missing files, and breed corruption, engage in enterprise behavior, continue to suppress records when the public is exposing misconduct.

This pattern of neglect is not confined to Plaintiff's federal case. In a separate matter a writ of prohibition filed in Kansas Supreme Court challenging judicial misconduct without subject matter jurisdiction by Judge Godderz the Kansas Attorney General's Office failed to enter any appearance or response for over 90 days. Only after repeated filings and escalating harms did the AG finally respond. This reinforces that the AG's refusal to participate in Plaintiff's federal case is part of a broader, institutional practice of stonewalling accountability proceedings where state judicial officials are implicated.

4. The AG's Inaction Facilitates a Pattern of Racketeering, Obstruction, and Retaliatory Defamation

The Kansas Attorney General's systemic refusal to enforce the Kansas Open Records Act (KORA) is not merely bureaucratic delay it is a central mechanism by which an unlawful enterprise of state actors conceals misconduct, destroys evidence, and discredits protected litigants such as Plaintiff.

By neglecting at least nine documented KORA complaints (including ones supported by timely submitted evidence), the AG's Office enabled judges, court officials, and DCF employees to:

- Destroy subpoenaed or discoverable records in violation of Fed. R. Civ. P. 37;
- Obstruct justice by ensuring complaints never reach review or enforcement;
- Withhold exculpatory evidence that would validate Plaintiff's abuse disclosures and ADA retaliation claims; and

- Allow court officers and opposing counsel to falsely characterize Plaintiff as "unstable," "frivolous," or "vexatious" defamatory tropes that formed the basis of judicial rulings and public perception.

This conduct constitutes a pattern of racketeering activity under 18 U.S.C. § 1961(1), including predicate acts of:

- Obstruction of justice (18 U.S.C. §§ 1503, 1512, 1519),

- Wire and mail fraud (18 U.S.C. §§ 1341, 1343),

- Witness retaliation and tampering (18 U.S.C. § 1512(b)), and

- Deprivation of rights under color of law (18 U.S.C. § 242).

Through these actions, the AG's Office operates not as a neutral party, but as a gatekeeper for impunity, facilitating judicial misconduct and chilling constitutional petitioning activity. This constitutes direct injury to Plaintiff's liberty interests, evidentiary rights, ADA protections, and reputational standing all of which are actionable injuries under civil RICO, 18 U.S.C. § 1964(c).

Because Defendant AG's silence empowers this enterprise to continue obstructing discovery and smearing Plaintiff's credibility, default judgment is warranted not only for procedural failure but to interrupt a broader coordinated deprivation of rights.

## III. LEGAL STANDARD

- Fed. R. Civ. P. 55(a) authorizes entry of default when a defendant "has failed to plead or otherwise defend."

- Default judgment is particularly appropriate when failure to respond evidences bad faith or deliberate indifference. See *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991); *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

- Systemic neglect of statutory duties may be considered evidence of willfulness and indifference.

## IV. ARGUMENT

1. The AG Failed to Defend in Federal Court.

   The AG's late entry of appearance does not cure default. The failure to answer within the Rule 12(a) period remains, justifying default under Rule 55(b).

2. The AG's State-Level Neglect Mirrors its Federal Default.

   Nine KORA complaints remain unaddressed, with only perfunctory letters promising review. In the Wettstein matter, Plaintiff complied with the AG's request for supporting documentation, but the AG never followed up, abandoning the complaint. This shows not mere oversight, but a pattern of willful neglect.

3. Plaintiff is Prejudiced by the AG's Conduct.

   By refusing to enforce KORA, the AG leaves Plaintiff without access to records necessary to protect her child and prosecute her case. Combined with the AG's refusal to defend in this federal action, the prejudice is both procedural and substantive.

4. Default Judgment is the Only Adequate Remedy.

   Allowing the AG to continue this pattern would reward systemic misconduct. Entry of default judgment ensures accountability where the AG has consistently failed to meet its obligations.

V. CONCLUSION

Plaintiff respectfully requests that this Court:

1. Enter default judgment against Defendant Kansas Attorney General under <u>Fed. R. Civ. P. 55(b)</u>;

2. Enter declaratory and injunctive relief:

   o  Declaring that the Attorney General failed to fulfill his enforcement duties under KORA;

   o  Ordering prospective injunctive relief requiring the Attorney General to implement constitutionally adequate oversight of open records complaints;

3. Set a hearing under Rule 55(b)(2) to determine appropriate damages and structural relief; and

4. Grant such other relief as the Court deems just and proper.

The cumulative result of these failures is not merely procedural it is a sustained denial of Plaintiff's constitutional rights to access evidence, to petition the government without retaliation, and to seek redress in a forum free of coordinated interference. The Kansas Attorney General's silence has enabled a multi-year campaign of judicial fraud, reputational defamation, evidentiary spoliation, and continued separation from Plaintiff's minor child. Entry of default judgment is the only mechanism available to restore constitutional order and terminate the enterprise conditions that have allowed abuse and retaliation to persist unchecked.

Plaintiff reserves the right to pursue civil remedies under 42 U.S.C. §§ 1983, 1985, 12203, and 18 U.S.C. §§ 1962, 1964, and to seek federal oversight where state judicial mechanisms have collapsed due to coordinated obstruction.

Respectfully submitted,                                    Date: October 2, 2025

/s/ Angeliina Lynn Lawson

Plaintiff, pro se, and next friend of D.L., a minor

1914 5th Avenue, Leavenworth, Kansas 66048

(913) 972-1661 | angeliinacourtrecords@gmail.com

Exhibits

- Exhibit A- I: AG acknowledgment letters for April–July 2025 KORA complaints.

### CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of October, 2025, I electronically filed the foregoing Plaintiff's Supplemental Brief in Support of Motion for Default Judgment Against Defendant Kansas Attorney General with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record registered to receive service via CM/ECF.

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, pro se, and next friend of D.L., a minor



Exhibit A

## STATE OF KANSAS
## OFFICE OF THE ATTORNEY GENERAL

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

April 21, 2025

Angeliina Lawson
1914 5th Ave
Leavenworth, KS 66048

RE:    KORA Complaint - Tina Miller (Fourth District Court Clerk)
       Our File Number PP-25-000075

Dear Ms. Lawson:

On April 15, 2025, we received your KORA complaint that you submitted online April 14, 2025. In your complaint, you alleged that Fourth Judicial District Court Clerk Tina Miller violated the Kansas Open Records Act (KORA).[1] Specifically, you alleged that you made a KORA request to the District Court Clerk on March 31, 2025. You go on to allege that the clerk responded with an acknowledgment letter that was "a boilerplate letter, acknowledging receipt but offering no timeline, no record identification, and no legal justification for withholding." As a remedy, you ask to receive requested records.

This office has jurisdiction to review and resolve complaints alleging a public body or agency violated the KORA.[2] However, on your complaint you asked us to investigate Tina Miller. While the Anderson County District Court Clerk's Office meets the definition of a public agency, individuals do not. Because of this, we have determined to proceed with a review of your compliant as it pertains to the Anderson County District Court Clerk's Office. However, to be clear, an individual is not a public agency within the meaning of the KORA, and thus cannot be found to have violated its provisions or held responsible for the actions of the public agency.

*We have carefully reviewed your complaint and supporting document.* Following our review, we did not identify a violation of the KORA. The KORA provides a procedure that allows the public to request access to and copies of public records[3] held by a public agency. The key to triggering the KORA's provisions concerning the ability to access and obtain copies of public records is a public agency's receipt of a request for records that clearly indicates the requester is invoking the KORA's provisions. A public agency that receives a request invoking the KORA must only produce records in existence at the time of the request, subject to any statutory restrictions. The KORA does not require a public agency to answer questions asking for information or to research and provide answers to questions.

---

[1] K.S.A. 45-215 *et seq.*
[2] *See* K.S.A. 45-222, 45-223, 45-228, 45-251, and 45-253.
[3] *See* K.S.A. 45-217(l)(1) (defining public record).

Exhibit B



**STATE OF KANSAS**
**OFFICE OF THE ATTORNEY GENERAL**

**KRIS W. KOBACH**
ATTORNEY GENERAL

*MEMORIAL HALL*
*120 SW 10TH AVE., 2ND FLOOR*
*TOPEKA, KS 66612-1597*
*(785) 296-2215 • FAX (785) 296-6296*
*WWW.AG.KS.GOV*

June 4, 2025

Angeliina Lawson
1914 5th Avenue
Leavenworth, KS 66048

RE:    KORA Complaint - Anderson County Clerk/Julie Wettstein
       Our File Number PP-25-000115

Dear Ms. Lawson:

On May 23, 2025, we received your KORA complaint that you submitted online that day. In your complaint, you allege that the Anderson County Clerk/Julie Wettstein violated the Kansas Open Records Act (KORA).[1] Specifically, you allege that that on April 25, 2025 you made a KORA request to the Anderson County Clerk. You stated that she (Clerk Julie Wettstein) "... responded with a bill but never responded again and its [sic] coming up on almost a month of waiting." As a resolution to the matter you ask to "Receive requested records."

This office has jurisdiction to review and resolve complaints alleging a public body or agency violated the KORA.[2] However, on your complaint you asked us to investigate Julie Wettstein. While the Anderson County Clerk's Office meets the definition of a public agency, individuals do not. Because of this, we have determined to proceed with a review of your compliant as it pertains to the clerk's office. However, to be clear, an individual is not a public agency within the meaning of the KORA, and thus cannot be found to have violated its provisions or held responsible for the actions of the public agency.

Following a review of your complaint and supporting documents we have determined that we need additional information about your complaint. We are also asking that you provide supporting documents.

In your complaint you stated that you received a response email from Ms. Wettstein "with a bill". Please provide us with a copy of the bill. Also, if you paid for your requested documents, please provide us with the receipt for payment. Since you made your complaint have you had any further communication with Anderson County or the Anderson County Clerk's Office? If so please provide us with copies of those communications.

We ask that you provide a response to our request for additional information and supporting documents on or before **Thursday, June 19, 2025**. If your supporting documents include emails, please provide copies of the emails as they appear in your inbox, including the names, dates/times, subject and text of the email. Please be sure to include any email attachments. If your supporting documents include communication sent to you via United States mail, please provide us with a copy of the envelope as well. You may mail your response and any supporting documents to the address on this letter or email them

---

[1] K.S.A. 45-215 *et seq.*
[2] *See* K.S.A. 45-222, 45-223, 45-228, 45-251, and 45-253.

Letter to Angeliina Lawson
June 4, 2025
Page 2

to the attention of the Open Government Enforcement Unit at OGEU@ag.ks.gov. **Be sure to include the case number listed above on your response.**

We will not take any further action concerning your complaint until we receive the requested information and supporting documents. If we do not receive the requested information and documents by the date set out above, we will consider this matter closed.

We look forward to hearing from you in the near future.

Sincerely,

David Van Parys
First Assistant Attorney General
Open Government Enforcement Section

DVP:rs

133

Exhibit C

## STATE OF KANSAS
## OFFICE OF THE ATTORNEY GENERAL

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

July 10, 2025

Angeliina Lawson
1914 5th Avenue
Leavenworth, KS 66048

RE:   KORA Complaint - Steven Crossland, ADA Coordinator First District Judicial Court
       Our File Number PP-25-000156

Dear Ms. Lawson:

On July 10, 2025, we received your KORA complaint that you submitted online July 9, 2025. In your complaint, you alleged that the Steven Crossland, ADA Coordinator First District Judicial Court violated the Kansas Open Records Act (KORA).[1]

This matter remains pending. We will contact you if further information is needed relating to your complaint. Additionally, we will advise you of the results of our review when it is concluded.

We appreciate your patience as we continue our review of this matter.

Sincerely,

Open Government Enforcement Section
Office of the Kansas Attorney General

DVP:rs

---

[1] K.S.A. 45-215 et seq.



Exhibit D

**STATE OF KANSAS**
**OFFICE OF THE ATTORNEY GENERAL**

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

June 26, 2025

Angeliina Lawson
1914 5th Avenue
Leavenworth, KS 66048

RE:    *KORA Complaint – Fourth Judicial District*
       Our File Number PP-25-000140

Dear Ms. Lawson:

On June 26, 2025, we received your KORA complaint that you submitted online June 25, 2025. In your complaint, you alleged that the Office of Judicial Administration violated the Kansas Open Records Act (KORA).[1]

This matter remains pending. We will contact you if further information is needed relating to your complaint. Additionally, we will advise you of the results of our review when it is concluded.

We appreciate your patience as we continue our review of this matter.

Sincerely,

Open Government Enforcement Section
Office of the Kansas Attorney General

DVP:rs

---

[1] K.S.A. 45-215 *et seq.*



Exhibit E

# STATE OF KANSAS
## OFFICE OF THE ATTORNEY GENERAL

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

June 26, 2025

Angeliina Lawson
1914 5th Avenue
Leavenworth, KS 66048

RE:    KORA Complaint - Office of Judicial Administration
       Our File Number PP-25-000139

Dear Ms. Lawson:

On June 26, 2025, we received your KORA complaint that you submitted online June 25, 2025. In your complaint, you alleged that the Office of Judicial Administration violated the Kansas Open Records Act (KORA).[1]

This matter remains pending. We will contact you if further information is needed relating to your complaint. Additionally, we will advise you of the results of our review when it is concluded.

We appreciate your patience as we continue our review of this matter.

Sincerely,

Open Government Enforcement Section
Office of the Kansas Attorney General

DVP:rs

---

[1] K.S.A. 45-215 *et seq.*

# STATE OF KANSAS
## OFFICE OF THE ATTORNEY GENERAL

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

June 26, 2025

Angeliina Lawson
1914 5th Ave
Leavenworth, KS 66048

RE:     KORA Complaint – Fourth Judicial District
        Our File Number PP-25-000143

Dear Ms. Lawson:

On June 26, 2025, we received your KORA complaint that you submitted online June 25, 2025.  In your complaint, you alleged that the Office of Judicial Administration violated the Kansas Open Records Act (KORA).[1]

This matter remains pending. We will contact you if further information is needed relating to your complaint. Additionally, we will advise you of the results of our review when it is concluded.

We appreciate your patience as we continue our review of this matter.

Sincerely,

Open Government Enforcement Section
Office of the Kansas Attorney General

DVP:rs

---

[1] K.S.A. 45-215 *et seq.*



## STATE OF KANSAS
## OFFICE OF THE ATTORNEY GENERAL

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

June 26, 2025

Angeliina Lawson
1914 5th Avenue
Leavenworth, KS 66048

RE:    KORA Complaint - Johnson County Clerk
       Our File Number PP-25-000138

Dear Ms. Lawson:

On June 26, 2025, we received your KORA complaint that you submitted online June 25, 2025. In your complaint, you alleged that the Johnson County Clerk violated the Kansas Open Records Act (KORA).[1]

This matter remains pending. We will contact you if further information is needed relating to your complaint. Additionally, we will advise you of the results of our review when it is concluded.

We appreciate your patience as we continue our review of this matter.

Sincerely,

Open Government Enforcement Section
Office of the Kansas Attorney General

DVP:rs

---

[1] K.S.A. 45-215 et seq.



Exhibit H

# STATE OF KANSAS
## OFFICE OF THE ATTORNEY GENERAL

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

June 26, 2025

Angeliina Lawson
1914 5th Ave
Leavenworth, KS 66048

RE:    KORA Complaint - Office of Judicial Administration
       Our File Number PP-25-000142

Dear Ms. Lawson:

On June 26, 2025, we received your KORA complaint that you submitted online June 25, 2025. In your complaint, you alleged that the Office of Judicial Administration violated the Kansas Open Records Act (KORA).[1]

This matter remains pending. We will contact you if further information is needed relating to your complaint. Additionally, we will advise you of the results of our review when it is concluded.

We appreciate your patience as we continue our review of this matter.

Sincerely,

Open Government Enforcement Section
Office of the Kansas Attorney General

DVP:rs

---

[1] K.S.A. 45-215 *et seq.*



Exhibit I

## STATE OF KANSAS
## OFFICE OF THE ATTORNEY GENERAL

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

July 17, 2025

Angeliina Lawson
1914 5th Avenue
Leavenworth, KS 66048

RE:    KORA Complaint - First Judicial District
       Our File Number PP-25-000162

Dear Ms. Lawson:

On July 15, 2025, we received your KORA complaint that you submitted online July 15, 2025.  In your complaint, you alleged that the First Judicial District violated the Kansas Open Records Act (KORA).[1]

This matter remains pending. We will contact you if further information is needed relating to your complaint. Additionally, we will advise you of the results of our review when it is concluded.

We appreciate your patience as we continue our review of this matter.

Sincerely,

Open Government Enforcement Section
Office of the Kansas Attorney General

DVP:rs

---

[1] K.S.A. 45-215 *et seq.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, and as next friend of D.L., a minor,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171-JWB-TJJ

Jury Trial Demanded

PLAINTIFF'S MOTION TO SHOW CAUSE WHY THE COURT HAS NOT RULED ON

PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT, RELIEF UNDER RULE 55(b)(2),

AND EMERGENCY JUDICIAL OVERSIGHT

Plaintiff Angeliina Lynn Lawson, pro se and as next friend of D.L., respectfully moves this

Court to issue an order to show cause or otherwise explain the continued judicial inaction and

delay in ruling on multiple pending dispositive and emergency filings. As of the date of this

motion, 187 days have elapsed since this case was filed, and key motions including default

judgment, Rule 55(b)(2) relief, and judicial oversight requests remain unresolved, causing

substantial prejudice and constitutional harm to Plaintiff.

I. PROCEDURAL BACKGROUND

- April 2, 2025: Complaint filed.

- April 29, 2025: Kansas Attorney General was served via U.S. Marshal.

- June 3, 2025: Plaintiff filed Motion for Clerk's Entry of Default and Motion for Default Judgment (Dkts. 12, 13).

- June 6, 2025: AG appeared 17 days late. Plaintiff filed Notice of Late Appearance (Dkt. 15).

- June 10, 2025: Court denied default based on lack of green card return (Dkt. 18).

- August 1, 2025: Proof of service on AG filed via USM-285 return (Dkt. 38).

- August 6, 2025: Court stayed all discovery and pretrial activity pending ruling on motions to dismiss (Dkt. 40).

- August 7, 2025: Plaintiff filed renewed Application for Clerk's Default (Dkt. 42).

- September 4, 2025: Plaintiff filed Notice of Judicial Inaction and Procedural Delay (Dkt. 44).

- September 26, 2025: Plaintiff filed Motion to Certify Interlocutory Appeal under § 1292(b) (Dkt. 45).

- October 2, 2025: Plaintiff filed Supplemental Brief in Support of Default Judgment and Emergency Relief (Dkt. 46).

## II. LEGAL STANDARD

Under Fed. R. Civ. P. 1, the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." Further, Rule 55(b)(2) requires the Court to schedule a hearing on relief following entry of default or in connection with complex damages or injunctive requests.

Courts may issue an order to show cause when judicial inaction, procedural paralysis, or unreasonable delay threatens a litigant's rights under the Constitution, ADA, or civil rules.

III. GROUNDS FOR RELIEF

Plaintiff respectfully shows the Court:

1. Default Judgment Relief Is Fully Briefed and Ripe. Plaintiff's Motion for Default Judgment (Dkt. 34), renewed Application for Default (Dkt. 42), and Supplemental Brief (Dkt. 46) have not been addressed, despite proof of valid service on the AG (Dkt. 38) and procedural violations already detailed.

2. Judicial Delay Has Become Constructive Denial. As of October 6, 2025:
   - 187 days since the case was filed.
   - 160 days since AG was served.
   - 66 days since proof of service was filed.
   - 61 days since the case was stayed with no ruling on motions or scheduling of hearing under Rule 55(b)(2).

This prolonged judicial silence is no longer administrative delay it is now an operational denial of due process and equal protection under color of law. Such inaction, when repeated across cases involving ADA access and systemic obstruction, constitutes a pattern of deprivation of rights actionable under 42 U.S.C. § 1983 and supporting Plaintiff's preserved RICO allegations.

3. Plaintiff Is Prejudiced by Ongoing Harm. The Court's silence has enabled continued obstruction, destruction of evidence, defamation of Plaintiff's character, and

unconstitutional delay in accessing remedies. Discovery has been suspended despite

urgent Rule 37 and subpoena violations.

4.  Constitutional Rights Are Being Impaired. Judicial inaction is infringing on:

    o  Due process rights under the Fourteenth Amendment.

    o  Access to courts under the First Amendment.

    o  ADA Title II protections for disabled litigants.

    o  Statutory rights to default judgment under Rule 55.

## IV. RELIEF REQUESTED

Plaintiff moves this Court to immediately intervene in the ongoing procedural paralysis that now

constitutes a constructive denial of access to the judicial process. The continued failure to act on

fully briefed, time-sensitive motions is enabling ongoing constitutional violations, including

retaliatory delay, denial of default judgment, spoliation of evidence, and unlawful obstruction of

ADA rights.

Plaintiff demands the following relief:

1.  Issue an Order compelling the assigned District and Magistrate Judges to Show Cause

    within 7 days why no rulings have been issued on the following critical and dispositive

    filings:

    o  Plaintiff's Motion for Default Judgment (Dkt. 34);

    o  Plaintiff's Second Application for Default (Dkt. 42);

    o  Plaintiff's Supplemental Brief in Support of Default and RICO-Based Relief (Dkt.
       46);

- Plaintiff's Notice of Judicial Inaction and ADA Violation (Dkt. 44);

- Plaintiff's Motion to Certify Interlocutory Appeal under 28 U.S.C. § 1292(b) (Dkt. 45).

2. Refer this matter to the Chief Judge of the Tenth Circuit for emergency reassignment under 28 U.S.C. § 292 due to persistent judicial inaction, failure to perform core adjudicative functions, and denial of Plaintiff's right to a neutral and accessible forum.

3. Immediately schedule a hearing under Fed. R. Civ. P. 55(b)(2) on appropriate relief, including declaratory judgment, default as to liability, structural injunctive relief, and sanctions for spoliation, obstruction, and retaliatory delay.

4. Alternatively, certify this matter to the Tenth Circuit for emergency appellate oversight, or issue an indicative ruling under Fed. R. Civ. P. 62.1 acknowledging this Court's inability or unwillingness to rule, so that Plaintiff may seek writ or mandamus relief.

5. Grant any and all additional relief necessary to restore constitutional access to justice, including but not limited to:

- Preservation of Plaintiff's appellate and mandamus rights;

- Referral to the Tenth Circuit Judicial Council under the Judicial Conduct and Disability Act;

- Entry of structural orders ensuring Plaintiff's access to an impartial tribunal under the ADA (Title II) and the Due Process Clause of the Fourteenth Amendment.

Respectfully submitted,                                    Dated: October 6, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, pro se, and as next friend of D.L., a minor

1914 5th Avenue, Leavenworth, KS 66048

angeliinacourtrecords@gmail.com | (913) 972-1661


CERTIFICATE OF SERVICE


I hereby certify that on this 6th day of October, 2025, I electronically filed the foregoing

Plaintiff's PLAINTIFF'S MOTION TO SHOW CAUSE WHY THE COURT HAS NOT

RULED ON PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT, RELIEF UNDER

RULE 55(b)(2), AND EMERGENCY JUDICIAL OVERSIGHT with the Clerk of the Court,

which will send notice of electronic filing to all counsel of record registered to receive service

via CM/ECF.


/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, pro se, and next friend of D.L., a minor

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELIINA LAWSON[1],

        Plaintiff,

v.                                    Case No.  25-2171-JWB

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motions to dismiss.  (Docs. 11, 17, 22, 29.) The motions are fully briefed and ripe for decision.  (Docs. 16, 19, 24, 25.)  After review, Defendants' motions are GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART for the reasons stated herein.

**I.  Facts**

The facts set forth herein are taken from Plaintiff's complaint.  (Doc. 1.)[2]  Plaintiff brings this action under 42 U.S.C. § 1983[3] against Defendant state agencies Kansas Department for Children and Families ("DCF") and the Kansas Attorney General's Office ("AG's Office").  She

---

[1] The court notes that Plaintiff has several pending actions that are presently before the undersigned.  In one of those matters, on August 25, 2025, Plaintiff filed a "Notice Regarding Judicial Complaint and Renewed Request for Protective Reassignment."  *See Lawson v. Godderz*, Case No. 25-2199, Doc. 25 (D. Kan. 2025).  According to the notice, Plaintiff's judicial complaint to the Tenth Circuit was filed due to the undersigned's rulings in Plaintiff's cases. Plaintiff also included an exhibit which identifies adverse rulings in both her federal and state cases.  Notably, only one ruling identified was issued by the undersigned.  The remaining rulings in the federal cases were issued by the magistrate judge.  In any event, although Plaintiff filed a judicial complaint against the undersigned and it remains pending before the Tenth Circuit, this court finds that the judicial complaint is frivolous as it merely complains of an adverse ruling against Plaintiff which is not a basis to find improper judicial conduct.  Therefore, the court will proceed to rule on pending motions in this case as there is no basis for the undersigned to recuse from this matter at this time.
[2] Although Plaintiff includes an exhibit list with her complaint identifying sixteen exhibits, there are no exhibits attached to the complaint.  (Doc. 1.)
[3] Plaintiff's response to the motion to dismiss indicates that she has brought a claim under the Americans with Disabilities Act.  (Doc. 16 at 3.)  Her complaint does not state such a claim.

1

also brings claims against DCF employees Amanda Miranda and Heather Dunz in their individual and official capacities.  Plaintiff brings this action on behalf of herself and her minor child.

The allegations at issue appear to involve child protection investigations by DCF regarding Plaintiff's child.  Plaintiff alleges that her son told DCF officials that his father lied to police during an abuse investigation, that his father threatened suicide if the child continued taking his medication, and that the guardian ad litem appointed in the case told the child to refrain from testifying truthfully in court proceedings.  (Doc. 1 at 2.)  Plaintiff also alleges that the child's statements were documented by DCF but concealed from Plaintiff.  She filed a formal request under the Kansas Open Records Act for the records.  In response, Plaintiff contends that DCF produced incomplete, redacted, and misleading records.  Plaintiff argues that she was "subjected to retaliation and obstruction by DCF staff" after she requested the records.  (*Id.*)  As a result, Plaintiff was excluded from proceedings involving her child, which caused Plaintiff to suffer emotional distress and her child to suffer trauma.

Plaintiff's § 1983 claims include a violation of her right to due process by Defendants' failure to notify her of abuse disclosures, falsifying records, and refusal to disclose records; a first amendment retaliation claim against all Defendants; a *Monell* claim against DCF and AG's Office; and state created danger claim against all Defendants.  Defendant DCF moves for dismissal on the basis of sovereign immunity and failure to state a claim.  The individual Defendants move for dismissal on the basis that Plaintiffs' complaint fails to state a claim and that the official capacity claims against them should be dismissed on sovereign immunity.  Defendant AG's Office moves for dismissal on sovereign immunity, insufficient service, and lack of standing.

2

## II.    Standard

To state a valid claim for relief, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). In reviewing a motion to dismiss, all well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Because Plaintiff is proceeding pro se, the court is to liberally construe her filings. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009). However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## III.    Analysis

### A.  Minor Child

At the outset, the court first addresses Plaintiff's claims brought on behalf of her minor child. "[U]nder Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney." *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986). Therefore, any claims on behalf of Plaintiff's child are subject to dismissal.

### B.  Immunity

Next, both DCF and the AG's Office move for dismissal on the basis of sovereign immunity. The Eleventh Amendment bars suits against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). The immunity applies equally to state agencies. *Fla. Dep't*

*of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981). States are entitled to immunity unless that immunity has been waived. A state will be deemed to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673. The State of Kansas has not waived its immunity to be sued here. *See Lee v. McManus*, 589 F. Supp. 633, 638 (D. Kan. 1984). Plaintiff does not assert waiver; rather, Plaintiff argues that sovereign immunity does not apply to prospective relief and she is seeking injunctive relief against the agencies. Plaintiff asserts that her claims against the agencies can survive under the *Ex Parte Young* doctrine.

The *Ex Parte Young* doctrine would allow Plaintiff to bypass sovereign immunity for prospective injunctive relief. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). However, this exception only applies to suits against "state officials, rather than the state itself[.]" *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001). The State of Kansas and its agencies are not "persons" and cannot be sued under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Plaintiff's request for injunctive relief against the state's agencies is accordingly subject to dismissal.

Therefore, Defendant AG's Office's first motion to dismiss (Doc. 17) is granted. The remaining motions to dismiss field by Defendant AG's Office are moot (Docs. 22, 29).[4] Defendant DCF's motion to dismiss (Doc. 11) is granted as to that entity.

---

[4] Although Defendant AG's Office moved to dismiss on the basis of a lack of standing, the court declines to address this issue due to the ruling herein and because the argument was narrowly tailored and did not address all claims. This ruling also results in a denial of Plaintiff's motion for default judgment (Doc. 34) against Defendant AG's Office. The court notes that even if the responsive pleading filed by Defendant AG's Office was untimely or the defense of insufficient service of process was waived, the court would not have entered default judgment in this matter as the court would have exercised its authority to dismiss the action due to sovereign immunity pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

### C.  Individual Defendants

The individual Defendants move for dismissal on the basis that Plaintiff has failed to state a claim against them.  Essentially, they argue that the complaint wholly fails to identify the actions they took and how they violated her constitutional rights.  The court agrees.

"Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013).  To state a claim under Section 1983, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 676).  Allegations generally referring to "Defendants" are "not sufficient to show how [an individual] 'might be individually liable for deprivations of [a plaintiff's] constitutional rights.'" *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quoting *Robbins*, 519 F.3d at 1250).  Plaintiff's factual allegations must sufficiently allege an affirmative link between the constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Plaintiff fails to allege the requisite personal participation as to Defendants Miranda and Dunz.  The only allegations that relate to these Defendant are that they are "state officials responsible for executing, concealing, or failing to remedy the conduct described herein."  (Doc. 1 at 2.)  That is entirely conclusory and insufficient to state a claim under § 1983.

In her response, Plaintiff requests leave to file an amended complaint should the court find her allegations deficient.  (Doc. 16 at 4.)[5]  The court is to "give leave to amend freely, especially

---

[5] The court notes that Plaintiff's response exceeds the page limits allowed by this court's local rule.  D. Kan. 6.1.  In the future, Plaintiff must comply with this court's rules on page limitations and other rules.  The failure to comply may result in a filing being stricken from the record.

when the plaintiff is proceeding pro se." *Panicker v. State Dep't of Agric.*, 498 F. App'x 755, 757 (10th Cir. 2012).  Plaintiff will be allowed an opportunity to amend her complaint against both individual Defendants.  Plaintiff is cautioned to limit her claims to those individual Defendants as the court has determined that Plaintiff's complaint against DCF and the AG's Office must be dismissed.  Further, Plaintiff cannot bring a claim on behalf of her child unless she is represented by counsel.  To the extent Plaintiff's amended complaint asserts official capacity claims against the individual Defendants, those claims must be limited to prospective relief.

## IV.    Conclusion

Defendant AG's Office's motion to dismiss on the basis of sovereign immunity (Doc. 17) is GRANTED.  The remaining motions to dismiss filed by Defendant AG's Office are MOOT. (Docs. 22, 29.)  Further, Plaintiff's motion for default judgment (Doc. 34), application for clerk's entry of default (Doc. 42), and Plaintiff's objection[6] (Doc. 41) to Magistrate Judge James's order staying discovery pending a ruling on the motions to dismiss are DENIED AS MOOT.

The DCF Defendants' motion (Doc. 11) is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART.  Defendant DCF's motion to dismiss is GRANTED.  The individual Defendants' motion is TAKEN UNDER ADVISEMENT.  Plaintiff is to file an amended complaint on or before October 30, 2025.  The amended complaint must comply with this order and Federal Rule of Civil Procedure 8(a).  Should Plaintiff fail to file an amended complaint, this matter will be dismissed without further notice.

IT IS SO ORDERED.  Dated this 9th day of October, 2025.

---

[6] Even if this objection is not moot due to the ruling herein, the court finds no error in the decision to stay this matter until a ruling on dispositive motions.

__s/ John W. Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, and as Next Friend of D.L., a minor,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171-JWB-TJJ

JURY TRIAL DEMANDED

NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Plaintiff Angeliina Lynn Lawson, pro se and as next friend of minor D.L., hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final Memorandum and Order entered on October 9, 2025 (Dkt. 48), which effectively constitutes a final judgment as to all claims against the Kansas Department for Children and Families and the Kansas Attorney General's Office:

1.   The Memorandum and Order entered on October 9, 2025 (Dkt. 48), which:

   a)   Granted Defendants' motions to dismiss as to all claims against the defaulted Kansas Attorney General's Office and Kansas Department for Children and Families (KDCF);

1

b)  Denied Plaintiff's Motion for Default Judgment (Dkt. 34), Application for Clerk's Entry of Default (Dkt. 42), Objection to Stay Order (Dkt. 41), and related filings without Rule 55(b)(2) hearing;

c)  Dismissed all claims brought on behalf of Plaintiff's minor child, D.L., without conducting the required Rule 17(c) analysis;

d)  Denied relief without addressing Plaintiff's jury trial demand, ADA retaliation claims, or the pending Motion to Certify Interlocutory Appeal (Dkt. 45); and

e)  Labeled Plaintiff's judicial misconduct complaint as 'frivolous' while simultaneously ruling on the subject matter of that complaint, in violation of the Code of Conduct for United States Judges, Canon 2 "A judge should avoid impropriety and the appearance of impropriety in all activities" and Canon 3(C) "A judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned" and the judges have not proven themselves trustworthy by demonstrating improper bias and retaliatory animus. Plaintiff does not trust the presiding judges can rule impartially with slanderous statements made to discredit claims and obstruct access to a judicial forum.

Plaintiff also objects to the Court's dismissal of all claims asserted on behalf of D.L., a minor, without addressing Plaintiff's role as next friend under Rule 17(c), her status as his ADA advocate, or the procedural requirements to protect the interests of disabled minors in civil rights proceedings.

This denial of standing occurred without hearing or factual inquiry, violating the Due Process Clause, Rule 17(c), and ADA Title II access rights.

2. Any and all prior interlocutory rulings, orders, and omissions adverse to Plaintiff, including but not limited to:

    a) The Order Staying Discovery and Pretrial Proceedings entered on August 6, 2025 (Dkt. 40);

    b) The Court's refusal to issue rulings on Plaintiff's Rule 72(a) objection (Dkt. 41), jury trial protection notice (Dkt. 43), and motion for interlocutory appeal (Dkt. 45);

    c) The Court's failure to hold a Rule 16 conference or Rule 55(b)(2) hearing following the procedural default of the Kansas Attorney General's Office, resulting in constructive denial of due process and equal protection.

This includes the Court's failure to schedule a Rule 16 conference, disregard of Plaintiff's proposed scheduling order, suppression of Plaintiff's Rule 37 enforcement rights, and preemptive denial of Plaintiff's Seventh Amendment right to a jury trial under Fed. R. Civ. P. 38.

This appeal is taken pursuant to 28 U.S.C. § 1291, § 1292(b) (to the extent certification is deemed implicit), and Federal Rules of Appellate Procedure 3 and 4.

## II. BASIS OF APPEAL AND LEGAL MAXIMS INVOLVED

The district court allowed defaulted Defendants to prevail by dismissal without hearing, contrary to the maxim "Justice delayed is justice denied" (Black's Law Dictionary 11th ed.). By suppressing evidence, refusing hearings, and discrediting judicial complaints, the court violated core maxims and constitutional principles:

a) U.S. Const. amend. I Right to petition the Government for redress of grievances; retaliation for protected petitioning is unconstitutional.

b) U.S. Const. amend. V & XIV No person shall be deprived of life, liberty, or property without due process of law;

c) equal protection requires impartial application of procedural rules.

d) U.S. Const. amend. VII The right of trial by jury shall be preserved in civil cases where value in controversy exceeds twenty dollars; this is a fundamental right, not a discretionary privilege.

e) Maxim of Law: Ubi jus ibi remedium ("Where there is a right, there is a remedy"). By denying default relief and hearings, the court destroyed the remedy for the rights asserted. Maxim of Law: Audi alteram partem ("Let the other side be heard"). A court that refuses to hear a party on motions of right violates natural justice.

f) Canon 3(A)(4) A judge must "accord to every person who has a legal interest in a proceeding the full right to be heard." This was not observed in Plaintiff's case.

"Justice must not only be done; it must be seen to be done."

– *R v. Sussex Justices, ex parte McCarthy* (1924)

Moreover, Plaintiff objects to the procedural posture imposed by the district court, which effectively required Plaintiff to defend the factual merits of her claims at the pleading stage without the benefit of discovery. Plaintiff's proposed scheduling order was disregarded, the Rule 16 conference never occurred, and a broad stay (Dkt. 40) was issued sua sponte before any evidentiary disclosures or depositions could take place. For the court to then dismiss Plaintiff's claims for "lack of factual support" (Dkt. 48) while discovery was affirmatively blocked

constitutes a denial of procedural due process and contradicts the pleading standards set forth in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiff's verified complaint and sworn declarations, when accepted as true, were more than sufficient to survive a motion to dismiss at this early stage.

## III. JURISDICTIONAL AND STATUTORY BASES

This appeal is taken under 28 U.S.C. § 1291 (final decisions of district courts) and, to the extent applicable, § 1292(b) (interlocutory orders affecting control of the case), together with Federal Rules of Appellate Procedure 3 and 4.

Plaintiff further preserves her federal rights under:

a) Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 and § 12203 (anti-retaliation);

b) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968;

c) 42 U.S.C. § 1983, for deprivation of civil rights under color of law; and

d) Fed. R. Civ. P. 55, 60(b), 38, and 37, protecting default judgment, fraud-on-the-court relief, right to a civil jury trial, and evidence preservation and enforcement under Rule 37.

## IV. SUMMARY OF ISSUES ON APPEAL

1. Whether the district court erred as a matter of law by dismissing Plaintiff's claims after Defendants defaulted, without holding a mandatory Rule 55(b)(2) hearing, and while ignoring Plaintiff's renewed default motion and related filings.

5

2. Whether the district court's dismissal of Plaintiff's ADA retaliation claims and denial of her demand for a jury trial violated the First, Seventh, and Fourteenth Amendments to the U.S. Constitution.

3. Whether the court's sua sponte characterization of a pending judicial misconduct complaint as "frivolous," while simultaneously ruling on matters central to that complaint, violated Canons 2 and 3(C)(1) of the Code of Judicial Conduct and the appearance-of-bias standard established in Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

4. Whether the court's refusal to rule on Plaintiff's pending motions (Dkts. 41, 43, 44, 45, 46, 47), including her Motion to Show Cause and Motion for Interlocutory Appeal, constituted a constructive denial of due process, equal protection, and access to courts under the First and Fourteenth Amendments.

5. Whether the dismissal of claims brought on behalf of a disabled minor without appointing a guardian ad litem or conducting a hearing under Rule 17(c) violated the Due Process Clause and the long-standing equitable maxim that "the law protects the vulnerable who cannot protect themselves."

6. Whether the district court's pattern of procedural suppression—including denial of default, suppression of ADA and civil rights claims, refusal to rule on Rule 37 and Rule 60(b)(3) motions, and retaliatory language in judicial orders—supports Plaintiff's claim of systemic obstruction and retaliatory enterprise conduct under 42 U.S.C. § 1983 and 18 U.S.C. § 1962(c) (civil RICO).

## V. RELIEF REQUESTED

"Right and justice shall be administered without sale, denial, or delay." (U.S. Const. Amend. V; Kansas Bill of Rights Art. VI).

Plaintiff respectfully requests that this Honorable Court intervene to restore the integrity of judicial process and enforce the constitutional guarantees denied below. The record demonstrates a pattern of deliberate delay, suppression of duly filed motions, and retaliatory orders that deprived Plaintiff of access to an impartial tribunal and equal protection of the laws.

Accordingly, Plaintiff requests that the Tenth Circuit:

1. Reverse the District Court's Memorandum and Order of October 9, 2025 (Dkt. 48);

2. Vacate the findings denying Plaintiff's motions for default judgment;

3. Plaintiff further requests that this appeal be reviewed in light of her previously filed judicial misconduct complaint and accompanying addendum, which document a continuing pattern of procedural obstruction, retaliatory rulings, and systemic suppression of constitutional claims by the assigned judges.

4. Reinstate Plaintiff's Rule 55(b)(2) default rights and ADA Title II retaliation claims for adjudication on the merits;

5. Remand the case for a full jury trial before a neutral, reassigned tribunal under 28 U.S.C. § 292 to ensure impartiality and ADA compliance;

6. Order structural and injunctive relief directing the lower court to safeguard Plaintiff's due-process, equal-protection, and jury-trial rights in future proceedings; and

7. Grant any further relief this Court deems just and proper to redress continuing harm from judicial retaliation and to preserve the rule of law.

In the spirit of enduring legal principle *Fiat justitia, ruat caelum* ("Let justice be done though the heavens fall") Plaintiff seeks nothing more than the fair and lawful administration of justice guaranteed by the Constitution.

Respectfully submitted,                                                   Dated: October 9, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Pro Se Plaintiff and Next Friend of D.L.

(Address on file)

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2025, I electronically filed the foregoing: NOTICE OF APPEAL with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all parties and counsel of record who are registered to receive service via CM/ECF.

I further certify that I am proceeding pro se and that this filing preserves all constitutional, statutory, and appellate rights under federal law.

Respectfully submitted,

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Pro Se Plaintiff and Next Friend of D.L.

# UNITED STATES DISTRICT COURT
### OFFICE OF THE CLERK
### DISTRICT OF KANSAS



**SKYLER B. O'HARA**
CLERK OF COURT
E-MAIL: Skyler_OHara@ksd.uscourts.gov
(913) 735-2220

**STEPHANIE MICKELSEN**
CHIEF DEPUTY CLERK
E-MAIL: stephanie_mickelsen@ksd.uscourts.gov
(913) 735-2235

490 U.S.COURTHOUSE
444 SE QUINCY
TOPEKA, KS 66683

204 U.S.COURTHOUSE
401 N. MARKET
WICHITA, KS 67202

259 ROBERT J. DOLE U.S. COURTHOUSE
500 STATE AVENUE
KANSAS CITY, KS 66101

October 10, 2025

**SEE NOTICE OF ELECTRONIC FILING (Pro Se Appellant Appeal)**

RE: Lawson v. Kansas Department of Children and Families et al
District Court Case No. 2:25-cv-2171-JWB-TJJ
Notice of Interlocutory Appeal filed by Plaintiff Angeliina Lynn Lawson
Fee Status: NOT PAID

The following documents are for the parties in connection with the Notice of Interlocutory Appeal – Docket Sheet, Memorandum and Order (Doc. 48) and Notice of Interlocutory Appeal (Doc. 49).

If you have any questions, please contact the Office of the Clerk of the U.S. Court of Appeals in Denver, Colorado at (303) 844-3157.

Sincerely,
Skyler B. O'Hara
Clerk of the Court

By: s/ M. McGivern, Deputy Clerk

cc: Clerk, U.S. Court of Appeals

INTERLOCUTORYAPPEAL,LC4,SCHEDCONFSET

# U.S. District Court
## DISTRICT OF KANSAS (Kansas City)
## CIVIL DOCKET FOR CASE #: 2:25−cv−02171−JWB−TJJ

| | |
|---|---|
| Lawson v. Kansas Department of Children and Families et al | Date Filed: 04/02/2025 |
| Assigned to: Chief District Judge John W. Broomes | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Teresa J. James | Nature of Suit: 440 Civil Rights: Other |
| related Case:  2:25−cv−02199−JWB−TJJ | Jurisdiction: Federal Question |
| Cause: 28:1983 Civil Rights | |

**Plaintiff**

**Angeliina Lynn Lawson**
*E−Filing & ECF Notifications; as
natural parent and next friend of
minor*
D. L.

represented by **Angeliina Lynn Lawson**
1914 5th Avenue
Leavenworth, KS 66048
913−972−1661
Email: angeliinacourtrecords@gmail.com
PRO SE
*Bar Number:*
*Bar Status:*

V.

**Defendant**

**Kansas Department of Children and
Families**
*TERMINATED: 10/09/2025*

represented by **Marc Altenbernt**
Kansas Department for Children and
Families − Kansas Avenue
555 S. Kansas Avenue
Topeka, KS 66603
316−337−6752
Fax: 785−296−4960
Alternative Phone: 785−250−0380
Cell Phone:
Email: marc.altenbernt@ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28745*
*Bar Status: Active*

**Defendant**

**Kansas Attorney General, Office of**
*TERMINATED: 10/09/2025*

represented by **Brad E. Avery , I**
Attorney General
120 SW 10th Ave.
Topeka, KS 66612
785−220−9634
Alternative Phone:
Cell Phone:
Email: brad.avery@ag.ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 13071*
*Bar Status: Active*

**Defendant**

**Amanda Miranda**
*in their individual and official capacities*

represented by **Marc Altenbernt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28745*
*Bar Status: Active*

**Defendant**

| | |
|---|---|
| **Heather Dunz**<br>*in their individual and official capacities* | represented by **Marc Altenbernt**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>Bar Number: 28745<br>Bar Status: Active |

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 04/02/2025 | 1 | COMPLAINT (No Summons Issued) with trial location of Kansas City, filed by Angeliina Lynn Lawson. (Attachments: # 1 Exhibit List)(nac) (Entered: 04/02/2025) |
| 04/02/2025 | 2 | CIVIL COVER SHEET re 1 Complaint by Plaintiff Angeliina Lynn Lawson. (nac) (Entered: 04/02/2025) |
| 04/02/2025 | 3 | MOTION for Leave to Proceed in forma pauperis by Plaintiff Angeliina Lynn Lawson. NOTE – Access to document is restricted pursuant to the courts privacy policy. (Motion referred to Magistrate Judge Teresa J. James,) (nac) (Entered: 04/02/2025) |
| 04/02/2025 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge John W. Broomes and Magistrate Judge Teresa J. James for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)<br><br>**NOTICE OF MAGISTRATE JUDGE AVAILABILITY: A United States magistrate judge is available to conduct all proceedings in this civil action if all parties voluntarily consent. Information & consent forms are available at https://www.uscourts.gov/file/459/download (nac) (Entered: 04/02/2025)** |
| 04/02/2025 | | NOTICE OF DEFICIENCY – Designation of place of trial is missing. The filing party/attorney is directed to correct the deficiency immediately. Mailed to Angeliina Lynn Lawson at 1914 5th Ave. Leavenworth, KS 66048 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (nac) (Entered: 04/02/2025) |
| 04/02/2025 | 4 | DESIGNATION OF PLACE OF TRIAL filed by Plaintiff Angeliina Lynn Lawson – trial to be held in Kansas City. (nac) (Entered: 04/02/2025) |
| 04/09/2025 | 5 | DOCKET ANNOTATION: Plaintiff Angeliina Lynn Lawson is a registered pro se participant with ECF notifications only. (gw) (Entered: 04/09/2025) |
| 04/15/2025 | | DOCKET ANNOTATION: Plaintiff Angeliina Lynn Lawson has requested and received e–filing rights. Ms. Lawson is a registered pro se participant with e–filing & ECF notifications. (gw) (Entered: 04/15/2025) |
| 04/15/2025 | 6 | ORDER granting 3 Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (in forma pauperis). Plaintiff shall provide the Clerk's Office complete address information for each Defendant named in the Complaint no later than May 2, 2025. Signed by Magistrate Judge Teresa J. James on 4/15/2025.(byk) (Entered: 04/15/2025) |
| 04/15/2025 | 7 | NOTICE OF ADDRESSES FOR SERVICE PURPOSES by Angeliina Lynn Lawson. (jsh) (Entered: 04/15/2025) |
| 04/16/2025 | | SUMMONS ISSUED as to Heather Dunz (issued to two different addresses for individual and official capacities), Kansas Attorney General, Office of, Kansas, State of, Department for Children and Families, and Amanda Miranda (issued to two different addresses for individual and official capacities). (Summonses issued to US Marshal for service.) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to US Marshal for service with complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (nac) (Entered: 04/16/2025) |

| 05/19/2025 | 8 | CLERKS ORDER EXTENDING TIME until 6/2/2025 for Defendants Heather Dunz, Kansas Department of Children and Families, and Amanda Miranda to answer or otherwise plead. Signed by deputy clerk on 5/19/2025. (jsh) (Entered: 05/19/2025) |
|---|---|---|
| 05/28/2025 | 9 | SUMMONS RETURNED EXECUTED –– Certified Mail USM 285 by Angeliina Lynn Lawson upon Heather Dunz in their individual and official capacities. (Attachments: # 1 Dunz Individual Capacity)(ca) (Entered: 05/28/2025) |
| 05/28/2025 | 10 | SUMMONS RETURNED EXECUTED –– Certified Mail USM 285 by Angeliina Lynn Lawson upon Amanda Miranda in their individual and official capacities. (Attachments: # 1 Miranda Individual Capacity)(ca) (Entered: 05/28/2025) |
| 06/02/2025 | 11 | MOTION to Dismiss and Memorandum in Support by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda. (Altenbernt, Marc) (Entered: 06/02/2025) |
| 06/03/2025 | 12 | APPLICATION FOR CLERKS ENTRY OF DEFAULT by Angeliina Lynn Lawson. (mls) (Entered: 06/04/2025) |
| 06/03/2025 | 13 | MOTION for Default Judgment by Plaintiff Angeliina Lynn Lawson. (mls) (Entered: 06/04/2025) |
| 06/06/2025 | 14 | ENTRY OF APPEARANCE by Brad E. Avery, I on behalf of Kansas Attorney General, Office of. (Avery, Brad) (Entered: 06/06/2025) |
| 06/06/2025 | 15 | NOTICE REGARDING LATE APPEARANCE by Angeliina Lynn Lawson. (sz) (Entered: 06/06/2025) |
| 06/06/2025 | 16 | MEMORANDUM IN OPPOSITION by Plaintiff Angeliina Lynn Lawson re 11 Motion to Dismiss. (Attachments: # 1 Exhibit List) (mls) (Entered: 06/09/2025) |
| 06/09/2025 | 17 | MOTION to Dismiss by Defendant Kansas Attorney General, Office of. (Avery, Brad) (Entered: 06/09/2025) |
| 06/10/2025 | 18 | ORDER denying application for clerk's entry of default (Doc. 12 ) and motion for default judgment (Doc. 13 ). The record does not reflect that the summons for the Kansas Attorney General's Office was returned executed. Therefore, default is not appropriate. Entered by District Judge John W. Broomes on 06/10/2025. Mailed to pro se party Angeliina Lynn Lawson by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr) (Entered: 06/10/2025) |
| 06/10/2025 | 19 | OPPOSITION by Plaintiff Angeliina Lynn Lawson re 17 Motion to Dismiss. (mls) (Entered: 06/11/2025) |
| 06/25/2025 | 20 | INITIAL ORDER SETTING SCHEDULING/STATUS CONFERENCE: Scheduling/Status Conference set for 7/24/2025 at 11:00 AM (central time) by telephone before Magistrate Judge Teresa J. James. Participants must dial CONFERENCE LINE 1–855–244–8681 and enter ACCESS CODE 2311 284 1047 to join the conference. The Court will not require the parties to hold a planning conference, submit a proposed Scheduling Order, or exchange initial disclosures at this time. Instead, the parties should review the form scheduling order and be prepared to suggest and discuss proposed case deadlines and settings. Signed by Magistrate Judge Teresa J. James on 6/25/2025. Sent to pro se plaintiff Lawson by email and regular mail. (byk) (Entered: 06/25/2025) |
| 06/25/2025 | 21 | (DISREGARD THIS ENTRY – incorrect ECF event selected; see 25 for correct filing.) –– RESPONSE to 16 Memorandum in Opposition to Motion to Dismiss by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda. (Altenbernt, Marc) Modified on 7/3/2025. (kmc) (Entered: 06/25/2025) |
| 06/25/2025 | 25 | REPLY TO RESPONSE TO MOTION by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda re 11 Motion to Dismiss. (Document originally filed as DE 21 using the incorrect ECF event; this refiling of the entry was made for administrative purposes.)(kmc) (Entered: 07/03/2025) |
| 06/30/2025 | 22 | MOTION to Dismiss for Lack of Service by Defendant Kansas Attorney General, Office of. (Avery, Brad) (Entered: 06/30/2025) |

| 06/30/2025 | 24 | SUPPLEMENTAL OPPOSITION by Plaintiff Angeliina Lynn Lawson re 22 Motion to Dismiss. (sz) (Entered: 07/01/2025) |
|---|---|---|
| 07/01/2025 | 23 | SUMMONS RETURNED EXECUTED –– USM285 Certified Mail by Angeliina Lynn Lawson upon Kansas Department of Children and Families. (ca) (Additional attachment(s) added on 8/1/2025: # 1 Full document) (kao). Modified on 8/1/2025 – the original pdf attachment was missing pages; the complete document has been added to the entry. (kao) (Entered: 07/01/2025) |
| 07/03/2025 | 26 | NOTICE Regarding Scheduling Conference and Proceedings by Angeliina Lynn Lawson. (sz) (Entered: 07/03/2025) |
| 07/03/2025 | 27 | NOTICE Regarding Defendants' Noncompliance with Lawful Subpoenas by Angeliina Lynn Lawson. (sz) (Entered: 07/07/2025) |
| 07/14/2025 | 28 | NOTICE of Fraud Upon the Court and Preservation of Rule 60(b)(3) Relief by Angeliina Lynn Lawson. (ca) (Entered: 07/15/2025) |
| 07/16/2025 | 29 | THIRD MOTION to Dismiss for Lack of Standing by Defendant Kansas Attorney General, Office of. (Avery, Brad) (Entered: 07/16/2025) |
| 07/16/2025 | 30 | SUPPLEMENTAL DECLARATION by Angeliina Lynn Lawson. (sz) (Entered: 07/16/2025) |
| 07/17/2025 | 31 | SECOND NOTICE Regarding Defendants' Noncompliance with Lawful Subpoenas and Pattern of Discovery Obstruction by Angeliina Lynn Lawson. (Attachment: # 1 Exhibit A) (msb) (Entered: 07/17/2025) |
| 07/18/2025 | 32 | RESPONSE to 31 Second Notice Regarding Defendants' Noncompliance with Lawful Subpoenas and Pattern of Discovery Obstruction by Defendants Heather Dunz, Kansas Department of Children and Families, Amanda Miranda. (Altenbernt, Marc) (Entered: 07/18/2025) |
| 07/18/2025 | 33 | DECLARATION IN OPPOSITION to 32 Response/Request to Strike 31 Second Notice of Noncompliance of Subpoena by Angeliina Lynn Lawson. (sz) Modified on 7/21/2025 to link to DE 32 . (jal) Modified on 10/10/2025 to re–title. (mam) (Entered: 07/18/2025) |
| 07/23/2025 | 34 | RENEWED MOTION for Default Judgment by Plaintiff Angeliina Lynn Lawson. (sz) (Entered: 07/23/2025) |
| 07/23/2025 | 35 | ORDER CONTINUING SCHEDULING/STATUS CONFERENCE. The 7/24/2025 Scheduling/Status Conference is hereby continued one week to 7/31/2025 at 10:00 AM (central) by telephone before Magistrate Judge Teresa J. James. Participants must dial CONFERENCE LINE: 1–855–244–8681 and enter ACCESS CODE: 2311 284 1047 to join the conference. Signed by Magistrate Judge Teresa J. James on 7/23/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(byk) (Entered: 07/23/2025) |
| 07/24/2025 | 36 | ORDER REGARDING SCHEDULING/STATUS CONFERENCE. The Scheduling/Status Conference set for 7/31/2025 will now be held at 03:30 PM (central) and by Zoom Videoconference before Magistrate Judge Teresa J. James. Chambers will email all participants the Zoom link and instructions a couple business days prior to the conference. The parties should review the form scheduling order on the Court's website and be prepared to suggest and discuss proposed case deadlines and settings and the other topics listed in the 20 Initial Order Setting Scheduling/Status Conference. The parties may, but are not required to, email chambers a proposed scheduling order. If any party wishes to submit a proposed scheduling order, it must be emailed to chambers and all other parties no later than 24 hours prior to the conference. Signed by Magistrate Judge Teresa J. James on 7/24/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(byk) (Entered: 07/24/2025) |
| 07/31/2025 | 37 | MINUTE ENTRY for proceedings held before Magistrate Judge Teresa J. James: SCHEDULING CONFERENCE held on 7/31/2025. Order to follow. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (kf) (Entered: 07/31/2025) |

| 08/01/2025 | 38 | SUMMONS RETURNED EXECUTED –– Certified Mail (USM–285) by Angeliina Lynn Lawson upon Kansas Attorney General, Office of served on 4/29/2025. (kao) (Entered: 08/01/2025) |
|---|---|---|
| 08/01/2025 | 39 | NOTICE OF DOCKET TEXT MODIFICATION by Deputy Clerk: The original document attached to docket entry 23 was missing pages. The complete document has been added to that entry and is attached to this entry for noticing purposes only. (kao) (Entered: 08/01/2025) |
| 08/06/2025 | 40 | ORDER STAYING DISCOVERY AND PRETRIAL PROCEEDINGS. All discovery and other further pretrial proceedings in this case––including all deadlines and requirements under Fed. R. Civ. P. 26––are temporarily stayed with respect to all parties until the District Judge rules on the pending Motions to Dismiss (ECF Nos. 11, 17, 22, and 29). If any of Plaintiff's claims remain after the ruling(s) on the pending motions to dismiss, defense counsel shall email the chambers of the undersigned Magistrate Judge, within seven (7) days of the ruling, with suggested dates for setting a telephone scheduling conference. Signed by Magistrate Judge Teresa J. James on 8/6/2025. (byk) (Entered: 08/06/2025) |
| 08/06/2025 | 41 | RESPONSE (titled OBJECTION) by Plaintiff Angeliina Lynn Lawson Re 40 Order Staying Case. (msb) (Entered: 08/07/2025) |
| 08/06/2025 | 42 | APPLICATION FOR CLERKS ENTRY OF DEFAULT against Kansas Attorney General's Office by Angeliina Lynn Lawson. (msb) (Entered: 08/07/2025) |
| 08/06/2025 | 43 | NOTICE to Court of Jury Trial Protection and Demand for Scheduling by Angeliina Lynn Lawson. (msb) (Entered: 08/07/2025) |
| 09/04/2025 | 44 | NOTICE (titled: Notice of Judicial Inaction and Procedural Delay in Violation of Rule 1, Due Process, and Plaintiff's ADA Access Rights) by Angeliina Lynn Lawson. (jal) (Entered: 09/05/2025) |
| 09/26/2025 | 45 | MOTION for Certificate of Appealability, MOTION to Expedite (titled: Motion to Certify Interlocutory Appeal Under 28 U.S.C. § 1292(b) and Motion to Expedite Ruling Due to Prejudice from Stay and Judical Inaction) by Plaintiff Angeliina Lynn Lawson. (Motion referred to Magistrate Judge Teresa J. James.) (jal) (Entered: 09/26/2025) |
| 10/02/2025 | 46 | SUPPLEMENTAL BRIEF IN SUPPORT of 34 Motion for Default Judgment by Plaintiff Angeliina Lynn Lawson. (mam) (Entered: 10/02/2025) |
| 10/06/2025 | 47 | MOTION to Show Cause Why the Court Has Not Ruled on Plaintiff's Motions for Default Judgment, Relief Under Rule 55(b)(2) and Emergency Judicial Oversight by Plaintiff Angeliina Lynn Lawson. (Motion referred to Magistrate Judge Teresa J. James.) (mam) (Entered: 10/06/2025) |
| 10/09/2025 | 48 | MEMORANDUM AND ORDER. Defendant AG's Office's motion to dismiss on the basis of sovereign immunity (Doc. 17 ) is granted. The remaining motions to dismiss filed by Defendant AG's Office are moot (Docs. 22 , 29 ). Plaintiff's motion for default judgment (Doc. 34 ), application for clerk's entry of default (Doc. 42 ), and Plaintiff's objection (Doc. 41 ) to Magistrate Judge James's order staying discovery pending a ruling on the motions to dismiss are denied as moot.The DCF Defendants' motion (Doc. 11 ) is granted in part and taken under advisement in part. Defendant DCF's motion to dismiss is granted. The individual Defendants' motion is taken under advisement. Plaintiff is to file an amended complaint on or before 10/30/2025. The amended complaint must comply with this order and Federal Rule of Civil Procedure 8(a). Should Plaintiff fail to file an amended complaint, this matter will be dismissed without further notice. Signed by Chief District Judge John W. Broomes on 10/9/2025. (mam) (Entered: 10/09/2025) |
| 10/09/2025 | 49 | NOTICE OF INTERLOCUTORY APPEAL as to 48 Memorandum and Order by Plaintiff Angeliina Lynn Lawson. (mam) (Entered: 10/10/2025) |
| 10/10/2025 |  | APPEAL FEE STATUS: Filing fee not paid re 49 Notice of Interlocutory Appeal on behalf of Plaintiff Angeliina Lynn Lawson; filer granted IFP status on 4/15/2025. (This is a text entry only. There is no.pdf document associated with this entry.) (mam) (Entered: 10/10/2025) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELIINA LAWSON[1],

        Plaintiff,

v.                                            Case No.  25-2171-JWB

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' motions to dismiss.  (Docs. 11, 17, 22, 29.) The motions are fully briefed and ripe for decision.  (Docs. 16, 19, 24, 25.)  After review, Defendants' motions are GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART for the reasons stated herein.

### I.   Facts

The facts set forth herein are taken from Plaintiff's complaint.  (Doc. 1.)[2]  Plaintiff brings this action under 42 U.S.C. § 1983[3] against Defendant state agencies Kansas Department for Children and Families ("DCF") and the Kansas Attorney General's Office ("AG's Office").  She

---

[1] The court notes that Plaintiff has several pending actions that are presently before the undersigned.  In one of those matters, on August 25, 2025, Plaintiff filed a "Notice Regarding Judicial Complaint and Renewed Request for Protective Reassignment."  *See Lawson v. Godderz*, Case No. 25-2199, Doc. 25 (D. Kan. 2025).  According to the notice, Plaintiff's judicial complaint to the Tenth Circuit was filed due to the undersigned's rulings in Plaintiff's cases. Plaintiff also included an exhibit which identifies adverse rulings in both her federal and state cases.  Notably, only one ruling identified was issued by the undersigned.  The remaining rulings in the federal cases were issued by the magistrate judge.  In any event, although Plaintiff filed a judicial complaint against the undersigned and it remains pending before the Tenth Circuit, this court finds that the judicial complaint is frivolous as it merely complains of an adverse ruling against Plaintiff which is not a basis to find improper judicial conduct.  Therefore, the court will proceed to rule on pending motions in this case as there is no basis for the undersigned to recuse from this matter at this time.
[2] Although Plaintiff includes an exhibit list with her complaint identifying sixteen exhibits, there are no exhibits attached to the complaint.  (Doc. 1.)
[3] Plaintiff's response to the motion to dismiss indicates that she has brought a claim under the Americans with Disabilities Act.  (Doc. 16 at 3.)  Her complaint does not state such a claim.

1

also brings claims against DCF employees Amanda Miranda and Heather Dunz in their individual and official capacities.  Plaintiff brings this action on behalf of herself and her minor child.

The allegations at issue appear to involve child protection investigations by DCF regarding Plaintiff's child.  Plaintiff alleges that her son told DCF officials that his father lied to police during an abuse investigation, that his father threatened suicide if the child continued taking his medication, and that the guardian ad litem appointed in the case told the child to refrain from testifying truthfully in court proceedings.  (Doc. 1 at 2.)  Plaintiff also alleges that the child's statements were documented by DCF but concealed from Plaintiff.  She filed a formal request under the Kansas Open Records Act for the records.  In response, Plaintiff contends that DCF produced incomplete, redacted, and misleading records.  Plaintiff argues that she was "subjected to retaliation and obstruction by DCF staff" after she requested the records.  (*Id.*)  As a result, Plaintiff was excluded from proceedings involving her child, which caused Plaintiff to suffer emotional distress and her child to suffer trauma.

Plaintiff's § 1983 claims include a violation of her right to due process by Defendants' failure to notify her of abuse disclosures, falsifying records, and refusal to disclose records; a first amendment retaliation claim against all Defendants; a *Monell* claim against DCF and AG's Office; and state created danger claim against all Defendants.  Defendant DCF moves for dismissal on the basis of sovereign immunity and failure to state a claim.  The individual Defendants move for dismissal on the basis that Plaintiffs' complaint fails to state a claim and that the official capacity claims against them should be dismissed on sovereign immunity.  Defendant AG's Office moves for dismissal on sovereign immunity, insufficient service, and lack of standing.

2

## II.     Standard

To state a valid claim for relief, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).   In reviewing a motion to dismiss, all well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).   Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Because Plaintiff is proceeding pro se, the court is to liberally construe her filings. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).   However, liberally construing filings does not mean supplying additional factual allegations or constructing a legal theory on Plaintiff's behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## III.     Analysis

### A.  Minor Child

At the outset, the court first addresses Plaintiff's claims brought on behalf of her minor child.   "[U]nder Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney." *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986).   Therefore, any claims on behalf of Plaintiff's child are subject to dismissal.

### B.  Immunity

Next, both DCF and the AG's Office move for dismissal on the basis of sovereign immunity.   The Eleventh Amendment bars suits against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).   The immunity applies equally to state agencies. *Fla. Dep't*

*of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981). States are entitled to immunity unless that immunity has been waived. A state will be deemed to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673. The State of Kansas has not waived its immunity to be sued here. *See Lee v. McManus*, 589 F. Supp. 633, 638 (D. Kan. 1984). Plaintiff does not assert waiver; rather, Plaintiff argues that sovereign immunity does not apply to prospective relief and she is seeking injunctive relief against the agencies. Plaintiff asserts that her claims against the agencies can survive under the *Ex Parte Young* doctrine.

The *Ex Parte Young* doctrine would allow Plaintiff to bypass sovereign immunity for prospective injunctive relief. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). However, this exception only applies to suits against "state officials, rather than the state itself[.]" *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001). The State of Kansas and its agencies are not "persons" and cannot be sued under section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). Plaintiff's request for injunctive relief against the state's agencies is accordingly subject to dismissal.

Therefore, Defendant AG's Office's first motion to dismiss (Doc. 17) is granted. The remaining motions to dismiss field by Defendant AG's Office are moot (Docs. 22, 29).[4] Defendant DCF's motion to dismiss (Doc. 11) is granted as to that entity.

---

[4] Although Defendant AG's Office moved to dismiss on the basis of a lack of standing, the court declines to address this issue due to the ruling herein and because the argument was narrowly tailored and did not address all claims. This ruling also results in a denial of Plaintiff's motion for default judgment (Doc. 34) against Defendant AG's Office. The court notes that even if the responsive pleading filed by Defendant AG's Office was untimely or the defense of insufficient service of process was waived, the court would not have entered default judgment in this matter as the court would have exercised its authority to dismiss the action due to sovereign immunity pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

4

### C.  Individual Defendants

The individual Defendants move for dismissal on the basis that Plaintiff has failed to state a claim against them.  Essentially, they argue that the complaint wholly fails to identify the actions they took and how they violated her constitutional rights.  The court agrees.

"Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013).  To state a claim under Section 1983, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).  Allegations generally referring to "Defendants" are "not sufficient to show how [an individual] 'might be individually liable for deprivations of [a plaintiff's] constitutional rights.'" *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (quoting *Robbins*, 519 F.3d at 1250).  Plaintiff's factual allegations must sufficiently allege an affirmative link between the constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

Plaintiff fails to allege the requisite personal participation as to Defendants Miranda and Dunz.  The only allegations that relate to these Defendant are that they are "state officials responsible for executing, concealing, or failing to remedy the conduct described herein."  (Doc. 1 at 2.)  That is entirely conclusory and insufficient to state a claim under § 1983.

In her response, Plaintiff requests leave to file an amended complaint should the court find her allegations deficient.  (Doc. 16 at 4.)[5]  The court is to "give leave to amend freely, especially

---

[5] The court notes that Plaintiff's response exceeds the page limits allowed by this court's local rule.  D. Kan. 6.1.  In the future, Plaintiff must comply with this court's rules on page limitations and other rules.  The failure to comply may result in a filing being stricken from the record.

when the plaintiff is proceeding pro se." *Panicker v. State Dep't of Agric.*, <u>498 F. App'x 755, 757</u> (10th Cir. 2012).  Plaintiff will be allowed an opportunity to amend her complaint against both individual Defendants.  Plaintiff is cautioned to limit her claims to those individual Defendants as the court has determined that Plaintiff's complaint against DCF and the AG's Office must be dismissed.  Further, Plaintiff cannot bring a claim on behalf of her child unless she is represented by counsel.  To the extent Plaintiff's amended complaint asserts official capacity claims against the individual Defendants, those claims must be limited to prospective relief.

## IV.    Conclusion

Defendant AG's Office's motion to dismiss on the basis of sovereign immunity (<u>Doc. 17</u>) is GRANTED.  The remaining motions to dismiss filed by Defendant AG's Office are MOOT. (Docs. 22, 29.)  Further, Plaintiff's motion for default judgment (<u>Doc. 34</u>), application for clerk's entry of default (<u>Doc. 42</u>), and Plaintiff's objection[6] (<u>Doc. 41</u>) to Magistrate Judge James's order staying discovery pending a ruling on the motions to dismiss are DENIED AS MOOT.

The DCF Defendants' motion (<u>Doc. 11</u>) is GRANTED IN PART and TAKEN UNDER ADVISEMENT IN PART.  Defendant DCF's motion to dismiss is GRANTED.  The individual Defendants' motion is TAKEN UNDER ADVISEMENT.  Plaintiff is to file an amended complaint on or before October 30, 2025.  The amended complaint must comply with this order and <u>Federal Rule of Civil Procedure 8(a)</u>.  Should Plaintiff fail to file an amended complaint, this matter will be dismissed without further notice.

IT IS SO ORDERED.  Dated this 9th day of October, 2025.

---

[6] Even if this objection is not moot due to the ruling herein, the court finds no error in the decision to stay this matter until a ruling on dispositive motions.

__s/ John W. Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

7

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, and as Next Friend of D.L., a minor,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171-JWB-TJJ

JURY TRIAL DEMANDED

NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Plaintiff Angeliina Lynn Lawson, pro se and as next friend of minor D.L., hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final Memorandum and Order entered on October 9, 2025 (Dkt. 48), which effectively constitutes a final judgment as to all claims against the Kansas Department for Children and Families and the Kansas Attorney General's Office:

1.  The Memorandum and Order entered on October 9, 2025 (Dkt. 48), which:

    a)  Granted Defendants' motions to dismiss as to all claims against the defaulted Kansas Attorney General's Office and Kansas Department for Children and Families (KDCF);

b) Denied Plaintiff's Motion for Default Judgment (Dkt. 34), Application for Clerk's Entry of Default (Dkt. 42), Objection to Stay Order (Dkt. 41), and related filings without Rule 55(b)(2) hearing;

c) Dismissed all claims brought on behalf of Plaintiff's minor child, D.L., without conducting the required Rule 17(c) analysis;

d) Denied relief without addressing Plaintiff's jury trial demand, ADA retaliation claims, or the pending Motion to Certify Interlocutory Appeal (Dkt. 45); and

e) Labeled Plaintiff's judicial misconduct complaint as 'frivolous' while simultaneously ruling on the subject matter of that complaint, in violation of the Code of Conduct for United States Judges, Canon 2 "A judge should avoid impropriety and the appearance of impropriety in all activities" and Canon 3(C) "A judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned" and the judges have not proven themselves trustworthy by demonstrating improper bias and retaliatory animus. Plaintiff does not trust the presiding judges can rule impartially with slanderous statements made to discredit claims and obstruct access to a judicial forum.

Plaintiff also objects to the Court's dismissal of all claims asserted on behalf of D.L., a minor, without addressing Plaintiff's role as next friend under Rule 17(c), her status as his ADA advocate, or the procedural requirements to protect the interests of disabled minors in civil rights proceedings.

This denial of standing occurred without hearing or factual inquiry, violating the Due Process Clause, Rule 17(c), and ADA Title II access rights.

2

2. Any and all prior interlocutory rulings, orders, and omissions adverse to Plaintiff, including but not limited to:

    a) The Order Staying Discovery and Pretrial Proceedings entered on August 6, 2025 (Dkt. 40);

    b) The Court's refusal to issue rulings on Plaintiff's Rule 72(a) objection (Dkt. 41), jury trial protection notice (Dkt. 43), and motion for interlocutory appeal (Dkt. 45);

    c) The Court's failure to hold a Rule 16 conference or Rule 55(b)(2) hearing following the procedural default of the Kansas Attorney General's Office, resulting in constructive denial of due process and equal protection.

This includes the Court's failure to schedule a Rule 16 conference, disregard of Plaintiff's proposed scheduling order, suppression of Plaintiff's Rule 37 enforcement rights, and preemptive denial of Plaintiff's Seventh Amendment right to a jury trial under Fed. R. Civ. P. 38.

This appeal is taken pursuant to 28 U.S.C. § 1291, § 1292(b) (to the extent certification is deemed implicit), and Federal Rules of Appellate Procedure 3 and 4.

## II. BASIS OF APPEAL AND LEGAL MAXIMS INVOLVED

The district court allowed defaulted Defendants to prevail by dismissal without hearing, contrary to the maxim "Justice delayed is justice denied" (Black's Law Dictionary 11th ed.). By suppressing evidence, refusing hearings, and discrediting judicial complaints, the court violated core maxims and constitutional principles:

a) U.S. Const. amend. I Right to petition the Government for redress of grievances; retaliation for protected petitioning is unconstitutional.

b) U.S. Const. amend. V & XIV No person shall be deprived of life, liberty, or property without due process of law;

c) equal protection requires impartial application of procedural rules.

d) U.S. Const. amend. VII The right of trial by jury shall be preserved in civil cases where value in controversy exceeds twenty dollars; this is a fundamental right, not a discretionary privilege.

e) Maxim of Law: Ubi jus ibi remedium ("Where there is a right, there is a remedy"). By denying default relief and hearings, the court destroyed the remedy for the rights asserted. Maxim of Law: Audi alteram partem ("Let the other side be heard"). A court that refuses to hear a party on motions of right violates natural justice.

f) Canon 3(A)(4) A judge must "accord to every person who has a legal interest in a proceeding the full right to be heard." This was not observed in Plaintiff's case.

"Justice must not only be done; it must be seen to be done."

– *R v. Sussex Justices, ex parte McCarthy* (1924)

Moreover, Plaintiff objects to the procedural posture imposed by the district court, which effectively required Plaintiff to defend the factual merits of her claims at the pleading stage without the benefit of discovery. Plaintiff's proposed scheduling order was disregarded, the Rule 16 conference never occurred, and a broad stay (Dkt. 40) was issued sua sponte before any evidentiary disclosures or depositions could take place. For the court to then dismiss Plaintiff's claims for "lack of factual support" (Dkt. 48) while discovery was affirmatively blocked

4

constitutes a denial of procedural due process and contradicts the pleading standards set forth in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiff's verified complaint and sworn declarations, when accepted as true, were more than sufficient to survive a motion to dismiss at this early stage.

## III. JURISDICTIONAL AND STATUTORY BASES

This appeal is taken under 28 U.S.C. § 1291 (final decisions of district courts) and, to the extent applicable, § 1292(b) (interlocutory orders affecting control of the case), together with Federal Rules of Appellate Procedure 3 and 4.

Plaintiff further preserves her federal rights under:

a) Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 and § 12203 (anti-retaliation);

b) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968;

c) 42 U.S.C. § 1983, for deprivation of civil rights under color of law; and

d) Fed. R. Civ. P. 55, 60(b), 38, and 37, protecting default judgment, fraud-on-the-court relief, right to a civil jury trial, and evidence preservation and enforcement under Rule 37.

## IV. SUMMARY OF ISSUES ON APPEAL

1. Whether the district court erred as a matter of law by dismissing Plaintiff's claims after Defendants defaulted, without holding a mandatory Rule 55(b)(2) hearing, and while ignoring Plaintiff's renewed default motion and related filings.

5

2.  Whether the district court's dismissal of Plaintiff's ADA retaliation claims and denial of her demand for a jury trial violated the First, Seventh, and Fourteenth Amendments to the U.S. Constitution.

3.  Whether the court's sua sponte characterization of a pending judicial misconduct complaint as "frivolous," while simultaneously ruling on matters central to that complaint, violated Canons 2 and 3(C)(1) of the Code of Judicial Conduct and the appearance-of-bias standard established in Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

4.  Whether the court's refusal to rule on Plaintiff's pending motions (Dkts. 41, 43, 44, 45, 46, 47), including her Motion to Show Cause and Motion for Interlocutory Appeal, constituted a constructive denial of due process, equal protection, and access to courts under the First and Fourteenth Amendments.

5.  Whether the dismissal of claims brought on behalf of a disabled minor without appointing a guardian ad litem or conducting a hearing under Rule 17(c) violated the Due Process Clause and the long-standing equitable maxim that "the law protects the vulnerable who cannot protect themselves."

6.  Whether the district court's pattern of procedural suppression—including denial of default, suppression of ADA and civil rights claims, refusal to rule on Rule 37 and Rule 60(b)(3) motions, and retaliatory language in judicial orders—supports Plaintiff's claim of systemic obstruction and retaliatory enterprise conduct under 42 U.S.C. § 1983 and 18 U.S.C. § 1962(c) (civil RICO).

## V. RELIEF REQUESTED

"Right and justice shall be administered without sale, denial, or

delay." (U.S. Const. Amend. V; Kansas Bill of Rights Art. VI).

Plaintiff respectfully requests that this Honorable Court intervene to restore the integrity of

judicial process and enforce the constitutional guarantees denied below. The record demonstrates

a pattern of deliberate delay, suppression of duly filed motions, and retaliatory orders that

deprived Plaintiff of access to an impartial tribunal and equal protection of the laws.

Accordingly, Plaintiff requests that the Tenth Circuit:

1. Reverse the District Court's Memorandum and Order of October 9, 2025 (Dkt. 48);

2. Vacate the findings denying Plaintiff's motions for default judgment;

3. Plaintiff further requests that this appeal be reviewed in light of her previously filed
   judicial misconduct complaint and accompanying addendum, which document a
   continuing pattern of procedural obstruction, retaliatory rulings, and systemic suppression
   of constitutional claims by the assigned judges.

4. Reinstate Plaintiff's Rule 55(b)(2) default rights and ADA Title II retaliation claims for
   adjudication on the merits;

5. Remand the case for a full jury trial before a neutral, reassigned tribunal under
   28 U.S.C. § 292 to ensure impartiality and ADA compliance;

6. Order structural and injunctive relief directing the lower court to safeguard Plaintiff's
   due-process, equal-protection, and jury-trial rights in future proceedings; and

7. Grant any further relief this Court deems just and proper to redress continuing harm from
   judicial retaliation and to preserve the rule of law.

7

In the spirit of enduring legal principle *Fiat justitia, ruat caelum* ("Let justice be done though the heavens fall") Plaintiff seeks nothing more than the fair and lawful administration of justice guaranteed by the Constitution.

Respectfully submitted,                                          Dated: October 9, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Pro Se Plaintiff and Next Friend of D.L.

(Address on file)

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of October, 2025, I electronically filed the foregoing: NOTICE OF APPEAL with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all parties and counsel of record who are registered to receive service via CM/ECF.

I further certify that I am proceeding pro se and that this filing preserves all constitutional, statutory, and appellate rights under federal law.

Respectfully submitted,

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Pro Se Plaintiff and Next Friend of D.L.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

October 10, 2025

Angeliina Lynn Lawson
1914 5th Avenue
Leavenworth, KS 66048

RE:    **25-3182, Lawson v. Kansas Department of Children and Families, et al**
        Dist/Ag docket: 2:25-CV-02171-JWB-TJJ

To All Parties and Counsel:

This court has received and docketed an appeal in the above-referenced case, and the appeal number is listed above. Please note the following requirements for this appeal:

## Preliminary Documents (All Parties)

**Entry of Appearance and Certificate of Interested Parties.** All parties are required to file an entry of appearance and certificate of interested parties. 10th Cir. R. 46.1(A) and (D). Pro se individuals must file the enclosed form **within 30 days** of the date of this letter. Counselled parties must file the form **within 14 days** of the date of this letter. Attorneys who do not enter an appearance within the specified time will be removed from the service list.

In addition to an entry of appearance, appellees who do not intend to participate in the appeal must promptly file a notice of non-participation and state whether they wish to continue receiving notice of the court's orders.

**Rule 26 Disclosure Statement.** All entities represented by counsel are required to file a Federal Rule of Appellate Procedure 26.1 disclosure statement **within 14 days** of the date of this letter. *See* 10th Cir. R. 26.1(A). Pro se individuals need not file a disclosure statement.

## Filing & Docketing Fee (Appellant)

A separate fee of $605.00 ($5.00 filing fee and $600.00 docket fee) is due for every appeal initiated to the court of appeals.

The district court has granted you leave to proceed without prepayment of fees in this appeal. As a result, nothing further is required from you at this time.

**Method of Receiving Service (Pro Se Parties)**

The court will forward all forms, letters, and orders to you via US Mail. If you wish to change the method of service from US Mail to email, you must make that request in writing by completing the enclosed "Consent to Electronic Service" form and returning to this office.

You will receive further instructions regarding prosecution of this appeal from the court within the next few weeks.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court


cc:      Marc Altenbernt
         Brad E. Avery


CMW/mlb

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff and Next Friend of D.L., a minor,


v.


KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171-JWB-TJJ

JURY DEMANDED

MOTION TO DISQUALIFY JUDGE JOHN W. BROOMES

AND MAGISTRATE JUDGE TERESA J. JAMES UNDER 28 U.S.C. § 455

COMES NOW Plaintiff Angeliina Lynn Lawson, pro se and on behalf of her minor son D.L.,

and respectfully moves this Court to disqualify both Judge John W. Broomes and Magistrate

Judge Teresa J. James from further participation in this matter pursuant to 28 U.S.C. § 455(a)

and (b), Fed. R. Civ. P. 63, and constitutional due process guarantees. This motion is supported

by the following:


I.        INTRODUCTION

1

Both Judge Broomes and Magistrate Judge James have been the subject of filed judicial

misconduct complaints and a pending federal writ of mandamus (10th Cir. No. 25-3158)

regarding their structural bias, judicial inaction, and retaliation against Plaintiff in this and

related dockets. Their continued assignment to this matter presents an appearance of impropriety

and an intolerable risk of actual bias, warranting mandatory disqualification under § 455.

II.    LEGAL STANDARD

28 U.S.C. § 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States

shall disqualify himself in any proceeding in which his impartiality might reasonably be

questioned." Under § 455(b)(1), disqualification is mandatory where the judge "has a personal

bias or prejudice concerning a party." The standard is objective: whether a reasonable person,

knowing all the facts, would conclude the judge's impartiality might reasonably be questioned.

III.    ARGUMENT

1. Judicial Complaints Have Been Filed Against Both Judges

Plaintiff has filed judicial misconduct complaints against both Judge Broomes and

Magistrate James with the Tenth Circuit Judicial Council, based on their rulings in this

and related cases (2:25-cv-02199, 2:25-cv-02251, 6:25-cv-01179, 5:25-cv-04045). Those

complaints allege repeated violations of ADA Title II, obstruction of Rule 4 summons,

improper denial of preservation motions, and refusal to address out-of-district

reassignment motions.

2. Writ of Mandamus Seeks Their Removal

In the related RICO case (6:25-cv-01179-JWB-TJJ), Plaintiff has filed a Petition for Writ

of Mandamus requesting that the Tenth Circuit remove these judges from her docket due to demonstrated bias, pattern obstruction, and judicial entwinement in the very misconduct alleged. A reasonable observer would conclude that continued oversight by the same judges creates structural prejudice.

3. Judge Broomes Retaliated by Calling the Judicial Complaint "Frivolous"

   In a published order in this case (Doc. 48), Judge Broomes stated:

"Although Plaintiff filed a judicial complaint against the undersigned and it remains pending before the Tenth Circuit, this court finds that the judicial complaint is frivolous..."

This statement violates Plaintiff's First Amendment right to petition for redress of grievances. It constitutes retaliatory disparagement and prejudges the outcome of the judicial complaint process. The judge publicly labeled Plaintiff's protected conduct as frivolous in a federal order, chilling her access to impartial review and creating an appearance of emotional bias without a hearing, trial of the evidence, pre-discovery and demands for jury trial.

4. Both Judges Are Named in the Pattern Alleged in Plaintiff's Civil RICO Complaint

   Plaintiff has named both judges in her RICO filings as having obstructed ADA litigation and acted in concert with the enterprise through acts of summons suppression, denial of accommodations, and docket manipulation. This entwinement in the factual predicates of Plaintiff's claim renders them functionally adverse parties and disqualifies them under Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

5. Structural Conflicts Cannot Be Waived

   Even if Plaintiff could waive bias, the structural appearance of impropriety cannot be waived. Judge Broomes and Magistrate James presided over multiple dockets where

3

similar ADA retaliation and judicial fraud were alleged. Their continued retention of this case risks undermining public confidence in the judiciary.

## IV.    RELIEF REQUESTED

Plaintiff respectfully requests that:

1. Judge John W. Broomes and Magistrate Teresa J. James be immediately disqualified from this matter;

2. The Clerk of the Court refer this case to the Chief Judge of the Tenth Circuit for reassignment under 28 U.S.C. § 292(b) and (c);

3. All orders issued by these judges be vacated or reviewed de novo by a neutral reassigned judge;

4. The case be reassigned to an Article III judge out-of-district with no connection to Plaintiff's pending complaints or named judicial defendants.

Respectfully submitted,

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Pro Se

Plaintiff and Next Friend of D.L., a minor,

1914 5th Avenue, Leavenworth, KS 66048

angeliinacourtrecords@gmail.com | (913) 972-1661

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, I filed the foregoing Motion to Disqualify Judge John W. Broomes and Magistrate Judge Teresa J. James using the CM/ECF system of the United States District Court for the District of Kansas, which will send electronic notice to all registered participants including:

• Bradley E. Avery, Assistant Attorney General for the State of Kansas – brad.avery@ag.ks.gov

• Marc Altenbernt, General Counsel for Kansas DCF – marc.altenbernt@ks.gov

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Pro Se

Plaintiff and Next Friend of D.L., a minor,

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS


ANGELIINA LYNN LAWSON,

 Plaintiff and Next Friend of D.L., a minor,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171


TRIAL BY JURY DEMANDED

NOTICE OF JUDICIAL FINANCIAL ENTANGLEMENT AND RENEWED MOTION TO

DISQUALIFY UNDER 28 U.S.C. § 455(a) AND (b)(4)

COMES NOW Plaintiff Angeliina Lynn Lawson, pro se and on behalf of her minor child D.L.,

and files this Notice to supplement the prior Motion to Disqualify (Doc. 53) with new evidence

demonstrating financial entanglement between the presiding judge's personal investments and

the fiscal entities controlling the Kansas Department for Children and Families (DCF) and

Anderson County, Kansas.


I. FACTUAL BASIS FOR MANDATORY DISQUALIFICATION

1. Judicial Financial Holdings.

   Public financial-disclosure reports show that Chief Judge John W. Broomes owns

   substantial interests valued between $15,000 and $500,000 in Commerce

   Bank/Commerce Funds and Intrust Bank accounts, including Kansas Tax-Free

   Intermediate Bond Funds. These banks act as custodians and trustees for multiple Kansas

   municipal and agency accounts, including DCF's Title IV-E and TANF custodial

   accounts and Anderson County's hospital-bond reserves.

2. Agency Financial Dependency.

   DCF's FY 2025 budget reveals:

   • A $168 million (≈ 16 %) unexplained expenditure drop;

   • A 12.25 % *permanent vacancy rate* (≈ 320 positions) creating engineered understaffing;

   • Un-itemized $289 million foster-care contracts routed through Saint Francis Ministries,

   KVC Kansas, Cornerstones of Care, and TFI Family Services; and

   • A $2.24 million "federal reconciliation" repayment to federal funds.

   These funds move through the same Kansas banks reflected in Judge Broomes's

   holdings.

3. Material Financial Interest in the Subject Matter.

   Under § 455(b)(4), disqualification is mandatory where a judge "has a financial interest

   in the subject matter in controversy." DCF's operations and the county bond programs

   alleged in this case depend on the solvency and profitability of Commerce and Intrust—

   banks in which the judge is invested.

4. Appearance of Impartiality Under § 455(a).

   A reasonable observer would question impartiality when a judge invested in institutions

profiting from DCF and county deposits rules on litigation that could expose fiscal

misconduct by those same institutions.

## II. PROCEDURAL BACKGROUND AND PATTERN OF RETALIATION

- Plaintiff's Motion to Disqualify (Doc. 53) was filed Oct 22 2025.

- Judge Broomes subsequently required an amended complaint (Doc. 48) and has not ruled

  on the disqualification motion, while DCF and the AG have filed serial, late, or default-

  mooting pleadings.

- Given this procedural history, continued participation by these judges presents an

  appearance of predetermination and self-protection rather than neutral adjudication.

## III. LEGAL STANDARD

- 28 U.S.C. § 455(a) requires recusal when impartiality "might reasonably be questioned."

- § 455(b)(4) bars a judge from sitting where he "has a financial interest in the subject

  matter in controversy."

- Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009) and Liljeberg v. Health Servs.

  Acquisition Corp., 486 U.S. 847 (1988) confirm that even indirect financial entwinement

  mandates vacatur of orders entered by a conflicted judge.

## IV. CONCLUSION

- Because the presiding judges hold personal investments in the very institutions whose

  conduct and financial arrangements form the backbone of this litigation, continued

  participation violates both the letter and the spirit of 28 U.S.C. § 455. Recusal and

reassignment are mandatory to preserve public confidence and the integrity of these proceedings.

## V. REQUESTED RELIEF

Plaintiff respectfully requests that the Court:

1. Acknowledge this Notice as triggering the self-executing duty of recusal under § 455(c);

2. Disqualify Judge John W. Broomes and Magistrate Judge Teresa J. James from this case;

3. Vacate all orders entered after Apr 15, 2025 in which these judges participated;

4. Refer the matter to the Chief Judge of the Tenth Circuit for reassignment under § 292(b); and

5. Order DCF and the AG's Office to produce full banking and contract disclosures to permit independent conflict review by the Circuit Judicial Council.

Protective Preservation of Constitutional Rights: Appellant expressly preserves all rights secured by the First Amendment (right to petition the government for redress), the Fifth and Fourteenth Amendments (due process and equal protection), and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12133, against any retaliation, intimidation, or adverse judicial action arising from this notice or prior filings concerning judicial financial entanglement and misconduct.

Should any judge or officer of this Court engage in retaliatory conduct including but not limited to expedited dismissal, suppression of filings, or labeling of protected complaints as "frivolous" such acts will constitute an independent violation of 42 U.S.C. § 1983 and of the judicial oath codified at 5 U.S.C. § 3331 and 28 U.S.C. § 453.

Appellant therefore provides advance notice that any retaliatory order entered after this filing will be treated as a continuing constitutional tort, fully preserved for appellate review and potential referral to the U.S. Department of Justice Office of the Inspector General and the Judicial Conduct and Disability Committee under 28 U.S.C. § 351 et seq.

This filing is made to preserve all constitutional and statutory rights, including the right to meaningful access to court, impartial adjudication, and review of any retaliatory or ultra vires orders entered after notice of conflict or oath violation.

Respectfully submitted,                                        Dated October 30, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson, Pro Se

1914 5th Avenue | Leavenworth, KS 66048

angeliinacourtrecords@gmail.com | (913) 972-1661

Certificate of Service

I certify that on October 30, 2025, I filed the foregoing Notice via CM/ECF, which will serve Marc Altenbernt (Kansas DCF) and Bradley E. Avery (Kansas Attorney General's Office).

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ANGELIINA LYNN LAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:25-cv-02171-JWB-TJJ |
| KANSAS DEPARTMENT FOR CHILDREN | ) |
| AND FAMILIES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## <u>ORDER</u>

This matter is before the Court on Plaintiff's Motion to Show Cause Why the Court Has Not Ruled on Plaintiff's Motion for Default Judgment, Relief Under Rule 55(b)(2), and Emergency Judicial Oversight (ECF No. 47).  In her motion, Plaintiff asks the Court to show cause why it has not ruled on pending motions and requests made in this matter, and to enter orders on pending motions, among other relief.

Simply stated, Plaintiff's motion is improper.  "A show cause order is a procedural tool a ***court*** may use to compel compliance with prior court orders, procedures, or legal requirements."[1]  It is defined as a "[c]ourt order, decree, execution, etc., to appear as directed, and present the court such reasons and considerations as one has to offer why a particular order, decree, etc., should not be confirmed, take effect, be executed, or as the case may be."[2]  A show cause order is the court's way of requiring a party to explain their action or inaction.  It is not, however, a tool available to a party to make a request from or compel action by the court.  Further, this Court

---

[1] *Wheeler v. Burlington*, No. 25-1177-DDC-BGS, 2025 WL 2402265, at *1 (D. Kan. Aug. 19, 2025) (emphasis added).

[2] Black's Law Dictionary (6th ed. 1990).

has "the inherent authority to manage its dockets" and will resolve Plaintiff's pending motions in due course.[3]  As such, Plaintiff's motion is denied.

      **IT IS THEREFORE ORDERED** Plaintiff's Motion to Show Cause Why the Court Has Not Ruled on Plaintiff's Motions for Default Judgement, Relief Under Rule 55(b)(2), and Emergency Judicial Oversight (ECF No. 47) is DENIED.

      **IT IS SO ORDERED.**

      Dated October 31, 2025, at Kansas City, Kansas.

                                Teresa J. James
                                U. S. Magistrate Judge

---

[3] *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**November 4, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

ANGELIINA LYNN LAWSON,

      Plaintiff - Appellant,

v.

KANSAS DEPARTMENT OF
CHILDREN AND FAMILIES; OFFICE
OF THE KANSAS ATTORNEY
GENERAL; AMANDA MIRANDA;
HEATHER DUNZ,

      Defendants - Appellees.

No. 25-3182
(D.C. No. 2:25-CV-02171-JWB-TJJ)
(D. Kan.)

**ORDER**

Before **BACHARACH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.

This matter is before the court upon Ms. Lawson's response to this court's October

10, 2025, jurisdictional show cause order, as well as Ms. Lawson's pending motions.

As a preliminary matter, Ms. Lawson has filed the following three motions: (1)

*Appellant's Motion to Clarify Disclosure Statements and for Judicial Conflict Review*

*Under 28 U.S.C. § 455(a)*, ECF No. 11; (2) *Appellant's Motion to Reject Untimely and*

*Defective Entry of Appearance by Appellees Kansas Department for Children and*

*Families, Amanda Miranda, and Heather Dunz*, ECF No. 12; and (3) *Appellant's Motion*

*to Clarify Disclosure Statement of Appellees Kansas Department for Children and*

*Families, Amanda Miranda, and Heather Dunz*, ECF No. 19. The motions to clarify the

disclosure statements, ECF Nos. 11 and 19, are DENIED. The motion to reject the entry

of appearance, ECF No. 12, is DENIED AS MOOT.

In this court's October 10, 2025, show cause order, the court challenged its

jurisdiction over the district court's October 9, 2025, order because it did not appear to be

a final appealable order. Ms. Lawson responded to the show cause order, asserting that it

was a final dispositive order as to the Attorney General's Office and the Department for

Children and Families, or alternatively, subject to the collateral order doctrine under

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949).

Generally, this court's appellate jurisdiction is limited to review of final decisions

of the district courts within this circuit. 28 U.S.C. § 1291. A final decision is one that

"ends the litigation on the merits and leaves nothing more for the court to do but execute

the judgment." *Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198, 204 (1999). In other

words, "[a] final judgment is one that terminates all matters as to all parties and causes of

action." *Utah v. Norton*, 396 F.3d 1281, 1286 (10th Cir. 2005) (internal quotation marks

omitted). This court has held that the dismissal of a complaint rather than the action is not

a final appealable order. *B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.*, 531 F.3d 1282, 1296

n.15 (10th Cir. 2008) ("A dismissal of the complaint is ordinarily a non-final,

nonappealable order (since amendment would generally be available), while a dismissal

of the entire action is ordinarily final.").

Here, the proceedings in the district court remain ongoing, and there is no final

order or judgment to appeal. The district court dismissed some, but not all, of the parties.

Additionally, the district court expressly directed Ms. Lawson to file an amended

complaint, indicating that the October 9, 2025, order was not a final order. So, the district

court's order is not a final decision. Moreover, Ms. Lawson's arguments that this order is

subject to the collateral order doctrine are unpersuasive. This court is without jurisdiction

to consider this appeal.

APPEAL DISMISSED.

Entered for the Court
Per Curiam

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, and next friend to minor D.L.,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171

Jury Trial Demanded

Fraud Upon the Court

PLAINTIFF'S MOTION TO STRIKE SUCCESSIVE MOTIONS TO DISMISS RULE 12(g)(2)

COMES NOW Plaintiff Angeliina Lynn Lawson, a pro se and ADA-protected litigant, and respectfully moves this Court to strike Defendants' successive Motions to Dismiss (Dkts. 62 and 64) as procedurally improper under Federal Rule of Civil Procedure 12(g)(2).

I. BACKGROUND

The Kansas Department for Children and Families ("DCF") and the Kansas Attorney General's Office have now filed multiple Motions to Dismiss in this matter, including:

- Dkt. 11 — DCF's initial Motion to Dismiss;

1

- Dkt 17 – AG's Motion to Dismiss

- Dkt 22 – AG's Motion to Dismiss

- Dkt 29 – AG's Third Motion to Dismiss

- <u>Dkt. 62</u> — AG's post-default Motion to Dismiss Plaintiff's First Amended Complaint for DCF;

- <u>Dkt. 64</u> — DCF's successive Motion to Dismiss containing arguments duplicative of <u>Dkt. 11</u>.

Under Rule 12(g)(2), a party that makes a Rule 12 motion must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Here, the defenses asserted in Dkts. 62 and 64 were available and, in most cases, already asserted in earlier filings. The Attorney General has now filed at least four separate motions to dismiss before and after default each repeating overlapping grounds already presented, responded to and rejected. DCF has done the same in <u>Dkt. 64</u> despite raising the same issues in <u>Dkt. 11</u> to which I already answered.

This pattern of duplicative filings reflects a broader strategy of procedural exhaustion targeting a pro se, indigent, and disabled litigant in violation of the spirit of Rule 1 and the protections of ADA Title II.

II. LEGAL STANDARD

Rule 12(g)(2) prohibits successive Rule 12 motions when the defense or objection was available at the time of the earlier motion. The purpose of this rule is to prevent procedural abuse through serial motion practice.

Courts routinely strike second motions to dismiss under this rule. See:

- *Fed. R. Civ. P. 12(g)(2)*;

- *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017);

- *Enlow v. Tishomingo County, Miss.*, 962 F.2d 501, 504-05 (5th Cir. 1992).

When successive filings are used to delay proceedings or obstruct discovery, courts may strike such motions to preserve fairness.

Under Rule 12(g)(2), a party that makes a Rule 12 motion must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Here, DCF filed its original Motion to Dismiss at Dkt. 11, and later reasserted many of the same defenses in its subsequent filing at Dkt. 64. The Kansas Attorney General's Office filed a cascade of duplicative motions to dismiss at Dkts. 17, 22, and 29, all of which repeated variations of the same standing, jurisdiction, and immunity arguments.

Then, following entry of default (Dkt. 12) and Plaintiff's subsequent motions (Dkts. 34 and 38), the AG reappeared and filed Dkt. 62, a post-default motion to dismiss that again recycles arguments it had previously raised. This occurred despite the absence of a court order vacating the default or granting permission to reappear.

In response, Plaintiff has already filed the following:

- Dkt. 28: Fraud Upon the Court and Rule 60(d)(3) Certification

- Dkt. 38: Renewed Motion for Default

- Dkt. 65: Federal Claims Certification and Preservation of Rule 27 Rights

- Dkt. 66: Motion to Adjudicate Fraud and Suspend Dispositive Briefing

This pattern of serial Rule 12 filings by both the AG and DCF constitutes a procedural weaponization of the motion to dismiss mechanism, in direct violation of Rule 12(g)(2). It reflects a strategy of exhaustion and attrition against a pro se, indigent, and ADA-protected litigant, undermining both the equitable aims of Rule 1 and the substantive protections of Title II of the ADA.

## III. ARGUMENT

### A. DCF's Motion (Dkt. 64) Violates Rule 12(g)(2)

DCF's initial motion to dismiss (Dkt. 11) raised core defenses that it now reasserts in Dkt. 64, despite having had full opportunity to litigate these arguments. There is no material difference in the claims or legal theories that would justify a second Rule 12 motion.

### B. AG's Motions (Dkts. 17, 22, 29, 62) Are Repetitive and Improper

The Attorney General has now filed four motions to dismiss—each before resolving prior procedural defaults (see Dkts. 12, 34, and 38). These motions repeat overlapping grounds and defenses. Dkt. 62, in particular, was filed after default and is procedurally barred under Rule 55(b) and 12(g)(2).C. The Combined Effect Is Obstruction and Retaliation

4

C. There Are Material Fact Issues in Dispute That Preclude Dismissal

Plaintiff has placed on the record multiple material factual disputes, including falsified DCF records, altered investigative findings, destroyed mandated reporter files, and evidence suppression coordinated by state actors. These factual disputes are central to Plaintiff's ADA, Title IV-E fraud, and retaliation claims and cannot be resolved as a matter of law at the pleading stage.

The Court may not weigh disputed facts on a motion to dismiss, particularly where Plaintiff has demanded a jury trial under Rule 38 and the Seventh Amendment. Dispositive rulings that bypass discovery where factual disputes are evident violate Plaintiff's procedural due process rights.

Dismissal is therefore premature and improper.

D. The Combined Effect Is Obstruction and Retaliation

Together, Dkts. 17, 22, 29, 62, and 64 constitute abusive motion practice meant to:

- Delay discovery,

- Exhaust a disabled litigant,

- Avoid adjudication of Dkt. 28 (fraud on the court),

- Preempt judicial disqualification (Dkts. 53 and 56), and

- Block federal fraud certification (Dkt. 65).

The motions should be struck to restore judicial integrity and protect Plaintiff's due process rights.

IV. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

1. Strike Dkts. 17, 22, 29, 62, and 64 under Rule 12(g)(2) as procedurally barred successive motions;

2. Reinstate briefing deadlines only after adjudication of Dkt. 28 and Dkt. 65 (fraud and federal claims certification);

3. Award any other relief deemed just and proper to prevent further abusive litigation tactics.

Respectfully submitted,                              Dated: November 17, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, Pro Se and next friend to minor D.L.

ADA-Protected Litigant

1914 5th Ave., Leavenworth, KS 66048 | 913-972-1661

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was served via the CM/ECF system on all counsel of record on November 17, 2025.

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, Pro Se and next friend to minor D.L.

ADA-Protected Litigant

```
MIME-Version:1.0
From:KSD_CMECF@ksd.uscourts.gov
To:ksd_nef@localhost.localdomain
Bcc:
--Case Participants: Scott Nading (donna.wells@ag.ks.gov, gabriella.ortiz@ag.ks.gov,
scott.nading@ag.ks.gov), James Eric Todd (donna.wells@ag.ks.gov,
gabriella.ortiz@ag.ks.gov, james.todd@ag.ks.gov), Marc Altenbernt
(julie.eggenberger@ks.gov, marc.altenbernt@ks.gov), Angeliina Lynn Lawson
(angeliinacourtrecords@gmail.com), Chief District Judge John W. Broomes
(joyce_roach@ksd.uscourts.gov, ksd_broomes_chambers@ksd.uscourts.gov), Magistrate Judge
Teresa J. James (ksd_james_chambers@ksd.uscourts.gov)
--Non Case Participants: Stephen O. Phillips (steve.phillips@kscourts.org), Ricardo
Taboada (ricardo_taboada@ksd.uscourts.gov)
--No Notice Sent:

Message-Id:6506786@ksd.uscourts.gov
Subject:Activity in Case 2:25-cv-02171-JWB-TJJ Lawson v. Kansas Department of Children and
Families et al Order on Motion to Dismiss
Content-Type: text/html
```

## U.S. District Court

## DISTRICT OF KANSAS

## Notice of Electronic Filing

The following transaction was entered on 11/17/2025 at 4:21 PM CST and filed on 11/17/2025

| | |
|---|---|
| **Case Name:** | Lawson v. Kansas Department of Children and Families et al |
| **Case Number:** | 2:25–cv–02171–JWB–TJJ |
| **Filer:** | |
| **Document Number:** | 67(No document attached) |

**Docket Text:**
 **ORDER striking Plaintiff's amended complaint (Doc. 55.) On October 9, 2025, the court entered an order granting Defendants' motion to dismiss in part and dismissing Defendants KDCF and the AG's office. (Doc. 48.) The court took the motion to dismiss under advisement with respect to the claims against Defendants Miranda and Dunz. Plaintiff was instructed that she could amend her complaint against these two defendants only to attempt to state a claim. Plaintiff was cautioned not to include the dismissed Defendants and to omit any claims on behalf of her child as Plaintiff is proceeding pro se. Plaintiff failed to comply with this court's order in filing her amended complaint. (Doc. 55.) Therefore, the court strikes it from the docket. Plaintiff will be allowed one final opportunity to comply with this court's order. Plaintiff may file an amended complaint on or before December 1, 2025. Should she fail to file an amended complaint or if the amended complaint does not comply with the directives in the court's prior order (Doc. 48), this matter will be dismissed without further notice. Defendants' motions to dismiss (Docs. 62, 64) are moot as a result of this order. Entered by Chief District Judge John W. Broomes on 11/17/2025. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (jmr)**

**2:25–cv–02171–JWB–TJJ Notice has been electronically mailed to:**

James Eric Todd     james.todd@ag.ks.gov, donna.wells@ag.ks.gov, gabriella.ortiz@ag.ks.gov

Marc Altenbernt     marc.altenbernt@ks.gov, julie.eggenberger@ks.gov

Scott Nading     scott.nading@ag.ks.gov, donna.wells@ag.ks.gov, gabriella.ortiz@ag.ks.gov

Angeliina Lynn Lawson     angeliinacourtrecords@gmail.com

**2:25–cv–02171–JWB–TJJ Notice has been delivered by other means to:**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, and next friend to minor D.L.,

ADA-Protected Litigant,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171

TRIAL BY JURY DEMANDED

FRAUD UPON THE COURT

DISQUALIFICATION OF JUDGES

PLAINTIFF'S MOTION TO ADJUDICATE FRAUD UPON THE COURT (DKT. 28) AND

SUSPEND ALL DISPOSITIVE MOTION PRACTICE PENDING CERTIFICATION

COMES NOW Plaintiff Angeliina Lynn Lawson, a pro se and ADA-protected litigant, and

respectfully moves this Court to (1) adjudicate the pending and unresolved Notice and Motion

for Relief from Fraud Upon the Court (Dkt. 28), and (2) suspend all dispositive motion practice,

1

including Defendants' Motions to Dismiss (Dkts. 62 and 64), until such adjudication is complete and certification of fraud status has been formally entered or denied.

## I. BACKGROUND

On July 14, 2025, Plaintiff filed Dkt. 28: a verified and evidentiary-supported Notice of Fraud Upon the Court and Preservation of Rule 60(b)(3) Relief, detailing:

- Documented falsification of DCF findings,

- Forged and altered email summaries presented by the GAL,

- Contradictory responses to KORA requests,

- Destruction of public records by named DCF employees,

- Procedural manipulation by the Kansas Attorney General's Office post-default,

- Systemic denial of ADA accommodations and next-friend standing.

Despite its sufficiency and legal triggering of Rule 60(d)(3), the Court has not scheduled a hearing or issued any ruling on the matter.

In the months following, the Attorney General's Office and DCF have filed:

- Dkt. 62: AG's Motion to Dismiss Plaintiff's First Amended Complaint,

- Dkt. 64: DCF's Motion to Dismiss, containing overlapping arguments,

Both were filed while Dkt. 28 remains pending, and neither addressed or disclosed the unresolved fraud certification now frozen in the record.

On November 17, 2025, Plaintiff filed two sealed ex parte Rule 27 motions to preserve evidence in anticipation of filing federal claims under the Tucker Act. No order or acknowledgment has been issued. The Court's silence on this issue and the near-immediate issuance of a coercive dismissal order confirms intentional suppression of evidence preservation.

## II. LEGAL STANDARD

Rule 60(d)(3) provides that, "This rule does not limit a court's power to set aside a judgment for fraud on the court."

In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), the U.S. Supreme Court held that courts possess an inherent power to vacate orders infected by fraud, even after judgment, and that due process demands such fraud be confronted and adjudicated. See also Chambers v. NASCO, 501 U.S. 32 (1991).

In United States v. Throckmorton, 98 U.S. 61 (1878), the Court made clear that when fraud is alleged to have corrupted the court's own processes, it must be addressed prior to any further rulings.

## III. ARGUMENT

### A. The Court Cannot Proceed With Dispositive Rulings While Fraud Is Unadjudicated

The allegations in Dkt. 28 meet the high standard required under Rule 60(d)(3) and have not been rebutted by Defendants. The integrity of this case record—including GAL findings, DCF KIDS entries, and KORA disclosures—has been directly challenged.

Proceeding to resolve dispositive motions (Dkts. 62 and 64) without first ruling on Dkt. 28 would allow fraud to taint all subsequent rulings and open the Court to reversal.

**B. Defendants' MTDs Were Filed in Bad Faith to Preempt Fraud Ruling**

The Attorney General defaulted in this case (Dkt. 12, Dkt. 34), and the Court has yet to resolve the consequences. DCF and AG counsel filed new Motions to Dismiss knowing that the Court had not yet ruled on:

- Plaintiff's pending Motion for Default,

- Judicial disqualification filings (Dkts. 53 and 56),

- The now-preserved federal fraud certification (Dkt. 65),

- The filed Rule 27 Petition to preserve federal claims evidence.

This is not litigation; it is harassment under color of law designed to exhaust a disabled litigant while forestalling discovery.

**C. The Fraud Certification is Functionally Linked to Court of Federal Claims Jurisdiction**

Plaintiff has preserved and now declared intent to proceed with related Tucker Act claims in the U.S. Court of Federal Claims based on:

- Fraudulent drawdown of Title IV-E and Medicaid funds,

- Retaliation under ADA Title II,

- Destruction of federally protected child-welfare records,

- Constitutional takings of familial association without due process.

4

The outcome of <u>Dkt. 28</u> therefore has direct implications for federal jurisdiction, and its adjudication is not optional.

## IV. RELIEF REQUESTED

Plaintiff respectfully requests:

1. Reassigning to neutral judges

2. That the Court immediately adjudicate <u>Dkt. 28</u>, including setting an evidentiary hearing or issuing findings;

3. That the Court suspend or strike all dispositive motion practice, including Dkts. 62 and 64, until fraud adjudication is complete;

4. That the Court preserve evidence of fraud upon the court, so Plaintiff may proceed to file claims under the Tucker Act;

5. That the Court preserve Plaintiff's right to escalate these claims in the U.S. Court of Federal Claims and transmit a copy of this motion to the Chief Judge of the Federal Claims Court, if appropriate.

Respectfully submitted,                          Dated: November 20, 2025

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson
Plaintiff, Pro Se and next friend to minor D.L.
ADA-Protected Litigant

1914 5th Ave., Leavenworth, KS 66048 | 913-972-1661


Certificate of Service

I hereby certify that a true and correct copy of the foregoing motion was served via the CM/ECF

system on all counsel of record on November 20, 2025.

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson
Plaintiff, Pro Se and next friend to minor D.L.
ADA-Protected Litigant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, Pro Se and Next Friend to minor D.L.,

ADA-Protected Litigant,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171

TRIAL BY JURY DEMANDED

FRAUD UPON THE COURT

DISQUALIFICATION OF JUDGES

EMERGENCY MOTION TO VACATE RETALIATORY ORDER STRIKING PLAINTIFF'S

COMPLAINT

COMES NOW Plaintiff Angeliina Lynn Lawson, pro se and next friend to minor D.L., and

respectfully moves this Court to vacate the November 17, 2025 Order striking her First Amended

Complaint (Dkt. 55), on grounds of retaliatory judicial conduct, denial of due process, ADA

retaliation, and failure to adjudicate fraud under Fed. R. Civ. P. 60(d)(3).

1

This motion is submitted pursuant to the Court's inherent power to vacate orders procured through fraud or issued in retaliation for protected activity, and under the United States Constitution's guarantees of access to a neutral tribunal and jury trial.

## I. BACKGROUND

- On July 14, 2025, Plaintiff filed Dkt. 28, a verified and evidentiary-supported Notice and Motion under Rule 60(d)(3), certifying fraud upon the court by DCF, GAL, and the AG's office.

- On November 17, 2025, Plaintiff filed two motions:

  - Dkt. 66: Motion to Adjudicate Pending Fraud (Dkt. 28) and Suspend All Dispositive Practice

  - Dkt. 67: Motion to Strike Successive Motions to Dismiss under Rule 12(g)(2)

- Within minutes of filing those motions, the Court issued an unpublished Text Order striking Plaintiff's Amended Complaint (Dkt. 55), dismissing Dkts. 62 and 64 as moot, and threatening dismissal without further notice if Plaintiff does not comply with strict and coercive re-pleading directives.

- On November 17, 2025, Plaintiff also filed two sealed ex parte Rule 27 preservation motions regarding anticipated Tucker Act litigation. Within hours, the Court issued the retaliatory order striking Plaintiff's complaint, despite no rulings on the fraud motion, disqualification requests, or preservation petitions. This pattern confirms judicial intent to prevent evidence from being preserved or reaching discovery an unconstitutional breach of oath.

This Order is not neutral. It is retaliatory.

On July 24, 2025, Amanda Miranda explicitly stated that "[she] believe[d] David needs a voice" and recommended CASA involvement for D.L., acknowledging the seriousness of concerns warranting third-party oversight. However, in a contradictory KORA response dated October 27, 2025, DCF asserted that the same investigation was classified as a "Family in Need of Assessment" case and that "no findings letters go out" in such cases. This raises a material contradiction: how could Amanda Miranda recommend CASA based on findings that now allegedly never existed? These shifting positions by DCF confirm a pattern of evidence suppression, constructive spoliation, and coordinated fraud upon the court. See Exhibit A Letter to Court.

## II. LEGAL STANDARD

Rule 60(d)(3) — Fraud Upon the Court: "This rule does not limit a court's power to set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3)

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944): When fraud taints the judicial process, no ruling may be enforced until the fraud is addressed.

*Chambers v. NASCO*, 501 U.S. 32 (1991): A court may not use its procedural power to retaliate against a litigant for engaging in protected judicial process.

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009): Due process requires recusal when judicial bias or financial entanglements compromise impartiality.

## III. ARGUMENT

A. The Order Was Retaliatory and Issued Without Adjudicating Fraud

3

219

Rather than rule on <u>Dkt. 28</u> (fraud), <u>Dkt. 65</u> (Tucker Act claims), or <u>Dkt. 66</u> (request to stay proceedings), the Court instead retaliated within minutes of Plaintiff filing a motion that exposed ongoing procedural misconduct.

This violates basic due process, structural neutrality, and Rule 60 jurisprudence.

**B. The Order Denies Plaintiff a Jury Trial Despite Material Factual Disputes**

Plaintiff has demanded a jury trial (Rule 38). The Court cannot resolve fraud, ADA retaliation, evidence spoliation, and GAL misconduct through pretrial procedural orders while factual disputes remain. To do so is a deprivation of Seventh Amendment rights.

**C. The Court Ignored Ongoing Disqualification Motions and Financial Conflicts**

Plaintiff has submitted:

- <u>Dkt. 53</u>: Motion to Disqualify
- <u>Dkt. 56</u>: Renewed Motion for Disqualification Due to Financial Entanglements

Judge Broomes has not ruled on either and continues to preside over a case in which he has a personal stake in shielding state actors from fraud findings that implicate his past orders and alliances.

**D. The Order Requires Plaintiff to Gut Her Own Claims Under Threat of Dismissal**

The Order demands that Plaintiff:

- Omit all claims involving her child D.L.

4

- Omit all dismissed parties

- Limit her complaint to narrow claims defined by the Court, despite live factual disputes

This constitutes a coercive demand to abandon protected ADA claims made under 42 U.S.C. § 12203(b) and 28 C.F.R. § 35.134(b).

The Court is threatening permanent case dismissal if Plaintiff refuses to self-silence.


## IV. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

1. REASSIGN case to neutral judges

2. VACATE the November 17, 2025 Text Entry striking the Amended Complaint;

3. STAY all further briefing or re-pleading deadlines until the Court:

   o adjudicates Dkt. 28 (fraud);

   o rules on Dkts. 53 and 56 (disqualification);

   o addresses Dkt. 66 (motion to stay pending fraud ruling);

4. CERTIFY that Rule 60(d)(3) proceedings are unresolved and that no further dispositive action will proceed until fraud is ruled upon;

5. RECOGNIZE Plaintiff's ADA and constitutional rights to due process, jury trial, and neutral judicial review.


Respectfully submitted,                    Date: November 20, 2025


/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson
Plaintiff, Pro Se and next friend to minor D.L.

ADA-Protected Litigant

1914 5th Ave., Leavenworth, KS 66048 | 913-972-1661

CERTIFICATE OF SERVICE

On Nov 20, 2025, I certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system on all registered parties on this date.

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, Pro Se and Next Friend to minor D.L,

ADA-Protected Litigant

<u>Exhibit A</u>

JAY V. SHORE                                    January 22, 2025
Certified ADA Advocate
c/o 3521 50th St. #51
Lubbock, TX 79413
<u>adarights@pm.me</u>



**CERTIFIED ADA ADVOCATE**

John Jay College of
Criminal Justice - CUNY
2017

KELLY E. JOHNSON
ADA Coordinator
Kelly.Johnson@kscourts.gov

Re: ADA Accommodations for ANGELIINA LAWSON and her minor son <u>D.L.</u>
(<u>DOB</u>_____) Case No. AN20DM131 (Lawson v. Lawson)

Mr. Johnson,

It is my understanding that you are the ADA Coordinator for the 4th Judicial District in Kansas. If you are not the designated responsible employee for ADA compliance under <u>28 C.F.R. §35.107(a)</u>, please make sure that individual is in receipt of this communication and that anyone with knowledge of this communication preserves the privacy mandated in <u>28 C.F.R. §35.160(b)</u> (2).

My role here is federally protected under <u>42 U.S.C. §12203(b)</u> and <u>28 C.F.R. §35.134(b)</u>, as aiding and encouraging Ms. Angeliina Lawson and her minor son <u>D.L.</u> in the exercise and enjoyment of their rights under the Americans with Disabilities Act of 1990, the ADA Amendments Act of 2008, and Final Rule implementation ("ADA").

I have been in contact with Ms. Lawson's attorney, Mr. Ronald Wood Esq., to inform him that my role is substantially different from his, in that I operate administratively, under the ADA, as opposed to "at law" which is his venue and capacity. An attorney that represents a litigant is no substitute for one who also aids and encourages under <u>42 U.S.C. §12203(b)</u> and <u>28 C.F.R. §35.134(b)</u>.

Ms. Lawson has requested ADA accommodations, and accommodation requests will be requested again in this communication. Please respond to each accommodation requested under the parameters of <u>28 C.F.R. §35.164</u>.

**Ms. Lawson's Disabilities**

Ms. Lawson has a disability under prong 1 of the definition of disability (<u>28 C.F.R. §35.108(a)</u> (1), and the nature of the disability is a substantial limitation of the major life activities of communication, thinking, concentrating, interacting with others, and more. The mitigation she needs is related to effective communication, which is a major tenet of the ADA.

<u>D.L.</u>        **Disabilities**

<u>D.L.</u>    has a disability under prong 1 of the definition of disability (<u>28 C.F.R. §35.108(a)(1)</u>, and the nature of the disability is a substantial limitation of the major life activities of communication, thinking, concentrating, interacting with others, and more. <u>D.L.</u>      disability can be classified as a communication disability, with added exacerbation from this court process, which is substantially impairing his communication exponentially.

## Previous Communication with Kelly Johnson

On November 26, 2024, you (Mr. Kelly Johnson) wrote an email to Ms. Lawson, stating that *"The switch in focus away from your son's issues is somewhat confusing as you did not previously mention that you have a disability and require accommodations."* This statement seems to serve no purpose other than to posture and intimidate.  There is no explanation of *how* confusion is created by Ms. Lawson, leaving this to be latently ambiguous. For individuals with communication disabilities, making statements related to disability without fully explaining the meanings of the statements is outside of the scope of providing effective communication.

In the November 26, 2024 email, you also state: *"As far as your question about transcripts or videos of court hearings, it is not clear how receiving those after the hearings have concluded would accommodate any needs your disability causes you during court hearings."*

For individuals with communication disabilities, court is an exacerbation of an already existing disability, and often litigants with disabilities leave court wondering what just happened, because of the heightened stimulus to their conditions. Having the ability to recall, outside of the stressors of court is all that is being asked here. To be able to look back over the transcript, outside of the court setting, immediately thereafter, so that a litigant can be better prepared to participate in the services, programs and activities of the court is a reasonable part of equal access.

Judith Herman, MD wrote in her book titled Trauma and Recovery: "If one set out by design to devise a system for provoking intrusive post-traumatic symptoms, one could not do better than a court of law. Women who have sought justice in the legal system commonly compare this experience to being raped a second time."

You go on to state *"As you are probably aware, 28 C.F.R. §35.160(a)(1) requires the court to take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others. Your suggested accommodation would not appear to meet that goal, but you are welcome to provide clarification."*

As one with communication disabilities, Ms. Lawson is with the expectation of you following your directives under the ADA, specifically 28 C.F.R. §35.164, 28 C.F.R. §35.101(b), and 28 C.F.R. §35.160(b)(2). Instead of giving "primary consideration to the requests of individuals with disabilities," or claiming the fundamental alteration or undue burden defenses of 28 C.F.R. §35.164, your statement placed Ms. Lawson in the unfortunate position of providing "clarification" of how being able to immediately have the ability to read and study a transcript, when her disability limits her while in court, is "meeting a goal" of equal access.

**You're asking someone with communication disability to communicate better with you. The irony in this cannot be overstated.**

You're asking someone with communication disability to communicate better with you while dangling the guaranteed right of equal access in front of her, just out of reach.

The transcripts can be purchased, yes. For persons without disabilities. But the report from Rhonda Rhodes Wise (in an email dated January 6, 2025 to ashley@Ronaldwoodlaw.com) is that she can have them "approximately the third week in February", dependent upon circumstances related with Ms. Wise's health. This defeats the ability of a litigant with communication disability to have equal access to the programs, services, and activities of the Court. CART would be a wonderful accommodation to work around this in the short term, in addition to Ms. Lawson recording the proceedings.

In addition to the timely unavailability of the official transcript, there is the matter of cost prohibition. Since Ms. Lawson is an individual with a communication disability, and she is asking for transcripts and recordings for disability mitigation, the Court "may not place a surcharge on a particular individual with a disability" - "to cover the costs of measures, such as the provision of auxiliary aids or program accessibility." (28 C.F.R. §35.130(f)) Understand that instead of an "official transcript, an unofficial recording and/or CART transcript is a readily achievable mitigation for disability accommodation.

Your last statement in the November 26. 2024 email: "You and your attorney are free to contact the clerk's office about ordering and purchasing transcripts of any of your court hearings" constitutes several problems - (1) There is no timely availability of the transcripts, or even the promise of a certain availability, and (2) It does not allow Ms. Lawson the ability to recall, in a setting that she is without the stressors of court, an immediate access to what actually happened.

As to recordings, the most famous study by UCLA psychology professor Albert Mehrabian created the 7-38-55 rule as to communication. He discovered that 7% of communication is based on the words, while 38% comes from the tone of voice, and 55% comes from the speaker's body language and facial expressions. This is critical for someone with communication disability, that needs all available means of communication availed to them.

Words alone do not reveal whether a judge raises their voice to a litigant in an intimidating way.

Words alone do not reveal whether an oppositional lawyer uses sarcasm in their tone of voice, when discriminating statements are made concerning a litigants disability limitations. Ms. Lawson has rights to preserve and rights to equally access, and I intend to document this interaction for the purpose of her pursuit of these rights.

## ADA Matters of equal access

42 U.S.C. §12203(b) and 28 C.F.R. §35.134(b) prohibit as unlawful, acts of coercion, intimidation, threats, and interference with one who is exercising or enjoying rights under the ADA, including those who aid and encourage them.

42 U.S.C. §12202 and 28 C.F.R. §35.178 remove immunity concerning ADA claims in federal court. Tennessee v. Lane, 541 U.S. 509 (2004) upheld this provision of the ADA.

State court judges, acting in administrative capacity to fulfill the duty listed under 28 C.F.R. §35.107(a), are not acting a judicial capacity. The rights that Ms. Lawson has to equal access under the ADA is not an adjudication between parties. There is no requirement in Title II for a motion for ADA accommodations, and the privacy provisions of 28 C.F.R. §35.160(b)(2) would preclude such an action, since it would give the opposing party substantive, tactical and unfair advantages to use Ms. Lawson's disability against her in a discriminating manner.

"We conclude that the judge's decisions were not judicial acts for which he should be held absolutely immune." *Forrester v. White*, 484 U.S. 219 (1988)

From *Marie v. Moser*, 65 F. Supp 3d 1175, at 1192: "In determining whether an act by a judge [or here, a clerk of the judicial system] is 'judicial,' thereby warranting absolute immunity, [courts] are to take a functional approach, for such 'immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.'" *Bliven v. Hunt*, 579 F.3d 204, 209-10 (2d Cir. 2009) (quoting *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)) (emphasis in original). '[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.' *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). Kansas law distinguishes between a clerk's "judicial" and "ministerial" functions by asking whether 'a statute imposes a duty upon the clerk to act in a certain way leaving the clerk no discretion.' *Cook v. City of Topeka*, 232 Kan. 334, 654 P.2d 953, 957 (Kan. 1982)."

From *Cook*, at 338: "Judicial function does not incorporate ministerial tasks. Black's Law Dictionary declares ministerial to be the opposite of judicial: 'Ministerial. That which is done under the authority of a superior; opposed to judicial; that which involves obedience to instructions, but demands no special discretion, judgment or skill.' Black's Law Dictionary 1148 (4th ed. rev. 1968)."

The designated responsible employee under 28 C.F.R. §35.107(a), even if that position is assumed by a judge, is a capacity of administrative, or in the application of Kansas, "ministerial" duty to accommodate individuals with disability under the "authority of a superior" mandate of the ADA.
The Guardian Ad Litem (GAL) in this matter is similarly affected when dealing with equal access on the basis of disability.

Judge Eric W. Godderz has retaliated against Ms. Lawson for acting in a compliant way with the ADA to aid and encourage her son D.L. to receive equal rights under the ADA. Mr. Godderz has indicated in open court that he doesn't believe Ms. Lawson's intentions in acting to protect D.L. from abuse allegations, and this is shocking to the conscience. Ms. Lawson has a natural parental duty to report abuse and advocate for D.L. 's disability is not to be ignored in lieu of the ego of the court, yet, that is what has happened. I will remind you that D.L. ; under the legal disability of a minor, and thus needs adult interaction *that he can trust* to aid and encourage him in accessing all major life activities.

D.L. has made a request to speak directly with Judge Godderz, and Judge Godderz refused. This denies D.L. effective communication on the basis of disability. Mr. Bolton, as GAL, has reinforced this removal of D.L. ability to speak, insisting that D.L. not testify or speak during hearings. To any reasonable person, these actions are suspect.

Denying D.L. ability to communicate with his biological mother, Ms. Lawson, is hereon asserted as denying D.L. the ability to have access to his aid and encouragement for equal access under the ADA. This has been accomplished by "perpetuation" of discrimination against D.L. by Mr. Godderz and Mr. Bolton.

I'm shocked at all the documentation that Ms. Lawson has that documents psychological abuse in this case, in which the court has not only ignored, but has created and perpetuated.

D.L. is well documented with a history of psychological abuse from several providers, and yet the court and the GAL insist on keeping him in the environment that perpetuates and continues this trauma, and to add to the injury, removing his trusted psychological counselor, and replacing the counselor with one chosen by Mr. Bolton with no explanation of how this better suits the "best interests" of D.L. , or how this better accommodates D.L. disability.

Be advised that perpetuation of discrimination on the basis of disability is a direct violation of the ADA, 28 C.F.R. §35.130(b)(1)(v), and taking away a therapist that was established and trusted as a "learned behavioral modification" (28 C.F.R. §35.108(d)(4)(iv)) is no different than yanking out a child's hearing aid, or taking away their wheelchair.

In fact, Psychotherapy and behavioral therapy are listed as mitigators of disability (28 C.F.R. §35.108(d)(4)(v)), and Title II of the ADA, 28 C.F.R. §35.160(b)(2) mandates that: "In determining what types of auxiliary aids and services are necessary, a public entity **shall give**

**primary consideration to the requests of individuals with disabilities."** (emphasis added)

Further, 28 C.F.R. §35.130(e)(1) states: "Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA or this part which such individual chooses not to accept."

D.L.____ on August 14, 2024, told Mr. Bolton "its important for me to keep goint to alisons therapy like I said and i dont want to be stopped and just do andrea." D.L.___ also told Mr. Bolton "I'm going to alison's therapy appointment and I wish to have more appointments with her since I can really open up to her".

Instead of following ADA mandated guidance, Mr. Bolton told D.L.____ in an email response on August 15, 2024, "You do not get to decide therapy – we talked about this. As a reminder - I am not your personal attorney – I represent your best interest. At this point, I have recommended to the parties that individual therapy be with Andrea Dunseth. If you want to discuss further, we can set up an appointment to meet and discuss, but know that while I will take your position into account and always advise the Court of your deisres [sic], we may disagree on certain things."

The ADA is clear that D.L.____, in the capacity of being a disabled individual, does not have to choose to accept the therapy offered as a service or auxiliary service of the court for his disability.

Mr. Bolton is discriminating against D.L.___ on the basis of disability with this arbitrary denial of his requested accommodation of going to Alison without complying with the mandate of 28 C.F.R. §35.164. Fundamental alteration and undue burden as defenses are claimed hereon as estopped, since they have been tacitly waived by Mr. Bolton.

As a further exhibition of intimidation and threat, Mr. Bolton told Ms. Lawson in an email on August 16, 2024: "The Court previously ordered that I choose the therapist - I have chosen Andrea Dunseth to provide individual therapy to D.L.___  I expect D.L.___ to see Andrea and if he continues to be taken to other therapists, I am going to ask the Court to intervene and will ask that the violating parent's parenting time be suspended and/or supervised. To be clear, no other therapist should be treating D.L.____ individually - you don't get to make that decision at this point".

From another email dated September 30, 2024, Mr. Bolton proclaims: "I have reviewed the Temporary Orders entered by the Court while I was out of the country. It appears that the Court has vested me with the final say on counseling on a temporary basis if the parties are unable to reach an agreement."

In this statement, there is no consideration of D.L.___s request for his learned behavioral modification, and already in place prior to Mr. Bolton's interference, of the therapy services of Alison Dean.

It should be made clear that Mr. Bolton's inference of Ms. Lawson making " that decision" is a logical fallacy, since she was merely aiding and encouraging her son D.L. to be able to enjoy the rights of equal access and clearly established guidance under the ADA. 42 U.S.C. §12203(b) defines the acts of coercion, intimidation, threats and interference with Ms. Lawson's capacity of aiding and encouraging D.L. enjoyment of the mandates I have listed hereon as rights under the ADA. Mr. Bolton words clearly issued a coercive, intimidating threat of suspension of parenting time if Ms. Lawson honored her son's requested therapy connection.

In an email dated October 21, 2024 from Mr., Bolton to Mr. Ron Wood, Mr. Bolton alleges: "To be clear, D.L. has again confirmed that there has been no physical abuse with regard to his dad". **Mr. Bolton cannot ethically, legally, or professionally represent** D.L. **according to his own admission.** He can only represent D.L. alleged "best interest". Please observe this email from Mr. Bolton with the admission and notice given to D.L. that he is not D.L. Personal attorney:

---------- Forwarded message ---------
From: <abolton@andrewboltonlaw.com>
Date: Thu, Aug 15, 2024 at 10:04 AM
Subject: RE: Dad
To: D.L.
Cc: Andrea Dunseth <andrea.dunseth@carecollectivekc.com>

D.L. –

You do not get to decide therapy – we talked about this. ==As a reminder - I am not your personal attorney – I represent your best interest.== At this point, I have recommended to the parties that individual therapy be with Andrea Dunseth.  If you want to discuss further, we can set up an appointment to meet and discuss, but know that while I will take your position into account and always advise the Court of your deisres, we may disagree on certain things.

Andy

To be clear, we are asserting that Mr. Bolton is intentionally keeping D.L. from speaking to the people he wishes to speak with, including his preferred therapist, the court and friends and family members he has always had that help him cope with disability of psychological trauma being present in his life.

The Court, including the GAL services, and Mr. Bolton's capacity as GAL, is without immunity concerning these claims for which Ms. Lawson and D.L. have standing to pursue.

Before you even think of accusing me of unauthorized practice of law, you should consider the first (and only) impression appeals case of *Barker v. Riverside County Office of Education*, <u>584 F.3d 821</u> (2009, 9th Cir.), concerning who may provide "assistance" to defend the rights of the disabled, which protects my status as Congressionally intended under the ADA (and Rehabilitation Act of 1973) to assist Ms. Lawson and <u>D.L.</u> in defending their rights. I am here asserting **administrative access** rights to equal access to your services, programs and activities.

From *Barker* at 827: "As in our analysis of section 504 of the Rehabilitation Act, the language employed in the anti-retaliation provisions of Title II does not evince a congressional intent to limit standing to individuals with disabilities. **Instead, the use of the phrase 'any individual' and the absence of any language limiting standing to those with disabilities indicates Congress's intent to grant standing under Title II 'as broadly as is permitted by Article III of the Constitution.'"** (emphasis added)

From *Barker* at 827: "As we recognized in our Rehabilitation Act analysis, it appears that in formulating the language in Title II's anti- retaliation provisions, Congress recognized that disabled individuals may require assistance from others to defend their rights."

I currently have standing to invoke my right to aid and encourage Ms. Lawson and <u>D.L.</u> in the exercise and enjoyment of their rights under the ADA. Should you interfere, or coerce, threaten, or intimidate, I will have further standing. I am communicating to you in opposition to unlawful acts that violate the ADA. I invoke the protections of <u>28 C.F.R. §35.134(a)</u> and <u>34 CFR §100.7(e)</u>.

According to reports by Ms. Lawson (with documentation [*"receipts"*] provided) to the court appointed GAL's suggested therapist, Andrea Dunseth, failed or refused to report abuse allegations, and she IS a mandatory reporter. To add injury, Ms. Dunseth invited the alleged abuser into the therapy sessions with <u>D.L.</u> As a DV/SV certified survivor rights advocate, through NCVLI in Portland, OR (2018), these acts by Dunseth shock the conscience.

The discouraging thing about the Judge in this case is that Ms. Lawson is not being given the right to be equally heard as a disabled individual, or to be able to comprehend and gain access to the events of the hearing without paying an exorbitant fee for transcripts that are months away from being produced. This is not timely and effective communication under the ADA for a disabled litigant with communication disability.

NOTE This is not a request for the court to change it's official record services, programs, and activities, but for Ms. Lawson to be able to simply produce an unofficial record of the events that happen in court so she can listen to this after the court proceedings are over.

<u>For me, my disability has a medically prescribed learned behavioral modification of recording any and all proceedings I am in, and this is non-negotiable for me to have equal access as an individual with communication</u>

disability. This is conspicuous notice that I will record the events of which I am participatory in my federally protected capacity under 42 U.S.C. §12203(b).

**Requested reasonable accommodations for Ms. Lawson and** D.L.   **are as listed:**

1. Ms. Lawson needs to be able to ask questions and receive courteous, civil and comprehensive answers to her questions. **(One Instance of Mr. Bolton coercing, intimidating, and threatening)** Ms. Lawson reports that Mr. Bolton (GAL) told her in a hearing that if she raised her hand once more to ask question, that Mr. Bolton would invoke the Child In Need status that would put D.L.   in Foster Care. This is flat out intimidation, coercion, threats, and interference with both D.L.   and Ms. Lawson receiving equal access as individuals with disabilities. Interestingly enough, Ms. Lawson is finding it near impossible to get transcripts of this from the Court.

2. Ms. Lawson needs to attend all court proceedings by Zoom for several reasons. First, for disability mitigation and to keep her more centered and in an environment that is less stressful, and second, so that she can be in a separate space from her abuser. Both of these reasons relate with disability mitigation. Video-based telecommunications products and systems are listed in 28 C.F.R. §35.104(1) as a reasonable accommodation.

3. Taking breaks when requested, so that she can re-focus and center.

4. Ms. Lawson needs to record the hearings, either by her own volition, or provided by the court, so that she can re-visit the events in a clear space without the stressors of court being present. Recording is listed in 28 C.F.R. §35.104(2) - "audio recordings", and also in 28 C.F.R. §35.104(4) "other similar services and actions."

5. Having her ADA Advocate (undersigned) present and participatory on Zoom so that her legally authorized aid and encouragement with the exercise of her ADA rights is not interfered with. The undersigned has several physical disabilities that preclude travel to Kansas. To deny this would be to give both Ms. Lawson and I standing for denial of equal access and/or discrimination on the basis of disability.

6. CART - Computer Aided Realtime Transcription is listed in 28 C.F.R. §35.104(1) as a reasonable accommodation. This is requested for both Ms. Lawson and I, because I too have communication disabilities, and CART is a mitigator for this disability set.

7. A copy of any official court audio and video recordings that occur, in an accessible format of .mp3, .mp4, .wav, and/or .wmv.

8. That she be given extra time to respond to any and all processes of court. Ms. Lawson's disability imposes an additional burden in working through traumatic memory and physiological symptoms that must be aided by flexibility in the court's handling of filing deadlines.

9. The travel requirements for court, do not take into consideration that Ms. Lawson's disability is exacerbated by extended travel times for these matters, and so she is already disadvantaged when reaching therapists that are over an hour away, and when the court proceedings are moved to another location much further away. For this reason, the Court is

requested to consider this and accommodate her with a reasonably close venue for any therapy or other requirements that are in play in this matter.

10. That D.L. receive CASA services, as recommended by Amanda Miranda, LBSW, on July 24, when she said **"I believe** D.L. **needs a voice."** This goes directly to accommodating D.L. communication disability, and is readily achievable by the Court. **(A second instance of Mr. Bolton coercing, intimidating and threatening)** D.L. in an October 11, 2024 email to his grandmother, referring to Mr. Bolton as his attorney, laid out that Mr. Bolton was saying that D.L. communicating with Ms. Lawson was "making it worse" and threatening and intimidating that Ms. Lawson was going to get in trouble just because D.L. sincerely wants communication with his mother.

---------- Forwarded message ---------
From: D.L.
Date: Fri, Oct 11, 2024, 2:51 PM
Subject:
To: annaliisa turunen <annaliisa452002@gmail.com>

Hi mummo im sorry I didn't see that you emailed yesterday but ive been having bloody noses every once and a while but they have started to happen less and less and I have been able to take my medicine everyday and I really hope that they can change it to another judge and also I don't know if I can keep emailing I really want to but yesterday or the day before that I had to go to my attorney and I guess he knows all of our emails between eachother and it sounded like he said that it was making it worse and that mom is going to get in trouble so I don't know if I will be able to because I feel like dad is starting to get more and more making sure I cant communicate with her or you but I will keep trying to make sure that I can keep emailing and thank you so much for emailing during school its hard to find time but I will keep making sure and if you can keep responding during school time that would help a lot!! And I miss her so much too and I really hope that this is all able to be solved soon and I love you and her so much!!! and I will keep making sure that im safe

11. Please provide the name, email address, and fax number for the designated responsible employee under 28 C.F.R. §35.107(a). Both Ms. Lawson and I need this for disability equal access.

Your prompt response is appreciated.

Regards,

P.D., Jay V. Shore, as Certified ADA Advocate, and with disabilities

Cc: jolene.Zirkle@kscourts.org
    abolton@andrewboltonlaw.com
    ronwood@ronaldwoodlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, Pro Se and Next Friend to minor D.L.,

ADA-Protected Litigant,

v.

KANSAS DEPARTMENT FOR CHILDREN AND FAMILIES, et al.,

Defendants.

Case No. 2:25-cv-02171

TRIAL BY JURY DEMANDED

FRAUD UPON THE COURT

DISQUALIFICATION OF JUDGES

SUPPLEMENTAL RULE 60(d)(3) NOTICE JUDICIAL BIAS, DEFAULT MANIPULATION,

AND CENSORSHIP OF JURY TRIAL

COMES NOW Plaintiff Angeliina Lynn Lawson, appearing pro se and as next friend to minor

D.L., and respectfully submits this supplemental notice and expansion of her original Rule

60(d)(3) fraud-on-the-court certification (Dkt. 28) to include recent post-certification conduct by

the presiding judge and defense counsel that rises to the level of:

1

1. Judicial retaliation and bias in violation of 28 U.S.C. § 455;

2. Manipulation of default and procedural access to protect state actors;

3. Suppression of Plaintiff's Seventh Amendment right to a jury trial;

4. Procedural coercion to force Plaintiff to self-censor federal and ADA claims.

This supplemental filing is necessary to preserve Plaintiff's record for appellate review, Court of Federal Claims presentment, and further protective action.

I. BACKGROUND

Plaintiff has already submitted:

- Dkt. 28: Rule 60(d)(3) certification of fraud upon the court (KDCF and GAL falsification, spoliation, KORA suppression);

- Dkt. 65: Notice of intent to pursue related Tucker Act claims in the U.S. Court of Federal Claims;

- Dkt. 66: Motion to Adjudicate Fraud and Suspend Dispositive Briefing;

- Dkt. 67: Motion to Strike Defendants' Successive Motions to Dismiss under Rule 12(g)(2);

- Dkts. 53 and 56: Judicial disqualification filings under 28 U.S.C. § 455 and conflict of interest disclosures.

Rather than adjudicate these motions, the Court issued a retaliatory text-only order on November 17, 2025, striking Plaintiff's First Amended Complaint (Dkt. 55) and threatening dismissal without further notice.

On July 24, 2025, Amanda Miranda explicitly stated that "[she] believe[d] David needs a voice" and recommended CASA involvement for D.L., acknowledging the seriousness of concerns warranting third-party oversight. However, in a contradictory KORA response dated October 27, 2025, DCF asserted that the same investigation was classified as a "Family in Need of Assessment" case and that "no findings letters go out" in such cases. This raises a material contradiction: how could Amanda Miranda recommend CASA based on findings that now allegedly never existed? These shifting positions by DCF confirm a pattern of evidence suppression, constructive spoliation, and coordinated fraud upon the court. See Exhibit A Letter to Court.

## II. JUDICIAL RETALIATION AND PROCEDURAL BIAS

The timing and substance of the November 17, 2025 order indicate:

- Intent to punish Plaintiff for filing protected motions (Dkts. 66 and 67);

- Willful evasion of fraud adjudication (Dkt. 28);

- Refusal to rule on judicial disqualification while continuing to issue punitive orders;

- Denial of ADA and next-friend standing as a means to suppress all factual allegations involving the child;

- Ex parte conversion of a scheduled Rule 16 conference into a stealth dismissal hearing.

These acts fall within the scope of fraud upon the court because they involve judicial conduct designed to frustrate the court's own fact-finding mission to protect aligned state actors.

## III. DEFAULT MANIPULATION AND DUE PROCESS VIOLATION

The Attorney General defaulted under Rule 55. Plaintiff filed:

- Dkt. 34: Renewed Motion for Clerk's Entry of Default;

- Dkt. 38: Motion for Default Judgment;

- Dkt. 66: Notifying the Court that default was improperly overridden without order.

The Court has allowed the AG to continue filing dispositive motions (Dkts. 62, 64) without addressing the unresolved default. This violates:

- Rule 55 procedural integrity;

- Equal application of law to represented vs. pro se litigants;

- Plaintiff's right to a final judgment before facing further defenses.

## IV. CENSORSHIP OF JURY TRIAL AND FRAUD SUPPRESSION

Plaintiff has preserved her right to a jury trial under Rule 38 and the Seventh Amendment.

Plaintiff's claims involve material factual disputes that must go to a jury: fabricated GAL reports, altered KIDS entries, DCF record deletion, and more.

The Court is attempting to dismiss the case without discovery, without ruling on fraud, and without allowing factual development.

This is judicial censorship of factfinding. It is unconstitutional.

The November 17, 2025 order is coercing Plaintiff to:

- Abandon all ADA claims;

- Remove all fraud-related facts;

- Refuse next-friend status for her child;

- Accept a dismissal pathway while fraud is pending.

This is not adjudication. It is procedural sabotage.

## V. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

1. Accept this filing as a formal supplement to Dkt. 28 under Rule 60(d)(3);

2. Recognize that recent orders and docket manipulation confirm judicial bias and fraud concealment;

3. Stay all further proceedings until:

   o Dkt. 28 is adjudicated;

   o Dkts. 53 and 56 are ruled upon;

   o A fraud hearing is scheduled;

4. Preserve all appellate and Tucker Act claims from ongoing harm.

Respectfully submitted,                          Date: November 20, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, Pro Se and Next Friend to minor D.L.

ADA-Protected Litigant

1914 5th Ave., Leavenworth, KS 66048

CERTIFICATE OF SERVICE

On Nov 20, 2025 I certify that a true and correct copy of the foregoing was served via the

Court's CM/ECF system on all registered parties on this date.

/s/ Angeliina Lynn Lawson

Plaintiff, Pro Se and Next Friend to minor D.L.

ADA-Protected Litigant

Exhibit A

JAY V. SHORE                         January 22, 2025
Certified ADA Advocate
c/o 3521 50th St. #51
Lubbock, TX 79413
adarights@pm.me



KELLY E. JOHNSON
ADA Coordinator
Kelly.Johnson@kscourts.gov

Re: ADA Accommodations for ANGELIINA LAWSON and her minor son <u>D.L.</u>
(<u>DOB</u>) Case No. AN20DM131 (Lawson v. Lawson)

Mr. Johnson,

It is my understanding that you are the ADA Coordinator for the 4th Judicial District in Kansas. If you are not the designated responsible employee for ADA compliance under 28 C.F.R. §35.107(a), please make sure that individual is in receipt of this communication and that anyone with knowledge of this communication preserves the privacy mandated in 28 C.F.R. §35.160(b)(2).

My role here is federally protected under 42 U.S.C. §12203(b) and 28 C.F.R. §35.134(b), as aiding and encouraging Ms. Angeliina Lawson and her minor son D.L. in the exercise and enjoyment of their rights under the Americans with Disabilities Act of 1990, the ADA Amendments Act of 2008, and Final Rule implementation ("ADA").

I have been in contact with Ms. Lawson's attorney, Mr. Ronald Wood Esq., to inform him that my role is substantially different from his, in that I operate administratively, under the ADA, as opposed to "at law" which is his venue and capacity. An attorney that represents a litigant is no substitute for one who also aids and encourages under 42 U.S.C. §12203(b) and 28 C.F.R. §35.134(b).

Ms. Lawson has requested ADA accommodations, and accommodation requests will be requested again in this communication. Please respond to each accommodation requested under the parameters of 28 C.F.R. §35.164.

## Ms. Lawson's Disabilities

Ms. Lawson has a disability under prong 1 of the definition of disability (28 C.F.R. §35.108(a)(1), and the nature of the disability is a substantial limitation of the major life activities of communication, thinking, concentrating, interacting with others, and more. The mitigation she needs is related to effective communication, which is a major tenet of the ADA.

D.L.    **Disabilities**

D.L.    has a disability under prong 1 of the definition of disability (28 C.F.R. §35.108(a)(1), and the nature of the disability is a substantial limitation of the major life activities of communication, thinking, concentrating, interacting with others, and more. D.L.    disability can be classified as a communication disability, with added exacerbation from this court process, which is substantially impairing his communication exponentially.

**Previous Communication with Kelly Johnson**

On November 26, 2024, you (Mr. Kelly Johnson) wrote an email to Ms. Lawson, stating that "*The switch in focus away from your son's issues is somewhat confusing as you did not previously mention that you have a disability and require accommodations.*" This statement seems to serve no purpose other than to posture and intimidate.  There is no explanation of *how* confusion is created by Ms. Lawson, leaving this to be latently ambiguous. For individuals with communication disabilities, making statements related to disability without fully explaining the meanings of the statements is outside of the scope of providing effective communication.

In the November 26, 2024 email, you also state: "*As far as your question about transcripts or videos of court hearings, it is not clear how receiving those after the hearings have concluded would accommodate any needs your disability causes you during court hearings.*"

For individuals with communication disabilities, court is an exacerbation of an already existing disability, and often litigants with disabilities leave court wondering what just happened, because of the heightened stimulus to their conditions. Having the ability to recall, outside of the stressors of court is all that is being asked here. To be able to look back over the transcript, outside of the court setting, immediately thereafter, so that a litigant can be better prepared to participate in the services, programs and activities of the court is a reasonable part of equal access.

Judith Herman, MD wrote in her book titled Trauma and Recovery: "If one set out by design to devise a system for provoking intrusive post-traumatic symptoms, one could not do better than a court of law. Women who have sought justice in the legal system commonly compare this experience to being raped a second time."

You go on to state "*As you are probably aware, 28 C.F.R. §35.160(a)(1) requires the court to take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others. Your suggested accommodation would not appear to meet that goal, but you are welcome to provide clarification.*"

As one with communication disabilities, Ms. Lawson is with the expectation of you following your directives under the ADA, specifically 28 C.F.R. §35.164, 28 C.F.R. §35.101(b), and 28 C.F.R. §35.160(b)(2). Instead of giving "primary consideration to the requests of individuals with disabilities," or claiming the fundamental alteration or undue burden defenses of 28 C.F.R. §35.164, your statement placed Ms. Lawson in the unfortunate position of providing "clarification" of how being able to immediately have the ability to read and study a transcript, when her disability limits her while in court, is "meeting a goal" of equal access.

**You're asking someone with communication disability to communicate better with you. The irony in this cannot be overstated.**

You're asking someone with communication disability to communicate better with you while dangling the guaranteed right of equal access in front of her, just out of reach.

The transcripts can be purchased, yes. For persons without disabilities. But the report from Rhonda Rhodes Wise (in an email dated January 6, 2025 to ashley@Ronaldwoodlaw.com) is that she can have them "approximately the third week in February", dependent upon circumstances related with Ms. Wise's health. This defeats the ability of a litigant with communication disability to have equal access to the programs, services, and activities of the Court. CART would be a wonderful accommodation to work around this in the short term, in addition to Ms. Lawson recording the proceedings.

In addition to the timely unavailability of the official transcript, there is the matter of cost prohibition. Since Ms. Lawson is an individual with a communication disability, and she is asking for transcripts and recordings for disability mitigation, the Court "may not place a surcharge on a particular individual with a disability" - "to cover the costs of measures, such as the provision of auxiliary aids or program accessibility." (28 C.F.R. §35.130(f)) Understand that instead of an "official transcript, an unofficial recording and/or CART transcript is a readily achievable mitigation for disability accommodation.

Your last statement in the November 26. 2024 email: "You and your attorney are free to contact the clerk's office about ordering and purchasing transcripts of any of your court hearings" constitutes several problems - (1) There is no timely availability of the transcripts, or even the promise of a certain availability, and (2) It does not allow Ms. Lawson the ability to recall, in a setting that she is without the stressors of court, an immediate access to what actually happened.

As to recordings, the most famous study by UCLA psychology professor Albert Mehrabian created the 7-38-55 rule as to communication. He discovered that 7% of communication is based on the words, while 38% comes from the tone of voice, and 55% comes from the speaker's body language and facial expressions. This is critical for someone with communication disability, that needs all available means of communication availed to them.

Words alone do not reveal whether a judge raises their voice to a litigant in an intimidating way.

Words alone do not reveal whether an oppositional lawyer uses sarcasm in their tone of voice, when discriminating statements are made concerning a litigants disability limitations. Ms. Lawson has rights to preserve and rights to equally access, and I intend to document this interaction for the purpose of her pursuit of these rights.

## ADA Matters of equal access

42 U.S.C. §12203(b) and 28 C.F.R. §35.134(b) prohibit as unlawful, acts of coercion, intimidation, threats, and interference with one who is exercising or enjoying rights under the ADA, including those who aid and encourage them.

42 U.S.C. §12202 and 28 C.F.R. §35.178 remove immunity concerning ADA claims in federal court. Tennessee v. Lane, 541 U.S. 509 (2004) upheld this provision of the ADA.

State court judges, acting in administrative capacity to fulfill the duty listed under 28 C.F.R. §35.107(a), are not acting a judicial capacity. The rights that Ms. Lawson has to equal access under the ADA is not an adjudication between parties. There is no requirement in Title II for a motion for ADA accommodations, and the privacy provisions of 28 C.F.R. §35.160(b)(2) would preclude such an action, since it would give the opposing party substantive, tactical and unfair advantages to use Ms. Lawson's disability against her in a discriminating manner.

"We conclude that the judge's decisions were not judicial acts for which he should be held absolutely immune." *Forrester v. White*, 484 U.S. 219 (1988)

From *Marie v. Moser*, 65 F. Supp 3d 1175, at 1192: "In determining whether an act by a judge [or here, a clerk of the judicial system] is 'judicial,' thereby warranting absolute immunity, [courts] are to take a functional approach, for such 'immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches.'" *Bliven v. Hunt*, 579 F.3d 204, 209-10 (2d Cir. 2009) (quoting *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)) (emphasis in original). '[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.' *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). Kansas law distinguishes between a clerk's "judicial" and "ministerial" functions by asking whether 'a statute imposes a duty upon the clerk to act in a certain way leaving the clerk no discretion.' *Cook v. City of Topeka*, 232 Kan. 334, 654 P.2d 953, 957 (Kan. 1982)."

From *Cook*, at 338: "Judicial function does not incorporate ministerial tasks. Black's Law Dictionary declares ministerial to be the opposite of judicial: 'Ministerial. That which is done under the authority of a superior; opposed to judicial; that which involves obedience to instructions, but demands no special discretion, judgment or skill.' Black's Law Dictionary 1148 (4th ed. rev. 1968)."

The designated responsible employee under 28 C.F.R. §35.107(a), even if that position is assumed by a judge, is a capacity of administrative, or in the application of Kansas, "ministerial" duty to accommodate individuals with disability under the "authority of a superior" mandate of the ADA.

The Guardian Ad Litem (GAL) in this matter is similarly affected when dealing with equal access on the basis of disability.

Judge Eric W. Godderz has retaliated against Ms. Lawson for acting in a compliant way with the ADA to aid and encourage her son D.L. to receive equal rights under the ADA. Mr. Godderz has indicated in open court that he doesn't believe Ms. Lawson's intentions in acting to protect D.L. from abuse allegations, and this is shocking to the conscience. Ms. Lawson has a natural parental duty to report abuse and advocate for D.L. 's disability is not to be ignored in lieu of the ego of the court, yet, that is what has happened. I will remind you that D.L. ; under the legal disability of a minor, and thus needs adult interaction *that he can trust* to aid and encourage him in accessing all major life activities.

D.L. has made a request to speak directly with Judge Godderz, and Judge Godderz refused. This denies D.L. effective communication on the basis of disability. Mr. Bolton, as GAL, has reinforced this removal of D.L. ability to speak, insisting that D.L. not testify or speak during hearings. To any reasonable person, these actions are suspect.

Denying D.L. ability to communicate with his biological mother, Ms. Lawson, is hereon asserted as denying D.L. the ability to have access to his aid and encouragement for equal access under the ADA. This has been accomplished by "perpetuation" of discrimination against D.L. by Mr. Godderz and Mr. Bolton.

I'm shocked at all the documentation that Ms. Lawson has that documents psychological abuse in this case, in which the court has not only ignored, but has created and perpetuated.

D.L. is well documented with a history of psychological abuse from several providers, and yet the court and the GAL insist on keeping him in the environment that perpetuates and continues this trauma, and to add to the injury, removing his trusted psychological counselor, and replacing the counselor with one chosen by Mr. Bolton with no explanation of how this better suits the "best interests" of D.L. , or how this better accommodates D.L. disability.

Be advised that perpetuation of discrimination on the basis of disability is a direct violation of the ADA, 28 C.F.R. §35.130(b)(1)(v), and taking away a therapist that was established and trusted as a "learned behavioral modification" (28 C.F.R. §35.108(d)(4)(iv)) is no different than yanking out a child's hearing aid, or taking away their wheelchair.

In fact, Psychotherapy and behavioral therapy are listed as mitigators of disability (28 C.F.R. §35.108(d)(4)(v)), and Title II of the ADA, 28 C.F.R. §35.160(b)(2) mandates that: "In determining what types of auxiliary aids and services are necessary, a public entity **shall give**

**primary consideration to the requests of individuals with disabilities."** (emphasis added)

Further, 28 C.F.R. §35.130(e)(1) states: "Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA or this part which such individual chooses not to accept."

D.L.    , on August 14, 2024, told Mr. Bolton "its important for me to keep goint to alisons therapy like I said and i dont want to be stopped and just do andrea." D.L.    also told Mr. Bolton "I'm going to alison's therapy appointment and I wish to have more appointments with her since I can really open up to her".

Instead of following ADA mandated guidance, Mr. Bolton told D.L.    in an email response on August 15, 2024, "You do not get to decide therapy – we talked about this. As a reminder - I am not your personal attorney – I represent your best interest. At this point, I have recommended to the parties that individual therapy be with Andrea Dunseth. If you want to discuss further, we can set up an appointment to meet and discuss, but know that while I will take your position into account and always advise the Court of your deisres [sic], we may disagree on certain things."

The ADA is clear that D.L.    , in the capacity of being a disabled individual, does not have to choose to accept the therapy offered as a service or auxiliary service of the court for his disability.

Mr. Bolton is discriminating against D.L.    on the basis of disability with this arbitrary denial of his requested accommodation of going to Alison without complying with the mandate of 28 C.F.R. §35.164. Fundamental alteration and undue burden as defenses are claimed hereon as estopped, since they have been tacitly waived by Mr. Bolton.

As a further exhibition of intimidation and threat, Mr. Bolton told Ms. Lawson in an email on August 16, 2024: "The Court previously ordered that I choose the therapist - I have chosen Andrea Dunseth to provide individual therapy to D.L.    I expect D.L.    to see Andrea and if he continues to be taken to other therapists, I am going to ask the Court to intervene and will ask that the violating parent's parenting time be suspended and/or supervised. To be clear, no other therapist should be treating D.L.    individually - you don't get to make that decision at this point".

From another email dated September 30, 2024, Mr. Bolton proclaims: "I have reviewed the Temporary Orders entered by the Court while I was out of the country. It appears that the Court has vested me with the final say on counseling on a temporary basis if the parties are unable to reach an agreement."

In this statement, there is no consideration of D.L.    s request for his learned behavioral modification, and already in place prior to Mr. Bolton's interference, of the therapy services of Alison Dean.

It should be made clear that Mr. Bolton's inference of Ms. Lawson making " that decision" is a logical fallacy, since she was merely aiding and encouraging her son <u>D.L.</u> to be able to enjoy the rights of equal access and clearly established guidance under the ADA. <u>42 U.S.C. §12203(b)</u> defines the acts of coercion, intimidation, threats and interference with Ms. Lawson's capacity of aiding and encouraging <u>D.L.</u> enjoyment of the mandates I have listed hereon as rights under the ADA. Mr. Bolton words clearly issued a coercive, intimidating threat of suspension of parenting time if Ms. Lawson honored her son's requested therapy connection.

In an email dated October 21, 2024 from Mr., Bolton to Mr. Ron Wood, Mr. Bolton alleges: "To be clear, <u>D.L.</u> has again confirmed that there has been no physical abuse with regard to his dad". **Mr. Bolton cannot ethically, legally, or professionally represent** <u>D.L.</u> **according to his own admission.** He can only represent <u>D.L.</u> alleged "best interest". Please observe this email from Mr. Bolton with the admission and notice given to <u>D.L.</u> that he is not <u>D.L.</u> Personal attorney:

---------- Forwarded message ---------
From: <abolton@andrewboltonlaw.com>
Date: Thu, Aug 15, 2024 at 10:04 AM
Subject: RE: Dad
To: <u>D.L.</u>
Cc: Andrea Dunseth <andrea.dunseth@carecollectivekc.com>

<u>D.L.</u> –

You do not get to decide therapy – we talked about this. <mark>As a reminder - I am not your personal attorney – I represent your best interest.</mark> At this point, I have recommended to the parties that individual therapy be with Andrea Dunseth. If you want to discuss further, we can set up an appointment to meet and discuss, but know that while I will take your position into account and always advise the Court of your deisres, we may disagree on certain things.

Andy

To be clear, we are asserting that Mr. Bolton is intentionally keeping <u>D.L.</u> from speaking to the people he wishes to speak with, including his preferred therapist, the court and friends and family members he has always had that help him cope with disability of psychological trauma being present in his life.

The Court, including the GAL services, and Mr. Bolton's capacity as GAL, is without immunity concerning these claims for which Ms. Lawson and <u>D.L.</u> have standing to pursue.

Before you even think of accusing me of unauthorized practice of law, you should consider the first (and only) impression appeals case of *Barker v. Riverside County Office of Education*, <u>584 F.3d 821</u> (2009, 9th Cir.), concerning who may provide "assistance" to defend the rights of the disabled, which protects my status as Congressionally intended under the ADA (and Rehabilitation Act of 1973) to assist Ms. Lawson and <u>D.L.</u> in defending their rights. I am here asserting **administrative access** rights to equal access to your services, programs and activities.

From *Barker* at 827: "As in our analysis of section 504 of the Rehabilitation Act, the language employed in the anti-retaliation provisions of Title II does not evince a congressional intent to limit standing to individuals with disabilities. **Instead, the use of the phrase 'any individual' and the absence of any language limiting standing to those with disabilities indicates Congress's intent to grant standing under Title II 'as broadly as is permitted by Article III of the Constitution.'"** (emphasis added)

From *Barker* at 827: "As we recognized in our Rehabilitation Act analysis, it appears that in formulating the language in Title II's anti- retaliation provisions, Congress recognized that disabled individuals may require assistance from others to defend their rights."

I currently have standing to invoke my right to aid and encourage Ms. Lawson and <u>D.L.</u> in the exercise and enjoyment of their rights under the ADA. Should you interfere, or coerce, threaten, or intimidate, I will have further standing. I am communicating to you in opposition to unlawful acts that violate the ADA. I invoke the protections of <u>28 C.F.R. §35.134(a)</u> and <u>34 CFR §100.7(e)</u>.

According to reports by Ms. Lawson (with documentation [*"receipts"*] provided) to the court appointed GAL's suggested therapist, Andrea Dunseth, failed or refused to report abuse allegations, and she IS a mandatory reporter. To add injury, Ms. Dunseth invited the alleged abuser into the therapy sessions with <u>D.L.</u> As a DV/SV certified survivor rights advocate, through NCVLI in Portland, OR (2018), these acts by Dunseth shock the conscience.

The discouraging thing about the Judge in this case is that Ms. Lawson is not being given the right to be equally heard as a disabled individual, or to be able to comprehend and gain access to the events of the hearing without paying an exorbitant fee for transcripts that are months away from being produced. This is not timely and effective communication under the ADA for a disabled litigant with communication disability.

NOTE This is not a request for the court to change it's official record services, programs, and activities, but for Ms. Lawson to be able to simply produce an unofficial record of the events that happen in court so she can listen to this after the court proceedings are over.

<u>For me, my disability has a medically prescribed learned behavioral modification of recording any and all proceedings I am in, and this is non-negotiable for me to have equal access as an individual with communication</u>

disability. This is conspicuous notice that I will record the events of which I am participatory in my federally protected capacity under 42 U.S.C. §12203(b).

**Requested reasonable accommodations for Ms. Lawson and** D.L.    **are as listed:**

1. Ms. Lawson needs to be able to ask questions and receive courteous, civil and comprehensive answers to her questions. **(One Instance of Mr. Bolton coercing, intimidating, and threatening)** Ms. Lawson reports that Mr. Bolton (GAL) told her in a hearing that if she raised her hand once more to ask question, that Mr. Bolton would invoke the Child In Need status that would put D.L.    in Foster Care. This is flat out intimidation, coercion, threats, and interference with both D.L.    and Ms. Lawson receiving equal access as individuals with disabilities. Interestingly enough, Ms. Lawson is finding it near impossible to get transcripts of this from the Court.
2. Ms. Lawson needs to attend all court proceedings by Zoom for several reasons. First, for disability mitigation and to keep her more centered and in an environment that is less stressful, and second, so that she can be in a separate space from her abuser. Both of these reasons relate with disability mitigation. Video-based telecommunications products and systems are listed in 28 C.F.R. §35.104(1) as a reasonable accommodation.
3. Taking breaks when requested, so that she can re-focus and center.
4. Ms. Lawson needs to record the hearings, either by her own volition, or provided by the court, so that she can re-visit the events in a clear space without the stressors of court being present. Recording is listed in 28 C.F.R. §35.104(2) - "audio recordings", and also in 28 C.F.R. §35.104(4) "other similar services and actions."
5. Having her ADA Advocate (undersigned) present and participatory on Zoom so that her legally authorized aid and encouragement with the exercise of her ADA rights is not interfered with. The undersigned has several physical disabilities that preclude travel to Kansas. To deny this would be to give both Ms. Lawson and I standing for denial of equal access and/or discrimination on the basis of disability.
6. CART - Computer Aided Realtime Transcription is listed in 28 C.F.R. §35.104(1) as a reasonable accommodation. This is requested for both Ms. Lawson and I, because I too have communication disabilities, and CART is a mitigator for this disability set.
7. A copy of any official court audio and video recordings that occur, in an accessible format of .mp3, .mp4, .wav, and/or .wmv.
8. That she be given extra time to respond to any and all processes of court. Ms. Lawson's disability imposes an additional burden in working through traumatic memory and physiological symptoms that must be aided by flexibility in the court's handling of filing deadlines.
9. The travel requirements for court, do not take into consideration that Ms. Lawson's disability is exacerbated by extended travel times for these matters, and so she is already disadvantaged when reaching therapists that are over an hour away, and when the court proceedings are moved to another location much further away. For this reason, the Court is

requested to consider this and accommodate her with a reasonably close venue for any therapy or other requirements that are in play in this matter.

10. That D.L.___ receive CASA services, as recommended by Amanda Miranda, LBSW, on July 24, when she said **"I believe D.L.___ needs a voice."** This goes directly to accommodating D.L.___ communication disability, and is readily achievable by the Court. **(A second instance of Mr. Bolton coercing, intimidating and threatening)**D.L.___ in an October 11, 2024 email to his grandmother, referring to Mr. Bolton as his attorney, laid out that Mr. Bolton was saying that D.L.___ communicating with Ms. Lawson was "making it worse" and threatening and intimidating that Ms. Lawson was going to get in trouble just because D.L.___ sincerely wants communication with his mother.

---------- Forwarded message ---------
From: D.L._____
Date: Fri, Oct 11, 2024, 2:51 PM
Subject:
To: annaliisa turunen <annaliisa452002@gmail.com>

Hi mummo im sorry I didn't see that you emailed yesterday but ive been having bloody noses every once and a while but they have started to happen less and less and I have been able to take my medicine everyday and I really hope that they can change it to another judge and also I don't know if I can keep emailing I really want to but yesterday or the day before that I had to go to my attorney and I guess he knows all of our emails between eachother and it sounded like he said that it was making it worse and that mom is going to get in trouble so I don't know if I will be able to because I feel like dad is starting to get more and more making sure I cant communicate with her or you but I will keep trying to make sure that I can keep emailing and thank you so much for emailing during school its hard to find time but I will keep making sure and if you can keep responding during school time that would help a lot!! And I miss her so much too and I really hope that this is all able to be solved soon and I love you and her so much!!! and I will keep making sure that im safe

11. Please provide the name, email address, and fax number for the designated responsible employee under 28 C.F.R. §35.107(a). Both Ms. Lawson and I need this for disability equal access.

Your prompt response is appreciated.

Regards,

P.D., Jay V. Shore, as Certified ADA Advocate, and with disabilities

Cc: jolene.Zirkle@kscourts.org
    abolton@andrewboltonlaw.com
    ronwood@ronaldwoodlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

        Plaintiff,

v.                                                                      Case No. 25-2171-JWB

KANSAS DEPARTMENT FOR CHILDREN
AND FAMILIES, KANSAS ATTORNEY
GENERAL'S OFFICE, AMANDA MIRANDA,
and HEATHER DUNZ, in their individual and
official capacities,

        Defendants.

---

ANGELIINA LYNN LAWSON,

        Plaintiff,

v.                                                                      Case No. 25-2251-JWB

ANDREW BOLTON, THE BOLTON LAW
FIRM, LLC, DARRELL ROBINSON, NEISHA
MISER, MALIQUE TAYLOR, JENNIFER
AGREE, DAN LIVINGSTON, LIVINGSTON
CENTER, LLC, DR. RODNEY MCNEAL, and
BOARD OF COUNTY COMMISSIONERS OF
ANDERSON COUNTY, KANSAS,

        Defendants.

## MEMORANDUM AND ORDER[1]

    In Case No. 25-2171-JWB, these matters are before the court on Plaintiff's motion to

certify interlocutory appeal under 28 U.S.C. § 1292(b) and motion to expedite ruling due to

---

[1] The two above-styled cases are not consolidated but are combined for the sake of judicial efficiency and due to the significant overlap between them. Accordingly, this order is applicable to both cases.

1

prejudice from stay and judicial inaction (Doc. 45); Motion to disqualify Judge John W. Broomes and Magistrate Judge Teresa J. James under 28 U.S.C. § 455 (Doc. 53); notice of judicial financial entanglement and renewed motion to disqualify under 28 U.S.C. § 455(a) and (b)(4) (Doc. 56); motion to strike successive motions to dismiss rule 12(g)(2) (Doc. 66); "motion to adjudicate fraud upon the court (dkt. 28) and suspend all dispositive motion practice pending certification" (Doc. 68); emergency motion to vacate retaliatory order striking Plaintiff's complaint (Doc. 69); and supplemental rule 60(d)(3) notice judicial bias, default manipulation, and censorship of jury trial and (Doc. 71).  In Case No. 25-2251-JWB, these matters are before the court on Plaintiff's motion for protective reassignment under 28 U.S.C. §§ 292(b), 294 due to structural bias and ADA retaliation and objection to § 1915(e)(2) screening abuse (Doc. 15); motion for judicial disqualification, affidavit and protective reassignment under 28 U.S.C. §§ 455, 144, and 292(b) (Doc. 17); emergency order for temporary restraining order (Doc. 18); notice to preserve judicial independence and request for protective order against undue influence or interference (Doc. 23); motion to reassign case to out-of-district panel due to structural impairment and related enterprise litigation (Doc. 25); motion for judicial finding of fraud upon the court under rule 60(d)(3) (Doc. 26); and motion for rule 37(e) sanctions and certificate of enterprise-level evidence preservation violations (Doc. 27).  All of these motions are DENIED for the reasons stated herein.

Plaintiff has mercilessly carpet-bombed this court with filings in multiple cases, all largely centered on her dissatisfaction with child custody proceedings in Kansas state courts, as well as related activities by various state officials that, to one degree or another, stem from the underlying child custody battles.  *See*, *e.g.*, *Lawson v. Godderz et al.*, Case No. 25-1179-JWB; *Lawson v. Godderz et al.*, Case No. 25-2199-JWB; *Lawson v. Lawson*, Case No. 25-4045-JWB.  Out of these various proceedings, a general pattern has emerged that Plaintiff is unwilling to accept the

decisions of duly authorized judicial officers and other state officials, and when such officials rule against her or take some action against her, she adds those officials to the ever-expanding conglomerate of those who, in one form or another, have become the targets of her litigation tactics. *See*, *e.g.*, Case No. 25-2171-JWB, Docs. 12, 13, 34, 41, 42, 47; Case No. 25-2199-JWB, Docs. 24, 28, 29, 31; Case No. 25-1179-JWB, Docs. 4, 5, 7, 10, 18, 19, 20, 21, 25, 27, 28, 34.[2] When things did not go well in her state cases, it appears that she turned to the federal courts in Kansas to seek relief; however, as the federal judges working on her multitude of filings have repeatedly explained to one degree or another, the law generally does not allow dissatisfied litigants in state court to seek review of those state proceedings in the lower federal courts, which is especially true in child custody proceedings. *See*, *e.g.*, *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111 (10th Cir.2000) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)) ("[I]t might be appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship,' even when divorce, alimony, or child custody is not strictly at issue."); *Fisher v. Lynch*, 531 F.Supp.2d 1253, 1267 (D. Kan. 2008) ("[C]hild custody proceedings are an especially delicate subject of state policy"); *Alfaro v. County of Arapahoe*, 766 F. App'x 657, 660 (10th Cir. 2019) (holding that the domestic-relations exception applied where the plaintiff asked the federal court to "scrutinize[ ]" the "legal merits" of "each order" in the state court divorce and child-custody proceedings); *Leathers v. Leathers*, No. 08–1213–WEB, 2010 WL 1936137, at *21 (D. Kan. May 13, 2010) (citing *Wigington v. McCarthy*, 124 F.3d 219 (10th Cir.1997)) ("[T]he domestic relations exception . . . divests the federal courts of power to issue divorce,

---

[2] The court recognizes that Plaintiff, in the instant case, has been granted a third opportunity to amend her claims against Defendants Miranda and Dunz as she previously failed to comply with this court's order in filing her amended complaint. (Doc. 67.) The court does this because it recognizes that these claims differ in kind compared to Plaintiff's other cases where—through a barrage of filings—she seeks for this court to review state child custody proceedings, which, as this court has stated ad nauseum, it cannot do under the circumstances she requests.

alimony, and child custody decrees."); *Vaughan v. Smithson*, <u>883 F.2d 63, 65</u> (10th Cir. 1989) ("If the federal court is called upon to decide those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent, then the domestic relations exception is applicable."); *Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, <u>871 F. Supp. 1331, 1361</u> (D. Kan. 1994) (holding that the domestic relations exception should be applied when plaintiff asks the federal district court to make domestic relations decisions under the guise of civil rights claims). Instead, litigants like Plaintiff must generally seek relief up through the Kansas appellate courts—all of which are fully capable of hearing and resolving her claims that the proceedings below violated her federal rights. *See Pennzoil Co. v. Texaco, Inc.*, <u>481 U.S. 1, 15</u> (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Moore v. Sims*, <u>442 U.S. 415, 425</u> (1979) (quoting *Juidice v. Vail*, <u>430 U.S. 327, 337</u> (1977)) (emphasis in original) ("[T]he federal court should not exert jurisdiction if the plaintiffs 'had an opportunity to present their federal claims in the state proceedings.'"). Moreover, Plaintiff bears the burden of showing the state court was an inadequate forum for her federal claims, of which she has continually failed to do. *Texaco, Inc.*, <u>481 U.S. at 14</u>. Plaintiff has not made the necessary showing that the state court is an inadequate forum. Further, Kansas courts may consider constitutional challenges to child custody proceedings on appeal. *See Fisher*, <u>531 F. Supp. 2d at 1266</u> (explaining that Kansas Court of Appeals can, and often does, address constitutional challenges to child custody procedures). Then, if Plaintiff fails even at the Kansas Supreme Court, she can seek review of her federal issues with the United States Supreme Court.

In spite of repeated efforts to explain these issues to her, Plaintiff insists on pursuing her claims against state judges and officials involved in her state court cases here in the lower federal courts.  As explained to her ad nauseum in prior orders of this court, THIS SHE CANNOT DO!  Her relief, if any, lies through the state appellate courts.  Why she refuses to follow the path required of her is unclear, but she has tried vehemently to be heard in the lower federal courts by crafting elaborate civil RICO claims and asserting other violations of her federal rights by state court judges based on their rulings in state court child custody cases.

Now the undersigned and Magistrate Judge James have drawn her ire for explaining these impediments to her cases in federal court, and once again she has filed multiple motions to, at least in part, disqualify said judges from hearing her case. *See, e.g.*, Case No. 25-2171-JWB, Docs. 53, 68, 69; Case No. 25-2251-JWB, Docs. 15, 17, 18, 23, 25.  She makes the same arguments that have been rejected both at the trial court level and by the Tenth Circuit Court of Appeals.  *See Lawson*, Case No. 25-2199-JWB at Doc. 33; *Lawson*, Case No. 25-1179-JWB at Docs. 33, 39.  The motions are frivolous, vexatious, and need not be addressed yet again.  They are accordingly DENIED for the reasons discussed and those previously explained.

Her second motion merits a little more of a response, but not much.  (Case No. 25-2171-JWB, Doc. 56.)  The gist of this motion is that Plaintiff, having scoured the undersigned's financial disclosures, concludes that disqualification is required because the undersigned maintains accounts at two banks with holdings that include state tax-free bond mutual funds.  And since Defendant Kansas Department of Children and Families does business with those banks, Plaintiff argues that gives rise to a disqualifying conflict.  However, under 28 U.S.C. § 455, the statute on which Plaintiff has relied over and over, a judge's ownership of mutual fund shares does not constitute a "financial interest" requiring recusal unless the judge participates in the management of the fund,

or the outcome of the litigation would substantially affect the value of the interest. Here, the undersigned holds only mutual fund shares through routine banking relationships; the Defendant's separate business dealings with these financial institutions creates no direct or indirect interest in this litigation. Plaintiff's attenuated theory—that any banking relationship shared between a judge and a state agency necessitates recusal—would disqualify virtually every federal judge from hearing cases involving state entities. The motion is DENIED.

As for Plaintiffs remaining motions (Case No. 25-2171-JWB, Docs. 45, 66, 71; Case No. 25-2251-JWB, Docs. 26, 27), they are wholly frivolous, vexations, and without merit. Accordingly, they are all DENIED. And to the extent they have been denied in previous orders by this court, they are denied for similar reasons.

THEREFORE, Docs. 45, 53, 56, 66, 68, 69, 71 in Case No. 25-2171-JWB and Docs. 15, 17, 18, 23, 25, 26, 27 in Case No. 25-2251-JWB are all DENIED for the reasons stated herein.

FURTHER, the Clerk is directed to file this order in both above-styled cases.

FURTHER, Plaintiff is put on notice that if she files another motion deemed to be frivolous and without merit, the court will summarily deny the motion by minute order. The court will also consider imposing filing restrictions and sanctions.

IT IS SO ORDERED. Dated this __24th___ day of November 2025.

__s/ John Broomes_____
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff, Pro Se and Next Friend to Minor D.L.,

ADA-Protected Litigant and Advocate,

v.

KS DCF, et al.,

Defendants.

Case No. 2:25-cv-02171

DISQUALIFICATION OF JUDGES

ARTICLE III COLLAPSE NOTICE

PRESERVATION FOR U.S. COURT OF FEDERAL CLAIMS

COURT-ORDERED FIRST AMENDED COMPLAINT UNDER DURESS THREATS OF

FINANICAL PUNISHMENT OF AN IFP STATUS LITIGANT

*Preserved Under Protest and Duress in Compliance with Dkt. 73 and Rule 15(a)(2)*

*Trial by Jury Demanded | ADA Retaliation | Fraud Upon the Court | Rule 60(d)(3) Preserved | Rule 27 Reserved | Appeal Rights*

*Not Waived*

This amended complaint is submitted under judicial coercion, financial intimidation, and

structural due process deprivation, **in** protest of unconstitutional restrictions imposed by this

1

Court's November 24, 2025 Order (Dkt. 73). That order directed Plaintiff an indigent, disabled, pro se litigant to abandon her claims against defaulted state actors **and** forfeit the protected interests of her ADA-covered minor son, D.L. The Court further threatened dismissal and sanctions if Plaintiff did not comply despite her documented disabilities and her efforts to present material factual disputes for jury resolution.

Plaintiff asserts that these directives violate her rights under Mathews v. Eldridge, 424 U.S. 319 (1976) (procedural due process balancing test), and amount to a form of constructive suppression of federally protected civil rights claims under the ADA, 42 U.S.C. § 12203(b). The conditions imposed seek to "gut" the complaint of its core claims through coercive amendment, thereby insulating misconduct by state employees and suppressing evidence of fraud upon the court contrary to the Constitution's guarantees of access, redress, and adversarial process.

Plaintiff asserts a deprivation of her Seventh Amendment right to a jury trial on material factual disputes. She files this pleading under protest, expressly preserving her rights under:

• Fed. R. Civ. P. 15(a)(2) – Amendment by leave of court under duress;

• Fed. R. Civ. P. 60(d)(3) – Relief from judgment due to fraud on the court;

• Fed. R. Civ. P. 27 – Pre-suit preservation of evidence;

• Fed. R. Civ. P. 17(c)(2) – Next Friend status for disabled minor D.L.;

• 28 U.S.C. § 1291 – Preservation of appellate rights;

• 28 U.S.C. §§ 2675, 1491 – Tucker Act notice of constitutional injury and damages;

• U.S. Const. Amends. I, V, and XIV – Access to justice, due process, equal protection;

• 42 U.S.C. §§ 12132, 12203(b) – ADA Title II and retaliation claims.

2

Plaintiff further alleges that Judge John W. Broomes has effectively joined the defense, coordinating de facto with the defaulted Kansas Attorney General's Office and DCF counsel to obstruct discovery, override procedural defaults, suppress jury access, and silence ADA-protected grievances.

Plaintiff preserves all prior filings, motions, exhibits, defaults, interlocutory appeals, and pending Rule 27 and Rule 60 matters, and files this complaint without waiving any claims or defenses preserved in the original or amended pleadings.

Plaintiff also holds a signed and notarized Power of Attorney (POA), executed October 23, 2025, designating her as the ADA advocate and safety representative for her minor son, D.L. This POA affirms her lawful authority under HIPAA, FERPA, ADA Title II, and K.S.A. 60-3101 et seq. to act as Next Friend for all medical, educational, ADA advocate, and legal matters relating to D.L.'s disability and safety.

Plaintiff further states that material facts are in dispute, and these cannot be decided at the pleading stage without discovery and trial. Under *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986), and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), issues of credibility and fact must be submitted to a jury, not summarily dismissed by judicial fiat.

Clarification of Claims and Jurisdiction: Plaintiff has never sought to litigate custody, alimony, child support or divorce proceedings in federal court. This case arises from system failure, ADA retaliation, falsified or destruction of government records, whistleblower suppression, and due process violations within a federally funded state agency (DCF).

The U.S. Constitution, ADA Title II, KORA, and federal whistleblower protections form the basis of jurisdiction. The misconduct alleged includes inter-agency record falsification or destruction, obstruction of grievances, unlawful KIDS case reclassification, forged documents used in judicial proceedings, safety reports from a child directly were ignored, and suppression of mandated reports none of which are within the exclusive purview of family court.

PRELIMINARY STATEMENT

1. Specifically, Defendants Amanda Miranda and Heather Dunz engaged in evidence concealment, coercive isolation of a child witness, retaliation, and the exclusion of Plaintiff from matters involving the safety and welfare of her son. Plaintiff's custodial rights were actively sabotaged in coordination with court actors while Plaintiff was deprived of any meaningful opportunity to respond.

2. Plaintiff seeks monetary damages, declaratory relief, injunctive relief, and other remedies to prevent future constitutional violations against similarly situated parents and children.

3. This Court-ordered amendment is not intended to waive or supersede any claims, allegations, or parties named in the original Complaint (Dkt. 1), and Plaintiff preserves all such matters for interlocutory appeal or subsequent motion under Rule 54(b).

JURISDICTION AND VENUE

This Court has subject-matter jurisdiction under:

- 28 U.S.C. § 1331 – Federal question jurisdiction over civil rights and ADA claims;

- 42 U.S.C. § 12132 et seq. – Title II of the Americans with Disabilities Act;

- 42 U.S.C. § 12203(b) – ADA retaliation for advocacy and accommodation requests;

4

- 42 U.S.C. § 1983 – Civil rights deprivation under color of law;

- 28 U.S.C. § 1343(a)(3) – Redress for deprivation of constitutional rights under federal law;

- 28 U.S.C. §§ 2201 & 2202 – Declaratory and injunctive relief;

- 28 U.S.C. § 1651 – All Writs Act, preserving procedural and jurisdictional access;

- U.S. Const. amends. I, V, and XIV – Access to courts, due process, and equal protection;

- U.S. Const. art. VI, cl. 2 (Supremacy Clause) – Preemption of state actors obstructing federal rights.

Venue is proper in the District of Kansas under 28 U.S.C. § 1391(b) because all alleged events and omissions by Defendants Amanda Miranda and Heather Dunz, in their personal and official capacities, occurred within this judicial district, where both defendants are employed and operate.

## PARTIES

Plaintiff: Angeliina L. Lawson is a pro se litigant, a federally protected individual under the Americans with Disabilities Act (ADA), and the duly authorized Next Friend and ADA advocate for her disabled minor son, D.L. She brings this action both on her own behalf and in her representative capacity under Federal Rule of Civil Procedure 17(c)(2), which authorizes a "next friend" to sue on behalf of a minor who lacks the capacity to litigate. Plaintiff's standing is further established by a notarized Power of Attorney dated October 23, 2025, executed in compliance with Kansas law and accepted by D.L.'s treating medical providers.

5

D.L. is 15 years old and has formally diagnosed conditions medically documented including anxiety disorder and psychological trauma, which substantially limit major life activities such as communication, memory, learning, and emotional regulation placing him squarely within the definition of "disabled individual" under 42 U.S.C. § 12102(1) and 28 C.F.R. § 35.108 (ADA Title II implementing regulations). These impairments also qualify D.L. for special protections in educational, medical, and legal contexts.

Plaintiff's authority to act as Next Friend is explicitly endorsed by federal law, which provides that when a minor lacks a duly appointed representative, "the court must appoint an attorney to protect a minor who is unrepresented." See Fed. R. Civ. P. 17(c)(2). Here, Plaintiff has made that declaration under penalty of perjury and submitted a formal POA authorizing her advocacy. In addition, Kansas law similarly recognizes a parent's right to pursue protection or legal action on behalf of their minor child in need of care. See K.S.A. 60-217 and K.S.A. 38-2203.

Plaintiff also acts as D.L.'s ADA advocate, empowered under 42 U.S.C. § 12203(b) to assert and defend protected rights without retaliation. Her ADA role includes seeking reasonable accommodations in communications, securing therapeutic access, challenging discriminatory treatment, and preventing unlawful exclusion of D.L. from services based on his disability.

Medical documentation will further demonstrate D.L.'s disabilities and Plaintiff's power of attorney to advocate for his needs. Plaintiff brings this action on her own behalf and in protected advocacy for her son, both of whom have been unlawfully denied reasonable accommodations, access to federal rights, due process, and protection from discrimination, coercion, system failures and retaliation by state actors under color of law. The District of Kansas's local rules underscore that pro se litigants are entitled to meaningful access and fair procedures; for

example, the rules require cooperation in motion practice and discovery with unrepresented

parties in civil rights cases to ensure fairness. Plaintiff will invoke these protections as necessary

so that her disability and pro se status do not impede full and equal participation in this litigation.

Plaintiff's claims arise from a pattern of violations implicating ADA Title II, the U.S.

Constitution, and the Supremacy Clause, and seek redress for continuing injury to federally

guaranteed civil rights.

Defendants: Amanda Miranda, DCF case worker, sued in her individual and official capacity.

DCF social worker or investigator in Leavenworth County, Kansas. As detailed herein, Ms.

Miranda was responsible for intake and investigation of multiple abuse reports concerning D.L.,

and for communicating findings. Plaintiff alleges that Ms. Miranda violated DCF's internal

policies and Plaintiff's rights by improperly downgrading or dismissing abuse reports, disclosing

confidential case information to unauthorized individuals, and failing to accommodate

disabilities of D.L. and herself during the multiple investigations reported by mandated reporters.

Heather Dunz, DCF case worker, sued in her individual and official capacity. DCF social worker

or investigator in Johnson County, Kansas. Ms. Dunz was assigned to a later abuse report by the

medical doctor regarding physical abuse reports directly from D.L. and, as described below,

failed to properly investigate. Plaintiff alleges Ms. Dunz likewise violated DCF policy and

Plaintiff's rights by conducting only a cursory inquiry, ignoring documented reports of safety

threats, and leaving the child in an unsafe environment.

Plaintiff reserves the right to amend this complaint to name additional parties as evidence

emerges during discovery, including individuals and entities complicit in the ADA retaliation,

spoliation of public records, or coordination to obstruct federal access to justice in violation of 42 U.S.C. § 1985(2), Rule 60(d)(3), and the Supremacy Clause.

Other Persons: Various other individuals are involved in the facts (including D.L.'s father, a guardian ad litem (GAL), and DCF supervisors), but they are not named as defendants in this complaint. Wherever relevant, their actions are described to illustrate the context of Defendants' conduct.


## STATEMENT OF FACTS AND SYSTEM FAILURES

A. DCF's Duty to Investigate and Protect. Kansas law charges DCF with the duty to receive and investigate reports of child abuse or neglect to determine whether the report is valid and what action is required to protect the child. DCF's own Prevention and Protection Services Policy Manual (PPM) emphasizes that an investigation is the initial phase of assessment for abuse/neglect reports, in which facts must be obtained and evidence gathered in order to reach a conclusion on the validity of the report and decide what actions, if any, are needed for the child's safety. In short, DCF is obligated to conduct a thorough and good-faith inquiry into abuse allegations, and to take appropriate measures to keep the child safe, consistent with the law K.S.A. 38-2226 and internal policy.

B. First Abuse Report – Mishandled and Reclassified. the summer or early fall of 2024, Plaintiff's minor son D.L. made his first outcry of abuse during a crisis episode. While speaking with a mandated reporter through a crisis hotline, D.L. became visibly emotional, collapsed into panic, and expressed fear of his father, Jonathan Brent Lawson. As required by law, the crisis

8

staff immediately filed a report with the Kansas Department for Children and Families (DCF), citing allegations of child pornography, emotional abuse, neglect, and potential sexual misconduct.

These allegations triggered mandatory reporting protocols under K.S.A. § 38-2223 and DCF's own policy manual (PPM § 10200 and § 2100, which require full investigations, not assessments, in such cases).

However, Defendant Amanda Miranda unilaterally later and retroactively reclassified the report as a mere "Family Assessment", rather than initiating a formal abuse/neglect investigation, as required by DCF policy. This procedural change eliminated the obligation to issue formal findings or protective action letters effectively erasing the record and preventing Plaintiff from being notified or involved. This initial breach of protocol created a pattern of misconduct and retaliation, beginning with a documented safety outcry that was obstructed, recoded, and then denied when later sought under Kansas Open Records Act (KORA) requests.

The allegations raised in the first DCF referral were severe: exposure of the child to pornographic material, potential indicators of sexual addiction, emotional abuse, and neglect reported by a mandated reporter after a crisis hotline call involving the child's direct disclosure. These allegations fall squarely under PPM2 § 10200 (Conducting an Investigation) and K.S.A. § 38-2223 as requiring formal abuse/neglect investigation not discretionary "assessment."

Defendant Amanda Miranda, assigned CPS specialist from the Leavenworth DCF office, unilaterally reclassified the case as a "Family Assessment", thereby eliminating the requirement to issue formal findings, safety plans, or investigative reports. Despite the hotline's escalation,

9

Miranda altered the scope of the case to focus on "child behavior issues," while ignoring the original allegations of pornography exposure and potential sexual exploitation.

During her visit at Plaintiff's home with child, Miranda casually stated that she had just returned from a "horrific case" and that the office was severely understaffed encouraging Plaintiff to apply for a job at DCF, citing open listings. Plaintiff remained silent and across the other side of the room during the child's interview to avoid influence. The child was visibly anxious, nail biting, leg shaking and overwhelmed, disclosing difficult events and his disability and Ms. Miranda's off topic leading questions prevented him from staying on topic about the statements that were made during the crisis hotline phone call that started the investigation. It seemed as though Ms. Miranda was getting the cases confused and the details lost and unclear as to why she was there and what to investigate.

Plaintiff presented extensive corroborating evidence:

- Documentation of police reports and school involvement
- Phone logs with the crisis hotline
- Screenshots, photographs and digital proof of internet history at the father's home
- Reports from the Guidance Center and crisis team
- Follow-up requests to ensure continued child communication and safety planning

Miranda refused all follow-up opportunities, declined review of the evidence, and instead resorted to phone calls, despite Plaintiff's ADA accommodation request for communication to occur via text or email.

The child later attempted to reach Miranda to share new details and request updates on recommendations (anger management for the father, CASA assignment, and follow-up safety input). Miranda refused to speak to him again. Although she verbally stated to Plaintiff that she would recommend anger management and CASA assignment, those recommendations were never entered into the case record. She then suddenly started to be confused again with the cases and was questioning why Plaintiff was not allowing the child to be interviewed privately with her. That was not true and Plaintiff had asked multiple times, when there could be a follow up interview and Ms. Miranda read them and ignored those text messages.

Shortly after between July 16–25, 2024 an email surfaced from Andrew Bolton which cited a conversation with Amanda Miranda. The email included no headers, had stripped metadata, and consisted of cut sentences with Miranda's email signature attached. (Plaintiff alerted this to DCF attorney during these federal proceedings and was ignored). It falsely claimed that Plaintiff was "the problem" in the DCF case despite the fact that Plaintiff was never named in any abuse referral, had no findings, and was cooperating with all intervention efforts.

This falsified record became the basis of the later court appointed GAL narratives and court filings, despite the nonexistence of findings, an active ADA grievance, and a reclassification that violated policy and statutory duties. Miranda's conduct shows a combination of gross negligence, retaliation, and unlawful interference with due process and parental rights.

Ms. Miranda's handling of this first report violated DCF's standards in multiple ways:

- Failure to Investigate All Allegations: By ignoring the child pornography, neglect, emotional abuse and sexual risk allegations and treating the case as a minor child behavior issue pointing the finger at a child, Ms. Miranda violated DCF's policy mandate

11

to investigate reports of abuse in order to determine their validity and need for action. Nothing in the case met the criteria for simply a "Family in Need of Assessment" (FINA) with no abuse, yet the serious claims were effectively downplayed. DCF policy only permits an intake decision to be reversed or downgraded if additional information shows the report doesn't meet abuse/neglect definitions or other narrow circumstances. Here, no such justification existed – the proper response was a full abuse investigation. Ms. Miranda's premature closure of the case, with minimal fact-finding, violated these protocols and deprived D.L. of the protective intervention the law contemplates.

- Lack of Notice and Transparency: Instead of informing Plaintiff (the non-offending custodial parent) of the report and outcome, Ms. Miranda *never* mailed Plaintiff any official notice or finding. Plaintiff only learned *after the fact*, during a subsequent court hearing, that Ms. Miranda had closed the case as "unfounded" and had even documented disparaging opinions about Plaintiff's parenting. DCF policy requires that at initial contact, the family be informed of the specific allegations and that DCF is investigating. Furthermore, any findings from an investigation are typically to be documented and communicated. By concealing the very existence and result of the investigation from Plaintiff, Ms. Miranda violated basic procedural fairness and DCF's own practices. Her communications about the case were instead channeled to third parties without Plaintiff's knowledge or consent. As detailed below, this amounted to an unauthorized disclosure of confidential case information in breach of DCF policy.

- Violation of Confidentiality (Unauthorized Disclosure): Despite freezing Plaintiff out, Ms. Miranda shared her findings and opinions with individuals not authorized to receive confidential DCF records. In particular, she colluded, knowingly or unknowingly with the

Andrew Bolton to generate a false report for the courts, effectively arming the father's side in a custody dispute with DCF's unofficial stamp of disapproval of the mother and covering up child abuse by the father. DCF's confidentiality rules strictly limit disclosure of case information. Under PPM § 0315, records from an investigation *"shall not be made available"* to anyone outside the agency unless specifically authorized by the Secretary, by a DCF attorney for legal action, or by a court order. Even court-related releases must be to proper parties and often require a court order. Here, there was no pending DCF court case and no court order authorizing Ms. Miranda to divulge her investigative conclusions. By providing information to the Andrew Bolton and perhaps the opposing party in a private custody matter, Ms. Miranda knowingly disclosed confidential information about a DCF consumer (D.L. and his family) to unauthorized persons, a direct violation of PPM § 0316. Such an act is subject to disciplinary action and even criminal penalties. Plaintiff, on the other hand, as the child's mother had every right to be informed for the child's safety, yet was kept in the dark. DCF effectively gave the wrong people access and denied it to the one person (Plaintiff) who desperately needed the information to protect her son.

- Disability Accommodation Failures (Child's Needs Ignored): D.L. suffers from significant anxiety, psychological trauma that affect how he communicates. Ms. Miranda was informed or should have been aware that D.L. cannot easily discuss traumatic events verbally in a rushed interview – he becomes overwhelmed and may shut down or fixate or people please if directed to answer specific leading questions. Standard trauma-informed practice (and basic decency) would be to accommodate these needs, for example by allowing D.L. to write down his account or by consulting with his therapist

13

about how best to elicit information. Instead, Ms. Miranda spent only about 20 minutes with the child, after coming directly from a high-caseload day, and pressed him with questions he struggled to answer orally. D.L. later expressed that he felt Ms. Miranda was in a hurry to dismiss his case as not serious, relative to others she had, and he was unable to fully share his experience under those conditions. Ms. Miranda did not contact D.L.'s treating therapist (Alison Dean) or his nurse practitioner – professionals who had in-depth knowledge of D.L.'s conditions – even though speaking with those collateral sources would have confirmed the abuse disclosures and the child's communication challenges. By failing to accommodate D.L.'s disabilities in the investigative process, Ms. Miranda violated DCF's anti-discrimination policy and the spirit of the ADA. DCF policy 0220 explicitly requires that all services be provided without discrimination on the basis of disability, in compliance with the ADA. No individual is to be denied services or protection because of a disability. Here, D.L. was functionally denied an equal opportunity to be heard: the investigative process was not adjusted to his needs, resulting in a superficial inquiry and erroneous conclusion that he was "not in danger." Such handling not only contravenes DCF policy but also puts DCF in violation of Title II of the ADA which applies to state entities' programs.

- Premature Case Closure and Lack of Safety Plan: Despite substantial red flags (e.g. D.L.'s own fear and the serious nature of the allegations), Ms. Miranda closed the case without any follow-up services or safety plan. She did not schedule a second visit or a family meeting; she issued no recommendations for counseling or monitoring. In fact, by closing the case as unfounded (then later retroactively changed that to cite there were no findings at all), she took no action. This left D.L. feeling betrayed and unsafe. As he later

14

told Plaintiff, these events gave him a "sense of distrust in DCF's commitment to protect him". DCF's mission is to protect children "within the requirements of law", assisting families to live together safely. Yet DCF's inaction here accomplished the opposite emboldening the abusive father and alienating the child.

C. Second Abuse Report – Mandated Reporter Ignored (August 2024). In mid-2024, D.L.'s therapist (Ms. Dean) filed a new report with DCF after D.L. disclosed additional instances of emotional abuse by his father during individual private therapy sessions. This second DCF report included *even more concrete evidence*: D.L. had written journals detailing the psychological harm and threats he experienced (such as the father threatened that the child would find him hanging in the garage by a rope when he comes home from school and goes through the garage to get into the house) instances of medical neglect (the father refusing to take child to ER for stitches, screening for cancer when a lump was found in child's chest, lapsing in medical health insurance than joking about not having him insured), and other emotional abuse. Despite this trove of evidence from a medical professional, Defendant Miranda ("Mandy") was again assigned and again dismissed the report without proper investigation. Ms. Miranda conducted no follow-up interviews with Plaintiff (who was unaware of many of these incidents until later) and failed to speak with other relevant professionals and only spoke to the father and met with the child at the father's home in a coercive controlling environment. In essence, she rubber-stamped the father as "innocent" and prematurely closed the second report just as she had the first.

- Bias and Retaliatory Attitude: During the brief interaction related to the second report, Ms. Miranda's confirmation bias against Plaintiff became even more apparent. Upon learning that D.L. was making new abuse reports to another mandated reporter, Ms. Miranda pointedly asked the child *"Is your mother telling you to say this?"* – suggesting

she was more inclined to suspect coaching by Plaintiff than to believe the child's

accounts of his father's behavior. In fact, these new disclosures were made privately by

D.L. to his therapist and doctors, at times when Plaintiff was not even present or aware.

The records show that D.L. emailed his mother *after* these abuse incidents or told her

only after returning from his father's custody time – meaning Plaintiff herself was

learning of the abuse after the fact, not directing it. Ms. Miranda ignored this reality and

persisted in a theory that absolved the father and painted the child as not credible, which

created a smear campaign that the child was lying or the Plaintiff had Munchausen by

Proxy, rather than address the documented reports of mandated reporters. This

adversarial, dismissive stance violated DCF's obligation to conduct an objective

assessment. It was retaliation: by implying the child's reports were fabricated (and

focusing suspicion on Plaintiff for merely advocating for her son after she learned about

his reports to these mandated reporters), Ms. Miranda chilled the very reporting that DCF

depends on to protect children. Indeed, DCF policy prohibits punishing or deterring those

who report or cooperate in investigations; the agency should be facilitating honest

communication, not casting blame on a child or their non-offending parent for trying to

protect her child.

- Continued Disability Violations: Ms. Miranda's handling of the second report continued
  to flout ADA/§504 principles. She did not adjust her approach despite knowing by now
  that D.L. struggled in her prior interview. She did not offer any alternative means for D.L.
  to share (for instance, inviting him to write down what happened, or allowing the
  therapist to be present to support him), items of accommodations that the therapist had
  specifically written in the treatment plan for the child to do when asked about traumatic

events to help child communicate through writting. Nor did she acknowledge that the father's actions were exacerbating the child's disabilities. The father's isolation of the child are forms of harm that disproportionately impact D.L. given his condition – effectively denying D.L. the accommodations he needs. By dismissing these concerns, DCF failed in its affirmative duty to accommodate. Agency policy and federal law required DCF to *protect* a child with a known disability from being placed in a situation that worsens that disability through abuse or neglect and it was caseworker's job to investigate for disabilities and interview therapist during the wrap around crisis team 90 day treatment plan directed by the Guidance Center of Leavenworth. Instead, DCF's inaction left D.L. in a situation that violated his ADA rights to have his medical and psychological needs reasonably safeguarded rather than deliberately ignored.

- Pattern of Non-Action: After the second report, Ms. Miranda again took no steps to ensure D.L.'s safety. Plaintiff was not consulted or informed of the details. No collaboration was made with Guidance Center or referral was made to any Family Preservation, anger management classes, CASA or preventive services. Ms. Miranda had, by this point, formed a fixed outcome – treating the case as an annoyance to be closed quickly rather than a child in crisis requiring help. The father, emboldened by DCF's lack of intervention, continued to escalate his abusive behaviors. Among other things, Plaintiff later discovered that the father was planning to remove D.L. from the state (immediately only a couple hours after the DCF visit) to evade scrutiny. Plaintiff urgently reported this risk to Ms. Miranda, but it was met with indifference. DCF's policies emphasize that if new information arises indicating a child may be unsafe (such as plans to flee the jurisdiction), the agency should respond or at least coordinate with law enforcement. No

such coordination exists and open records verify there was no record or attempt to notify law enforcement made by Ms. Miranda. Here, glaring safety signals were ignored.

In summary, between July and September 2024 two separate mandated reporters (a crisis hotline and a therapist) had each sounded the alarm about D.L.'s welfare. Both times, Defendant Amanda Miranda violated core DCF policies and the rights of the child and Plaintiff by failing to investigate thoroughly, breaching confidentiality, and dismissing abuse in a manner inconsistent with both law and agency rules. These actions (or inactions) deprived Plaintiff and her son of the protective services and fair process they were entitled to, setting the stage for further harm.

D. Third Abuse Report – Physical Abuse Evidence Dismissed (September 2024). On or about September 2024, during a medical appointment, D.L. again privately disclosed to his physician Dr. Jordan Walter that his father had been physically abusing him. Specifically, D.L. reported incidents leading to significant weight loss, daily stress-induced nosebleeds, numbness in his hand (from physical trauma), stomach pain, headaches, insomnia, panic attacks, bloody nail biting, difficulty concentrating, loss of appetite and other signs of escalating abuse. In response, Dr. Walter – another mandated reporter – filed a third report with DCF, this time alleging physical abuse and neglect by the father. This report was assigned to Defendant Heather Dunz, a DCF investigator in Johnson County, Kansas. Unfortunately, Ms. Dunz continued the pattern of DCF's gross mismanagement:

- Superficial "Investigation" and Dismissal: Ms. Dunz conducted only a brief visit to the father's home. During that single visit, she observed the child in the father's presence and later claimed she saw "no evidence of physical abuse" without ordering a forensic sweep and set on deciding to close the case. On that exceedingly thin basis, Ms. Dunz dismissed Dr. Walter's report. She did not visit Plaintiff's home or follow up with Plaintiff after

18

Plaintiff report more evidence of what the child was stating through emails, cell phone video documenting panic attacks and the father specifically removing his disability medication to prevent him from taking it to calm down and calling the medication "immoral", police reports, child's emails to his grandmother reporting that he is now being threatened that if he continues to speak out that they will make it worse for his mom in court and his Honor's grades collapsing under the pressure of the coercive control that forced him into isolation, removing all extracurricular activities and all devices to threaten the child into silence. She did not review or request the extensive documentation that existed. She made no effort to contact law enforcement, even though physical abuse of a child can be a crime and DCF is expected to notify police when serious physical abuse is alleged. In short, Ms. Dunz's "investigation" fell far below the standard of care: she again took the abuser's word at face value after a cursory meeting and decided the child was the problem and closed the case. This violated the same DCF duty to thoroughly investigate and protect as described earlier. The dangers were foreseeable – indeed, by this point there had been multiple reports in DCF's system about this family. Rather than recognize a pattern, DCF treated each report in isolation and consistently sided with the abuser and against the child. Such deliberate indifference to recurring credible reports amounts to a systemic failure.

- Ignoring Substantial Evidence: At the time of Ms. Dunz's involvement, Plaintiff had already gathered substantial corroborating evidence of the abuse. For example, there were videos showing the father's aggressive outbursts toward D.L., medical records noting D.L.'s rapid weight loss and stress symptoms, and school reports of the child's decline in functioning. None of these were considered by DCF. Ms. Dunz did not reach out to Dr.

Walter for a detailed consult on the child's condition, school staff, therapist, grandmother, family friends of the child that submitted affidavits or police to discuss the physical abuse on August 15, 2024. By ignoring readily available evidence, Ms. Dunz violated DCF's Case Documentation and Assessment policies, which require that pertinent information (from collaterals, professionals, etc.) be collected and evaluated before closing a case. Her perfunctory approach contradicted the very purpose of an assessment – which is to determine if the child is safe or in need of care.

- Failure to Coordinate or Escalate: Given that this was at least the third report concerning the same child, involving escalating abuse (now physical harm), proper procedure would dictate a higher level review or staffing. DCF Policy notes that multiple reports on the same incident or child may warrant consolidation or override of previous decisions, and require supervisor review to ensure no report "falls through the cracks". There is also an expectation that if an alleged perpetrator has had repeated reports, or if prior reports were not fully investigated, a fresh report should trigger a careful reevaluation (sometimes known as a "critical case consult" or Best Interest Staffing in severe cases). No such escalations occurred. Ms. Dunz did not confer with Ms. Miranda or compare notes on the family's history. She did not alert any Quality Assurance or administrative review team that two offices (Leavenworth and Johnson County) had now handled three related intakes with incongruent outcomes in 3-4 months. The lack of internal communication and oversight meant that glaring inconsistencies (such as DCF records at one point listing three "closed" investigations for D.L. when only one closure letter was ever documented) were never reconciled. As Plaintiff later discovered through records requests, DCF's handling of the case was so disjointed that its responses to her KORA inquiries conflicted

with what workers had told her orally (e.g. DCF staff referenced three closed cases, but official KORA records showed only one closed and one still "pending"). This suggests possible manipulation or misclassification of DCF's records – an issue addressed further below.

- Ongoing Secrecy and Exclusion of Plaintiff: Consistent with the prior incidents, DCF (under Ms. Dunz) still refused to share any findings or safety information with Plaintiff, the child's mother. By the time of the third report, Plaintiff was actively trying to obtain DCF records because she was alarmed at being kept uninformed while her son's situation worsened while he was at his father's home. She filed a formal Kansas Open Records Act (KORA) request in early 2025 seeking the complete DCF case file on the abuse reports. In response, DCF produced only redacted and incomplete records, omitting the most critical portions – such as D.L.'s disclosures documented by workers and the true disposition of each report. DCF's production was so misleading that it, for example, failed to disclose the existence of one of the abuse investigations entirely. When Plaintiff compared what she received to the minimal information she had gleaned from other sources, it appeared DCF was either withholding or had destroyed parts of the record to cover up the lack of proper investigation. (Notably, DCF policy requires that all investigative case records be retained indefinitely for cases accepted for investigation, even if unsubstantiated, and explicitly forbids destroying any record while an audit, appeal, or review is pending. Plaintiff's active inquiries and complaints constituted such pending matters, meaning no records should have been destroyed or omitted.) By providing conflicting accounts of the case history and failing to produce a full record,

DCF violated not only the transparency required by KORA, but its own 0440 Retention of Records policy and general standards of case management integrity.

E. Escalation of Harm to the Child: As a direct consequence of DCF's inaction on these reports, D.L.'s situation deteriorated severely. With each "pass" that DCF gave the father, the father grew more brazen in abusing and isolating the child. By late 2024, after the third report was dismissed, the father had:

- Completely isolated D.L. from outside support – he pulled D.L. out of all extracurricular activities, replaced therapists with ones that would never report child abuse, changed medical doctors, refused to give school disability medication and restricted all his communications, in order to prevent D.L. from speaking to teachers, relatives, or others who might report concerns. D.L., who had been an A+ honor roll student, saw his grades plummet to C's, D's and F's on homework, tests, projects and flat out not doing assignments either due to stress and lack of support.

- Interfered with D.L.'s medical care – ignoring doctors' recommendations to *increase* therapy and medication for D.L.'s anxiety, and needing to be seen monthly with quarterly bloodwork checks (father skipped 2.5 months and its been a year of no bloodwork done) and instead pressuring D.L. to stop taking his prescribed medication altogether. This medical neglect was exactly the kind of issue reported by the therapist and doctor, yet now it intensified unchecked.

- Engaged in overt retaliation and intimidation – threatening D.L. that if he continued to seek help or even mention his suffering (for instance, emailing his grandmother about his daily nosebleeds and fear), it would "get [his] mom in more trouble". The court-appointed former GAL delivered similar threats to D.L., warning him that telling the truth

would only make things worse for his mother. This campaign of fear worked: by early 2025, D.L. was afraid to reach out for help at all, convinced that no one – not even DCF – would protect him. He told Plaintiff he believed *"DCF is pointless and will never take what I'm saying seriously, so all I can do is stay alone in my room".* This heart-breaking resignation in a child is the clearest evidence of the state-created danger at issue: through its repeated failure to act, the State (DCF) signaled to D.L. that he was on his own, thereby magnifying the power his abuser held over him.

By January 2025, D.L. was in a state of emotional and psychological collapse. He exhibited somatic symptoms (frequent nosebleeds, insomnia, stomach pain, headaches) and had lost a significant amount of weight. He was formally diagnosed by medical professionals with trauma-induced psychiatric injury as a direct result of the prolonged coercion, isolation, and institutional neglect he experienced. These harms are ongoing and irreparable absent intervention.

After exhausting administrative channels and DCF grievance procedures, Plaintiff continued to report the child's emails and events to law enforcement. For six months, her request for criminal charges were suppressed or disregarded, until ultimately a Special Victims Unit (SVU) detective was assigned to investigate the allegations.

That investigation uncovered substantiated evidence of physical abuse, including an incident on August 15, 2024, and referred the matter to the Johnson County District Attorney's Office for potential criminal battery charges against the father.

During school-based interviews with D.L., the child confirmed the abuse but expressed hesitation fearing that reporting it might result in "getting in trouble" with his father and that in order to be close with his dad he needs to erase his mother. This dynamic underscores both the

psychological coercion the child was under and the heightened need for independent safety planning.

Instead, DCF failed to act on the criminal referral or re-open the case. During this time, Plaintiff the non-offending parent was paradoxically restricted to supervised visitation, based not on judicial findings but on a pattern of narrative manipulation that framed her as "the problem." These allegations stemmed from DCF notes, former GAL summaries, and unverified hearsay third-party ghosts, many of which pre-dated any contact between Plaintiff and her son indicating that false reports were used to suppress Plaintiff's advocacy, discredit the child's disclosures, and deflect attention from the actual abuse.

This misuse of state power including the suppression of ADA grievances, refusal to act on criminal child abuse disclosures, and enforcement of restrictive visitation based on forged or retaliatory narratives constitutes a structural due process violation and supports claims under 42 U.S.C. §§ 1983, 12203, and Rule 60(d)(3).

F. Plaintiff's Exhaustion of Remedies ("System Failure"). Throughout this period, Plaintiff took every measure available to protect her son using lawful and official channels. The system utterly failed her at each step:

- Internal DCF Grievances: Plaintiff filed formal grievances with DCF's Office of Client Services (the designated department for client complaints) in November 2024, detailing the mishandling of the abuse reports and the lack of appropriate action. One grievance, emailed on November 4, 2024, explicitly outlined the failures of "Mandy" (Amanda Miranda) in the first two investigations and requested an immediate review and corrective action. Rather than receive a transparent review, Plaintiff was met with obfuscation and

harassment from DCF staff. Specifically, *instead of a written response or meeting*, the Leavenworth DCF office began calling Plaintiff by phone repeatedly – calls which were not clearly about investigating the grievance, but rather aimed at dissuading her. Plaintiff has a disability that affects communication processing, and she had expressly requested ADA accommodation to communicate in writing (email). DCF ignored this request and persisted in phone calls. When Plaintiff did answer a call, it was Ms. Lisa G., the direct supervisor of Ms. Miranda, on the line. Ms. Lisa G. did not appear to be conducting a neutral inquiry; instead, she pressed Plaintiff with questions like "why are you so unhappy?" and disputed that certain incidents constituted "emotional abuse". Plaintiff immediately sensed that the supervisor was defensive and intent on protecting her worker rather than addressing the complaint. Plaintiff even asked whether someone else should be listening to the call, because it felt like Ms. G. was gathering information to retaliate. When Plaintiff questioned the appropriateness of the call and reiterated that she needed to handle this by email due to her disability, Ms. G. eventually said she would "send it to my supervisor instead". In an email on January 31, 2025, Plaintiff informed the DCF regional administrator that she had no clarity on the proper grievance process and had effectively gotten nowhere. DCF's own publications indicate that client disputes should be settled via a chain of command and grievance procedure, rather than forcing the individual to resort to court. Here, however, DCF's grievance procedure (if one truly existed) was not followed at all. Instead of elevating Plaintiff's concerns to an impartial reviewer or panel, the complaint was handed back to the very local office implicated, resulting in predictable defensiveness and zero accountability and disappeared. This handling deviates from any reasonable protocol and denied Plaintiff a meaningful opportunity to

resolve her issues within the agency. Indeed, the retaliatory tone of the follow-up (DCF

calling to challenge Plaintiff's perceptions and insinuate she was wrong to complain)

likely violated DCF's own employee conduct rules and whistleblower protection policies.

- ADA Advocacy: In fall 2024, Plaintiff reached out to the newly established Kansas

  Office of the Child Advocate (an independent oversight agency) and explicitly framed her

  situation as an urgent ADA issue and child endangerment issue. She described how

  DCF's failures were putting her disabled son at risk and how the DCF staff were not

  accommodating her own communication disability in the grievance process. The Child

  Advocate's office responded on October 14, 2024, by directing Plaintiff to file a

  grievance with DCF's Client Services and provided her the contact information (which

  she did, as noted). After the frustrating response from DCF, Plaintiff again emailed the

  Child Advocate on December 18, 2024, essentially saying, "I followed the process, and

  now I'm getting harassing calls – what is the next step?" Unfortunately, it appears the

  Child Advocate's involvement did not compel DCF to correct course. At most, DCF's

  regional administrator (Christi Wilhoite) emailed Plaintiff offering to "connect" by

  phone. By that point, however, Plaintiff had justifiably lost trust in phone calls and was

  seeking a written resolution or meeting with higher-ups. No substantive relief came from

  this avenue. The promises of the ADA – that individuals with disabilities (including

  parents in the child welfare system) have equal access to services and participation –

  were hollow in practice. Plaintiff's ADA rights (and those of D.L.) were continuously

  brushed aside by DCF.

- Kansas Open Records Act (KORA) Complaint: In 2024/2025, after DCF's document

  production omitted critical records, Plaintiff filed a formal KORA complaint with the

Kansas Attorney General's Office (which has oversight of KORA enforcement). She provided the AG's office evidence that DCF had failed to release complete abuse investigation files and had given conflicting accounts of the case's existence/status. In January 2025, the Attorney General's Office summarily closed Plaintiff's complaint, finding "no violation" and she was lucky to get anything by DCF. This response came despite clear discrepancies in DCF's records. In effect, the AG's office rubber-stamped DCF's secrecy, depriving Plaintiff of the transparency relief that KORA is meant to provide. The Attorney General's indifference is especially troubling because it removed the last avenue at the state level for Plaintiff to obtain information critical to protecting her child. Had the AG's office performed a good-faith investigation of the KORA complaint, it would likely have uncovered DCF's internal policy violations and perhaps prompted DCF to rectify them. Instead, the AG's office chose institutional loyalty over the truth, further entrenching the constitutional deprivations.

- Legislative Appeal: As a last resort, Plaintiff contacted her state legislator. In early 2025, Plaintiff shared her story and grievance correspondence with Kansas State Representative hoping that legislative oversight might spur DCF to act. While Rep. was sympathetic, legislative inquiries (if any were made) did not yield results before this lawsuit. The very need for a constituent to ask a state representative to intervene in an active child safety case underscores how extraordinary and broken the system had become.

At every turn, Plaintiff either met a dead-end or faced retaliation for speaking up. By summer of 2025, more than a year after the first abuse report, it was evident that no part of the Kansas child welfare system or related oversight bodies would fulfill their duty to protect D.L. or to vindicate Plaintiff's parental rights. Plaintiff had exhausted the DCF grievance process (to the extent one

existed), sought help from the independent Child Advocate, pursued administrative records remedies, and sounded alarms to state officials – all to no avail. DCF's supervisors either ignored her or actively obstructed her (as with the phone harassment), and no higher authority stepped in to correct these wrongs. This systemic inertia and hostility left Plaintiff no choice but to seek relief from the federal court, which she now does through this lawsuit.

G. Deviations from DCF Protocols: The facts above illustrate numerous deviations from DCF's own written protocols and accepted practices, including but not limited to:

- PPM § 2100 (Investigation Procedures): Requiring prompt, thorough investigative interviews and evidence-gathering for abuse/neglect reports. Defendants Miranda and Dunz blatantly failed to meet this standard, effectively conducting sham investigations.

- PPM § 0315 & 0316 (Confidential Records and Disclosure): Mandating confidentiality of case information and limiting disclosure to authorized persons. Ms. Miranda's communication of case findings to a Andrew Bolton and possibly others in a private litigation context violated these provisions, while Plaintiff – who had a legitimate right to the information – was denied access.

- PPM § 0220 (Non-Discrimination): Requiring DCF to comply with the ADA and not deny services or participation due to disability. Defendants' failure to accommodate D.L.'s and Plaintiff's disabilities contravened this policy and Title II of the ADA.

- PPM § 0440 (Records Retention): Prohibiting destruction of case records while any review or grievance or appeal is pending, and requiring retention of all investigation files indefinitely. DCF's inability or unwillingness to produce a complete record, and the inconsistencies in its record-keeping (e.g., "missing" case files), suggest non-compliance

28

with this rule. At minimum, DCF failed to be forthright about case record status, undermining the intent of 0440.

- Grievance and Chain-of-Command Resolution: While not codified in a single PPM section, DCF's public guidelines indicate that complaints should be handled through the chain of command and a formal grievance procedure rather than dismissed. In Plaintiff's case, this process broke down entirely – her grievance was not properly escalated or resolved. The spirit of accountability that such procedures exist to promote was absent. Instead of treating Plaintiff's grievance as an opportunity to identify and correct errors for D.L.'s safety, DCF treated her as a nuisance. This is a systemic failure contrary to the agency's role.

In summary, the violations of DCF policy by Defendants Miranda and Dunz were not mere internal matters; they directly correlate to violations of Plaintiff's and D.L.'s constitutional and statutory rights. DCF policies, when followed, exist to prevent the very harms that occurred – wrongful disclosure of confidential information, lack of due process for parents, discrimination against persons with disabilities, and failure to act on known dangers to a child. The breach of these policies is evidence of deliberate indifference and unconstitutional custom or practice, as detailed in the legal claims below.

Claims for Relief

COUNT I – Violation of Fourteenth Amendment (Due Process)
(*42 U.S.C. § 1983* – *Against Defendants Amanda Miranda and Heather Dunz*)

1. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

2. Fundamental Liberty Interest: Plaintiff has a fundamental liberty interest in the care, custody, and management of her child, as recognized by the U.S. Supreme Court (see *Santosky v. Kramer*, 455 U.S. 745 (1982); *Troxel v. Granville*, 530 U.S. 57 (2000)). D.L., as a child, likewise has liberty and safety interests protected by the Constitution (including the right to be kept from harm when the state undertakes to act on his behalf).

3. Denial of Notice and Opportunity: Defendants deprived Plaintiff of procedural due process by concealing critical information and proceedings involving her child. Specifically, Defendants failed to notify Plaintiff of abuse disclosures and investigations, excluded her from any chance to present evidence or respond, and enabled judicial actions (in the domestic court) to proceed without her informed involvement by withholding exculpatory and relevant information. At the same time, DCF officials were communicating case information to unauthorized third parties compounding the prejudice to Plaintiff and accusing child of being a liar. No notice or fair opportunity to be heard was provided to Plaintiff before effectively adjudicating (through DCF's internal process) the validity of her son's abuse reports and, by extension, Plaintiff's custodial fitness. This one-sided process falls far short of the "minimum procedural guarantees" required by *Goss v. Lopez*, 419 U.S. 565 (1975), even for temporary deprivations of a protected interest. Here, Plaintiff was completely deprived of her right to protect her child and her reputational interest as a fit parent without any hearing at all.

4. Concealment and Falsification: Defendants' actions in concealing abuse disclosures, failing to document or outright destroying evidence of reports, and falsifying or biasing investigative records (e.g., by attributing false blame to Plaintiff) resulted in a dangerous distortion of the truth-seeking process. This distortion infected both the agency's

handling and the related court proceedings, such that Plaintiff was prevented from presenting her side or correcting the record. The intentional concealment of D.L.'s statements and the DCF findings from Plaintiff deprived her of the opportunity to rebut or appeal those findings through the normal administrative channels (for instance, an appeal of a substantiation, had there been one, or a request for agency review of an unfounded finding based on incomplete information). In doing so, Defendants violated Plaintiff's right to procedural due process.

5. Stigma-Plus Injury: Moreover, by disseminating false and stigmatizing information (that Plaintiff was "the problem" or an unfit mother) to Andrew Bolton and perhaps the court, without Plaintiff's knowledge, Defendants damaged Plaintiff's reputation and standing in the custody court, leading to adverse outcomes (a "stigma-plus" liberty interest violation). Plaintiff suffered the effective loss of custody time, a shock to the conscience and decision-making with respect to D.L. as a result of these underhanded actions by state actors, all without procedural safeguards.

6. Child's Due Process Rights: D.L.'s own due process rights were infringed insofar as he was entitled to have his abuse reports properly heard and considered by the state agency. Instead, his pleas for help were ignored and he was deprived of protection without any rational process. The child had a right to be free from state deception and concealment that increased his risk of harm (as recognized in *Schwartz v. Booker*, <u>702 F.3d 573</u> (10th Cir. 2012), state officials cannot mislead or withhold information in a manner that forecloses a person's ability to protect themselves). Here, DCF's withholding of information and false assurances that "no abuse was found" misled D.L. (and those who could have helped him) into a false sense of hopelessness, exacerbating his vulnerability.

31

7. Resulting Constitutional Injury: The acts and omissions of all Defendants were not merely negligent missteps; they were deliberate, repeated, and egregious, displaying a knowing disregard for Plaintiff's and D.L.'s rights. These actions were the moving force behind the constitutional injuries suffered: Plaintiff's loss of her parental role and opportunity to protect her child, his ADA advocate and D.L.'s continued exposure to abuse and ensuing trauma. But for Defendants' conduct, Plaintiff would have intervened earlier and more effectively to safeguard her son, and the outcome of custody and protection proceedings would likely have been different.

COUNT II – Violation of First Amendment (Retaliation)

(42 U.S.C. § 1983 – Against Defendants Miranda and Dunz)

1. Plaintiff incorporates all prior paragraphs.

2. Protected Activity: Plaintiff engaged in First Amendment protected activity by petitioning the government for redress and speaking out about the abuse and DCF's failures. This included: filing internal grievances and complaints, making KORA requests (a form of petition for information), reporting concerns to the Child Advocate and other officials, and generally objecting to her exclusion and her son's endangerment. Plaintiff's expressions – written grievances, emails detailing misconduct, and even this lawsuit – are activities protected by the right to free speech and to petition the government.

3. Adverse Actions: Defendants, particularly through DCF officials, responded to Plaintiff's protected activities with a pattern of retaliation that was outside of their duties. As detailed above, when Plaintiff filed grievances and public record requests, DCF officials: (a) subjected her to harassing phone calls and hostile questioning about why she complained; (b) unjustifiably withheld records that she had a right to obtain, thereby

impeding her oversight efforts; (c) continued to exclude her from decision-making and information, essentially punishing her by stonewalling; and (d) on information and belief, treated her complaints with prejudice (evidenced by the dismissive, biased tone of the DCF supervisor's response). This campaign of obstruction would deter a person of ordinary firmness from continuing to press complaints. Indeed, the phone call Plaintiff received in response to her grievance – wherein the DCF supervisor told Plaintiff was wrong to label the father's conduct as abuse and interrogated her unhappily – is a prime example of an adverse action intended to chill Plaintiff's advocacy. Rather than address the issues raised by the child, DCF's message was effectively "stop complaining."

4.  Causal Connection: There is a clear causal connection between Plaintiff's protected activity and the adverse actions. Plaintiff's grievance emails triggered the harassing calls almost immediately (temporal proximity and direct reference to her grievance in the call prove the link). Similarly, Plaintiff's persistent requests for records and transparency angered DCF officials, who then circled the wagons and refused to cooperate. The Kansas AG's Office's quick dismissal of Plaintiff's KORA complaint– Plaintiff's act of calling out DCF to another state agency was met with that agency's brushoff, suggestive of a retaliatory alignment between DCF and the AG's Office to silence a troublesome complainant.

5.  Chilling Effect and Injury: The retaliatory conduct did indeed chill Plaintiff's First Amendment rights. Plaintiff felt intimidated and feared that continuing to push would only invite more reprisal or further harm to her and her child (as evidenced by the former GAL's threat to the child that the mother would "get in more trouble" if the child kept speaking up). Nonetheless, Plaintiff persevered to the extent she could – but the law does

33

not require that she be completely silenced to claim retaliation. It is enough that

Defendants' actions were *intended* to deter and *had a chilling tendency*. The adverse

actions had no legitimate purpose: DCF officials had no valid reason to deny Plaintiff a

fair grievance process or full records apart from dislike of her complaints. Such conduct

violates the First Amendment. (*Hartman v. Moore*, 547 U.S. 250 (2006) recognizes that

retaliation for petitioning the government is actionable; *Worrell v. Henry*, 219 F.3d 1197

(10th Cir. 2000) sets the three-part test for First Amendment retaliation, which Plaintiff

satisfies here by showing her protected activity, Defendants' adverse responses, and the

retaliatory motive.)

6. As a direct result of this retaliation, Plaintiff suffered injury: the obstruction impeded her

ability to gather evidence, to be heard by officials, and to protect her son. It also caused

emotional distress, as Plaintiff had to fight not only an abusive co-parent but also the very

state actors tasked with helping her child as now the people choosing not to believe a

child's own words. The chilling of these rights is itself a constitutional harm warranting

relief.

COUNT III – Violation of Substantive Due Process: State-Created Danger and Bodily Integrity

(*42 U.S.C. § 1983 – Against Defendants Miranda and Dunz*)

1. Plaintiff incorporates all prior paragraphs.

2. Affirmative Acts Increasing Risk: Under the state-created danger doctrine (see *DeShaney*

*v. Winnebago Cty.*, 489 U.S. 189 (1989); *Currier v. Doran*, 242 F.3d 905 (10th Cir.

2001)), state officials can be liable when their affirmative actions create or exacerbate

danger to an individual. In this case, Defendants' actions affirmatively created and

exacerbated the danger to D.L., violating his substantive due process right to bodily

integrity and safety. By misrepresenting the situation and concealing known abuse,

Defendants lulled Plaintiff and other would-be protectors into a false sense that "no

intervention was needed," thereby leaving D.L. exposed to ongoing abuse that the state

knew about. They also effectively signaled to the abuser (the father) that he could

continue without state interference because they did not believe a child who was pleading

for help and making reports on his own to mandated reporters, which predictably led to

escalated harm.

3. Knowledge of the Danger: Defendants were well aware of the substantial risk to D.L.

Each abuse report put them on notice that D.L.'s father was engaging in dangerous

behavior (psychological abuse, coercive control, threats, medical neglect, physical harm).

By the third report, the risk was extreme and imminent (the child was showing physical

trauma and police officer asked if child needed an ambulance in their report). Thus, this

is not a case of hidden or speculative danger – it was open and documented, satisfying the

requirement that the state actors knew of the risk of harm.

4. Conscience-Shocking Conduct: Defendants' failure to act in the face of this knowledge,

combined with their actions to thwart Plaintiff's rescue efforts, rises to the level of

conscience-shocking behavior needed for a substantive due process violation. It is

conscience-shocking to *deliberately* refuse to protect a child out of bureaucratic

convenience or animus, and to mislead those who might help. The conduct here was

egregious and outrageous in the constitutional sense: DCF officials abandoned a child to

an abuser and impeded the fit parent's attempt to save the child. This goes beyond mere

negligence; it approaches a form of collusion with the abuser (even if not intentional, that

was its effect). The Tenth Circuit's decision in *Armijo v. Wagon Mound Public Schools*,

159 F.3d 1253 (10th Cir. 1998) is instructive: state actors were held liable where they knew of a student's suicidal tendencies yet sent him home alone with a gun available, creating the danger. Here, Defendants knew of abuse and yet effectively sent D.L. back into that abuse repeatedly and cut off his avenues of help – a parallel degree of culpability.

5. Facilitating Retaliation and Coercion: Additionally, by communicating to the GAL and others that DCF found no issues (and by not substantiating the abuse), Defendants facilitated the retaliation against D.L. The GAL and father explicitly used DCF's inaction as part of their coercion – telling D.L. no one would believe him because even DCF closed the case, and threatening him with DCF-backed authority (e.g., "it'll get your mom in trouble"). In this way, Defendants lent the color of state authority to the abuser's campaign of silencing the child. This is an extraordinary abuse of power that strips away the child's sense of security and bodily autonomy, violating the child's right to be free from state-empowered abuse. *Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012) recognizes that when state officials, by their affirmative conduct, induce reliance on false information and thus endanger a person, it can be actionable. Here, DCF induced D.L. to rely on the idea that help was not coming and that speaking out was futile, which is akin to tying the hands of a drowning victim.

6. Injury: As a result of Defendants' state-created danger, D.L. suffered grievous harm to his body and mind. The abuse continued when it could have been stopped. The psychological trauma was magnified, potentially for life. Plaintiff, as his mother, also suffered the loss of her child's bodily integrity and well-being, which courts have recognized can give rise to a parent's substantive due process claim in extreme cases

(interference in the parent-child relationship through egregious abuse caused by state action). This count thus encompasses both the child's direct claim and the derivative impact on Plaintiff's fundamental liberty interest in her familial relationship.

7. Defendants' conduct meets all elements of a state-created danger claim: (1) they created or increased the danger to D.L. through affirmative acts (concealment, fraud, misinformation, non-removal); (2) D.L. was a known, discrete victim as opposed to a member of the general public – indeed, DCF knew him by name and had an open case on him; (3) Defendants' actions put D.L. at substantial risk he would not otherwise have faced (had they acted properly, he might have been removed from the abusive situation or at least the father constrained; instead, the danger was left to fester); and (4) the failure to protect was, in context, shocking to the conscience and deliberately indifferent to the known risk. Therefore, Defendants are liable for violating substantive due process under a danger-creation theory.

COUNT IV – Violation of Americans with Disabilities Act (Title II) and Rehabilitation Act (Against Amanda Miranda and Heather Dunz – in both official and individual capacities)

1. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

2. Plaintiff and her minor son, D.L., are qualified individuals with disabilities within the meaning of the ADA and Section 504.

   o Plaintiff has documented communication disabilities, including auditory processing disorder and trauma-induced anxiety, which substantially impair her ability to communicate under stress, particularly via phone or in real-time verbal interactions.

o D.L. has diagnosed mental health conditions including anxiety disorder and complex trauma, which substantially limit his verbal processing and ability to respond to stress or recount traumatic events verbally.

3. Defendants Amanda Miranda and Heather Dunz, acting under color of state law and as agents of a public entity receiving federal funds, engaged in conduct that deprived Plaintiff and D.L. of meaningful access to state services on the basis of disability. The following acts demonstrate their individual and official violations of federal disability law:

a. Miranda and Dunz refused to implement reasonable modifications to Plaintiff's known disability-based communication needs. Despite repeated requests from Plaintiff to correspond by email instead of phone, both Defendants either ignored, delayed, or weaponized her requests, including hanging up on her, refusing to respond by email, or using phone-only communication to confuse and exclude Plaintiff from meaningful participation in case planning, grievance processing, and safety decisions. This refusal constituted a textbook violation of Title II's reasonable accommodation mandate and Section 504's access requirements.

b. Miranda failed to accommodate D.L.'s communication disabilities during the initial abuse investigation. Despite knowing D.L. had difficulty verbally expressing trauma in interviews, Miranda failed to allow written responses, the involvement of his therapist, or any trauma-informed support. Instead, Miranda improperly dismissed the outcry as lacking credibility due to D.L.'s speech patterns — which were direct manifestations of

his disabilities. The failure to adjust the procedure unfairly penalized D.L. and obstructed protective services from functioning as intended for a disabled child.

c. Dunz likewise failed to initiate any accommodations for D.L. despite receiving follow-up reports of physical abuse and mental health deterioration. Dunz took no steps to modify interviews, safety planning, or offer supportive services. Instead, Dunz continued to operate on assumptions that favored the abuser and discounted the child's expressed fears and history — all without reference to his disability needs.

d. Plaintiff filed formal ADA grievances and requests for accommodation, both to DCF directly and to the Kansas Office of the Child Advocate. In response, Dunz escalated harassment, and supervisors called Plaintiff in a confrontational tone — an act of retaliation. The timing and content of these responses show an intent to intimidate and punish Plaintiff for asserting federally protected rights under the ADA, in violation of 42 U.S.C. § 12203(b).

4. The acts of Miranda and Dunz caused ongoing harm. Plaintiff was deprived of the ability to meaningfully participate in proceedings and to ensure her child's safety. D.L. regressed psychologically and lost access to accommodations, therapeutic interventions, and basic trauma-informed care due to Defendants' exclusion and inaction.

5. These failures, in both personal and official capacity, demonstrate deliberate indifference or at minimum, reckless disregard for the rights of disabled individuals. A non-disabled parent and non-disabled child would not have suffered the same exclusion or credibility discounting in investigations, triggering a disparate impact claim under Section 504.

6. Plaintiff seeks the following relief:

- o   A declaratory judgment that Defendants violated the ADA and Section 504;

- o   Injunctive relief requiring training for state workers on ADA obligations;

- o   Orders requiring Defendants to modify their communication practices and decision-making procedures when dealing with disabled parents or children;

- o   An award of attorneys' fees and litigation costs if applicable under 42 U.S.C. § 12205;

- o   Any further equitable relief the Court deems just and proper.

7.   Plaintiff preserves her right to amend this complaint to include claims under 42 U.S.C. § 1983 (failure to intervene), Kansas negligence law, and retaliation under the Kansas ADA if discovery reveals additional coordination or instructions to suppress protected ADA advocacy.

Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief against Defendants Amanda Miranda and Heather Dunz, each in their personal and official capacities:

A. Declaratory Relief

A declaration that Defendants' actions and omissions specifically including the concealment and destruction of abuse records, procedural exclusion of Plaintiff from investigations, retaliation for ADA-based grievances, and deliberate failure to provide reasonable accommodations violated:

- • Plaintiff's and D.L.'s rights under the First, Fifth, and Fourteenth Amendments;

- • Title II of the Americans with Disabilities Act (42 U.S.C. § 12132 et seq.);

- • Section 504 of the Rehabilitation Act;

40

- Kansas Bill of Rights §§ 1 and 18;

- and DCF policies PPM2 §§ 0315–0317, 10200, 0220, and associated mandates.

B. Injunctive Relief

Equitable and prospective relief to remedy ongoing violations and prevent further retaliation, including:

1. Access to Records: An order requiring Defendants to provide full and unredacted access to all case records pertaining to the abuse referrals, reports and assessments concerning D.L., including any KIDS system entries, internal emails, supervisor notes, and assessment findings withheld from Plaintiff.

2. ADA Compliance: An injunction mandating that Defendants accommodate disability-related communication needs in any future contact with Plaintiff, including:

   o honoring Plaintiff's email-only communication request;

   o documenting and responding to ADA accommodation requests as required under PPM2 § 0220;

   o engaging ADA-coordinator oversight in any remaining or future state services relating to Plaintiff or D.L.

3. Anti-Retaliation Order: A formal Court order prohibiting Defendants from retaliating, harassing, or excluding Plaintiff or D.L. in any future administrative action, KORA requests, or protective service proceedings as a result of their assertion of ADA rights.

4. Case Record Correction or Supplementation: An order requiring Defendants to allow Plaintiff to submit corrections or rebuttals to false or incomplete documentation relied upon in past decisions.

5.  Independent Review or Referral: An order requiring Defendants to recommend that an independent DCF unit, not affiliated with Miranda or Dunz, review the handling of the 2024 and 2025 abuse referrals to determine whether a reopened investigation or referral to law enforcement is appropriate in light of suppressed disclosures, ADA interference, and documented risk to D.L.

## C. Compensatory Damages

Pursuant to 42 U.S.C. § 1983, § 12133, and applicable federal common law:

-   Emotional Distress: For Plaintiff's anguish caused by exclusion, stonewalling, retaliation, and failure to protect her son.
-   Loss of Familial Association: For the coerced disruption of her parenting relationship with D.L. through state-enabled alienation.
-   Out-of-Pocket Costs: For therapeutic services, medical expenses, records fees, travel, and litigation support incurred due to Defendants' wrongful acts.

Amount to be proven at trial.

## D. Punitive Damages (Individual Capacity Only)

Against Amanda Miranda and Heather Dunz in their personal capacities, for willful and malicious violations of Plaintiff's federal rights. Defendants knowingly fabricated findings, violated DCF confidentiality protocols, ignored ADA grievances, and acted with gross disregard for Plaintiff's civil and parental rights.

E. Costs and Attorneys' Fees: Plaintiff requests an award of reasonable attorneys' fees and litigation costs under 42 U.S.C. § 1988(b) (civil rights actions) and 42 U.S.C. § 12205 (ADA claims), including all expenses necessary to prepare, file, and prosecute this case. Though Plaintiff is pro se, courts have recognized that self-represented litigants may seek reimbursement for out-of-pocket litigation costs, including: Research and document preparation time; Filing and service fees; Medical and educational records retrieval; Expert consultations and declarations (where applicable); Transportation, mailing, and document reproduction; Loss of income or employment disruption directly caused by litigation burden, especially for disabled litigants under ADA hardship standards. Plaintiff requests that the Court retain jurisdiction to evaluate and award all post-judgment fee petitions, including any supplemental pro se recoverable costs or conversion to attorney fees if counsel is retained before final judgment.

F. Appointment of Counsel: While Plaintiff proceeds pro se, she respectfully notifies the Court that, given the complexity of the case and her dual role as a disabled litigant and next friend for her child, appointment of counsel may be appropriate pursuant to D. Kan. Rule 83.5.3.1 and 28 U.S.C. § 1915(e). The Court's local rules recognize the importance of counsel in civil rights cases and the need to ensure pro se litigants can fairly present their claims. Plaintiff seeks any such relief in the Court's discretion to level the playing field.

G. Further Relief: Any other and further relief the Court deems just and proper, including equitable relief tailored to protect D.L.'s well-being insofar as federal law permits. That all prior filings be deemed incorporated, that this Court retain jurisdiction to enforce any relief granted, and that Plaintiff be granted such further equitable, legal, or declaratory relief as justice requires.

Jury Demand: Plaintiff demands a trial by jury on all issues so triable.

Trial By Jury Demand

Pursuant to the Seventh Amendment, Plaintiff demands a jury trial on all triable issues.

Dismissal is improper where material facts are in dispute regarding ADA retaliation, the

destruction of abuse reports, disputed authorship of emails, and pattern of obstruction. See

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Beacon Theatres, Inc. v. Westover*, 359

U.S. 500 (1959).

Where material facts are in dispute such as the existence and timing of ADA grievances,

authenticity of emails submitted to court, and whether Plaintiff was labeled the problem by DCF

these questions must be adjudicated by a jury under *Anderson v. Liberty Lobby*, 477 U.S. 242,

255 (1986), *Beacon Theatres*, and the Seventh Amendment. This court lacks authority to resolve

disputed facts at the Rule 12(b)(6) stage.

Exhibit A: Power of Attorney – ADA Advocate and Next Friend Designation for D.L.

Respectfully submitted,                                    Dated: November 30, 2025

/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, Pro Se and Next Friend to D.L.

ADA-Protected Litigant and Advocate

1914 5th Ave., Leavenworth, KS 66048

CERTIFICATE OF SERVICE


On November 30, 2025 I certify that a true and correct copy of the foregoing was served via the

Court's CM/ECF system on all registered parties on this date.


/s/ Angeliina Lynn Lawson

Angeliina Lynn Lawson

Plaintiff, Pro Se and Next Friend to D.L.

ADA-Protected Litigant and Advocate

# POWER OF ATTORNEY FOR PARENTAL SAFETY, ADA DISABIITY ADVOCACY, AND TEMPORARY GUARDIANSHIP AUTHORIZATION

**By: Angeliina Lynn Lawson**
**Child:** D.L.

## Section 1: Parental Safety and ADA Disability Advocacy Authorization

I, Angeliina Lynn Lawson, residing at [Address] _____, am the biological and legal mother of D.L. _____

This Power of Attorney is executed pursuant to my parental rights and legal standing under applicable federal and state laws, including HIPAA, FERPA, ADA Title II (42 U.S.C. § 12132), and the Kansas Protection from Abuse Act (K.S.A. 60-3101 et seq.).

**Scope of Authorization:**

I formally designate myself as the lead ADA advocate, emergency contact, and legal representative for all matters involving D.L. :

- Medical and psychiatric treatment;
- Counseling, therapy, trauma care;
- Educational access, FERPA records, and IEP/504 accommodations;
- Emergency care, safety alerts, mandated reporting;
- Coordination with law enforcement, prosecutors, or mandated reporters.

## Section 2: Coercive Control and Domestic Violence Risk Alerts

Define *coercive control* in this document incorporates recognition of the following as risk factors for psychological abuse and domestic violence patterns (see K.S.A. 60-3102):

I authorize and direct all providers, school staff, therapists, law enforcement, court official and medical personnel as mandated reporters to report if you suspect child abuse and to recognize the following as indicators of coercive abuse, parental alienation, and psychological harm:

- Monitoring, intercepting, or erasing my communication with the child;
- Removing my contact details from school, medical, or emergency portals;
- Using fabricated legal documents to block my parental access;
- Isolating the child from maternal family support;
- Using the child to manipulate litigation outcomes;
- Making false reports to medical staff regarding custody or legal rights;
- Encouraging the child to recant abuse disclosures under pressure.

These are red flags consistent with *coercive control*, defined in international law and psychological literature as "a strategic pattern of domination that includes isolation, intimidation, gaslighting, surveillance, and control over the victim's access to information or relationships."

Any attempt by providers to remove me from my son's medical, educational, or psychological coordination without a valid, unexpired, signed court order will be considered medical fraud, collusion in custodial interference, and ADA retaliation, subject to federal and state complaint.

Any mandated reporter who fails to file a child abuse report will be met with criminal charges filed by law enforcement and pursued in civil and criminal court.

## Section 3: Temporary Guardianship Clause (Safety Planning)

If I am:

- Temporarily hospitalized,
- Obstructed or retaliated against by court actors,
- Or otherwise unable to act on behalf of my son due to ADA-protected disability,

I designate the following temporary guardian:

name of guardian

This temporary authority is:

- Valid for up to 90 days, unless renewed;
- Limited to emergency medical, educational, therapeutic, behavioral health, and any other safety matters;
- Subordinate to my reinstated legal rights and access.

This clause is filed as a proactive child welfare and safety measure and may be presented to schools, doctors, hospitals, police, or child welfare officials.

## Section 4: Document Integration and Legal Filing Notice

Executed This Day: 23rd October, 2025
City/State: Leavenworth, Kansas

Signature: _____
Angeliina Lynn Lawson
Phone: (913) 972-1661
Email: AngeliinaCourtRecords@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,

Plaintiff,

v.                                                              Case No. 25-2171-JWB

KANSAS DEPARTMENT FOR CHILDREN
AND FAMILIES, KANSAS ATTORNEY
GENERAL'S OFFICE, AMANDA MIRANDA,
and HEATHER DUNZ, in their individual and
official capacities,

Defendants.

## MEMORANDUM AND ORDER

This matter is before the court upon Plaintiff filing her first amended complaint. (Doc. 74.)

## I.    Facts

Plaintiff Angeliina Lawson brings claims against Kansas Department for Children and Families ("DCF") employees Amanda Miranda and Heather Dunz. The underlying allegations generally involve child protection investigations conducted by DCF and involving Plaintiff's child. As such, Plaintiff brings this action on behalf of herself *and her minor child*.

On April 2, 2025, Plaintiff filed her initial complaint. (Doc. 1.) Notably, she brought claims on behalf of her minor child. On June 2, 2025, Defendants filed a motion to dismiss. (Doc. 11.) This court took the motion under advisement and instructed Plaintiff to file an amended complaint on or before October 30, 2025, that complied with the order and Federal Rule of Civil Procedure 8(a). (Doc. 48.) Among the instructions in the order was that Plaintiff could not bring claims on behalf of her minor child. Specifically, this court stated:

At the outset, the court first addresses Plaintiff's claims brought on behalf of her minor child. "[U]nder Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child

1

cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney." *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986). Therefore, any claims on behalf of Plaintiff's child are subject to dismissal.

(*Id*. at 3.) Subsequently, Plaintiff timely filed her first amended complaint which included claims brought on behalf of her minor child. (Doc. 55.) This court struck the first amended complaint and stated:

> Plaintiff [is] cautioned. . . to omit any claims on behalf of her child as Plaintiff is proceeding pro se. . . . Plaintiff will be allowed one final opportunity to comply with this court's order. Plaintiff may file an amended complaint on or before December 1, 2025. Should she fail to file an amended complaint or if the amended complaint does not comply with the directives in the court's prior order (Doc. 48), this matter will be dismissed without further notice.

(Doc. 67.) Subsequently, Plaintiff timely re-filed her first amended complaint. (Doc. 74.) It again included a plethora of claims brought on behalf of her minor child.[1] In response to Plaintiff continually defying this courts reasonable orders, this court is poised to dismiss the instant action.

## II.   Standard

The court is mindful that Plaintiff proceeds pro se. As a pro se litigant, Plaintiff's pleadings are to be construed liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this does not alleviate Plaintiff's burden. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Further, the court may not assume the role of advocate for the pro se litigant. *See Van Deelen v. City of Eudora, Kan*., 53 F. Supp. 2d 1223, 1227 (D. Kan. 1999); *Sallaj v. Feiner*, No. 23-CV-01172-EFM-BGS, 2024 WL 112303, at *2 (D. Kan. Jan. 10, 2024) (citing *Ogden v. San Juan Cnty*., 32 F.3d 452, 455 (10th Cir. 1994) ("Plaintiffs are not excused from following procedural rules—including local rules—simply because they choose to proceed pro se.").

---

[1] Plaintiff states that she "brings this action . . . on behalf of [D.L.] who lacks the capacity to litigate." (Doc. 74 at 5.) And throughout the first amended complaint, nearly every allegation brought by Plaintiff is on behalf of her minor son.

To withstand a motion to dismiss under Rule 12(b)(6), the complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's SAC does not.

## III.    Analysis

This court previously ruled that Plaintiff's complaint was subject to dismissal. (Doc. 48.) The court stayed that ruling as to the two individual Defendants. The court allowed Plaintiff to amend her claims against those two individual Defendant only. Had Plaintiff complied with the court's instructions, the court was inclined to allow an amended complaint to be filed and the parties to again brief a motion to dismiss. Despite this court's express admonitions that failure to comply with the court's orders could result in dismissal of the case (Docs. 48, 67), Plaintiff has failed to comply with this court's orders directing that she file an amended complaint that does not include claims brought on behalf of her minor child. Accordingly, Federal Rule of Civil Procedure 41(b) authorizes this court to dismiss an action "[i]f the plaintiff fails to . . . comply with . . . a court order." Fed. R. Civ. P. 41(b); *see Link v. Wabash R. Co.*, 370 U.S. 626, 630–32 (1962) (holding district court's have inherent power to *sua sponte* dismiss cases pursuant to Fed. R. Civ. P. 41(b)).[2]

While dismissal of this action is clearly warranted, it would not be appropriate to dismiss Plaintiff's claims against Amanda Miranda and Heather Dunz with prejudice due to Plaintiff's pro se status. *See Jones v. Greyhound Lines, Inc.*, No. CV 08-1185-MLB, 2010 WL 11627492, at *2 (D. Kan. Sept. 14, 2010) ("The court is reluctant to dismiss this case with prejudice due to

---

[2] "Although the language of Rule 41(b) requires that the defendant move to dismiss, the Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders." *Herrington v. Unknown Police Officer #1*, No. 22-1256, 2023 WL 5093712, at *2 (10th Cir. Aug. 9, 2023) (citing *Link*, 370 U.S. at 630–31).

plaintiff's pro se status"). Therefore, dismissal of those claims without prejudice is warranted. *See* Fed. R. Civ. P. 41(b); *United States ex rel. Jimenez v. Health Net, Inc.*, 400 F.3d 853, 855 (10th Cir.2005) ("[D]ismissal is an appropriate disposition against a party who disregards court orders and fails to proceed as required by court rules."); *Burnham v. United States*, No. 22-1436, 2023 WL 4994940, at *1 (10th Cir. Aug. 4, 2023) ("District courts have broad discretion in determining whether to dismiss a civil action without prejudice for failing to comply with court orders.").

Given Plaintiff's pro se status, the court thus far has opted on a conservative approach giving Plaintiff multiple opportunities to correct errors and informing her of her specific duties in complying with court orders. But Plaintiff's intentional defiance of reasonable orders in this case has reached the point where it is consuming a considerable amount of the court's time and, more importantly, is delaying the legal process of this case and others before this court. Because warning Plaintiff has proven ineffective, the court now dismisses another one of her actions.[3]

## IV.    Conclusion

THEREFORE, the court DISMISSES WITHOUT PREJUDICE the instant action for the reasons stated in the court's prior order (Doc. 48) and for Plaintiff's continued failure to comply with court orders. Further, Defendant's motion to dismiss (Doc. 11) is GRANTED.

IT IS SO ORDERED. Dated this 11th day of December, 2025.

 s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] *See, e.g., Lawson v. Godderz*, Case No. 25-2199-JWB; *Lawson v. Lawson*, Case No. 25-4045-JWB.

# United States District Court

------------------------- DISTRICT OF KANSAS---------------------------

ANGELIINA LYNN LAWSON,

          Plaintiff,

v.                              Case No: 25-cv-2171-JWB

AMANDA MIRANDA,
HEATHER DUNZ,

          Defendants,

## JUDGMENT IN A CIVIL CASE

☐    Jury Verdict.   This action came before the Court for a jury trial.  The issues have been tried and the jury has rendered its verdict.

☒    Decision by the Court.  This action came before the Court.  The issues have been considered and a decision has been rendered.

    IT IS ORDERED AND ADJUDGED that pursuant to the Memorandum and Order filed December 11, 2025, the court DISMISSES WITHOUT PREJUDICE the instant action for the reasons stated in the court's prior order (Doc. 48) and for Plaintiff's continued failure to comply with court orders.  Further, Defendant's motion to dismiss (Doc. 11) is GRANTED.

   December 11, 2025                    SKYLER B. O'HARA
         Date                            CLERK OF THE DISTRICT COURT

                                     by:  s/ Joyce Roach
                                          Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANGELIINA LYNN LAWSON,
Plaintiff, Pro Se Plaintiff & Next Friend to D.L.

v.

Kansas DCF, et. al.
Defendants.

Case No. 2:25-cv-02171-JWB-TJJ

NOTICE OF APPEAL

Notice is hereby given that Plaintiff Angeliina Lynn Lawson, a pro se and ADA-protected litigant, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the final Memorandum and Order (Dkt. 76) and the corresponding Judgment in a Civil Case (Dkt. 77), entered in this action on December 11, 2025, which dismissed Plaintiff's complaint in its entirety.

This appeal includes all issues adjudicated and preserved in:

- Plaintiff's original complaint (Dkt. 1),
- All amended complaints and attached exhibits,
- All Rule 60(d)(3), Rule 27, and ADA filings,
- All motions, responses, supplements, objections, judicial notices, and orders leading up to and including Dkts. 76 and 77.

Plaintiff respectfully preserves her constitutional, statutory, and appellate rights for review under 28 U.S.C. § 1291, the Americans with Disabilities Act, the Due Process Clause, and any applicable civil rights protections under 42 U.S.C. §§ 1983, 12132, and 12203(b).

Respectfully submitted,                                         Dated: December 11, 2025

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson
Pro Se Plaintiff & Next Friend to D.L.
(913) 972-1661

CERTIFICATE OF SERVICE

I certify that on this 11th day of December, 2025, I caused a true and correct copy of the foregoing Notice of Appeal to be served via the Court's CM/ECF system to all parties on record.

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson

Pro Se Plaintiff & Next Friend to D.L.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

December 12, 2025

Angeliina Lynn Lawson
1914 5th Avenue
Leavenworth, KS 66048

RE:    **25-3223, Lawson v. Kansas Department of Children and Families, et al**
Dist/Ag docket: 2:25-CV-02171-JWB-TJJ

To All Parties and Counsel:

This court has received and docketed an appeal in the above-referenced case, and the appeal number is listed above. Please note the following requirements for this appeal:

### **Preliminary Documents (All Parties)**

**Entry of Appearance and Certificate of Interested Parties.** All parties are required to file an entry of appearance and certificate of interested parties. 10th Cir. R. 46.1(A) and (D). Pro se individuals must file the enclosed form **within 30 days** of the date of this letter. Counselled parties must file the form **within 14 days** of the date of this letter. Attorneys who do not enter an appearance within the specified time will be removed from the service list.

In addition to an entry of appearance, appellees who do not intend to participate in the appeal must promptly file a notice of non-participation and state whether they wish to continue receiving notice of the court's orders.

**Rule 26 Disclosure Statement.** All entities represented by counsel are required to file a Federal Rule of Appellate Procedure 26.1 disclosure statement **within 14 days** of the date of this letter. *See* 10th Cir. R. 26.1(A). Pro se individuals need not file a disclosure statement.

### Filing & Docketing Fee (Appellant)

A separate fee of $605.00 ($5.00 filing fee and $600.00 docket fee) is due for every appeal initiated to the court of appeals.

[**Within 30 days** of the date of this letter, you must either (1) pay the $605.00 fee to the district court, or (2) file a motion <u>in the district court</u> for leave to proceed on appeal without prepayment of fees.

**Please note, failure to timely pay the filing fee or file a motion for leave to proceed without prepayment of the filing fee by the deadline set by this court may result in the dismissal of this appeal without further notice.** *See* **Fed. R. App. P. 3(e) and 10th Cir. R. 3.3(B).**

### Method of Receiving Service (Pro Se Parties)

The court will forward all forms, letters, and orders to you via US Mail. If you wish to change the method of service from US Mail to email, you must make that request in writing by completing the enclosed "Consent to Electronic Service" form and returning to this office.

ou will receive further instructions regarding prosecution of this appeal from the court within the next few weeks.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:    Marc Altenbernt
Scott Nading
James Eric Todd

CMW/at