UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| Angeliina L. Lawson<br><br>        Appellant,<br><br>v.<br><br><br>DCF, et. al<br><br>        Appellee. | Case No. __25-3223_____<br><br>Appellant's Opening Brief |

APPELLANT'S OPENING BRIEF

1. Statement of the Case. (This should be a <u>brief</u> summary of the proceedings in the district court.)

Appellant Angeliina Lynn Lawson, a pro se mother, with IFP status and as an ADA Title II-protected litigant, filed this civil rights action on April 2, 2025 (D. Kan. Case No. 2:25-cv-02171-JWB-TJJ) against the Kansas Department for Children and Families (DCF), its employees Amanda Miranda and Heather Dunz, and the Kansas Attorney General's Office, asserting claims under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and related federal constitutional provisions.

The complaint alleged retaliation for asserting disability rights, obstruction of reunification with her son, suppression of child welfare records, breach of legal duties, and coordinated misconduct across state agencies and courts. Despite evidence of default, untimely appearances, and waived defenses by the Appellees, the district court denied Appellant's motion for default judgment and allowed late filings without explanation.

Over the following months, Appellant filed multiple motions documenting fraud upon the court, judicial bias, ADA retaliation, and procedural irregularities, including motions to disqualify both assigned judges under 28 U.S.C. § 455 due to financial conflicts, entanglements, and retaliatory conduct. The district court never ruled on several pending motions, including Appellant's Rule 60(d)(3) fraud preservation motion and ADA retaliation notices, instead threatening sanctions

and ultimately dismissing the action without prejudice on December 11, 2025 (Doc. 76), citing noncompliance and pleading form rather than addressing the merits.

All prior dismissals and interlocutory rulings, including the October 9, 2025 dismissal of DCF and the AG's Office, are now merged into the final judgment and properly before this Court.

Appellant filed a timely Notice of Appeal (Doc. 78) to preserve appellate review of jurisdictional defects, retaliation, and denial of meaningful access to the courts as protected under federal law.

Then, on January 16, 2026, Appellee Dunz mailed a signed letter to Appellant closing the ongoing child abuse investigation against the father concerning allegations of neglect, suicidal threats, and intentional alienation and withholding of the child from the Appellant. This letter, sent after final judgment and during the pendency of this appeal, confirms Appellees' retaliatory motive and disregard for Appellant's protected interests under the ADA and the First Amendment. It is also a post hoc admission of both injury and continuing state hostility, further justifying reversal and remand for trial.

2. Statement of Facts Relevant to the Issues Presented for Review.

Appellant, proceeding pro se and under ADA Title II protections, initiated this federal civil rights action on April 2, 2025, alleging that the Kansas Department for Children and Families (DCF), its employees Amanda Miranda and Heather Dunz, and the Kansas Attorney General's Office (AG's Office) engaged in constructive denial of access, breach of official duties, coordinated retaliation, denial of disability accommodations, destruction of evidence, file tampering, fraud upon the court, and suppression of parental rights under 42 U.S.C. § 1983 and the ADA. The case arose from Appellant's protected efforts to access public records, prevent the concealment of her son's abuse disclosures, and challenge continuing administrative obstruction during open investigations involving her disabled minor child.

Summonses were served in April and May 2025. Appellees DCF, Miranda, and Dunz filed a motion to dismiss on June 2, 2025 (Doc. 11), after their responsive deadline had passed. Appellant simultaneously filed an application for entry of default (Doc. 12) and a motion for default judgment (Doc. 13). The Kansas Attorney General's Office did not appear until June 6, 2025 (Doc. 14), well beyond the deadline and without explanation. Despite this, the district court denied Appellant's default filings on June 10, 2025 (Doc. 18), and permitted all Appellees to proceed as though timely.

Appellant filed opposition to the motions to dismiss (Docs. 16, 19, 24), while also submitting notices of improper appearances, subpoena noncompliance (Docs. 27, 31), and procedural manipulation. In July 2025, Appellant formally invoked Rule 60(d)(3) (Doc. 28), alleging fraud upon the court by state actors and the AG's Office. That motion was never adjudicated.

On July 23 and 24, 2025, Appellant participated in a scheduled hearing before Magistrate Judge James to set a conference schedule for discovery. Without advance notice, the magistrate

converted the hearing and stayed all discovery and pretrial proceedings (Doc. 40), citing pending motions and closely mirroring the Attorney General's Office's position. Appellant filed objections (Doc. 41), a jury demand preservation notice (Doc. 43), and an emergency interlocutory appeal (Doc. 45), which was dismissed for lack of jurisdiction (Doc. 61).

Between August and October 2025, Appellant filed multiple ADA-based accommodation notices and retaliation warnings (Docs. 44, 69, 72, 75), a judicial misconduct and Tucker Act certification (Doc. 70), and motions to disqualify both assigned judges under 28 U.S.C. § 455(a) and (b)(4) based on financial conflicts and retaliatory conduct (Docs. 53, 56). The district court never ruled on any disqualification motion.

On October 9, 2025, the district court issued a split dismissal order (Doc. 48), granting dismissal for DCF and the AG's Office but retaining the individual Appellees and demanding a narrowed amended complaint—instructing Appellant to remove "next friend" claims based on her child's ADA rights. Appellant filed an amended complaint (Doc. 55), which the court then struck sua sponte as noncompliant (Doc. 67), without addressing the merits. A final amended complaint was filed December 1, 2025 (Doc. 74), under duress and judicial pressure, and included a notarized power of attorney confirming Appellant's role as ADA advocate for her child. Nonetheless, the district court dismissed the case without prejudice on December 11, 2025 (Doc. 76), disposing of all claims and rendering the judgment final under 28 U.S.C. § 1291. That dismissal occurred while numerous motions remained pending, including those relating to fraud, judicial bias, ADA retaliation, and jury-trial protection.

Appellant filed her Notice of Appeal the same day (Doc. 78). While this appeal was pending, the State of Kansas launched a post-audit investigation into DCF based on evidence submitted by Appellant to legislators. In November 2025, while this appeal remained open, Appellant's minor child was neglected, subjected to ongoing alienation, and deprived of contact with Appellant— despite prior reports of the father's suicidal threats and open investigations. The DCF reassigned the case to Appellee Heather Dunz, a named defendant in this matter. Then, on January 16, 2026, without full investigation and under active legislative oversight, DCF mailed a retaliatory case closure letter signed by Dunz. The letter reframed the allegations as "emotional abuse" and declared the case unsubstantiated, despite a pending litigation hold and active federal preservation notices on record.

These facts collectively demonstrate a sustained pattern of retaliatory obstruction, fraud upon the court, spoliation of evidence, procedural suppression, and deliberate evasion of ADA and constitutional claims by both the district court and the state Appellees.

This appeal follows from the final judgment (Doc. 77) entered December 11, 2025, which disposed of all claims against all parties. All prior interlocutory rulings, including the October 9, 2025 dismissal of the Kansas Department for Children and Families (DCF) and the Kansas Attorney General's Office, are now reviewable under the merger rule, having merged into final judgment pursuant to 28 U.S.C. § 1291. The Court's prior dismissal of Appeal No. 25-3182 for

lack of jurisdiction is therefore resolved, and all issues preserved in the district court are now properly before this Court.

3.  Statement of Issues.

a.  First Issue:

Whether the district court erred in denying default judgment and permitting untimely appearances and motions from Appellees who failed to respond after proper service, while applying procedural rules unequally to the pro se, IFP, disabled Appellant.

Argument and Authorities: Appellant served all Appellees between April and May 2025. DCF and individual Appellees filed their motion to dismiss (Doc. 11) after their responsive deadline passed. The Kansas Attorney General's Office appeared even later (Doc. 14), without filing a motion to extend time or good cause explanation under Fed. R. Civ. P. 6(b). Appellant immediately filed for default (Docs. 12, 13). The court denied default solely on grounds that one summons (for the AG's Office) had not been returned executed (Doc. 18), without addressing the undisputed late filings by all other Appellees and the US Marshall reports of evidence of service.

Under Fed. R. Civ. P. 55, default judgment is proper when a party has failed to plead or otherwise defend. See also Canady v. J.B. Hunt Transp., Inc., 970 F. Supp. 2d 945, 948 (D. Kan. 2013) (holding timely response is mandatory absent motion for extension). The district court made no finding of excusable neglect, good cause, or prejudice to Appellant.

Meanwhile, the Appellant 's filings were scrutinized strictly, and multiple motions were struck or denied for alleged procedural defects (Docs. 55, 73). This reveals asymmetrical enforcement of procedural rules, violating due process and equal protection, particularly for a pro se ADA-protected litigant. See Foman v. Davis, 371 U.S. 178 (1962); Haines v. Kerner, 404 U.S. 519 (1972) (courts must construe pro se pleadings liberally).

b.  Second Issue:

Whether the district court violated Appellant's due process and ADA rights by dismissing the case without addressing pending Rule 60(d)(3), fraud-upon-the-court allegations, and motions related to judicial bias, retaliation, and evidentiary suppression.

Argument and Authorities: Appellant filed a Rule 60(d)(3) preservation motion (Doc. 28), along with extensive filings documenting coordinated fraud, evidence tampering, and judicial conflict (Docs. 44, 54, 68, 69, 70, 71, 72, 75). The court dismissed the action without reviewing or ruling on any of these motions, and without analyzing the factual or legal basis of Appellant's fraud allegations.

Fraud on the court under Rule 60(d)(3) is jurisdictional and may be raised at any time. See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters, 675 F.2d 1349 (4th Cir. 1982). Dismissal without adjudicating preserved claims violates due process and undermines the integrity of judicial proceedings.

Moreover, Appellant was an ADA Title II-protected litigant with a documented communication disability and filed multiple retaliation notices. The district court never acknowledged or ruled on any ADA claim, and instead threatened sanctions for filings protected under 42 U.S.C. § 12203(b) (Doc. 73). This conduct contradicts the mandate in Tennessee v. Lane, 541 U.S. 509 (2004) and the effective communication requirement under 28 C.F.R. § 35.160.

c. Third Issue:

Whether the district judge erred by refusing to recuse or disqualify himself under 28 U.S.C. § 455(a) and (b)(4) despite detailed notices of financial entanglement, appearance of bias, judicial defamation, and retaliatory rulings.

Argument and Authorities: Appellant filed two disqualification motions (Docs. 53, 56), invoking both 28 U.S.C. § 455(a) (appearance of impropriety) and § 455(b)(4) (financial interest via state-administered funds and municipal bond conflicts). The court issued no ruling on these motions and proceeded to dismiss the case while those motions were pending.

Failure to rule on disqualification motions violates due process. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988). In Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), the Supreme Court held that even the appearance of bias requires disqualification. The standard is whether a reasonable person would question the judge's impartiality, a standard clearly met here given the judge's financial role and threatened sanctions after protected filings.

d. Fourth Issue:

Whether the dismissal without prejudice operated as a constructive final judgment where Appellant was denied all access to discovery, jury trial, or adjudication of rights under ADA and § 1983.

Argument and Authorities: Though styled as "without prejudice," the court's Dec. 11, 2025 dismissal (Doc. 76) followed the striking of Appellant's final amended complaint (Doc. 74) and the refusal to address any preserved claims. The court had already dismissed all but two Appellees (Docs. 48, 67). This dismissal was functionally final and deprived Appellant of her right to due process, jury trial, and statutory remedies under 42 U.S.C. § 1983, ADA Title II, and the First and Fourteenth Amendments. See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497 (2001); Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1995).

e. Fifth Issue

Whether the post-judgment conduct of Appellees, including the retaliatory January 2026 DCF closure letter signed by a named defendant while under litigation hold, further evidences spoliation, obstruction, and ongoing ADA retaliation relevant to this appeal.

Argument and Authorities:

After the district court entered judgment, Appellant timely appealed (Doc. 78). While this appeal was pending, Appellee Heather Dunz—named defendant in both the federal lawsuit and this appeal—closed an open DCF investigation concerning child neglect, suicidal threats, and interference with reunification. This closure occurred despite a pending federal litigation hold, legislative oversight, and ADA-based accommodation requests.

The letter, dated January 16, 2026, reclassified the abuse report as "emotional abuse" and declared it unsubstantiated. This conduct:

- Confirms Appellees' continuing retaliation under 42 U.S.C. § 12203(b),
- Violates federal litigation preservation obligations,
- Constitutes spoliation of evidence and obstruction under Rule 37(e) and Rule 60(d)(3),
- And reflects an ongoing effort to undermine appellate review and federal court jurisdiction.

The Tenth Circuit may consider post-judgment retaliation when it confirms a continuing pattern of harm relevant to preserved issues. See *Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511 (2d Cir. 1991) (allowing post-judgment conduct to inform injunctive and equitable relief).


4. Do you think the district court applied the wrong law? If so, what law do you want applied?

Yes. The district court failed to apply the correct legal standards across four critical areas:


A. Rule 55 Default Judgment Standards

Wrong Law Applied:
The court treated Attorney General's (Appellee) late filings as timely without requiring a motion under Fed. R. Civ. P. 6(b) or a showing of excusable neglect. It denied Appellant's default judgment request (Docs. 12, 13, 18) based solely on the AG's Office narrative, to which was

proven wrong with US Marshall swearing document of service and did not address their actual default.

Correct Law That Should Have Been Applied:

- Fed. R. Civ. P. 55(a)–(b): Default judgment is proper where a party fails to timely respond.

- Canady v. J.B. Hunt Transp., Inc., 970 F. Supp. 2d 945 (D. Kan. 2013): Requires a motion to extend deadlines and explanation of excusable neglect.

- The court should have evaluated timeliness and prejudice, not applied a blanket denial.


B. Rule 60(d)(3) Fraud on the Court

Wrong Law Applied:
The district court dismissed the action without adjudicating Appellant's Rule 60(d)(3) fraud-on-the-court motion (Doc. 28) or related notices and evidence (Docs. 54, 68, 70, 71). These fillings were suddenly treated as frivolous without legal review or findings, despite being jurisdictional in nature.

Correct Law That Should Have Been Applied:

- Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944): Fraud upon the court is a structural defect that can be raised at any time.

- Great Coastal Express Inc. v. Int'l Bhd. Of Teamsters, 675 F.2d 1349 (4th Cir. 1982): Fraud by officers of the court affecting the integrity of the proceeding must be adjudicated, even post-dismissal.

- The court was obligated to rule on preserved fraud claims before entering final judgment.


C. ADA Title II and 42 U.S.C. § 12203(b) Retaliation

Wrong Law Applied:
The court entirely failed to analyze Appellant's ADA Title II status or her retaliation claims under federal disability law. The record contains multiple ADA-based filings, including notices of ineffective communication and retaliation, which were ignored. Instead, the court issued sanctions threats (Doc. 73) for filings protected under federal law.

Correct Law That Should Have Been Applied:

- Tennessee v. Lane, 541 U.S. 509 (2004): Title II applies to access to the courts and judicial processes.

- 42 U.S.C. § 12203(b): Protects against retaliation for asserting ADA rights.
- 28 C.F.R. § 35.160(b)(1): Requires courts to provide and ensure effective communication with disabled litigants.

D. Judicial Disqualification under 28 U.S.C. § 455

Wrong Law Applied:
The district court failed to rule on disqualification motions (Docs. 53, 56) based on financial entanglement, retaliatory conduct, and appearance of bias. No findings were made, and the motions were ignored while the court proceeded to dismiss the case.

Correct Law That Should Have Been Applied:

- Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009): Requires recusal where the probability of bias is constitutionally intolerable.
- Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988): Appearance of impropriety requires disqualification, regardless of intent.
- Courts have an affirmative duty to resolve § 455 motions before proceeding to final judgment.

The district court repeatedly failed to apply the controlling legal standards and correct law on default, fraud, ADA protections, and judicial disqualification, resulting in structural and jurisdictional errors. These errors were not harmless; they denied Appellant access to the judicial process. Appellant respectfully requests reversal of the dismissal and remand with instructions to apply the correct legal framework, permit amendment and discovery, and assign the matter to a neutral judge for further proceedings.

5. Did the district court incorrectly decide the facts? If so, what facts?

Yes. The district court made multiple factual errors and omissions that materially affected the outcome. These include:

A. Mischaracterizing the Timeliness of Appellee Appearances and Responses

The court found no procedural issue with Appellees' appearances and motions to dismiss, but this contradicts the actual record: DCF and its employees filed their motion to dismiss (Doc. 11) after the deadline, without seeking leave or showing good cause under Rule 6(b). The Kansas Attorney General's Office did not appear until June 6, 2025 (Doc. 14). Despite this, the court denied Appellant's motion for default (Doc. 18) and treated all filings as if timely.

Incorrect factual conclusion: That no default occurred and that all Appellees properly defended, despite record evidence to the contrary.

B. Ignoring the Allegations and Evidence of Fraud and Retaliation

Appellant filed multiple detailed notices and motions documenting: Coordinated suppression of subpoenas and GAL records (Docs. 27, 31), judicial nonperformance and mislabeling of filings (Doc. 44), ADA retaliation and denial of effective communication (Docs. 69, 72), fraud upon the court by Appellees and procedural manipulation (Docs. 28, 68, 70, 71). The district court never made factual findings on these claims. Instead, it dismissed the case as if they didn't exist.

Incorrect factual conclusion: That Appellant failed to state a viable claim or comply with court orders, without ever ruling on the underlying facts of fraud, retaliation, or ADA-based obstruction.

C. Striking the Amended Complaint Based on False Premises

On November 17, 2025, the district court struck Appellant's amended complaint (Doc. 55), asserting that it reintroduced previously dismissed parties and failed to comply with Rule 8. However, Appellant had filed separate ADA and constitutional claims based on new evidence and post-dismissal retaliation. The court never cited any specific paragraph or factual deficiency in the amended complaint.

Incorrect factual conclusion: That the amended complaint was "noncompliant," when it directly addressed preserved claims and introduced newly arising harms.

D. Ignoring Appellant's ADA Status

Despite multiple written notices and filings (Docs. 69, 72, 75), the court: Never acknowledged Appellant's protected ADA status, despite being on written notice, took no action to ensure effective communication, threatened sanctions for Appellant's efforts to preserve her rights under the ADA and Title II of the Civil Rights Act (Doc. 73).

Incorrect factual omission: The court treated Appellant as a routine pro se litigant rather than an ADA Title II-protected individual entitled to statutory access accommodations.

E. Overlooking Judicial Conflict and Disqualification Grounds

Appellant submitted two motions to disqualify Judge Broomes and Magistrate Judge James under 28 U.S.C. § 455 (Docs. 53, 56), citing: Financial entanglement with state agencies under

municipal bond doctrine, retaliatory rulings and suppression of amended filings, ex parte coordination with the AG's Office.

The court did not enter any factual findings on these allegations and dismissed the case while these motions remained pending.

Incorrect factual omission: That there was no conflict or basis for recusal, despite a fully preserved factual record under § 455(b)(4) and Caperton.

By ignoring or mischaracterizing Appellant's filings and preserved evidence, the district court not only dismissed the case prematurely but did so without ever confronting the actual facts raised. These omissions and misrepresentations form an independent basis for reversal and remand for adjudication on a complete and accurate record.

6. Did the district court fail to consider important grounds for relief? If so, what grounds?

Yes. The district court failed to consider, or entirely ignored, several critical grounds for relief that were properly presented and preserved. Each omission independently warrants reversal.

A. Fraud Upon the Court (Rule 60(d)(3))

Appellant expressly invoked Rule 60(d)(3) to preserve and present allegations of fraud upon the court, supported by detailed factual filings and evidentiary notices (e.g., Docs. 28, 68, 70, 71). These filings alleged misconduct by officers of the court, including suppression of evidence, misrepresentation of procedural facts, and manipulation of judicial process. The district court never ruled on these allegations, never held a hearing, and never made findings. Instead, it dismissed the action while the Rule 60(d)(3) grounds remained pending. Fraud upon the court is not discretionary, waivable, or subject to ordinary pleading dismissal. It implicates the integrity of the judicial process itself and must be addressed before final judgment.

Ground ignored: Relief from judgment and preservation of claims based on fraud upon the court.

B. ADA Title II Retaliation Claims

Appellant repeatedly notified the court of her protected status under ADA Title II and notices of retaliation for protected activity (Docs. 69, 72, 75).

The district court: Never analyzed Appellant's ADA claims, never applied Tennessee v. Lane or DOJ Title II regulations, never ruled on whether accommodations were required or denied, and

instead threatened sanctions for filings that were ADA-protected activity. This constitutes a complete failure to consider a statutory ground for relief expressly raised under federal law.

Ground ignored: ADA Title II access to courts and anti-retaliation relief under 42 U.S.C. § 12203(b).

C. Judicial Disqualification and Structural Bias (28 U.S.C. § 455)

Appellant filed two motions seeking disqualification of the assigned judges under 28 U.S.C. § 455(a) and § 455(b)(4) (Docs. 53, 56), citing appearance of bias, financial entanglement, and retaliatory conduct.

The district court: Did not issue findings, failed to address the applicable statutory standards, did not determine whether a reasonable observer would question impartiality, and dismissed the case while disqualification motions were pending. Courts have an affirmative duty to resolve § 455 motions before proceeding. Failure to do so deprives the litigant of a neutral tribunal.

Ground ignored: Mandatory judicial disqualification and relief based on structural bias.

D. Default and Waiver of Defenses

Appellant sought default judgment and enforcement of waiver based on Attorney Generals' (Appellee) untimely appearance and motions (Docs. 12, 13, 34, 42). The district court denied default without analyzing: Whether Appellee waived defenses, whether Rule 6(b) excusable neglect was shown, or whether unequal procedural enforcement prejudiced Appellant.

Instead, the court resolved the issue on Attorney General's narrative instead of the US Marshall and failed to consider default as a substantive basis for relief.

Ground ignored: Default judgment and waiver of defenses under Rules 55 and 12.

E. Right to Jury Trial and Access to Discovery

Appellant repeatedly demanded a jury trial and objected to discovery stays that prevented factual development (Docs. 41, 43, 46). The court stayed discovery without notice, then dismissed the case, without evaluating whether dismissal before factual development, that could only be decided with a jury, deprived Appellant of her Seventh Amendment rights in a civil rights action.

Ground ignored: Jury trial entitlement and relief from dismissal without factual development.

F. Retaliation and Post-Filing Misconduct

Appellant preserved evidence of ongoing retaliation and procedural obstruction, including actions occurring after the filing of the complaint and during first appellate proceedings. These grounds were relevant to injunctive and equitable relief, yet were never considered.

Ground ignored: Relief based on continuing retaliation and post-filing constitutional injury.

The district court did not merely misapply the law; it failed to consider entire categories of relief that were jurisdictional, statutory, and constitutionally required. Dismissal without addressing these grounds denied Appellant meaningful access to the courts and requires reversal and remand for adjudication on a complete record.

7. Do you feel that there are any other reasons why the district court's judgment was wrong? If so, what?

Yes. Beyond the legal and factual errors already discussed, the district court's judgment was fundamentally flawed due to its pattern of procedural suppression, retaliatory tone and posture toward a disabled pro se IFP litigant, and failure to preserve institutional neutrality in a case that raised serious constitutional and civil rights violations. These are not ordinary errors; they signal a structural failure of judicial integrity that demands reversal.

A. Pattern of Suppression and Procedural Evasion

Throughout the proceedings, the district court engaged in a pattern of avoiding resolution of core constitutional claims and federal questions by: Generally striking pleadings instead of addressing them on the merits (Docs. 55, 67), labeling fraud, disqualification, and retaliation filings as "frivolous" without issuing legal findings (Doc. 73), threatening sanctions against a pro se IFP litigant asserting disability rights (Doc. 73), allowing defense defaults and procedural failures to be cured without legal justification, while denying Appellant the same flexibility. This selective enforcement of procedural standards eroded trust in the court's neutrality and created a record of one-sided gatekeeping, which is particularly troubling in a case involving state agency Appellees, child protection failures, and an ADA-protected parent seeking federal relief.

B. Constructive Denial of Article III Forum

By dismissing all claims without ruling on preserved motions, without discovery, without jury trial, and while disqualification and Rule 60(d)(3) issues remained pending, the court constructively denied Appellant access to a neutral Article III forum. This constitutes a

constructive jurisdictional defect under both the Due Process Clause and federal supremacy principles, as the district court refused to exercise jurisdiction over federal claims that arose directly from agency misconduct, ADA retaliation, abuse of process, and obstruction by parties actively engaged in child protection enforcement while under federal and legislative scrutiny.

C. Failure to Protect a Pro Se, ADA-Protected Litigant

Federal courts have an obligation to ensure meaningful access to the judicial system for disabled litigants. Instead of accommodating that duty, the court: Refused to address effective communication failures, mischaracterized preservation and retaliation filings as disruptive, and ultimately used Appellee's narrative to sidestep judicial accountability. This reflects not merely error, but a breakdown in the protective function of the court for those most vulnerable under the law. The courts exist to enforce rights, not silence those attempting to assert them.

D. The Dismissal Created Appellate Ambiguity

Finally, the district court's final judgment was procedurally unclear and substantively contradictory. It styled the final dismissal as "without prejudice," yet followed multiple orders eliminating all claims and parties (Docs. 48, 67), generally dismissed pleadings instead of on substance, denied all relief without meaningful review of any claim, and dismissed the case while multiple motions remained undecided.

This created a record that is both incomplete and inconsistent, frustrating appellate review and compounding the injury caused to Appellant. This is not a case about routine disagreement over judicial discretion. It is about whether a pro se, IFP, disabled parent seeking redress against state misconduct was ever granted a meaningful opportunity to be heard. The record shows that she was not. For these reasons, combined with the violations of Rule 55, Rule 60(d)(3), the ADA, § 455, and due process clause, this Court should reverse and remand the judgment with instructions for reassignment and meaningful adjudication of the preserved claims.

8. What action do you want this court to take in your case?

Appellant respectfully requests that this Court vacate the district court's dismissal, reverse all findings made while motions for disqualification, fraud preservation, and ADA retaliation were pending, and remand the case with instructions for reassignment to a neutral judge and adjudication on the merits.

Specifically, Appellant requests the following relief:

1. Reversal of the December 11, 2025 dismissal order (Doc. 76) and related judgments (Doc. 77), as procedurally and constitutionally defective;

2. Remand with instructions:

- To adjudicate all preserved motions including default judgement, Rule 60(d)(3) fraud, ADA retaliation, judicial disqualification under 28 U.S.C. § 455, and pending procedural objections;

- To reopen discovery and lift the stay (Doc. 40) that was imposed while dispositive issues remained unresolved;

3. Reassignment to a different district judge under this Court's supervisory authority, in the interest of justice, due to prior bias, financial conflicts, suppression of record filings, and failure to rule on disqualification motions;

4. Restoration of Appellant's right to proceed to jury trial on all surviving claims, including under 42 U.S.C. § 1983, ADA Title II, and the First and Fourteenth Amendments;

5. Any other relief this Court deems just and proper to restore due process, protect ADA rights, and ensure neutral review of Appellant's federal claims.

Appellant further asks that this Court formally note that dismissal occurred while unresolved motions relating to fraud on the court, ADA access violations, or judicial disqualification were pending, in order to preserve those claims for future proceedings, including potential supervisory or Rule 60(d)(3) review.

9. Do you think the court should hear oral argument in this case? If so, why?

Yes. Appellant respectfully requests oral argument because this case raises structural and jurisdictional defects that implicate:

- Denial of due process and equal protection,

- Suppression of ADA Title II rights and retaliation protections,

- Unresolved allegations of fraud upon the court under Rule 60(d)(3),

- Improper denial of default judgment and selective enforcement of procedural rules instituting double standards,

- And failure of the district court to rule on judicial disqualification motions under 28 U.S.C. § 455.

These issues involve the interplay between ADA procedural access rights, pro se protections, and judicial impartiality, and the constructive denial of an Article III forum. Oral argument will assist the Court in evaluating the cumulative impact of these omissions, the suppression of motions and pleadings, and the context of continuing retaliation that occurred and continue to occur during the pendency of the appeals.

The systemic failures underlying this case have now drawn the attention of the Kansas Post Audit Committee which in 2025-26 began investigating DCF's financial accountability, record-handling, and failure to accommodate disabled families. Appellant has participated in that oversight process, submitted documentation, and been interviewed by Committee members regarding the same misconduct raised in this appeal.

The overlap between legislative oversight and unresolved judicial misconduct strongly supports the need for remand, development of a complete evidentiary record, and independent factfinding. Federal courts must not defer dismissal when the same institutional actors are under active investigation for the very policies and harms alleged here.

Because the case presents both systemic procedural breakdown and unresolved legal questions concerning access to federal protections for disabled litigants, Appellant believes oral argument will materially aid the Court in its deliberation and help clarify the importance of safeguarding judicial neutrality and structural fairness in civil rights actions involving vulnerable parties.


__Feb 3, 2026____          _____/s/ Angeliina L. Lawson_____
Date                                    Signature


## CERTIFICATE OF SERVICE

I hereby certify that on __ Feb 3, 2026__ I sent a copy of the Appellant/Petitioner's Opening Brief to all counsels on file through the clerk's e-filing system and at their the last known official email on record.


___ Feb 3, 2026_____         _____/s/ Angeliina L. Lawson_____
Date                                    Signature

---

## CERTIFICATE OF COMPLIANCE

I certify that the total number of pages I am submitting as my Appellant/Petitioner's Opening Brief is 30 pages or less or alternatively, if the total number of pages exceeds 30, I certify that I have counted the number of words and the total is 5,414 which is less than 13,000. I understand

that if my Appellant/Petitioner's Opening Brief exceeds 13,000 words, my brief may be stricken and the appeal dismissed.


\_\_\_ Feb 3, 2026\_\_\_\_\_  _____/s/ Angeliina L. Lawson_____
Date                                          Signature